## TRANSCRIPT  COVER

*AP-76535*

# IN THE TEXAS COURT OF CRIMINAL APPEALS

## NO. _____

### TRIAL COURT CAUSE NO. 09-0411X

### CORTNE MAREESE ROBINSON APPELANT,

*RECEIVED IN*
*COURT OF CRIMINAL APPEALS*

### VS.

*APR 18 2011*

### THE STATE OF TEXAS, APPELLEE

*Louise Pearson, Clerk*

**• • • • • • • • • • • • • • • • • • • • • • • • • • • • •**

## APPEALED FROM THE 71ST DISTRICT COURT OF HARRISON COUNTY, TEXAS

*FILED IN*
*COURT OF CRIMINAL APPEA*

### Honorable JOE C. CLAYTON Judge Presiding

*APR 19 2011*

*Louise Pearson, Clerk*

**• • • • • • • • • • • • • • • • • • • • • • • • • • • • •**

### Appellant's Attorney on Appeal: JEFF HAAS

### State's Attorney: RICK HAGAN

**• • • • • • • • • • • • • • • • • • • • • • • • • • • • •**

### MELLINDA CRAIG District Clerk
### Address: 200 WEST HOUSTON   STE. 234
### MARSHALL, Texas  75670
### Phone: 903-935-8409
### By CINDY HOLMES, Deputy

© TDCA2005

**CAPTION**

THE STATE OF TEXAS

COUNTY OF HARRISON

AT A TERM OF THE 71ST JUDICIAL DISTRICT COURT, OF HARRISON COUNTY,

TEXAS, WHICH BEGAN IN SAID COUNTY ON THE 27th DAY OF OCTOBER, 2009

THE HONORABLE JOE C. CLAYTON SITTING AS JUDGE OF SAID COURT, THE FOLLOWING

PROCEEDINGS WERE HAD,

TO WIT:

| | | |
|---|---|---|
| THE STATE OF TEXAS | | IN THE DISTRICT COURT |
| VS. | NO. 09-0411X | OF |
| CORTNE MAREESE ROBINSON | | HARRISON COUNTY, TX |

NO. **09-0411¼**

The State of Texas Vs. __Cortne Mareese Robinson__

Charge: __Capital Murder__

Penal Code Section: __19.03__

FILED FOR RECORD
HARRISON COUNTY TEXAS
CLERK DISTRICT COURT

2009 OCT 27 PM 2: 54

SHERRY GRIFFIS

BY _____
DEPUTY

## IN THE NAME AND BY AUTHORITY OF THE STATE OF TEXAS:

The Grand Jury for the County of Harrison, State of Texas, duly selected, impaneled, sworn, charged and organized as

such at the __SEPTEMBER - OCTOBER__ Term, A.D. 2009, of the 71st Judicial District Court of said County, upon their

oaths present in and to said Court, that __Cortne Mareese Robinson__, on or about the __20th__ day of __September__, A.D.2009,

and before the presentment of this indictment, in said County and State, did then and there

### PARAGRAPH A

Intentionally cause the death of an individual, namely, Frank Zabokrtsky, by shooting him with a firearm, and the defendant was then and there in the course of committing or attempting to commit the offense of burglary of a habitation of Frank Zabokrtsky, who was the owner of said habitation

### PARAGRAPH B

**AND THE GRAND JURORS AFORESAID** do further present that Cortne Mareese Robinson, on or about the 20th day of September, A.D. 2009, and before the presentment of this indictment, in said County and State, did then and there intentionally cause the death of an individual, namely, Frank Zabokrtsky, by shooting him with a firearm, and the defendant was then and there in the course of committing or attempting to commit the offense of robbery of Frank Zabokrtsky

**AGAINST THE PEACE AND DIGNITY OF THE STATE.**

_Charles W. Dunson_
**Foreman of the Grand Jury.**

FILED

_1:45_ O'CLOCK _A_ M.

_3-7-11_

MELLINDA CRAIG

CLERK DISTRICT COURT

HARRISON COUNTY, TEXAS

BY _Melinda Craig_

| | | |
|---|---|---|
| The State Of Texas | NO. 09-0411X § | In The FIRST Judicial |
| | § | |
| V. | § | District Court of |
| | § | |
| | § | |
| Cornte Mareese Robinson | § | Harrison County, Texas |

Members of the Jury:

A person commits the offense of murder if he intentionally or knowingly causes the death of an individual or commits or attempts to commit a felony, other than manslaughter, and in the course of and in furtherance of the commission or attempt, or in immediate flight from the commission or attempt, he commits or attempts to commit an act clearly dangerous to human life that causes the death of an individual.

A person commits the offense of capital murder if he intentionally commits murder, as hereinbefore defined, and the person commits the murder in the course of committing or attempting to commit the offense of robbery or the offense of burglary of a habitation.

Robbery and burglary of a habitation are felony offenses.

A person commits the offense of robbery if, in the course of committing theft, as that term is hereinafter defined, and with intent to obtain or maintain control of property of another, he:

(1) intentionally knowingly or recklessly causes bodily injury to another; or

(2) intentionally or knowingly threatens or places another in fear of imminent bodily injury or death.

A person commits the offense of aggravated robbery if the person commits robbery, as hereinbefore defined, and the person:

(1)   causes serious bodily injury to another; or

(2)   uses or exhibits a deadly weapon.

A person commits the offense of burglary of a habitation if, without the effective consent of the owner, he:

(1)   enters a habitation with intent to commit a felony, theft, or an assault; or

(2)   enters a habitation and commits or attempts to commit a felony, theft, or an assault.

A person commits an assault if the person:

(1)      intentionally knowingly or recklessly causes bodily injury to another; or

(2)      intentionally or knowingly threatens another with imminent bodily injury

"Appropriate" and "appropriation" means to acquire or otherwise exercise control over property other than real property.   Appropriation of property is unlawful if it is without the owner's effective consent.

"Attempt" to commit an offense occurs if, with specific intent to commit an offense, a person does an act amounting to more than mere preparation that tends, but fails, to effect the commission of the offense intended.

"Bodily injury" means physical pain, illness, or any impairment of physical condition.

"Serious bodily injury" means bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ.

"Deadly weapon" means a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or anything that in the manner of its use or intended use is capable of causing death or serious bodily injury.

2

"Deprive" means to withhold property from the owner permanently or for so extended a period of time that a major portion of the value or enjoyment of the property is lost to the owner.

"Effective consent" means assent in fact, whether express or apparent, and includes consent by a person legally authorized to act for the owner. Consent is not effective if induced by force, threats, deception or coercion.

"Enter" means to intrude any part of the body, or any physical object connected to the body.

"Habitation" means a structure or vehicle that is adapted for the overnight accommodation of persons, and includes: (a) each separately secured or occupied portion of the structure or vehicle and (b) each structure appurtenant to or connected with the structure or vehicle.

"In the course of committing" means conduct that occurs in an attempt to commit, during the commission, or in the immediate flight after the attempt or commission of an offense.

"Owner" means a person who has a greater right to possession of the property than the defendant.

"Possession" means actual care, custody, control, or management of the property.

"Property" means tangible or intangible personal property, or a document, including money, that represents or embodies anything of value.

"Theft" is the unlawful appropriation of property with intent to deprive the owner of said property.

The definition of intentionally relative to the offense of capital murder is as follows:

3

A person acts intentionally, or with intent, with respect to a result of his conduct when it is his conscious objective or desire to cause the result.

The definitions of intentionally and knowingly relative to the offenses of murder and assault are as follow:

A person acts intentionally, or with intent, with respect to a result of his conduct when it is his conscious objective or desire to cause the result.

A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

The definitions of intentionally and knowingly relative to the offenses of robbery and burglary of a habitation are as follow:

A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.

A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist.  A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the defendant's standpoint.

4

Now, therefore, if you find from the evidence beyond a reasonable doubt that on or about September 20, 2009, in Harrison County, Texas, the defendant Cortne Mareese Robinson, did then and there unlawfully, while in the course of committing or attempting to commit the robbery of Frank Zabokrtsky, intentionally cause the death of Frank Zabokrtsky by shooting Frank Zabokrtsky with a deadly weapon, namely a firearm; or If you find from the evidence beyond a reasonable doubt that on or about September 20, 2009, in Harrison County, Texas, the defendant, Cortne Mareese Robinson, did then and there unlawfully, while in the course of committing or attempting to commit the burglary of a habitation owned by Frank Zabokrtsky, intentionally cause the death of Frank Zabokrtsky by shooting Frank Zabokrtsky with a deadly weapon, namely a firearm, then you will find the defendant guilty of capital murder, as charged in the indictment.

Unless you so find from the evidence beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will acquit the defendant of capital murder and next consider whether the defendant is guilty of murder.

Now, therefore, if you find from the evidence beyond a reasonable doubt that on or about September 20, 2009, in Harrison County, Texas, the defendant, Cortne Mareese Robinson, did then and there unlawfully commit or attempt to commit the felony offense of robbery of Frank Zabokrtsky, and while in the course of and in furtherance of the commission of or the attempt to commit said offense, did commit an act clearly dangerous to human life, to-wit: shooting Frank Zabokrtsky with a deadly weapon, namely, a firearm, or if you find from the evidence beyond a reasonable doubt that on or about September 20, 2009, in Harrison County, Texas, the defendant, Cortne Mareese Robinson, did then and there unlawfully commit or attempt to commit the felony offense

5

of burglary of a habitation owned by Frank Zabokrtsky, and while in the course of and in furtherance of the commission of or the attempt to commit said offense, did commit an act clearly dangerous to human life, to-wit: shooting Frank Zabokrtsky with a deadly weapon, namely, a firearm, then you will find the defendant guilty of murder.

Unless you so find from the evidence beyond a reasonable doubt or if you have a reasonable doubt thereof, you will acquit the defendant of murder.

If you believe from the evidence beyond a reasonable doubt that the defendant is guilty of either capital murder on the one hand or murder on the other hand, but you have a reasonable doubt as to which of said offenses he is guilty, then you must resolve that doubt in the defendant's favor and find him guilty of the lesser offense of murder.

If you have a reasonable doubt as to whether the defendant is guilty of any offense defined in this charge you will acquit the defendant and say by your verdict "Not Guilty."

Our law provides that a defendant may testify in his own behalf if he elects to do so. This, however, is a right accorded a defendant, and in the event he elects not to testify, that fact cannot be taken as a circumstance against him. In this case, the defendant has elected not to testify. Therefore, I am instructing you that you must not, and you shall not, refer to, mention, comment upon or otherwise discuss the failure of the defendant to testify in this case. You are instructed that any juror doing so may be guilty of contempt of court. If any juror mentions the defendant's failure to testify in this case, then it is the duty of the other jurors to stop him at once.

A Grand Jury indictment is the means whereby a defendant is brought to trial in a felony prosecution. It is not evidence of guilt nor can you consider it in passing upon the question of guilt of the defendant. The burden of proof in all criminal cases rests upon the State throughout the trial and never shifts to the defendant.

6

All persons are presumed to be innocent and no person may be convicted of an offense unless each element of the offense is proven beyond a reasonable doubt.  The fact that a defendant has been arrested, confined, indicted for, or otherwise charged with an offense gives rise to no inference of guilt at his trial.  The law does not require a defendant to prove his innocence or produce any evidence at all.  The presumption of innocence alone is sufficient to acquit the defendant, unless the jurors are satisfied beyond a reasonable doubt of the defendant's guilt after careful and impartial consideration of all the evidence in the case.

The prosecution has the burden of proving the defendant guilty and it must do so by proving each and every element of the offense charged beyond a reasonable doubt and if it fails to do so, you must acquit the defendant.

It is not required that the prosecution prove guilt beyond all possible doubt; it is required however that the prosecution's proof excludes all reasonable doubt concerning the defendant's guilt.

In the event you have a reasonable doubt as to the defendant's guilt after considering all the evidence before you, and these instructions, you will acquit him and say by your verdict "Not Guilty."

Your only duty at this time is to determine the guilt or innocence of the defendant under the indictment in this cause and restrict your deliberations solely to that issue, and no other.

You are the exclusive judges of the facts proved, of the credibility of the witnesses and the weight to be given their testimony, but the law you shall receive in these written instructions, and you must be governed thereby.

7

During your deliberations in this case, you must not consider, discuss, nor relate any matters not in evidence before you. You should not consider nor mention any personal knowledge or information you may have about any fact or person connected with this case which is not shown by the evidence.

You have been permitted to take notes during the testimony in this case. In the event any of you took notes, you may rely on your notes during your deliberations. However, you may not share your notes with the other jurors and you should not permit the other jurors to share their notes with you. You may discuss the contents of your notes with the other jurors but shall not use them as authority to persuade your fellow jurors. In your deliberations, give no more and no less weight to the views of a fellow juror just because that juror did or did not take notes. Your notes are not official transcripts. They are personal memory aids, just like the notes of the judge and the notes of the lawyers. Notes are valuable as a stimulant to your memory. On the other hand, you might make an error in observing or you might make a mistake in recording what you have seen or heard.

Occasionally, during jury deliberation, a dispute arises as to the testimony presented. If this should occur in this case, you shall inform the Court and request that the Court have the portion of disputed testimony read back to you. You are advised that this is a time consuming process and you must certify to the court the exact area of the factual dispute before the readback can be ordered.

After you retire to the jury room, you should select one of your members as your Foreman. It is his or her duty to preside at your deliberations, to vote with you, and when you have unanimously agreed upon a verdict, to certify to your verdict by using the appropriate form attached hereto and signing the same as Foreman.

No one has any authority to communicate with you except the officer who has you in charge. After you have retired, you may communicate with this Court in writing through this officer. Any communication relative to the cause must be written, prepared and signed by the Foreman and shall be submitted to the court through this officer. Do not attempt to talk to the officer who has you in charge, or the attorneys, or the Court, or anyone else concerning any questions you may have.

After you have reached a unanimous verdict, the Presiding Juror shall certify thereto by filling in the appropriate form attached to this Charge and signing his or her name as Presiding Juror.

Signed this ___7___ day of __March__, 2011.

Judge Presiding,
71St Judicial District Court
Harrison County, Texas

| The State Of Texas | § | NO. 09-0411X | In The 71ST Judicial |
| | § | | |
| V. | § | | District Court of |
| | § | | |
| Cornte Mareese Robinson | § | | Harrison County, Texas |

<u>VERDICT</u>

"We, the Jury, find the defendant, Cortne Mareese Robinson, guilty of Capital Murder as charged in the indictment."

_____
Foreman of the Jury

Kevin Crutchfield
_____
(Please Print) Foreman

"We, the Jury, find the defendant, Cortne Mareese Robinson guilty of Murder."

_____
Foreman of the Jury

_____
(Please Print) Foreman

"We, the Jury, find the defendant, Cortne Mareese Robinson, not guilty."

_____
Foreman of the Jury

_____
(Please Print) Foreman

10



No. 09-0411X

The State Of Texas § In The _____ COURT
                    §
                    §
v.                  § District Court of
                    §
                    §
Cortne Mareese Robinson § Harrison County, Texas

## ORDER APPONTING ASSISTANT ATTORNEY PRO TEM FOR THE STATE

The Court finds Defendant is charged with the offense of capital murder, that the

District Attorney of Harrison County has recused himself from involvement in this cause

and the Court has appointed the Honorable Rick Hagan as Attorney Pro Tem for the

State in this cause and that as such, he will require the assistance of additional counsel to

assist him in answering the appellate challenges to the conviction and sentence in this

cause on behalf of the State.

THEREFORE, IT IS ORDERED that the Honorable Lew Dunn, a licensed,

qualified criminal appellate attorney, is hereby appointed in this matter as assistant

Attorney Pro Tem for the State in this cause and is authorized to receive reasonable

sums of money for his services as an attorney on behalf of the State as provided by law.

Signed on this the ___17___ day of __March__, 2011.

_____
JUDGE PRESIDING

**CAUSE NO. 09-0411X**

| | | |
|---|---|---|
| STATE OF TEXAS | X | IN THE 71ST DISTRICT COURT |
| VS | X | COURT IN AND FOR |
| CORTNE MAREESE ROBINSON<br>Capital Murder, Capital Felony<br>As charged in the Indictment | X | HARRISON COUNTY, TX |

FILED
AT _____ O'CLOCK _____ M.
_____
MELLINDA CRAIG
CLERK DISTRICT COURT
HARRISON CO., TEXAS
BY _____
DEPUTY CLERK

## JUDGMENT OF CONVICTION BY JURY

Judge Presiding: JOE D. CLAYTON          Judgment Date: MARCH 14, 2011

Attorney Pro Tem for State:          Attorney for Defendant:
RICK HAGAN / JOE BLACK               KEVIN SETTLE / LANCE LARISON

Offense Charged: CAPITAL MURDER      Date Offense
Convicted Of: CAPITAL MURDER         Committed: SEPTEMBER 20, 2009
Degree: CAPITAL FELONY

Charging Instrument: INDICTMENT      Plea:  NOT GUILTY
Terms of Plea Bargain: NONE          Penal Code: 19.03

Date Sentence Formally Pronounced
And Imposed: MARCH 14, 2011          Costs: TO BE DETERMINED

SUBJECT TO MANDATORY APPEAL AS PROVIDED BY STATUTE

Punishment and Place
Of Confinement:          **DEATH SENTENCE**

DEFENDANT ORDERED HELD IN TEXAS DEPARTMENT OF CRIMINAL JUSTICE -
INSTITUTIONAL DIVISION UNIT UNTIL EXECUTED PURSUANT TO LAW AND THE
JUDGMENT AND SENTENCE OF THE COURT

DATE DEATH PENALTY TO BE IMPOSED:      TO BE SET AFTER MANDATORY
                                        APPEAL AS PROVIDED BY STATUTE

TIME OF CONFINEMENT
TO DATE OF JUDGMENT: 9.20.09 TO PRESENT

## JUDGMENT

The Defendant having been indicted in the above entitled and numbered cause for the felony offense of CAPITAL MURDER as charged in the indictment, a capital felony, and this cause being called for jury selection on JANUARY 5, 2011, the State appeared by her Criminal District Attorney's Pro Tem RICK HAGAN and JOE BLACK, and the Defendant CORTNE MAREESE ROBINSON, appeared in person and his counsel KEVIN SETTLE AND LANCE LARISON, also being present and both parties announced ready and jury selection commenced, and the Defendant in open court was duly arraigned and pleaded Not Guilty to the charge of Capital Murder as contained in the indictment herein, thereupon jury, to-wit: KEVIN CRUTCHFIELD and eleven others, were duly selected, along with two alternate jurors, and upon completion of jury selection the jury was impaneled and sworn.  On February 28, 2011 the Court proceeded with the trial with the reading of the indictment, the defendant entering his plea of "Not Guilty", opening statements, and introduction of evidence.  The jury, who having heard the evidence submitted, and having been duly charged by the court, and after hearing argument of counsel, retired in the charge of the proper office to consider their verdict, and afterward were brought into open Court, by the proper officer, the Defendant and his counsel being present, and in due form of law returned into open Court the following unanimous verdict, which was received by the Court, and is here and now entered upon the minutes of the Court, to wit:

WE, THE JURY, find the Defendant, CORTNE MAREESE ROBINSON, GUILTY of Capital Murder as charged in the indictment.

KEVIN CRUTCHFIELD
-----------------------
FOREMAN

The Defendant having been found guilty of Capital Murder by the verdict of the jury and thereupon further evidence being heard by the jury on the special issues pertaining to punishment, the Court again charged the jury as provided by law on the following special issues:

### SPECIAL ISSUE NO. 1

Do you find from the evidence beyond a reasonable doubt that there is a probability that the defendant, Cortne Mareese Robinson, would commit criminal acts of violence that would constitute a continuing threat to society?

### ANSWER TO SPECIAL ISSUE NUMBER 1:

WE, THE JURY, UNANIMOUSLY FIND BEYOND A REASONABLE DOUBT THAT THE ANSWER TO SPECIAL ISSUE NUMBER ONE IS **"YES."**

KEVIN CRUTCHFIELD
FOREMAN

## SPECIAL ISSUE NO. 2

Do you find from the evidence, taking into consideration all of the evidence, including the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant, Cortne Mareese Robinson, that there is a sufficient mitigating circumstance or circumstances to warrant a sentence of life imprisonment rather than a death sentence be imposed?

### ANSWER TO SPECIAL ISSUE NUMBER 2:

WE, THE JURY, UNANIMOUSLY FIND AND DETERMINE THAT THE ANSWER TO THIS SPECIAL ISSUE NUMBER TWO IS **"NO."**

KEVIN CRUTCHFIELD
FOREMAN

### VERDICT

WE, THE JURY, RETURN IN OPEN COURT THE ABOVE ANSWERS TO THE SPECIAL ISSUED SUBMITTED TO US, AND THE SAME IS OUR VERDICT IN THIS CASE.

KEVIN CRUTCHFIELD
FOREMAN

IT IS THEREFORE considered and adjudged by the Court, that the said Defendant is guilty of the offense of Capital Murder, as charged in the indictment, a Capital Felony; and that the said Defendant committed said offense on or about the 20th day of September, 2009, as found by the jury, and that he be punished, as has been determined by the jury's answers to the special issues and in accordance with State law by imposition of the sentence of DEATH, according to the law.

THEREUPON the said Defendant was informed by the Court of the mandatory appeal of this Judgment and Sentence to the Texas Court of Criminal Appeals as provided by law and rights to an 11.071 Application for Writ of Habeas Corpus, and further the said Defendant was asked by the Court whether he had anything to say why said sentence should not be pronounced against him, subject to the mandatory appeal and mandate, and he answered nothing in bar thereof, and it appearing to the Court that the Defendant is mentally competent and understands the English language, the Court proceeded, then in the presence of the Defendant, his counsel, and counsel for the state, to pronounce sentence, subject to mandatory appeal, against him as follows:

IT IS THE ORDER OF THE COURT, that the said Defendant, CORTNE MAREESE ROBINSON, is guilty of the offense of CAPITAL MURDER, as charged in the indictment, a Capital Felony; and that the said Defendant, CORTNE MAREESE ROBINSON, committed said offense of CAPITAL MURDER on or about the 20th day of SEPTEMBER, 2009 as found by the jury, and that he be punished, as has been

determined by the jury's answers to the special issues along with Texas law, by imposition of the punishment of DEATH, according to the law, and said Defendant is remanded to the Sheriff of Harrison County, Texas to be delivered to the Director of the Texas Department of Corrections (Texas Department of Criminal Justice, Institutional Division), or other person legally authorized to receive said Defendant, to be held until a date to be determined and ordered by this Court should the appeal in this cause be affirmed and the Mandate of same is returned to the Clerk of this Court, whereupon a Death Warrant with date of execution shall be ordered as provided by law, and thereafter the Defendant transported to the appropriate authority for execution as provided by law.

SIGNED this the _____17_____ day of March, 2011.

HONORABLE JOE D. CLAYTON
SITTING BY ASSIGNMENT
71ST JUDICIAL DISTRICT COURT
HARRISON COUNTY, TEXAS

NOTICE OF APPEAL:

MANDATED BY TEXAS LAW from date of Judgment
March 14, 2011

CAUSE NUMBER: 09-0411-X

FILED

AT _9:25_ O'CLOCK _A_ M.

MELLINDA CRAIG
CLERK DISTRICT COURT
BY _____
DEPUTY CLERK

| | | |
|---|---|---|
| STATE OF TEXAS | § | IN THE 71ST DISTRICT COURT TEXAS |
| VS. | § | IN AND FOR |
| CORTNE MAREESE ROBINSON | § | HARRISON COUNTY, TEXAS |

## ORDER ON MOTION TO PRECLUDE THE DEATH PENALTY AS A SENTENCING OPTION
### (Defendant's Age and Life Experiences Preclude the State from Seeking the Death Penalty)

On the 14th day of March, 2011, came on to be heard in open Court the foregoing Motion to Preclude the Death Penalty as a Sentencing Option and the Court, after considering same, stated the following order:

**IT IS ORDERED** that the Motion to Preclude the Death Penalty as a Sentencing Option is hereby **DENIED**.

The Court **FURTHER ORDERED** that this written order be prepared and made a part of the record in this case.

**SIGNED** on this ___17___ day of March, 2011.

JUDGE PRESIDING

**NO. 09-411X**

| | | |
|---|---|---|
| The State of Texas | § | In the 71st Judicial |
| | § | |
| V. | § | District Court of |
| | § | |
| Cortne Mareese Robinson | § | Harrison County, Texas |

FILED
AT _9.05_ O'CLOCK _A_ M.
MELLINDA CRAIG
CLERK DISTRICT COURT
HARRISON COUNTY TEXAS
DEPUTY CLERK

### ORDER APPOINTING COUNSEL FOR APPEAL

Pursuant to an application for court appointed counsel for an indigent defendant heretofore presented to the Court, and after having given the same due consideration, the Court is of the opinion that Jeff Haas be appointed appellant counsel for the purpose of appeal for the Defendant in the above entitled and numbered cause.

IT IS THERFORE ORDERED that Jeff Haas, licensed attorney, whose State Bar Number is 08659600, be appointed appellant counsel for the Defendant in this cause.

Signed this the ___17___ day of March, 2011.

JUDGE PRESIDING

NO. 09-411X

FILED

AT _____ O'CLOCK ___ M.

MELLINDA CRAIG
CLERK DISTRICT COURT
HARRISON COUNTY, TEXAS
BY _____
DEPUTY CLERK

| | | |
|---|---|---|
| The State of Texas | § | In the 71st |
| | § | |
| | § | |
| V. | § | District Court of |
| | § | |
| | § | |
| Cortne Mareese Robinson | § | Harrison County, Texas |

### ORDER APPOINTING COUNSEL FOR PURPOSE OF A WRIT

Pursuant to application for court appointed counsel for indigent defendant heretofore presented to the Court, and after having given the same due consideration, the Court is of the opinion that pursuant to Art. 11.071 of the Code of Criminal Procedure, the Office of Capital Writs, 1033 La Posada Drive, Suite 374, Austin, Texas, telephone number 512-463-8502, be appointed appellant counsel for the purpose of a writ for the Defendant in the above entitled and numbered cause.

IT IS THEREFORE ORDERED that the Office of Capital Writs, be and is appointed as appellant counsel for the purpose of a writ for the Defendant in this cause.

Signed this the ____ 17 day of March, 2011.

_____
JUDGE PRESIDING

# cord Of Criminal Actio

### 71st Judicial District

**Case No. 09-0411X**
Harrison County

April 14th, 2011
8:18am

**Robinson, Cortne Mareese**

210 Holland
Marshall, Tx 75670
* Valid as of 09/22/2009 *

Home: 903-407-2897
Work: 903-938-7031

Defense Attorney
Haas, Jeff

Prosecuting Attorney
Hagan, James R. (Rick)
(Control # 09-01986)

Filed : 10/27/2009
Status: Disposed/Confinement

Judge
JOE CLAYTON

Court Reporter
Visiting Reporter

| Date | | Volume | Page |
|---|---|---|---|

### Personal Information & Identifiers

```
Alias: Robinson, Cortne Maurice
Sex: Male    Race: Black    Height: 6' 00"    Weight: 175
Eyes: Brown    Hair: Black
SSN: 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, 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  DL: TX, TX-24319502  SO: 080623
   DPS: TX08192755
DOB: 12/15/1990
Occupation: UNEMPLOYED
Employer  : UNEMPLOYED
Education: 11 years
Marital status: Single
```

### Charge Information

```
11/19/09  Arrested by Marshall Police Department

09/20/09  (A001)                Capital Felony
Capital Murder
```

### Appeal Information

```
Appeal Status  :  Inactive
Appeal Attorney: Haas, Jeff
```

### Disposition Information

```
03/14/11  Sentence Commenced
03/14/11  Sentence Imposed
03/14/11  Disposed:  Death
```

## cord Of Criminal Actic

71st Judicial District

**Case No. 09-0411X**
Harrison County

April 14th, 2011
8:18am

| Date | | Volume | Page |
|------|---|--------|------|

### Disposition Information (cont.)

```
Jury Trial:  Yes
Offense of:  (09990022) Capital Murder By Terror Threat/Other
             Felony  Capital Felony
Confinement:  Death

Fine: $0.00 Attorney fee: $6,200.00
```

### Events & Orders of the Court

| Date | Event |
|------|-------|
| 03/22/11 | Pen Pack Sent To Jail |
| 03/21/11 | Other<br>BENCH WARRANT SERVED ON CHARLES DASHAWN JERNIGAN |
| 03/18/11 | Subpoena Returned Served<br>SERVED ON MICHAEL GOTTIEB, LARRY FITZGERALD, AND CORETTA ROBINSON |
| 03/18/11 | Subpoena Returned Served<br>SERVED ON DAVID SELF-FEB. 10, 2011 |
| 03/17/11 | Order<br>ORDER APPOINTING COUNSEL FOR PURPOSE OF A WRIT |
| 03/17/11 | Order<br>ORDER ON MOTION TO PRECLUDE THE DEATH PENALTY AS A SENTENCING OPTION |
| 03/17/11 | Order<br>ORDER APPOINTING COUNSEL FOR APPEAL |
| 03/17/11 | Other<br>STATEMENT OF APPOINTED OFFICER / OATH OF OFFICE |
| 03/17/11 | Order<br>ORDER APPOINTING ASSISTANT ATTORNEY PRO TEM FOR THE STATE |
| 03/17/11 | Motion<br>MOTION FOR THE APPOINTMENT OF AN ASSISTANT ATTORNEY PRO TEM |
| 03/17/11 | Order<br>ORDER TO PAY INVESTIGATOR |
| 03/17/11 | Motion<br>MOTION TO PAY INVESTIGATOR |
| 03/14/11 | Letter<br>JURY LETTER/NOTE |
| 03/14/11 | Charge On Punishment<br>CHARGE ON PUNISHMENT |
| 03/14/11 | Motion<br>MOTION TO PRECLUDE THE DEATH PENALTY AS A SENTENCING OPTION |
| 03/14/11 | Order<br>ORDER TO PAY EXPERT FEES |
| 03/14/11 | Motion<br>MOTION TO PAY EXPERT'S FEES |

# cord Of Criminal Actic
71st Judicial District

Case No. 09-0411X
Harrison County

April 14th, 2011
8:18am

| Date | | Volume | Page |
|------|--|--------|------|

### Events & Orders of the Court (cont.)

| Date | Event |
|------|-------|
| 03/14/11 | $disp |
| | Automatic Disposition Date Event |
| 03/14/11 | Hearing |
| 03/11/11 | Jury Trial |
| 03/10/11 | Jury Trial |
| 03/09/11 | Jury Trial |
| 03/08/11 | Sealed Document |
| | SEALED DOCUMENT |
| 03/08/11 | Jury Trial |
| 03/07/11 | Letter |
| | JURY LETTER/NOTE |
| 03/07/11 | Order |
| | ORDER |
| 03/07/11 | Motion |
| | MOTION TO PAY APPOINTED ATTORNEY |
| 03/07/11 | Order |
| | ORDER TO APY INVSTIGATOR |
| 03/07/11 | Motion |
| | MOTION TO PAY INVESTIGATOR |
| 03/07/11 | Order |
| | ORDER TO PAY ATTORNEY PRO TEM |
| 03/07/11 | Motion |
| | MOTION TO PAY APPOINTED ATTORNEY |
| 03/07/11 | Sealed Document |
| 03/07/11 | Jury Trial |
| 03/04/11 | Letter |
| | JURY LETTER/NOTE |
| 03/04/11 | Jury Trial |
| 03/03/11 | Bench Warrant Issued |
| | BENCH WARRANT TAKE TO JAIL TO BE SERVED |
| 03/03/11 | Subpoena Returned Served |
| | SERVED ON MICHAEL MITCHELL-FEB. 16, 2011 |
| 03/03/11 | Jury Trial |
| 03/01/11 | Charge Of The Court |
| | CHARGE OF THE COURT |
| 03/01/11 | Letter |
| | JURY LETTER/NOTE |
| 03/01/11 | Subpoena Returned Served |
| | SERVED TO CURLA HOLMES, ALTON FUGLER, TRISHA KACER |
| 03/01/11 | Jury Trial |
| 02/28/11 | Letter |
| | JURY LETTER/NOTES |
| 02/28/11 | Bench Warrant Issued |
| | BENCH WARRANT TAKEN TO JAIL TO BE SERVED |
| 02/28/11 | Order |

## Record Of Criminal Action

71st Judicial District

**Case No. 09-0411X**
Harrison County

April 14th, 2011
8:18am

| Date | | Volume | Page |
|------|---|--------|------|

### Events & Orders of the Court (cont.)

| | |
|------|---|
| | ORDER ON STATES REQUEST FOR BENCH WARRANT |
| 02/28/11 | Request |
| | REQUEST FOR BENCH WARRANT |
| 02/28/11 | Sealed Document |
| 02/28/11 | Order |
| | ORDER TO PAY ATTORNEY PR TEMS MOTION |
| 02/28/11 | Order |
| | ORDER TO PAY INVESTIGATOR |
| 02/28/11 | Jury Trial |
| 02/25/11 | Subpoena Returned Served |
| | SERVED TO CUSTODIAN OF RECORDS AT&T |
| 02/25/11 | Application For Subpoena |
| | SUBPOENA ISSUED TO CORETTA ROBINSON |
| 02/25/11 | Application For Subpoena |
| | SUBPOENA ISSUED TO CUSTODIAN OF RECORDS AT & T |
| 02/25/11 | Subpoena Returned Served |
| | SERVED TO JUSTIN DAVIS, DONATTA GRAY, BRODY WEST AND JOEY BAILEY |
| 02/23/11 | Other |
| | ADMONITORY JURY INSTRUCTIONS |
| 02/23/11 | Other |
| | GENERAL INSTRUCTIONS |
| 02/23/11 | Motion |
| | MOTION TO PAY COURT REPORT'S FEES |
| 02/23/11 | Motion |
| | MOTION TO PAY INVESTIGATOR |
| 02/23/11 | Sealed Document |
| 02/23/11 | Subpoena Returned Served |
| | SERVED ON CASSANDRA WOODKINS |
| 02/23/11 | Subpoena Returned Served |
| | SERVED ON JAMES KEITH SLAYTON, TRISHA KACER, SHERRY DAVIS, AND RODERICK GRAY |
| 02/23/11 | Other |
| | ADMONITORY JURY INSTRUCTIONS |
| 02/23/11 | Other |
| | GENERAL INSTRUCTIONS |
| 02/23/11 | Subpoena Returned Served |
| | SUBPOENA RETURNED SERVED ON MATT DYKE-FEB. 23, 2011 |
| 02/23/11 | Hearing |
| | Motions |
| 02/22/11 | Subpoena Issued |
| | SUBPOENA ISSUED TO CASSANDRA WOODKINS |
| 02/22/11 | Subpoena Returned Served |
| | SUBPOENA RETURNED SERVED TO MOSES ROBINSONN AND STEVE OLIVER |
| 02/22/11 | Application For Subpoena |

## cord Of Criminal Actic
### 71st Judicial District

**Case No. 09-0411X**
Harrison County

April 14th, 2011
8:18am

| Date | | Volume | Page |
|------|---|--------|------|

### Events & Orders of the Court (cont.)

|  |  |
|------|-----------|
| | SUBPOENAS ISSUED TO TRISHA KACER, MATT DYKE AND JAMES SLAYTON |
| 02/22/11 | Subpoena Returned Served |
| | SUBPOENAS RETURNED SERVED ON 15 PEOPLE |
| 02/22/11 | State's Motion Designating Experts |
| | STATES MOTION DESIGNATING EXPERTS |
| 02/18/11 | State's Witness List |
| | STATES POTENTIAL WITNESS LIST |
| 02/18/11 | Subpoena Returned Served |
| | RETURNED SERVED TO CEASAR ZAMBRANO, RYAN WEBB, JOHN WITKOWSKI |
| 02/18/11 | Application For Subpoena |
| | SUBPOENA ISSUED TO BRODY WEST, JOEY BAILEY, ERNEST WHITE, SHERRY DAVIS, JAMES MOYE, DONETTA GRAY, REID MCCAIN, ALTON FUGLER, JUSTIN DAVIS, SHERYL MILLER, STEVE OLIVER, CURLA HOLMES, MIKE GRIFFIS, JEANINE GALUSHA |
| 02/17/11 | Subpoena Returned Served |
| | SERVED ON MEAGAN LEA HYDRICK-FEB. 17, 2011 |
| 02/17/11 | Application For Subpoena |
| | SUBPOENAS ISSUED TO RYAN WEBB, CESAR ZAMBRANO, JOHN WITKOWSKI |
| 02/17/11 | State's Motion Designating Experts |
| | STATES MOTION DESIGNATING EXPERTS |
| 02/15/11 | Application For Subpoena |
| | SUBPOENAS ISSUED TO MOSES ROBINSON, RODERICK GRAY AND MEAGAN HYDRICK |
| 02/14/11 | Order |
| | ORDER TO PAY ATTORNEY PRO TEM |
| 02/14/11 | Motion |
| | MOTION TO PAY APPOINTED ATTORNEY |
| 02/14/11 | Order |
| | ORDER TO PAY ATTORNEY PRO TEM |
| 02/14/11 | Motion |
| | MOTION TO PAY APPOINTED ATTORNEY |
| 02/10/11 | State's Motion In Limine |
| | STATES MOTION IN LIMINE NUMBER ONE |
| 02/07/11 | Notice |
| | NOTICE OF INTENT TO USE BUSINESS RECORDS BY AFFIDAVIT; ACTUAL RECORDS NOT SCANNED, PLACED IN EXHIBIT ROOM IN BOX |
| 02/03/11 | Sealed Document |
| 02/02/11 | Order |
| | ORDER TO PAY ATTORNEY PRO TEM |
| 02/02/11 | Motion |
| | MOTION TO PAY APPOINTED ATTORNEY |
| 02/02/11 | Order |
| | ORDER TO PAY ATTORNEY PRO TEM |
| 02/02/11 | Motion |
| | MOTION TO PAY APPOINTED ATTORNEY |

## cord Of Criminal Actic
### 71st Judicial District

**Case No. 09-0411X**
Harrison County

April 14th, 2011
8:18am

| Date | | Volume | Page |
|------|---|--------|------|

### Events & Orders of the Court (cont.)

| Date | Event |
|------|-------|
| 01/31/11 | Application For Subpoena |
| | SUBPOENAS ISSUED FOR LARRY FITZGERALD, MICHAEL C. GOTTLIEB, DAVID SELF |
| 01/25/11 | Sealed Document |
| 01/21/11 | Sealed Document |
| 01/20/11 | Other |
| | FAX TO JUDGE CLAYTON AND JUDGE HUGHEY |
| 01/20/11 | Sealed Document |
| 01/19/11 | Other |
| | NOTE FROM JUDGE CLAYTON |
| 01/19/11 | Sealed Document |
| | SEALED DOCUMENTS PLACED IN SEALED BOX |
| 01/19/11 | Order |
| | ORDER TO PAY INVESTIGATOR |
| 01/19/11 | Motion |
| | MOTION TO PAY INVESTIGATOR |
| 01/19/11 | Order |
| | ORDER TO PAY APPOINTED ATTORNEY RICK HAGAN |
| 01/19/11 | Motion |
| | MOTION TO PAY APPOINTED ATTORNEY |
| 01/19/11 | Order |
| | ORDER TO PAY APPOINTED ATTORNEY JOE BLACK |
| 01/19/11 | Motion |
| | MOTION TO PAY APPOINTED ATTORNEY |
| 01/18/11 | Sealed Document |
| | SEALED DOCUMENT PLACED IN SEALED FILE |
| 01/18/11 | Jury Selection |
| 01/13/11 | Sealed Document |
| | PLACED IN SEALED BOX |
| 01/06/11 | Order |
| | ORDER TO PAY DR. THOMAS ALLEN |
| 01/06/11 | Motion |
| | MOTION TO PAY EXPERT'S FEES |
| 01/06/11 | Comments |
| | SUPPRESSION HEARING EXHIBITS IN SEALED BOX PER JUDGE JOE CLAYTON |
| 01/06/11 | Order |
| | ORDER TO PAY INTERIM FEES TO COURT APPOINTED ATTORNEY |
| 01/06/11 | Motion |
| | MOTION TO PAY APPOINTED ATTORNEY |
| 01/06/11 | Suppression |
| 01/04/11 | Notice |
| | SUPPLEMENTAL NOTICE OF INETNT TO INTRODUCE EVIDENCE OF OTHER CRIMES, WRONGS OR ACTS |
| 01/04/11 | Order |

# :cord Of Criminal Actic

### 71st Judicial District

| Case No. 09-0411X | April 14th, 2011 |
|---|---|
| Harrison County | 8:18am |

| Date | | Volume | Page |
|---|---|---|---|

### Events & Orders of the Court (cont.)

| Date | | |
|---|---|---|
| | ORDER ON MOTION ON APPOINTMENT OF AN INVESTIGATOR | |
| 01/04/11 | Motion | |
| | MOTION FOR THE APPOINTMENT OF AN INVESTIGATOR | |
| 01/04/11 | Other | |
| | STATEMENT OF APPOINTED OFFICER | |
| 01/04/11 | Order | |
| | ORDER APPOINTING ASSISTANT ATTORNEY PRO TEM FOR THE STATE | |
| 01/04/11 | Motion | |
| | MOTION FOR THE APPOINTMENT OF AN ASSISTANT ATTORNEY PRO TEM | |
| 01/04/11 | Other | |
| | STATEMENT OF APPOINTED OFFICER | |
| 01/04/11 | Order | |
| | ORDER GRANTING MOTION TO RECUSE AND APPOINTING ATTORNEY PRO TEM FOR THE STATE | |
| 01/04/11 | Motion | |
| | MOTION TO RECUSE | |
| 12/30/10 | Subpoena Returned Served | |
| | JIM ARNOLD | |
| 12/20/10 | Sealed Document | |
| | SEALED DOCUMENT PLACED IN SEALED BOX | |
| 12/20/10 | Motion In Limine | |
| | MOTION IN LIMINE FOR EXTRANEOUS OFFENSES IN THE STTES CASE IN CHIEF AND IN A PUNISHMENT PHASE | |
| 12/20/10 | Motion To Suppress | |
| | MOTION TO SUPPRESS EVIDENCE AND STATEMENTS OF DEFENDANT AND EVIDENCE FROM EXTRANEOUS OFFENSES | |
| 12/20/10 | Subpoena Returned Served | |
| | RETURN SERVED ON DARREAS TURNER | |
| 12/17/10 | Subpoena Returned Served | |
| | SUBPOENA RETURNED SERVED TO DR. TOM ALLEN | |
| 12/17/10 | Application For Subpoena | |
| | SUBPOENA ISSUED TO JIM ARNOLD | |
| 12/17/10 | Subpoena Returned Served | |
| | SUBPOENA RETURNED SERVED TO NANCY GEORGE | |
| 12/16/10 | Application For Subpoena | |
| | SUBPOENA ISSUED TO DR. TOM ALLEN | |
| 12/15/10 | Subpoena Returned Served | |
| | RETURN SERVED ON: SAM LAVENDER, BRADNEY SMITH, JOHN HAIN, DAVID BOUNDS | |
| 12/15/10 | Subpoena Returned Served | |
| | SUBPOENA'S RETURNED SERVED TO KYLE READY, SARA LIVINGSTON, JAMES KULER, SONYA JOHNSON, BILLY HART, CLINT GUTTIRREZ, DAVID REAVES, KENNY PHILLIPS, GEORGE GILL, C.J. BOYD, COURTNEY WELLS, JEREMY HAWKINS, JOE CHASTAIN, DAVID LEWIS, WILLIAM HUFFMAN, SCOTT BECK, LEN AMES, LARRY SMITH, PATRICK CLAYTON, JOHN BEST, | |

# cord Of Criminal Actic

71st Judicial District

## Case No. 09-0411X
Harrison County

April 14th, 2011
8:18am

| Date | | Volume | Page |
|------|--|--------|------|

### Events & Orders of the Court (cont.)

| | |
|--|--|
| | GLEN STONE, RANDY PRITCHARD, SAM MANNING, KEITH JONES, JASON MOBLEY, DARRYL GRIFFIN, JOHN JOHNSON |
| 12/15/10 | Other |
| | DESIGNATION OF POTENTIAL EXPERT WITNESSESS |
| 12/15/10 | State's Motion Designating Experts |
| 12/15/10 | Subpoena Returned Served |
| | RETURN SERVED ON: GORDON ALCOX, JOHN BEANE, REGGIE COOPER, JOHN PURIFOY, DR ROBERT PALMER, NANETTE PARRAS, JENNIFER HOWARD, BRYAN STRONG, LORNA BEASLEY, KIMBERLEE MACK, UYEN HENSON, ED JONES, AT&T CUSTODIAN OF RECORDS, A.P. MERILLAT, TONY THOMAS, WESTY MEISENHEIMER, HUGH TAYLOR, HALL REAVIS |
| 12/15/10 | Application For Subpoena |
| | SUBPOENA ISSUED FOR AT&T |
| 12/15/10 | Application For Subpoena |
| | SUBPOENAS ISSUED FOR 61 |
| 12/14/10 | Application For Subpoena |
| | SUBPOENAS ISSUED FOR 61 PEOPLE |
| 12/14/10 | Application For Subpoena |
| | SUBPOENAS ISSUED FOR JENNIFER HOWARD |
| 12/08/10 | Notice |
| | NOTICE OF INTENT TO INTRODUCE EVIDENCE OF OTHER CRIMES, WRONGS, OR ACTS |
| 11/23/10 | Motion |
| | STATES MOTION FOR PSYCHOLOGICAL EVALUATION OF DEFENDANT |
| 11/16/10 | Order |
| | CORRECTED ORDER APPOINTING SPECIAL PROSECUTOR; LETTER ATTACHED |
| 11/10/10 | Other |
| | STATEMENT OF APPOINTED OFFICER |
| 11/10/10 | Other |
| | OATH OF OFFICE |
| 11/10/10 | Other |
| | STATEMENT OF APPOINTED OFFICER |
| 11/10/10 | Order |
| | ORDER GRANTING MOTION TO APPOINT SPECIAL PROSECUTOR |
| 11/10/10 | Motion |
| | MOTION FOR APPOINTMENT OF SPECIAL PROSECUTOR |
| 10/26/10 | Orders On Pretrial Motions |
| | ORDER ON PRETRIAL MOTIONS FROM HEARING ON 10/26/10   (FILED IN FOLDER #2) |
| 10/26/10 | Pre-Trial |
| 08/06/10 | Comments |
| | EVERYTHING FROM 8/1/10 IS FILED IN FOLDER #2 OF DEFENDANT |
| 08/06/10 | Confirmation Of Setting |
| | FILED IN FOLDER #2 (CONFIRMATION OF SETTING) _ |
| 08/06/10 | Comments |

## cord Of Criminal Actio

71st Judicial District

**Case No. 09-0411X**
Harrison County

April 14th, 2011
8:18am

| Date | | Volume | Page |
|------|---|--------|------|

### Events & Orders of the Court (cont.)

| | |
|------|------|
| | JUDGE CLAYTON ASSIGNED JUDGE |
| 08/06/10 | Comments |
| | SEALED ITEM PLACED IN SEALED BOX IN BROWN ENVELOPE |
| 08/06/10 | Scheduling Conf. Docket |
| 07/12/10 | Order |
| | SEALED ORDER IN BROWN ENVELOPE IN SEALED BOX |
| 05/07/10 | Order |
| | ORDER APPOINTING COUNSEL; SECOND CHAIR LANCE R. LARISON |
| 04/30/10 | Order |
| | FIRST ADMINISTRATIVE JUDICIAL REGION ORDER OF ASSIGNMENT BY THE PRESIDING JUDGE; ASSIGNMENT HONORABLE JOE CLAYTON |
| 04/09/10 | Order |
| | ORDER GRANTING MOTION TO RECUSE |
| 04/09/10 | Order Of Withdrawl |
| | ORDER ALLOWING WITHDRAWAL AS ATTORNEY OF RECORD - RICK HURLBURT |
| 04/09/10 | Motion To Withdrawl As Counsel |
| | MOTION TO WITHDRAW AS COUNSEL - RICK HURLBURT |
| 04/09/10 | M/Recuse |
| 03/01/10 | Order |
| | ORDER OF ASSIGNMENT BY THE PRESIDING JUDGE; JOHN OVARD |
| 03/01/10 | Confirmation Of Setting |
| 02/10/10 | Order |
| | ORDER OF REFERRAL ON MOTION TO RECUSE |
| 02/09/10 | Motion |
| | STATES MOTION FOR RECUSAL OF THE DISTRICT JUDGE |
| 01/28/10 | Motion List Expert Witnesses |
| 01/28/10 | Request |
| | REQUEST FOR WRITTEN NOTICE FROM THE STATE OF INTENT TO INTRODUCE EXTRANEOUS OFFENSES, BAD ACTS OR CONVITIONS IN PENALTY PHASE PURSUANT TO ARTICLE 37.07 SEC 3G |
| 01/12/10 | Motion |
| | MOTIN FOR LEAVE TO FILE ADDITIONAL PRETRIAL MOTIONS |
| 01/12/10 | Motion To Dismiss |
| | MOTION TO DISMISS THE DEATH PENALTY IN THE STATE OF TEXAS ON THE GROUND THAT ITS CAPITAL SENTENCING PROCEDURE IS UNCONSTITUTIONAL DUE TO ITS FAILURE TO MEET MINIMUM REQUIREMENTS SET FORTH IN FURMAN V. GEORGIA AND ITS PROGENY AS EVINCED BY THE FINDINGS OF THE CAPITAL JURY PROJECT AND OTHER RESEARCH |
| 01/12/10 | Motion |
| | MOTION FOR COURT TO DECLARE CODE OF CRIMINAL PROCEDURE ARTICLE 37.071 SECTION 2 A UNCONSTITUTIONAL |
| 01/12/10 | Motion |
| | MOTION TO PRECLUDE THE DEATH PENALTY-CAPITAL SENTENCING STATUTE UNCONSTITUTIONAL BECAUSE IT ALLOWS JURIES TO DECIDE FUTURE |

## cord Of Criminal Actic

### 71st Judicial District

**Case No. 09-0411X**                                           April 14th, 2011
Harrison County                                                      8:18am

| Date | | Volume | Page |
|---|---|---|---|

### Events & Orders of the Court (cont.)

|  |  |
|---|---|
| | DANGEROUSNESS BASED SOLELY ON THE FACTS OF THE CASE |
| 01/12/10 | Motion To Quash |
| | MOTION TO QUASH INDICTMENT ON BASIS OF THE UNCONSTITUTIONALITY |
| | OF ARTICLE 37.071 OF THE TEXAS CODE OF CRIMINAL PROCEDURE |
| 01/12/10 | Motion |
| | MOTION FOR ORDER STATING PERMISSIBILITY FOR PROSECUTION |
| | WITNESSES TO DISCUSS CARE |
| 01/12/10 | Motion |
| | MOTION TO DIRECT SHERIFF'S OFFICE TO ALLOW CONTACT BETWEEN |
| | DEFENSE EXPERTS AND DEFENDANT AND ALLOWANCE FOR REASONABLE |
| | EXPERT EXPENSES |
| 01/12/10 | Motion |
| | DEFENDANTS MOTION FOR EXPERT ASSISTANCE |
| 01/12/10 | Motion |
| | MOTION FOR DAUBERT HEARING ADDRESSING ADMISSIBILITY OF EXPERT |
| | TESTIMONY ON FUTURE DANGEROUSNESS |
| 01/12/10 | Motion |
| | MOTION TO PROHIBIT COMMENT ON THE WEIGHT TO BE GIVEN OR |
| | CREDIBILITY OF TESTIMONY DURING TRIAL |
| 01/12/10 | Motion |
| | MOTION TO INTRODUCE THE TESTIMONY OF DEFENDANTS FAMILY AND |
| | FRIENDS REGARDING THEIR FEELINGS ON THE PROSECT OF A DEATH |
| | SENTENCE AND THE IMPACT AN EXECUTION WOULD HAVE ON THEM |
| 01/12/10 | Motion |
| | MOTION TO PROHIBIT JURY DISPERSAL AND TO PROHIBIT JURY'S |
| | EXPOSURE TO VICTIMS FAMILY OR FRIENDS |
| 01/12/10 | Motion |
| | MOTION TO RESTRICT PRESS FILMING OF THE JURY AND FOR OTHER |
| | RELIEF |
| 01/12/10 | Motion |
| | MOTION FOR AN ORDER REQUIRING THAT JUROR QUESTIONNAIRES BE SENT |
| | WITH THE JUROR SUMMONS TO EACH VENIREPERSON |
| 01/12/10 | Motion |
| | MOTION FOR AN ORDER DIRECTING THT ALTERNATE JURORS NOT BE |
| | PUBLICLY IDENTIFIED UNTIL THE DELIBERATION PROCESS BEGINS |
| 01/12/10 | Motion |
| | MOTION FOR ADDITIONAL PEREMPTORY CHALLENGES |
| 01/12/10 | Request |
| | DEFENDANTS REQUEST TO ITULIZE PEREMPTORY CHALLENGES FOLLOWING |
| | EXAMINATION OF THE ENTIRE VENIRE |
| 01/12/10 | Motion |
| | DEFENDANTS MOTION TO SEQUESTER JURY |
| 01/12/10 | Motion |
| | MOTION FOR OPPORTUNITY TO REHABILITATE ANY PROSPECTIVE JUROR |
| | WHO EXPRESSES RETICENCE WHEN ASKED TO KILL A FELLOW HUMAN BEING |

## cord Of Criminal Actic

71st Judicial District

Case No. 09-0411X
Harrison County

April 14th, 2011
8:18am

| Date | | Volume | Page |
|---|---|---|---|

### Events & Orders of the Court (cont.)

AND TO ALLOW THE DEFENSE TO QUESTION THE JURORS FIRST ON THE ISSUE

01/12/10 Motion
DEFENDANTS MOTION TO EXCUSE FOR CAUSE ALL PROSPECTIVE JURORS WHO HAVE HEARD OR READ ABOUT THIS CASE

01/12/10 Motion
MOTION TO BAR THE STATE FROM USING PEREMPTORY CHALLENGES TO EXCLUDE PROSPECTIVE JORORS WHO EXPRESS RELIGIOUS OR EQUIVALENT RESERVATION ABOUT THE DEATH PENALTY BUT WHO CNNOT BE EXCUSED THE CAUSE

01/12/10 Motion
MOTION TO INDIVIDUALLY INTERROGATE JURORS

01/12/10 Motion
MOTION TO DISCLOSE THE PAST AND PRESENT RELATIONSHIPS, ASSOCIATIONS AND TIES BETWEEN THE PROSECUTING ATTORNEY AND PROSEPECTIVE JURORS

01/12/10 Motion
MOTION FOR EQUAL ACCESS TO BACKGROUND INFORMATION ON PROSPECTIVE JURORS

01/12/10 Motion
DEFENDANTS MOTION FOR A LIST OF VENIREPERSONS SUMMONED FOR THE WEEK

01/12/10 Motion
MOTION FOR SPECIAL VENIRE

01/12/10 Motion
MOTION FOR IDENTIFICATION HEARING OUTSIDE PRESENCE OF JURY

01/12/10 Motion To Suppress
DEFENDANTS MOTION TO SUPPRESS INFLAMMATORY PHOTOGRAPHS

01/12/10 Motion To Suppress
MOTION TO SUPPRESS ARREST AND SEARCH

01/12/10 Motion In Limine
MOTION IN LIMINE NUMBER 6; NO OUTSIDE MATERIAL FOR JURY

01/12/10 Motion In Limine
MOTION IN LIMINE NUMBER 4; DEFENDANTS RIGHT TO APPEAL; HEARINGS OUTSIDE PRESENCE OF JURY; DEFENDANTS RIGHT TO REMAIN SILENT

01/12/10 Motion In Limine
MOTION IN LIMINE NUMBER 5; NAME CALLING

01/12/10 Motion
MOTION IN LIMINE NUMBER 3; FULL OPENING STATEMENT BY STATE

01/12/10 Motion In Limine
MOTION IN LIMINE NUMBER 2; REGARDING STATEMENTS OF DEFENDANT TO HEALTH CARE PROVIDERS

01/12/10 Motion In Limine
MOTION IN LIMINE NUMBER 1; PHYSICAL EVIDENCE

01/12/10 Motion

**:cord Of Criminal Actic**

71st Judicial District

Case No. 09-0411X

Harrison County

April 14th, 2011
8:18am

| Date | | Volume | Page |
|---|---|---|---|

**Events & Orders of the Court (cont.)**

MOTION FOR DEFENDANT TO BE TRIED IN CIVILIAN CLOTHES

01/12/10  Motion
DEFENDANTS MOTION REQUESTING THE COURT TO MAKE CONCRETE RULINGS
ON OBJECTIONS MADE TO THE PROSECUTIONS FINAL ARGUMENT

01/12/10  Motion
MOTION TO ADJOURN AT A REASONABLE TIME

01/12/10  Motion
DEFENDANTS MOTION FOR LIMITING INSTRUCTIONS DURING COURSE OF
TRIAL

01/12/10  Motion
DEFENDANTS MOTION THAT BENCH CONFERENCES BE CONDUCTED IN THE
JURYS ABSENCE

01/12/10  Motion To Invoke The Rule
DEFENDANTS MOTION TO INVOKE THE RULE

01/12/10  Motion
MOTION FOR IN CAMERA INSPECTION

01/12/10  Motion To Produce
MOTION TO PRODUCE VICTIMS MEDICAL RECORDS

01/12/10  Motion For Discovery
MOTION FOR DISCOVER OF VICTIM IMPACT TESTIMONY

01/12/10  Motion
MOTION TO REQUIRE THE STATE TO REVEAL ANY AGREEMENT ENTERED
INTO BETWEEN THE STATE AND ANY PROSECUTION WITNESS THAT COULD
CONCEIVABLY INFLUENCE THEIR TESTIMONEY

01/12/10  Motion
MOTION FOR TIMELY BRADY MATERIAL

01/12/10  Motion
MOTION FOR DISCLOSURE OF IMPEACHING INFORMATION

01/12/10  Motion
MOTION TO DISCOVER CRIMINAL RECORDS OF WITNESSES

01/12/10  Motion To List Witnesses
DEFENDANATS MOTION TO LIST STATES WITNESSES (TRIAL WITNESSES)

01/12/10  Motion
MOTION TO INSPECT, EXAMINE AND TEST PHYSICAL EVIDENCE

01/12/10  Motion
DEFENDANTS MOTION TO DESIGNATE LOCATION OF PHYSICAL EVIDENCE

01/12/10  Objections
DEFENDANTS WRITTEN OBJECTIONS TO ADMISSIBILITY OF EXTRANEOUS
OFFENSES, REQUEST FOR PROCEDURAL DETERMINATION BY TRIAL COURT
WITH FINDING OF FACT AND CONCLUSIONS OF LAW, AND FOR LIMITING
INSTRUCTIONS

01/12/10  Motion
DEFENDANTS MOTION REQUESTING NOTICE OF INTENT TO USE CERTIFIED
COPIES

01/12/10  Motion

## cord Of Criminal Actio

71st Judicial District

Case No. 09-0411X
Harrison County

April 14th, 2011
8:18am

| Date | | Volume | Page |
|---|---|---|---|

Events & Orders of the Court (cont.)

|  | DEFENDANTS MOTION TO COMPEL ENDORSEMENT OF THE NAMES OF THE GRAND JURY WITNESSES UPON THE INDICTMENT |
|---|---|
| 01/12/10 | Motion |
|  | DEFENDANTS MOTION TO REQUIRE THE STATE TO ANSWER ALL PRE-TRIAL MOTIONS IN WRITING |
| 01/08/10 | Docket Call |
| 12/30/09 | State'S Notice |
|  | STATES NOTICE OF INTENT TO SEEK THE DEATH PENALTY |
| 12/29/09 | Comments |
|  | SEALED MOTIONS AND ORDERS IN SEALED BOX |
| 12/09/09 | Letter |
|  | SCHEDULING PROPOSAL FROM RICK HURLBURT AND KEVIN SETTLE TO JUDGE |
| 11/19/09 | Order |
|  | ORDER SETTING BOND |
| 11/19/09 | Arraignment |
| 11/17/09 | Precept/Capias Returned |
|  | PRECEPT RETURN SERVED |
| 11/13/09 | Letter |
|  | LETTER FROM ATTORNEY REGARDING MOTIONS TO BE FILED |
| 11/13/09 | Motion |
|  | MOTION FOR HEARING ON VOLUNTARINESS OF ANY ADMISSION OR CONFESSION WHETHER WRITTEN OR ORAL |
| 11/13/09 | Request For Notice |
|  | REQUEST FOR NOTICE OF INTENT TO OFFER EXTRANEOUS CONDUCT UNDER RULE 404(B) AND EVIDENCE OF CONVICTION UNDER RULE 609(F) |
| 11/13/09 | Motion For Discovery |
|  | MOTION FOR DISCOVERY AND INSPECTION OF EVIDENCE |
| 11/13/09 | Election For Jury To Set Punishment |
|  | MOTION ELECTING TO HAVE JURY TO ASSESS PUNISHMENT |
| 10/29/09 | Precept/Capias Issued |
|  | TAKEN TO PEGGY |
| 10/28/09 | Order |
|  | ORDER APPOINTING COUNSEL |
| 10/28/09 | Request |
|  | REQUEST FOR COURT APPOINTED COUNSEL |
| 10/27/09 | Indictment |
| 10/27/09 | $file |

**CLERK'S CERTIFICATE**

THE STATE OF TEXAS

COUNTY OF HARRISON

     I, MELLINDA CRAIG, Clerk of the 71st District Court of Harrison County, Texas do hereby
Certify that the above foregoing constitutes true and correct copy of the CLERK'S RECORD of the 71st
District Court in 09-0411X styled: 09-0411X Cortne Mareese Robinson as the same appears of record
and on file in the Office of the Clerk in Vol.   , Page   , Minutes or Image #   of the 71st District Court
of Harrison County, Texas.

     WITNESS MY HAND AND THE OFFICIAL SEAL OF SAID COURT, as office in the city of
Marshall, Texas, on this the 04/14/11.

MELLINDA CRAIG
District Clerk
Harrison County, Texas

(Seal)

By: _____

## TRANSCRIPT COVER
### 1 of 3

# IN THE TEXAS COURT OF CRIMINAL APPEALS

## NO. AP-76,535

### TRIAL COURT CAUSE NO. 09-0411X

*RECEIVED IN*
*COURT OF CRIMINAL APPEALS*

*MAY 06 2011*

## CORTNEE MAREESE ROBINSON, APPELLANT

*Louise Pearson, Clerk*

## VS.

## THE STATE OF TEXAS, APPELLEE

.................................................................

### APPEALED FROM THE 71ST DISTRICT COURT OF HARRISON COUNTY, TEXAS

*FILED IN*
*COURT OF CRIMINAL APPEALS*

*MAY 06 2011*

### Honorable JOE D. CLAYTON Judge Presiding

*Louise Pearson, Clerk*

.................................................................

### Appellant's Attorney on Appeal: JEFF HAAS

### State's Attorney: RICK HAGAN / LEW DUNN

.................................................................

MELLINDA CRAIG District Clerk
Address: 200 WEST HOUSTON   STE 234
MARSHALL, Texas  75670
Phone: 903-935-8409

By _____*Cindy Holmes*_____ Deputy

INDEX
09-0411X

CORTNE MAREESE ROBINSON

VS

THE STATE OF TEXAS

IN THE DISTRICT COURT

71ST JUDICIAL DISTRICT

HARRISON COUNTY, TX

1. Caption ................................................................ 1

2. Indictment .......................................................... 2

3. Request for Court Appointed Counsel ........................ 3

4. Order Appointing Counsel ...................................... 8

5. Precept ............................................................... 9

6. Motion Electing to Have Jury Assess Punishment ......... 10

7. Motion for Discovery and Inspection of Evidence .......... 12

8. Request for Notice of Intent to Offer Extraneous Conduct ... 17

9. Motion for Hearing on Voluntariness ......................... 19

10. Precept Returned Served ....................................... 22

11. Order Setting Bond .............................................. 23

12. Letter to Judge from Kevin Settle (scheduling proposal) ... 24

13. State's Notice of Intent to Seek the Death Penalty ......... 25

14. Defendant's Motion to Require the State to Answer all Pre Trial Motions ... 26

15. Defendant's Motion to Compel Endorsement of the Names of The Grand Grand Jury Witnesses upon the Indictment ... 28

16. Defendant's Motion Requesting Notice of Intent to use Certified Copies ... 30

17. Defendant's Written Objection to Admissibility of Extraneous Offenses ... 32

18. Defendant's Motion to Designate Location of Physical Evidence ... 35

19. Motion to Inspect, Examine and Test Physical Evidence ... 37

20. Defendant's Motion to List State's Witnesses                                          39

21. Motion to Discover Criminal Records of Witnesses                                      41

22. Motion for Disclosure of Impeaching Information                                       43

23. Motion for Timely "Brady" Material                                                    45

24. Motion to Require the State to Reveal any Agreement Entered into
    Between the State and any Prosecution Witness that Could Conceivable
    Influence their Testimony                                                             47

25. Motion for Discovery of Victim Impact Testimony                                       49

26. Motion to Produce Victim's Medical Records                                            51

27. Motion for In Camera Inspection                                                       53

28. Defendant's Motion to Invoke the Rule                                                 55

29. Defendant's Motion that Bench Conferences Be Conducted in The Jury's
    Absence                                                                               57

30. Defendant's Motion for Limiting Instructions during Course of Trial                   59

31. Motion to Adjourn at a Reasonable Time                                                60

32. Defendant's Motion Requesting the Court to Make Concrete Rulings
    On Objections made to the Prosecution's Final Argument                                62

33. Motion for Defendant to be tried in Civilian Clothes                                  64

34. Motion in Limine Number 1 (Physical Evidence)                                         66

35. Motion in Limine Number 2 Regarding Statements of Defendant to
    Health Care Providers                                                                 68

36. Motion in Limine Number 3 Full Opening Statement by State                            70

37. Motion in Limine Number 4 Defendant's right to Appeal: Hearings
    Outside Presence of Jury: Defendant's Right to Remain Silent                          72

38. Motion in Limine Number 6 (No Outside Material for Jury)                              74

39. Motion to Suppress Arrest and Search                                                  76

40. Defendant's Motion to Suppress Inflammatory Photographs                               79

41. Motion for Identification Hearing Outside Presence of Jury     81

41. Motion for Special Venire     83

42. Defendant's Motion for a List of Venire Persons Summoned for the Week     85

43. Motion for Equal Access to Background Information on Prospective Jurors     87

44. Motion to Disclose the Past and Present Relationships, Associations and
Ties between the Prosecuting Attorney and Prospective Jurors     89

45. Motion to Individually Interrogate Jurors     91

46. Motion to Bar the State from Using Peremptory Challenges to Exclude
Prospective Jurors who Express Religious or Equivalent Reservations
About the Death Penalty but who cannot be Excused for Cause     92

47. Defendant's Motion to Excuse for Cause all Prospective Jurors who
Have Heard or Read about This Case     97

48. Motion for Opportunity to Rehabilitate any Prospective Juror who
Expresses Reticence when Asked to Kill a Fellow Human Being and to
Allow the Defense to Question the Jurors First on the Issue     99

49. Defendant's Motion to Sequester Jury     103

50. Defendant's Request to Utilize Peremptory Challenges Following
Examination of the Entire Venire     105

51. Motion for Additional Peremptory Challenges     107

52. Motion for an Order Directing That Alternate Jurors Not be Publicly
Identified Until the Deliberation Process Begins     111

53. Motion For an Order Requiring That Juror Questionnaires be sent
With the Juror Summons to Each Venire Person     114

54. Motion to Restrict Press Filming of the Jury and for Other Relief     116

55. Motion to Prohibit Jury Dispersal and to Prohibit Jury's Exposure to
Victim's Family or Friends     118

56. Motion to Introduce the Testimony of Defendant's Family and Friends
Regarding Their Feelings on the Prospect of a Death Sentence and the
Impact an Execution Would Have on Them     120

57. Motion to Prohibit Comment on the Weight to be Given or Credibility
Of Testimony during Trial     131

58. Motion for Daubert Hearing Addressing Admissibility of Expert
    Testimony on Future Dangerousness                                   134

59. Defendant's Motion for Expert Assistance                           139

60. Motion to Direct Sheriff's Office to Allow Contact between Defense
    Expert(s) and Defendant and Allowance for Reasonable Expert Expenses  142

61. Motion for Order Stating Permissibility for Prosecution Witnesses to
    Discuss Case                                                        144

62. Motion to Quash Indictment on Bases of the Unconstitutionality of Article
    37.071 of the Texas Code of Criminal Procedure                      146

63. Motion to Preclude the Death Penalty                               150

64. Motion for Court to Declare Code of Criminal Procedure Article 37.071
    Section 2(a) Unconstitutional                                       155

65. Motion to Dismiss the Death Penalty in the State of Texas on the Ground
    That it's Capital Sentencing Procedure is Unconstitutional Due to its Failure
    to Meet Minimum Requirements Set Fourth in Furman V. Georgia and its
    Progeny, as Evinced by the Findings of the Capital Jury Project and Other
    Research                                                            158

66. Motion for Leave to File Additional Pre-Trial Motions              223

67. Request for Written Notice from the State of Intent to Introduce Extraneous
    Offenses, Bad Acts or Convictions in Penalty Phase Pursuant to Article
    37.07, Sec. 3(g)                                                    225

68. Motion to List Expert Witnesses                                    227

69. State's Motion for Recusal of the District Judge                   230

70. Order of Referral on Motion to Recuse                              233

71. Confirmation of Setting                                            234

71. Order of Assignment by the Presiding Judge                         235

72. Motion to Withdraw as Counsel                                      236

73. Order Allowing Withdrawal as Attorney of Record                    238

74. Order Granting Motion to Recuse                                    239

75. Order of Assignment by the Presiding Judge                         240

76. Order Appointing Counsel                                                                     241

77. Confirmation of Setting                                                                      242

78. List of Pre Trial Motions Filed by Defense                                                   243

79. Motion for Appointment of Special Prosecutor                                                 253

80. Order Granting Motion to Appoint Special Prosecutor                                          254

81. Statement of Appointed Officer                                                               255

82. Oath of Office                                                                               256

83. Designation of Potential Expert Witnesses                                                    257

84. Corrected Order Appointing Special Prosecutor                                                258

85. State's Motion for Psychological Evaluation of Defendant                                     260

86. Notice of Intent to Introduce Evidence of Other Crimes, Wrongs, or Acts                      263

87. Application for Subpoena's                                                                    303

88. Application for Subpoena's                                                                    305

89. Application for Subpoena's                                                                    307

90. Subpoena's Returned Served                                                                    308

91. State's Motion Designating Experts                                                            359

92. Designation of Potential Expert Witnesses                                                     361

93. Subpoena's Returned Served                                                                    362

94. Application for Subpoena's                                                                    423

95. Subpoena's Returned Served                                                                    424

96. Motion to Suppress Evidence and Statements of Defendant and Evidence
    From Extraneous Offenses                                                                      431

97. Motion in Limine for Extraneous Offenses in The State's Case in Chief
    And in a Punishment Phase                                                                     434

98. Subpoena's Returned Served                                                                    436

99. Motion to Recuse                                                                              439

100. Order Granting Motion to Recuse and Appointing Attorney Pro Tem
For The State                                                                441

101. Statement of Appointed Officer                                          442

102. Motion for the Appointment of an Assistant Attorney Pro Tem             443

103. Order Appointing Assistant Attorney Pro Tem for the State              446

104. Statement of Appointed Officer                                          447

105. Motion for the Appointment of an Investigator                          448

106. Order                                                                   451

107. Supplemental Notice of Intent to Introduce Evidence of Other Crimes     452

108. Order to pay Dr. Thomas Allen                                           454

109. Order to pay Attorney Pro Tem's Motion                                  455

110. Motion to Pay Expert's Fees                                             457

111. Order                                                                   459

112. Motion to Pay Appointed Attorney                                        460

113. Order                                                                   462

114. Motion to Pay Appointed Attorney                                        463

115. Order                                                                   466

116. Motion to Pay Investigator                                              467

117. Order                                                                   470

118. Subpoena Duces Tecum                                                    472

119. Letter to Judge Joe Clayton                                             477

120. Judge's Note                                                            480

121. Motion to Pay Appointed Attorney                                        481

122. Order                                                                   483

123. Motion to Pay Appointed Attorney                                        485

124.  Order                                                          487

125.  Notice of Intent to use Business Records by Affidavit          489

126.  State's Motion in Limine Number One                            490

127.  Motion to Pay Appointed Attorney                               494

128.  Order                                                          496

129.  Motion to Pay Appointed Attorney                               498

130.  Order                                                          500

131.  Application for Subpoena's                                     502

132.  Subpoena's Returned Served                                     507

133.  State's Motion Designating Experts                             509

134.  Application for Subpoena's                                     512

135.  Application for Subpoena's                                     518

136.  Subpoena's Returned Served                                     533

137.  State's Potential Witness List                                 539

138.  State's Motion Designating Experts                             542

139.  Subpoena's Returned Served                                     545

140.  Application for Subpoena's                                     569

141.  Subpoena's Returned Served                                     573

142.  General Instructions                                           579

143.  Admonitory Jury Instructions                                   581

144.  Subpoena's Returned Served                                     583

145.  Application for Subpoena's                                     593

146.  Application for Subpoena's                                     595

147.  Subpoena Returned Served                                       598

148. Motion to Pay Investigator                                      599

149. Motion to Pay Court Report's Fees                              602

150. Order                                                          605

151. Order                                                          606

152. Request for Bench Warrant for TDCJ Inmate                     607

153. Bench Warrant                                                  609

154. Subpoena's Returned Served                                     610

155. Bench Warrant                                                  616

156. Motion to Pay Appointed Attorney                              617

157. Order                                                          620

158. Motion to Pay Investigator                                    622

159. Order                                                          627

160. Motion to Pay Appointed Attorney                              628

161. Order                                                          630

162. Motion to Pay Expert's Fees                                   632

163. Order                                                          633

164. General Instructions                                          635

165. Admonitory Jury instructions                                  637

166. Jury Note                                                      639

167. Jury Note                                                      640

168. Jury Note                                                      641

169. Jury Note's                                                    642

170. Motion to Preclude the Death Penalty as a Sentencing Option   645

171. Court's Charge on Punishment                                  675

172. Jury Notes                                                     682

173. Charge on Punishment                                                    692

174. Motion to Pay Investigator                                              702

175. Order                                                                   704

176. Motion for the Appointment of an Assistant Attorney Pro Tem            705

177. Order Appointing Assistant Attorney Pro Tem for the State             708

178. Statement of Appointed Officer                                          709

179. Order Appointing counsel for Appeal                                    710

180. Order on Motion to Preclude the Death Penalty as a Sentencing Option  711

181. Order Appointing Counsel for Purpose of a Writ                        712

182. Subpoena's Returned Served                                             713

183. Judgment of Conviction by Jury                                         718

184. Bench Warrant                                                          722

185. Document Checklist                                                     723

186. Clerk's Certificate of Service                                        724

187. Motion to Pay Appointed Attorney                                      725

188. Order                                                                  727

189. Motion to Pay Appointed Attorney                                      728

190. Order                                                                  731

191. Letter from Court of Criminal Appeals                                 732

192. Summary Docket Sheet                                                   733

193. Clerk's Certificate                                                    747

**CAPTION**

THE STATE OF TEXAS

COUNTY OF HARRISON

AT A TERM OF THE 71ST JUDICIAL DISTRICT COURT, OF HARRISON COUNTY,

TEXAS, WHICH BEGAN IN SAID COUNTY ON THE 27th DAY OF October , 2009

THE HONORABLE WILLIAM T. HUGHEY SITTING AS JUDGE OF SAID COURT, THE

FOLLOWING PROCEEDINGS WERE HAD,

TO WIT:

| | | |
|---|---|---|
| THE STATE OF TEXAS | | IN THE DISTRICT COURT |
| VS. | NO. 09-0411X | OF |
| Robinson, Cortne Mareese | | HARRISON COUNTY, TX |

NO. **09-0411**

The State of Texas Vs. **Cortne Mareese Robinson**

Charge: **Capital Murder**

Penal Code Section: **19.03**

FILED FOR RECORD
HARRISON COUNTY, TEXAS
CLERK DISTRICT COURT
2009 OCT 27 PM 2: 54

SHERRY GRIFFIS

BY _____
DEPUTY

## IN THE NAME AND BY AUTHORITY OF THE STATE OF TEXAS:

The Grand Jury for the County of Harrison, State of Texas, duly selected, impaneled, sworn, charged and organized as

such at the **SEPTEMBER - OCTOBER** Term, A.D. 2009, of the 71st Judicial District Court of said County, upon their

oaths present in and to said Court, that **Cortne Mareese Robinson**, on or about the **20th** day of **September**, A.D. 2009,

and before the presentment of this indictment, in said County and State, did then and there

### PARAGRAPH A

Intentionally cause the death of an individual, namely, Frank Zabokrtsky, by shooting him with a firearm, and the defendant was then and there in the course of committing or attempting to commit the offense of burglary of a habitation of Frank Zabokrtsky, who was the owner of said habitation

### PARAGRAPH B

AND THE GRAND JURORS AFORESAID do further present that Cortne Mareese Robinson, on or about the 20th day of September, A.D. 2009, and before the presentment of this indictment, in said County and State, did then and there intentionally cause the death of an individual, namely, Frank Zabokrtsky, by shooting him with a firearm, and the defendant was then and there in the course of committing or attempting to commit the offense of robbery of Frank Zabokrtsky

AGAINST THE PEACE AND DIGNITY OF THE STATE.

Charles W. Dawson
**Foreman of the Grand Jury.**

C03002

CAUSE NO. _09-0411X_

**REQUEST FOR COURT APPOINTED COUNSEL**

FILED FOR RECORD
HARRISON COUNTY, TEXAS
CLERK DISTRICT COURT
2009 SEP 24 AM 11:46

Name _Robinson, Cortne_ Offense: _Agg Kidnapping_ Fel/St Jail or ROP/Misd
Circle All That Apply
_Agg Robbery, Agg Sexual Assault_

_210 Holland_        _TX-08192755_
ADDRESS _Marshall_   DL _12/15/1980_
_TX_ CITY _75670_    DOB _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_
STATE        ZIP      SSN
_(903)-407-2899_
TELEPHONE NUMBER

MY EMPLOYER ___                    MY SPOUSE'S EMPLOYER ___

MY TAKE HOME PAY $ ___ /week        SPOUSE'S TAKE HOME PAY $ ___

MONEY IN CHECKING $ ___             MONEY IN CHECKING   $ ___

MONEY IN SAVINGS   $ ___            MONEY IN SAVINGS   $ ___

ASSETS:

REAL ESTATE OWNED/RENTED: ___ Value (If Owned) $ ___ Mortgage/ Mo. $ ___ Rent/Mo.

WITH WHOM DO YOU RESIDE? ___

1.  Motor Vehicles ___                VALUE: $ ___
    Yr /Make & Model

2.  Other: ___

IF YOU **RECEIVE** ANY OF THE FOLLOWING, PLEASE LIST AMOUNTS:

CHILD SUPPORT $ ___     AFDC $ ___     FOOD STAMPS $ ___
SOCIAL SECURITY $ ___   SSI $ ___      DISABILITY $ ___
UNEMPLOYMENT COMPENSATION $ ___
OTHER INCOME : ___ (Including any other residents not your spouse)

MONTHLY EXPENSES:

CAR PAYMENT        $ ___        FUEL        $ ___

RENT/HOUSE PAYMENT $ ___        DAYCARE     $ ___

UTILITIES          $ ___        OTHER       $ ___

CHILD SUPPORT      $ ___

PAYMENTS TO BONDSMAN $ ___      BOND AMOUNT $ _2,000,000.00_

I am indigent and cannot employ a lawyer of my own choosing. I request that the Court appoint a lawyer to represent me.  I understand that by requesting counsel, I am agreeing that if I am released on bond or otherwise released from jail, I will report to the pre-trial office on or before the next working day and continue on attorney fee supervision for so long as I have court-appointed counsel.  I swear, under penalty of perjury, that the statements made by me in this Request for Court Appointed Counsel are true and correct.

_____
DEFENDANT

STAFF USE ONLY

Defendant Meets Eligibility Requirements: Yes ___  No ___  Undetermined ___

Special Comments ___

Updated: Nov. 28. 2007

1

## MAGISTRATE'S REVIEW
## OF ARREST WITHOUT WARRANT

**SUSPECT:** Robinson, Cortne' Mareese    **DATE OF ARREST**  9-20-2009    **ID FILE #**

**RACE:** B   **SEX:** M    **DATE OF BIRTH:** 12-15-1990    **TIME OF ARREST:** 7:30 AM

**CHARGES:** Aggravated Kidnapping F1/ Aggravated Robbery F1/ Aggravated Sexual Assault-Elderly F1/ Burglary of a habatation-comitted other felony F1

**INCIDENT #:**  2009-41187

### PROBABLE CAUSE FOR ARREST

Please indicate facts that indicate the suspect committed the offense(s) charged.  Please indicate facts relevant to each offense.

See Attached Exhibit #1

_Kyle Ready_ _(signature)_    Kyle Ready
*Arresting Officer*    *Print Officer's Name*

-------------------------------------------------------------------------

I, the undersigned magistrate, find probable cause for detention of this suspect for the following offense(s):

1. AGG KIONAPPING
2. AGG ROBBERY
3. AGG SEXUAL ASSAULT
BURGLARY OF HABITATION    8:35 Am

*Magistrate* _(signature)_    *Date* 9/21/09    *Time*

-------------------------------------------------------------------------

I, the undersigned magistrate, find there is not probable cause to detain this subject based on the information presented.

*Magistrate*    *Date*    *Time*

Exhibit #1

On 9-20-2009 at approximately 7:15 AM in Marshall Harrison County Texas, Patrol Officers were standing outside the Marshall Police Department when Arnola Zabokrtsky (D.O.B. 01-04-1927) drove up in a white Ford car. Arnola Zabokrtsky then advised officers that three black male subjects had abducted her and shot her husband – Frank Zabokrtsky (D.O.B. 01-13-1927) – at her residence located at 1809 Walter St. in Marshall Harrison County Texas. Arnola Zabokrtsky stated that the male subjects were walking in the 2300 block of W. Grand Avenue. Officers located the three black males walking on the railroad tracks in the area of 300 Ward St. Officers detained the subjects – Cortne' Robinson, Bradney Smith and (Juvenile) Travion Young – and discovered that Robinson was in possession of a handgun. Smith was in possession of a wallet belonging to Frank Zabokrtsky, a flashlight, money and a pair of gloves. Smith was in possession of a roll of duct tape, a flashlight, a blue pocketknife and a prescription bottle with the name Frankie Zabokrtsky printed on it. During this time, other officers had gone to 1809 Walter St and had located Frank Zabokrtsky lying on the bedroom floor suffering from an abdominal gunshot wound. Robinson, Young and Smith were detained and brought to the Marshall Police Department.

Arnola Zabokrtsky stated to investigators that she and her husband – Frank Zabokrtsky – were asleep in their residence located at 1809 Walter St when they were awaken by three black male subjects standing in their bedroom. The black males were demanding money and one of the black males committed an assault by shooting Frank Zabokrtsky in the stomach with a gun. Arnola Zabokrtsky then states that the black males ransacked the residence. One of the black males tied Arnola Zabokrtsky to a chair and then dragged her into the bathroom area and forcefully places his penis into her vagina and has sex with her against her will. Arnola Zabokrtsky stated that she was assaulted by one of the black males by him stomping her in the chest. The black males then duct tape Arnola Zabokrtskys' hands, feet and mouth, place her into the trunk of her own vehicle, drive her to Go Forth Rd. and abandoned her in the vehicle. Arnola Zabokrtsky freed herself from the trunk and discovers that the black males are gone. The vehicle was parked in an area where it would be unlikely that Arnola Zabokrtsky would be found and the vehicle had been left running with the doors locked. Arnola Zabokrtsky was able to get into the vehicle by using the vehicle door key pad and she immediately began driving to the police Department. While en route, she saw the same three black males walking in the 2300 block of W. Grand Avenue.

Detectives Ready and Smith escorted Smith into an office area where an audio/video recorder is activated. Smith is read the Miranda Warning and Smith states that he understands the warnings that were read to him. Smith then admits to breaking into the residence at 1809 Walter St. , kidnapping Arnola Zabokrtsky and taking her vehicle. Smith denies sexually assaulting Arnola Zabokrtsky or having any knowledge that Arnola Zabokrtsky was sexually assaulted. Smith also denies knowing who shot Frank Zabokrtsky.

Justice of the Peace Nancy George Mirandized Young. Young also admitted involvement in the incident.

Detectives Ready and Smith escorted Robinson into an office area where an audio/video recorder is activated. Robinson is read the Miranda Warning and Robinson stated that he understands the warnings that were read to him. Robinson then admits to breaking into the residence at 1809 Walter St, shooting Frank Zabokrtsky, kidnapping Arnola Zabokrtsky and taking her vehicle. Robinson denies sexually assaulting Arnola Zabokrtsky or having any knowledge that Arnola Zabokrtsky was sexually assaulted.

HONORABLE WILLIAM T. HUGHEY
DISTRICT JUDGE
71ST JUDICIAL DISTRICT COURT

## FACSIMILE TRANSMITTAL SHEET

DATE: _9/22 09_                                    From: Joyce L. Hill

RE: Criminal Appointment and/or Setting

TO:

____ Criminal District Attorney (903-938-9312)

____ Al Davis (903-935-4836)

✓ Harrison County Jail 903-923-9802)

____ Harrison County Probation Dept. (903-927-2236)

____ Rick Berry (903-938-1118)

____ Robert L. Cole, Jr.  (903-757-2387)

____ Rick Hagan (903-218-4089)

✓ Rick Hurlburt (903-757-2387)

____ Kimberley Miller (903 -935-2443)

____ Ebb Mobley (903-753-8289)

____ Scott Rectenwald (903-938-3310)

____ Michael Runyan (903-935-7702)

____ Jack Sanders, Jr. (903-935-0567)

____ Steve Smith (903-753-1926)

____ Coke Solomon (903-938-5151)

____ Vernard Solomon (903-938-5151)

____ Scott Walker (817-977-0163)

✓ _KEVIN SETTLE_          _903-757-4252_

____ 6 Number of Pages (Including Cover Sheet)

ROOM 219 · 200 W. HOUSTON ST. · MARSHALL, TEXAS 75670
PHONE: 903/935-8407 · FAX: 903/935-9963

CAUSE NO. 09-0411X

FILED FOR RECORD
HARRISON COUNTY, TEXAS
CLERK DISTRICT COURT

2009 SEP 24  AM 11: 13

SHERRY GRIFFIS
_____
DEPUTY

| | | |
|---|---|---|
| **STATE OF TEXAS** | § | **IN THE DISTRICT COURT** |
| | § | |
| **vs.** | § | **71ST JUDICIAL DISTRICT** |
| | § | |
| **CORTNE ROBINSON** | § | **HARRISON COUNTY, TEXAS** |

## ORDER APPOINTING COUNSEL

On September 23, 2009 Cortne Robinson made application for a Court Appointed Counsel on his pending charges.  The Court found the Defendant is indigent and entitled to court appointed counsel.

The Court appoints **Kevin Settle and Rick Hurlburt** to represent Cortne Robinson  in this cause and orders that **Kevin Settle and Rick Hurlburt** be compensated in accordance with the schedule for such appointments in Harrison County, Texas.

Signed on September 23, 2009

WILLIAM T. HUGHEY
PRESIDING JUDGE

000008

# COPY

Cause No 09-0411X

THE STATE OF TEXAS

vs.

ROBINSON, CORTNE MAREESE

PRECEPT
TO SERVE COPY OF INDICTMENT

Issued the 29th day of October, 2009.

SHERRY GRIFFIS
Clerk, District Court
Harrison County, Texas.

By _____ Deputy

–PRECEPT TO SERVE COPY OF INDICTMENT –

THE  STATE  OF  TEXAS

To the Sheriff of Harrison County, Said State, GREETING:

YOU ARE HEREBY COMMANDED to forthwith deliver to ROBINSON, CORTNE MAREESE a prisoner in your custody, the accompanying certified Copy of Indictment.

Herein Fail Not, and due return make hereof, without delay.

WITNESS my signature and seal of office, on this the 29th day of October, 2009.

SHERRY GRIFFIS, Clerk
District Court, Harrison County, Texas

By _____ Deputy

## SHERIFF'S RETURN

Came to hand on the _____ day of _____ A.D. _____, at _____ o'clock _____M., and executed on the _____ day of _____ A.D. _____, at _____ o'clock _____M, by delivering to the within named _____ a prisoner in my custody, in person, a certified copy of indictment mentioned within and delivered to me with this writ.

Returned on the _____ day of _____, A.D. _____.

_____ Sheriff

_____ County, Texas.

By _____ Deputy

000009

**CAUSE NUMBER: 09-0411-X**

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 71ST DISTRICT COURT |
| | § | |
| VS. | § | IN AND FOR |
| | § | |
| CORTNE' M. ROBINSON | § | HARRISON COUNTY, TEXAS |

## MOTION ELECTING TO HAVE JURY ASSESS PUNISHMENT

**TO THE HONORABLE JUDGE OF THE COURT:**

**NOW COMES**, the Defendant in the above styled and numbered cause, and files the following with this Court and would show unto this Honorable Court the following, to wit:

I.

That pursuant to the Texas Code of Criminal Procedure, the Defendant files this request that a jury be empaneled to consider the guilt or innocence of Defendant, and that in the event the jury finds the Defendant guilty as alleged in the Indictment, that the same jury assess Defendant's punishment.

**WHEREFORE, PREMISES CONSIDERED,** Defendant prays that this Motion be in all things granted.

RESPECTFULLY SUBMITTED,

RICHARD HURLBURT
Attorney for Defendant
Bar Number: 10308600
P.O. Box 3732
Longview, Texas 75606
Phone Number: (903) 234-8181
Facsimile Number: (903) 757-2387

KEVIN H. SETTLE
Attorney for Defendant
Bar Number: 18044400
300 North Green, Suite 315
Longview, Texas 75601
Phone Number: (903) 236-4184
Facsimile Number: (903) 757-4252

## CERTIFICATE OF SERVICE

I, KEVIN H. SETTLE, attorney for the Defendant, hereby certify that a true and correct copy of the above and foregoing Motion was hand delivered to the District Attorney's Office of Harrison County, Texas on this 12ᵗʰ day of November, 2009.

KEVIN H. SETTLE

## O R D E R

On this _____ day of _____, 2009, the foregoing Motion was

presented in Open Court and the same is hereby **(GRANTED)** **(DENIED**, to which action of

the Court the Defendant excepts) and it is **ORDERED** that this motion and order shall be

made a part of the record hereof.

Signed this _____ day of _____, 2009.

_____
**JUDGE PRESIDING**

000011

**CAUSE NUMBER: 09-0411-X**

| | | |
|---|---|---|
| **THE STATE OF TEXAS** | § | **IN THE 71ST DISTRICT COURT** |
| | § | |
| **VS.** | § | **IN AND FOR** |
| | § | |
| **CORTNE' M. ROBINSON** | § | **HARRISON COUNTY, TEXAS** |

## MOTION FOR DISCOVERY AND INSPECTION OF EVIDENCE

**TO THE HONORABLE JUDGE OF THE COURT:**

Comes Now, the Defendant in the above styled and numbered cause, under the authority of Article 39.14 C.C.P., and makes this Motion for Discovery and Inspection of Evidence, and in support thereof would show the Court as follows:

I.

The Defendant moves the Court to order the District Attorney to produce and permit the inspection of and the copying and/or photographing of, by or on behalf of the Defendant, the following designated items:

1. All confessions, admissions and statements, in writing, signed by the Defendant, in connection with this offense with which the Defendant is herein indicted.

2. All confessions, admissions and statements, oral in nature and set down and preserved under Article 38.22 of the Texas Code Criminal Procedure, made by the Defendant in connection with the offense with which the Defendant is herein indicted.

3. All oral, written and recorded statements or memoranda of same made by the Defendant to any investigating officer or to any member of any law enforcement agency or to any third party and in the possession of or within the knowledge of the District Attorney's office or any agent thereof, including any law enforcement agency.

4. All oral and written statements made by the Defendant before the Grand Jury and transcribed by a reporter, in connection with the offense with which the Defendant is herein indicted.

5. All objects and tangible property alleged by the State to have been taken by

1

the Defendant during the course of the commission of the offense with which the Defendant is herein indicted.

6.   All weapons alleged by the State to have been used by the Defendant, his co-defendants and his co-conspirators, if any, in the commission of the offense with which the Defendant is herein indicted.

7.   All fingerprints, palm prints, and foot prints, and reports of same, alleged by the State to have been made by the Defendant, his co-defendants and co-conspirators in the commission of the offense with which the Defendant is herein indicted.

8.   All statements made by any party or witness to this alleged offense, in the possession of or within the knowledge of the District Attorney or any of his agents, including any law enforcement agency, whether such statements were written or oral, which might in any manner be material to either the guilt or innocence of the Defendant or the punishment, if any, to be set in this case.

9.   All photographs, drawings and charts made by the District Attorney's office or any agent thereof, including any law enforcement agency, which were made with reference to this case, and including any said photograph, drawing or chart of the scene of the crime and the scene of the Defendant's arrest.

10.  All reports of scientific tests, experiments and comparisons, and all other reports of experts and the name and address of each such person who made such report or performed such test, experiment or comparison, including but not limited to reports pertaining to weapons, bullets, waddings, cartridge cases and tool marks.

11.  All photographs of the scene of the alleged crime and the scene of the Defendant's arrest.

12.  All articles of clothing, including shoes and rags allegedly belonging to the Defendant.

13.  The handwritten and typed notes of the police officers who investigated and participated in any manner in this case.

14.  The handwritten and typed notes of the police officers who interrogated the Defendant prior to and after the Defendant signed all written statements concerning this case.

2

15. The search warrant and arrest warrant and affidavit in support thereof, used by law enforcement authorities to enter the Defendant's premises, or any consent to search form executed by the Defendant.

16. The names of all suspects who were interrogated and/or arrested in conjunction with this offense, whether detained by jail arrest or by interrogation, including their names, addresses, occupations, physical descriptions and photographs (mug shots).

17. All photographs of suspects which were shown to all witnesses to the alleged offense, concerning the identity of the perpetrator of the offense for which the Defendant has been indicted.

18. All photographs of the Defendant which were used in conjunction with the investigation of this case, including any photograph which may have been shown by a law enforcement officer to any potential witness in this case.

19. Any medical and psychiatric reports submitted by any doctor or psychologist at the request of the State or the Court in conjunction with any examination of the Defendant herein.

20. Any and all evidence as to the incompetency of the Defendant which is in the possession of the District Attorney's office or any of its agents.

21. The prior criminal record of the Defendant, including all arrests and convictions, whether as a juvenile or as an adult.

22. The prior criminal record of all co-defendants and co-conspirators in this case, including all arrests and convictions whether as a juvenile or as an adult.

23. The prior criminal record of all the witnesses whom the District Attorney intends to call as witnesses during the trial of the cause against the Defendant, including all arrests and convictions, whether as a juvenile or as an adult.

24. All memoranda of the stenographic recording or transcription or telephonic recording of transcription of any and all information or evidence obtained by means of electronic eavesdropping or surveillance.

25. The stenographic recording or transcription or telephonic recording or

3

transcription of any and all information and evidence obtained by means of electronic eavesdropping or surveillance.

26.   All documents, papers, books, accounts, letters, objects, and tangible things which are the property of the Defendant and which are in the possession, custody and control of the prosecutor.

27.   All documents, papers, books, accounts, letters, objects, and tangible things which are the property of any other person which are in the possession, custody, and control of the prosecutor as a result of the investigation which resulted in the instant indictment and which are material evidence in this case as to the Defendant's guilt or innocence or as to the punishment, if any.

28.   A specification of any prior misconduct which the District Attorney intends to use to impeach the Defendant herein, which specification should include the date, time, place, and nature of such misconduct in order to fully apprise the Defendant of any possible impeachment of any character or reputation witnesses which the Defendant will produce at the trial of this cause.

29.   A copy of the arrest warrant used to arrest the Defendant.

30.   A copy of the complaint(s) applicable to the cause for which the Defendant faces trial.

In further support hereof, the Defendant would show that the production of such evidence is the only fair and proper method of showing the good faith of the District Attorney in this case as well as the truth of any such matters which the District Attorney intends to use against the Defendant.

II.

In support of this motion, the Defendant would show the Court as follows:

1.   The items requested are in the exclusive possession, custody and control of the State of Texas or the United States Government by and through its agent, the police or the prosecuting attorney's office, and the Defendant has no other means of ascertaining the disclosures requested.

2.   The items requested are not privileged.

3.   The items and information are material to this cause and the issues of guilt or innocence and punishment to be determined in this cause.

4

4. The Defendant cannot safely go to trial without such information and inspection, nor can the Defendant adequately prepare the defense to the charges against him.

5. That absent such discovery, Defendant's rights under Article 39.14 C.C.P., Article 1, Section 10 of the Constitution of the State of Texas, and the Fourth, Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States of America will be violated, to his irreparable injury and thus deprive the Defendant of a fair trial herein.

**WHEREFORE, PREMISES CONSIDERED,** the Defendant respectfully prays that this Honorable Court will grant this the Defendant's Motion for Discovery and Inspection of Evidence in all things, or in the alternative, that this Court will set this matter down for a hearing prior to trial on the merits and that at such hearing this Motion will be in all things granted.

RESPECTFULLY SUBMITTED,

_____                    _____
RICHARD HURLBURT                           KEVIN H. SETTLE
Attorney for Defendant                     Attorney for Defendant
Bar Number: 10308600                       Bar Number: 18044400
P.O. Box 3732                              300 North Green, Suite 315
Longview, Texas 75606                      Longview, Texas 75601
Phone Number: (903) 234-8181              Phone Number: (903) 236-4184
Facsimile Number: (903) 757-2387          Facsimile Number: (903) 757-4252

**CERTIFICATE OF SERVICE**

I, KEVIN H. SETTLE, attorney for the Defendant, hereby certify that a true and correct copy of the above and foregoing Motion was hand delivered to the District Attorney's Office of Harrison County, Texas on this 12th day of November, 2009.

_____
Kevin H. Settle

5

003016

CAUSE NUMBER: 09-0411-X

| | | |
|---|---|---|
| **STATE OF TEXAS** | § | IN THE 71ST DISTRICT COURT |
| **VS.** | § | IN AND FOR |
| **CORTNE' M. ROBINSON** | § | HARRISON COUNTY, TEXAS |

## REQUEST FOR NOTICE OF INTENT TO OFFER
## EXTRANEOUS CONDUCT UNDER RULE 404(b)
## AND EVIDENCE OF CONVICTION UNDER RULE 609(f)

**TO THE HONORABLE JUDGE OF SAID COURT:**

I.

Pursuant to Tex. R. Evid. 404(b), Defendant requests the State to give reasonable notice in advance of trial of its intent to introduce in its case-in-chief evidence of crimes, wrongs, or acts other than that arising in the same transaction.

II.

Pursuant to Tex. R. Evid. 609(f), Defendant requests that the State give sufficient advance written notice of its intent to use evidence of a conviction against the defendant.

RESPECTFULLY SUBMITTED,

_____
RICHARD HURLBURT
Attorney for Defendant
Bar Number: 10308600
P.O. Box 3732
Longview, Texas 75606
Phone Number: (903) 234-8181
Facsimile Number: (903) 757-2387

_____
KEVIN H. SETTLE
Attorney for Defendant
Bar Number: 18044400
300 North Green, Suite 315
Longview, Texas 75601
Phone Number: (903) 236-4184
Facsimile Number: (903) 757-4252

000017

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing Motion has been hand-delivered to the Gregg County District Attorney's Office on this 12ᵗʰ day of November, 2009.

Kevin H. Settle

## O R D E R

On this _____ day of _____, 2009, came on to be heard the above and foregoing Motion and after considering same, the Court is of the opinion that said motion should be and **IT IS HEREBY ORDERED (GRANTED)  (DENIED)**.

Signed this _____ day of _____, 2009.

_____
**JUDGE PRESIDING**

2

CAUSE NUMBER:  09-0411-X

| | | |
|---|---|---|
| STATE OF TEXAS | § | IN THE 71ST DISTRICT COURT |
| VS. | § | IN AND FOR |
| CORTNE' M. ROBINSON | § | HARRISON COUNTY, TEXAS |

## MOTION FOR HEARING ON VOLUNTARINESS OF ANY ADMISSION OR CONFESSION WHETHER WRITTEN OR ORAL

### TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, the Defendant in the above styled and numbered cause and respectfully moves the Court to excuse the jury before any evidence of admissions and confessions allegedly made by the Defendant, whether written or oral, are admitted in the presence of the jury.

Defendant makes this request based upon the Fifth, Sixth and Fourteenth Amendments of the Constitution of the United States; Article I, Section 10 of the Texas State Constitution and Articles 38.21, 3822 and 38.23 of the Code of Criminal Procedure.

Defendant further requests the Court to instruct the District Attorney to ask no questions in the presence of the jury concerning admissions and confessions allegedly made by the Defendant, either written or oral, or criminative or exculpatory, until Jackson vs. Denno hearing has been held by the Court to determine whether such admissions and confessions were voluntarily made by the Defendant and the Court has entered findings of fact and conclusions of law with respect thereto.

In further support hereof, the Defendant submits that at the time of the conversations with law enforcement officers, the Defendant was either under arrest or substantially deprived of his freedom by the attendant conduct of said law enforcement officers and the surrounding circumstances.

WHEREFORE, PREMISES CONSIDERED, the Defendant respectfully prays that this Motion be granted in all things.

1

RESPECTFULLY SUBMITTED,

RICHARD HURLBURT
Attorney for Defendant
Bar Number: 10308600
P.O. Box 3732
Longview, Texas 75606
Phone Number: (903) 234-8181
Facsimile Number: (903) 757-2387

KEVIN H. SETTLE
Attorney for Defendant
Bar Number: 18044400
300 North Green, Suite 315
Longview, Texas 75601
Phone Number: (903) 236-4184
Facsimile Number: (903) 757-4252

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing Motion has been hand delivered to the Harrison County District Attorney's Office on this 12th day of November, 2009.

Kevin H. Settle

## ORDER

On this day came on to be heard the foregoing Defendant's Motion for a Jackson vs. Denno hearing and to instruct the District Attorney, said Motion is hereby (**GRANTED** in all things) (**DENIED**).

SIGNED this the _____ day of _____, 2009.

_____
**JUDGE PRESIDING**

2



**KEVIN H. SETTLE**, ATTORNEY AT LAW

BRAMLETTE BUILDING • 300 NORTH GREEN, STE. 315 • LONGVIEW, TEXAS 75601 • (903) 236-4184 • (903) 757-4252

November 12, 2009

Sherry Griffis
Harrison County District Clerk's Office
200 West Houston, Suite 234
Marshall, Texas 75671

RE:   State of Texas vs. Cortne' M. Robinson
      Causes Numbers: 09-0414-X and 09-0411

Dear Clerk:

Enclosed is an original and one copy of the Pretrial Motions which I would ask that you file in your records.  Please mail the remaining copy, when file-stamped, back to me in the self addressed stamped envelope provided.

If you have any questions or comments, let me know.  Thank you.

Sincerely,

Kevin H. Settle

/em

Enclosures

cc: District Attorney's Office
    200 West Houston, Ste. 206
    Marshall, Texas 75671

COPY

Cause No 09-0411X

Delivered 10/30, 2009

2009 NOV 17  AM 10: 23 THE STATE OF TEXAS

at 11.02 AM PM

vs.

W.T. McCOOL, SHERIFF
HARRISON COUNTY, TEXAS

ROBINSON, CORTNE MAREESE

BY _____
Deputy

PRECEPT
TO SERVE COPY OF INDICTMENT

Issued the 29th day of October, 2009.

SHERRY GRIFFIS
Clerk, District Court
Harrison County, Texas.

By _____ Deputy

RECEIVED
2009 OCT 29  AM 11: 09
W.T. McCOOL SHERIFF
HARRISON COUNTY
MARSHALL, TX 75670

-PRECEPT TO SERVE COPY OF INDICTMENT –

THE  STATE  OF  TEXAS

To the Sheriff of Harrison County, Said State, GREETING:

YOU ARE HEREBY COMMANDED to forthwith deliver to ROBINSON, CORTNE MAREESE a prisoner in your custody, the accompanying certified Copy of Indictment.

Herein Fail Not, and due return make hereof, without delay.

WITNESS my signature and seal of office, on this the 29th day of October, 2009.

SHERRY GRIFFIS, Clerk
District Court, Harrison County, Texas

By _____ Deputy

S H E R I F F ' S   R E T U R N

Came to hand on the 30 day of Oct A.D. 2009 at 11.02 o'clock A M., and executed on the 30 day of Oct A.D. 2009, at 11:02 o'clock A M, by delivering to the within named _____ a prisoner in my custody, in person, a certified copy of indictment mentioned within and delivered to me with this writ.

Returned on the 30 day of Oct, A.D. 2009

Tom McCool _____ Sheriff

Harrison _____ County, Texas.

By _____ Deputy

000022

CAUSE NO. O9 - O411 X          2009 NOV 19 PM 3: 22

THE STATE OF TEXAS                    *          IN THE 71ST DISTRICT COURT

VS.                                   *

Cortne Mareese Robinson *          HARRISON COUNTY, TX

### ORDER SETTING BOND

On this day the Court considered the Motion of the Inmate for a Reduction in Bond and having considered the agreement of any counsel for the State and the Defendant and having listened and considered the evidence presented by the State and the Defendant, the Court orders as follows:

☐ 1. The Motion to Reduce the Bond is denied.

☑ 2. The Defendant's Bond is Set at $ 1 million  (Surety/PR.

☐ 3. The Defendant has been incarcerated more than 90 days and the State has not indicted the defendant who is therefore entitled to be released under Art. 17.151, Code of Criminal Procedure.  Therefore his/her bond is set at $_____Personal Recognizance Bond.

☐ 4. The following conditions are made a part of the bond:

_____
_____
_____
_____

Signed and entered the 19  of November , 2009 .

Judge Presiding



**KEVIN H. SETTLE, ATTORNEY AT LAW**

BRAMLETTE BUILDING • 300 NORTH GREEN, STE. 315 • LONGVIEW, TEXAS 75601 • (903) 236-4184 • (903) 757-4282

HARRISON ~~~~ TEXAS
CLERK DISTRICT COURT

December 3, 2009

SHERRY ~~~~
BY _____
DEPUTY

Judge William T. Hughey
71st Judicial District Court
200 W. Houston St.
Marshall, Texas 75670

Fax at 903-935-9963 and mail

Re: State v. Cortne Mareese Robinson, Case Number: 09-0411-X
Scheduling Proposal

Dear Judge,

Following is a scheduling proposal from Rick Hurlburt and myself for the above case:

January 15, 2010   Filing deadline for Pre-trial motions

January 29, 2010   Discovery to be furnished to the Defense by the State on or before this date (with additional future discovery to be supplemented when received)

February 17, 2010  Hearing on Pre-trial Motions

May 31, 2010       Jury pool to be brought in to fill out Jury Questionnaires

June 7, 2010       Clerk to furnish Defense (2) copies of completed jury questionnaires by this date (and copy(s) to State)

June 14, 2010      Individual Voir Dire to begin

Of course, there may be unanticipated events in the future form either side but this is the time framework which the Defense believes is feasible at this time. If you need anything further, let us know.

Sincerely,

Kevin H. Settle

cc: Joe Black, District Attorney

No. 09-411X

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 71ST DISTRICT COURT |
| VS. | § | BY _____ AND FOR |
| CORTNE MAREESE ROBINSON | § | HARRISON COUNTY, T E X A S |

2009 DEC 30  PM 4: 06

### STATE'S NOTICE OF INTENT TO SEEK THE DEATH PENALTY

TO THE HONORABLE JUDGE OF SAID COURT:

Comes now the State of Texas, by and through the Criminal District Attorney and notifies the Court and the defendant in the above-styled cause that the State will seek the death penalty.

Respectfully submitted,

JOE BLACK
Criminal District Attorney
Harrison County, Texas

BY: _____
JOE BLACK

### CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing has been delivered to Kevin Settle, the defendant's attorney of record, on this, the 30th day of December, 2009.

_____
Joe Black
Criminal District Attorney
Harrison County, Texas

000025

CAUSE NUMBER: 09-0411-X

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 71st DISTRICT COURT |
| VS. | § | IN AND FOR |
| CORTNE MAREESE ROBINSON | § | HARRISON COUNTY, TEXAS |



## DEFENDANT'S MOTION TO REQUIRE THE STATE TO ANSWER ALL PRE-TRIAL MOTIONS IN WRITING

⑤

### TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES, CORTNE MAREESE ROBINSON, by and through his attorneys of record, in the above entitled and numbered cause, and makes this Motion and in support of same would respectfully show unto the Court as follows:

The Defendant has on file with this Honorable Court several vital and critically important pre-trial motions relating to discovery to exculpatory evidence and to other matters vital to his defense, and has also filed with this Court a request that a pre-trial hearing be ORDERED whereby the State will be required to answer all of the Defendant's pre-trial motions. The Defendant would request this Honorable Court to require the State to answer the Defendant's pre-trial motions in writing for the reason that appellate courts consistently requires that a full and complete record be presented on points which are given to them for review. Therefore, to insure that a complete and accurate record of all of the State's answers and admissions to the Defendant's pre-trial motions shall be able to be presented to the appellate courts, should an appeal from this case be necessary, Defendant requests this Honorable Court to require the District Attorney to file with this Court answers to all of the pre-trial motions filed by the Defendant.

WHEREFORE, PREMISES CONSIDERED, the Defendant respectfully requests this Honorable Court to require the District Attorney to file written answers to all of Defendant's pre-trial motions.

RESPECTFULLY SUBMITTED,

RICHARD HURLBURT
Attorney for Defendant
Bar Number: 10308600
P.O. Box 3732
Longview, Texas 75606
Phone Number: (903) 234-8181
Facsimile Number: (903) 757-2387

KEVIN H. SETTLE
Attorney for Defendant
Bar Number: 18044400
300 North Green, Suite 315
Longview, Texas 75601
Phone Number: (903) 236-4184
Facsimile Number: (903) 757-4252

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing Motion has been hand-delivered to the Harrison County District Attorney's Office on this _____ 12 _____ day of January, 2010.

_____
Kevin H. Settle

**ORDER**

On this the _____ day of _____, 2010, the foregoing motion was presented in Open Court and the same is hereby **GRANTED/DENIED** and **IT IS ORDERED** that this Motion and Order shall be made a part of the record hereof.

_____
**JUDGE PRESIDING**

CAUSE NUMBER: 09-0411-X

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 71ST DISTRICT COURT |
| VS. | § | IN AND FOR |
| CORTNE MAREESE ROBINSON | § | HARRISON COUNTY, TEXAS |

⑥

## DEFENDANT'S MOTION TO COMPEL ENDORSEMENT OF THE NAMES OF THE GRAND JURY WITNESSES UPON THE INDICTMENT

**TO THE HONORABLE JUDGE OF THE COURT:**

COMES NOW the Defendant in the above entitled and numbered cause, by and through his attorneys of record, and moves the Court to order the prosecution to endorse the names of the witnesses upon whose testimony the indictment was found on the indictment or in the alternative to furnish counsel for the Defendant a list of the names of such witnesses, and in support of this Motion the Defendant would show unto the Court as follows:

I.

Article 20.20 of the Texas Code of Criminal Procedure requires the names of the witnesses upon whose testimony the indictment was found to be endorsed on the indictment. The cases hold that upon proper motion the State is compelled to comply with Article 20.20.

II.

The Defendant believes that the witnesses who testified before the Grand Jury gave testimony concerning the guilt or innocence of the Defendant in the cause of action.

WHEREFORE, PREMISES CONSIDERED, the Defendant prays that this Motion be in all things granted.

RESPECTFULLY SUBMITTED,

RICHARD HURLBURT
Attorney for Defendant
Bar Number: 10308600
P.O. Box 3732

KEVIN H. SETTLE
Attorney for Defendant
Bar Number: 18044400
300 North Green, Suite 315

Longview, Texas 75606                    Longview, Texas 75601
Phone Number: (903) 234-8181            Phone Number: (903) 236-4184
Facsimile Number: (903) 757-2387        Facsimile Number: (903) 757-4252

## CERTIFICATE OF SERVICE

    I hereby certify that a true and correct copy of the above and foregoing Motion has been hand-delivered to the Harrison County District Attorney's Office on this ___12___ day of January, 2010.

                              Kevin H. Settle

## O R D E R

    On this _____ day of _____, 2010, the foregoing Motion was

presented in Open Court and after considering same, the Court is of the opinion that said motion

should be and **IT IS HEREBY ORDERED (GRANTED)   (DENIED).**

    Signed this _____ day of _____, 2009.

                                **JUDGE PRESIDING**

HARRISON CO...
CLERK DISTRICT COURT

2010 JAN 12  AM 11: 04

SHERRY GRIFFIS

BY_____

**CAUSE NUMBER: 09-0411-X**

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 71ST DISTRICT COURT |
| VS. | § | IN AND FOR |
| CORTNE MAREESE ROBINSON | § | HARRISON COUNTY, TEXAS |

### DEFENDANT'S MOTION REQUESTING
### NOTICE OF INTENT TO USE CERTIFIED COPIES



**TO THE HONORABLE JUDGE OF SAID COURT:**

    **COMES NOW, CORTNE MAREESE ROBINSON,** the Defendant in the above-entitled and numbered cause by and through his attorneys of record and moves the Court to require the prosecution to give notice of its intent to use certified copies of official written instruments including, but not limited to, any certified copies of prior judgments of convictions, medical records, death certificates, military records, autopsy reports, inquest records, Department of Public Welfare reports, etc., and in support hereof, Defendant would show the Court as follows:

### I.

    Notice is required by Rule 902, Texas Rules of Evidence.

### II.

    Unless a copy of such certified copies of official written instruments is delivered to the Defendant by the prosecution, the Defendant will be unduly surprised and disadvantaged.

    WHEREFORE, the Defendant respectfully prays that the Court grant this motion.

        RESPECTFULLY SUBMITTED,

| | |
|---|---|
| RICHARD HURLBURT | KEVIN H. SETTLE |
| Attorney for Defendant | Attorney for Defendant |
| Bar Number: 10308600 | Bar Number: 18044400 |
| P.O. Box 3732 | 300 North Green, Suite 315 |
| Longview, Texas 75606 | Longview, Texas 75601 |
| Phone Number: (903) 234-8181 | Phone Number: (903) 236-4184 |
| Facsimile Number: (903) 757-2387 | Facsimile Number: (903) 757-4252 |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing Motion has been hand-delivered to the Harrison County District Attorney's Office on this _12_ day of January, 2010.

Kevin H. Settle

## ORDER

On this the _____ day of _____, 2010, the foregoing

motion was presented in Open Court and the same is hereby **GRANTED/DENIED** and it is ordered

that this Motion and Order shall be made a part of the record hereof.

Signed this _____ day of _____, 2010.

_____
**JUDGE PRESIDING**

**CAUSE NUMBER: 09-0411-X**

| | | |
|---|---|---|
| **THE STATE OF TEXAS** | § | **IN THE 71ST DISTRICT COURT** |
| **VS.** | § | **IN AND FOR** |
| **CORTNE MAREESE ROBINSON** | § | **HARRISON COUNTY, TEXAS** |

**DEFENDANT'S WRITTEN OBJECTION TO ADMISSIBILITY
OF EXTRANEOUS OFFENSES, REQUEST FOR PROCEDURAL
DETERMINATION BY TRIAL COURT WITH FINDINGS OF FACT
AND CONCLUSIONS OF LAW, AND FOR LIMITING INSTRUCTIONS**

**TO THE HONORABLE JUDGE OF THE COURT:**

NOW COMES the Defendant in the above entitled and numbered cause and files this his Written Objection to Admissibility of Extraneous Offenses, Request for Procedural Determination by Trial Court with Findings of Fact and Conclusions of Law, and for Limiting Instruction and in support thereof would show the Court as follows:

I.

Rule 401, Texas Rules of Criminal Evidence states as follows:

"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

Rule 402, Texas Rules of Criminal Evidence states as follows:

All relevant evidence is admissible, except as otherwise provided by constitution, by statue, by these rules or by other rules prescribed pursuant to statutory authority. Evidence which is not relevant is inadmissible.

Rule 403, Texas Rules of Criminal Evidence states as follows:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence.

Rule 404(b), Texas Rules of Criminal Evidence states as follows:

(b)     Other crimes, wrongs, or acts.  Evidence of other crimes, wrongs, or acts is not

1

admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided, upon timely request by the accused, reasonable notice is given in advance of trial of intent to introduce in the State's case in chief such evidence other than that arising in the same transaction.

## II.

The State of Texas is seeking the introduction of extraneous offenses. Such evidence may be admissible where it "makes more or less probable" an evidentiary fact that leads to an elemental fact or "make more or less probable" defensive evidence that undermines (or negates) an elemental fact. (Rule 401 and 402 T.R.C.E.).

Even if evidence is deemed relevant, such is still not admissible unless its probative value is substantially outweighed by its danger of unfair prejudice or propensity to confuse, delay, mislead or cumulate. (Rule 403 T.R.C.E.).

## III.

The Defendant objects to the admission of such extraneous offense evidence under Rules 401, 402 and 403 and 404(b) T.R.C.E. and requests the State to prove such evidence has relevance other than proving character of person to show he acted in conformance with the conduct alleged.

## IV.

If the Court overrules the objection in paragraph III above, the Defendant hereby requests that the Court make findings of fact and conclusions of law supporting its determination that the evidence (1) establishes an elemental fact, (2) establishes an evidentiary fact that inferentially leads to an elemental fact, (3) rebuts a defensive theory, or (4) has some other logical relevance.

## V.

Further, the Defendant requests that the Court properly instruct the jury to confine and limit its consideration of such evidence to the purpose articulated by the State.

## VI.

Still further, the Defendant would also, due to the Court admitting such evidence, object because of the unfair prejudice, confusion, misleading nature, delay and/or cumulation resulting from this evidence (Rule 403 T.R.C.E.). Additionally, the Defendant requests the Court make findings of fact and conclusions of law with regard to this evidence causing unfair prejudice, confusion, misleading, delay and/or cumulation.

2

VII.

Authority

Montgomery v. State, 810 S.W.2d 372 (Tex. Crim. App. 1991).

RESPECTFULLY SUBMITTED,

RICHARD HURLBURT
Attorney for Defendant
Bar Number: 10308600
P.O. Box 3732
Longview, Texas 75606
Phone Number: (903) 234-8181
Facsimile Number: (903) 757-2387

KEVIN H. SETTLE
Attorney for Defendant
Bar Number: 18044400
300 North Green, Suite 315
Longview, Texas 75601
Phone Number: (903) 236-4184
Facsimile Number: (903) 757-4252

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing Motion has been hand delivered to the Harrison County District Attorney's Office on this _12_ day of January, 2010.

KEVIN H. SETTLE

**O R D E R**

On this _____ day of _____, 2010, came on to be heard the above and foregoing Motion and after considering same, the Court is of the opinion that said motion should be and **IT IS HEREBY ORDERED (GRANTED)  (DENIED).**

Signed this _____ day of _____, 2010.

_____
**JUDGE PRESIDING**

3

CAUSE NUMBER: **09-0411-X**

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 71ST DISTRICT COURT |
| VS. | § | IN AND FOR |
| CORTNE MAREESE ROBINSON | § | HARRISON COUNTY, TEXAS |

## DEFENDANT'S MOTION TO DESIGNATE LOCATION OF PHYSICAL EVIDENCE

**COMES NOW, CORTNE MAREESE ROBINSON,** the Defendant by and through his attorneys of record, and makes and files this his Motion to Designate Location of Physical Evidence, and in support of said motion, would show unto the Court as follows:

### I.

The Defendant would respectfully show unto this Honorable Court that a large amount of physical evidence was found and discovered by the prosecution during the investigation of the above styled and numbered cause.

### II.

The Defendant would further show unto this Honorable Court that most, if not all, of such physical evidence will be offered by the prosecution into evidence during the trial in the above cause. The prosecution in order to introduce said tangible items of evidence into the record will need to identify where they were found and by whom said items were found. Therefore, in order to avoid surprise or delay during the trial and to develop fully all relevant facts for the Court and the jury, the Defendant requests that the prosecution be required to designate in writing where all of the items of physical evidence were found, by whom when and where, and the condition of said items of physical evidence as turned over prior to its introduction into evidence.

### III.

That such list should be furnished to the attorney for the Defendant prior to trial.

**WHEREFORE, PREMISES CONSIDERED,** the Defendant respectfully requests this Honorable Court to order the prosecution to designate in writing to the Defendant where all items of physical evidence were found as related to the above styled and numbered cause, by whom, when and where said items of physical evidence were found, to give an accurate description of the condition of said items of physical evidence at the time found and to whom said items of physical evidence were turned over to prior to their introduction into evidence in the above styled and numbered cause, and such list be presented to the attorney for the Defendant prior to trial.

RESPECTFULLY SUBMITTED,

_____          _____
RICHARD HURLBURT                          KEVIN H. SETTLE
Attorney for Defendant                    Attorney for Defendant
Bar Number: 10308600                      Bar Number: 18044400
P.O. Box 3732                             300 North Green, Suite 315
Longview, Texas 75606                     Longview, Texas 75601
Phone Number: (903) 234-8181              Phone Number: (903) 236-4184
Facsimile Number: (903) 757-2387          Facsimile Number: (903) 757-4252

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing Motion has been delivered to the Harrison County District Attorney's Office on this __12__ day of January, 2010.

Kevin H. Settle

## O R D E R

. On this ____ day of _____, 2010, the foregoing motion

was presented in Open Court and the same is hereby **GRANTED/OVERRULED**.

_____
**JUDGE PRESIDING**

CAUSE NUMBER: 09-0411-X

THE STATE OF TEXAS                                    IN THE 71ST DISTRICT COURT

VS.                                                  IN AND FOR

CORTNE MAREESE ROBINSON          §          HARRISON COUNTY, TEXAS

## MOTION TO INSPECT, EXAMINE AND TEST PHYSICAL EVIDENCE

## TO THE HONORABLE JUDGE OF THE COURT:

   COMES NOW the Defendant and moves this Court to issue an order compelling the State of Texas to produce certain items of physical evidence in its possession and control for inspection, examination and testing by experts designated by the Defendant. Said items of evidence, collected by the State in the investigation of this case, are material and relevant to the issues of guilt, innocence, degree of culpability and effective cross-examination of state witnesses against the Defendant. Each said item listed below has or will be examined and tested by the State through its experts at a State Crime Laboratory. Said items of physical evidence the Defendant desires to inspect, examine and test, by and through his designated expert(s), is set out below:

   1.   All clothing taken as evidence from the Defendant, the deceased and any other person;

   2.   All weapons taken from the Defendant's person, home or vehicle, and the scene of the alleged crime;

   3.   All fingerprints taken as part of the investigation of this case;

   4.   All notes, writings, memos and letters taken by the State as part of the evidence of this case;

   5.   All blood samples taken from the scene of the alleged crime or from the Defendant's person, home or vehicle;

   6.   All other physical evidence taken by the State from the scene of the alleged crime or from any victim as part of its investigation in this case, including but not limited to, spent bullets, bullet casings, and so forth.

   The request for inspection, examination, and testing of the specific items set out above is essential to insure the Defendant his right to a fair hearing, his right to confrontation, his right to prepare a defense in his own behalf, his right to effective counsel and due process of law guaranteed by the Texas Constitution and the United States Constitution as well as those rights now herein

1

enumerated, including rights provided by case law.

   **WHEREFORE**, Defendant prays:

1. That the District Attorney be ordered to produce all the items of physical evidence described herein and to allow the Defendant's expert the right to examine, inspect, conduct scientific tests and photograph said items at a specific time and place to be fixed by the Court.

2. That the time set for inspection, testing and photographing of the items requested by the Defendant's experts be at a reasonable time in advance of trial.

3. That the Court enter an order requiring the District Attorney's office to make continuing disclosure of all additional items of physical evidence obtained by the State concerning the charges against the Defendant.

4. That the Court set this motion down for an evidentiary hearing.

RESPECTFULLY SUBMITTED,

RICHARD HURLBURT
Bar Number: 10308600
P.O. Box 3732
Longview, Texas 75606
Phone Number: (903) 234-8181
Facsimile Number: (903) 757-2387

KEVIN H. SETTLE
Bar Number: 18044400
300 North Green, Suite 315
Longview, Texas 75601
Phone Number: (903) 236-4184
Facsimile Number: (903) 757-4252

**CERTIFICATE OF SERVICE**

   I hereby certify that a true and correct copy of the above and foregoing Motion has been hand-delivered to the Harrison County District Attorney's Office on this ___12___ day of January, 2010.

Kevin H. Settle

2

CAUSE NUMBER: 09-0411-X

THE STATE OF TEXAS                                    IN THE 71ST DISTRICT COURT

VS.                                                  IN AND FOR

CORTNE MAREESE ROBINSON                               HARRISON COUNTY, TEXAS

## DEFENDANT'S MOTION TO LIST STATE'S WITNESSES (TRIAL WITNESSES)

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, CORTNE MAREESE ROBINSON, by and through his attorneys of record and makes and files this his Motion to List State's Witnesses (Trial Witnesses), and in support of said motion would show unto the Court as follows:

### I.

The Defendant respectfully requests this Honorable Court to instruct the prosecution to list for the Defendant all of the State's witnesses who they in good faith expect to use during the trial of the State's case in chief, and in rebuttal, both during the guilt or innocence stage and the punishment stage of said trial for the reason that the Defendant has no way of knowing the existence of any relationship between such witnesses and prospective veniremen and that the Defendant cannot make an intelligent use of his preemptory challenges without such knowledge and information prior to the time the voir dire examination of the jury begins.

WHEREFORE, PREMISES CONSIDERED, the Defendant respectfully requests this Honorable Court to instruct the prosecution to provide to the Defendant a list of all of the witnesses who they in good faith expect to use during the trial of the State's case in chief and in rebuttal, during the guilt or innocence stage of the trial and at the punishment stage of said trial, for use in voir dire examination of the jury panel.

RESPECTFULLY SUBMITTED,

RICHARD HURLBURT
Attorney for Defendant
Bar Number: 10308600
P.O. Box 3732
Longview, Texas 75606
Phone Number: (903) 234-8181

KEVIN H. SETTLE
Attorney for Defendant
Bar Number: 18044400
300 North Green, Suite 315
Longview, Texas 75601
Phone Number: (903) 236-4184

Facsimile Number: (903) 757-2387          Facsimile Number: (903) 757-4252

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing Motion has been hand-delivered to the Harrison County District Attorney's Office on this ___12___ day of January, 2010.

Kevin H. Settle

## O R D E R

On this _____ day of _____, 2010, the foregoing Motion was presented in Open Court and the same is hereby **(GRANTED)** **(DENIED)** and it is ordered that this Motion and Order shall be made a part of the record hereof.

Signed this _____ day of _____, 2010.

_____
**JUDGE PRESIDING**

**CAUSE NUMBER: 09-0411-X**

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 71ST DISTRICT COURT |
| VS. | § | IN AND FOR |
| CORTNE MAREESE ROBINSON | § | HARRISON COUNTY, TEXAS |

## MOTION TO DISCOVER CRIMINAL
## RECORDS OF WITNESSES

( 12 )

**TO THE HONORABLE JUDGE OF SAID COURT:**

NOW COMES, **CORTNE MAREESE ROBINSON**, the Defendant and respectfully moves this Court to require the District Attorney to make available to the Defendant all criminal records which the State's witnesses or possible witnesses have in this cause and in support thereof would show the Court as follows:

### I.

That the Defendant does not have any way of determining the true extent of criminal records of the State's witnesses or possible witnesses in this cause as such records are exclusively in the possession and under the control of the law enforcement authorities or within their access or control..

### II.

That the District Attorney does have the means at his disposal to obtain a full and complete criminal record of each of the State's witnesses or possible witnesses.

### III.

That evidence of a prior criminal record, including convictions of felony offenses and misdemeanor offenses, particularly those misdemeanor offenses involving moral turpitude and acts of misconduct, are relevant and material for impeachment purposes and to shed light on the bias, motive, animus and ill feeling on the part of any witness testifying against the Defendant.

### IV.

That the State should not be permitted to avoid the responsibility of requesting the proper law enforcement authorities to obtain a full and complete prior criminal record of the State's witnesses or possible witnesses, and should not be permitted to respond to this Motion by advising the Court that the District Attorney does not have any indication in his file of any prior criminal record of such witnesses simply because he has not made the necessary inquiries.

**V.**

That if the District Attorney does not request the proper law enforcement authorities to obtain a full and complete criminal record of such witnesses and reveal all of said information to the Defendant, the District Attorney will be secreting evidence which directly affects the credibility of the witnesses and the right to be given their testimony and will therefore be secreting evidence which would probably affect the verdict.

WHEREFORE, PREMISES CONSIDERED, the Defendant respectfully prays that this Honorable Court will order the District Attorney to request the proper law enforcement authorities to obtain full and complete prior criminal record of State's witnesses and possible witnesses in this cause and that the District Attorney be ordered to reveal said prior criminal record and acts of misconduct to the Defendant prior to the trial of this cause.

RESPECTFULLY SUBMITTED,

RICHARD HURLBURT
Attorney for Defendant
Bar Number: 10308600
P.O. Box 3732
Longview, Texas 75606
Phone Number: (903) 234-8181
Facsimile Number: (903) 757-2387

KEVIN H. SETTLE
Attorney for Defendant
Bar Number: 18044400
300 North Green, Suite 315
Longview, Texas 75601
Phone Number: (903) 236-4184
Facsimile Number: (903) 757-4252

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing Motion has been hand-delivered to the Harrison County District Attorney's Office on this ___12___ day of January, 2010.

Kevin H. Settle

000042

HARRISON C...
CLERK DISTRICT COURT
**CAUSE NUMBER: 09-0411-X**
2010 JAN 12  AM II: 05

SHERRY GRIFFIN

BY \_\_§\_\_ ...

DEPUTY

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 71ST DISTRICT COURT |
| VS. | § | IN AND FOR |
| CORTNE MAREESE ROBINSON | § | HARRISON COUNTY, TEXAS |

## MOTION FOR DISCLOSURE
## OF IMPEACHING INFORMATION



**TO THE HONORABLE JUDGE OF SAID COURT:**

NOW COMES, **CORTNE MAREESE ROBINSON**, the Defendant and respectfully moves this Court for entry of an order directing the State to investigate and disclose all of the following within the possession, custody, control, or the existence of which is known or by the exercise of due diligence could become known to the State:

1.  Any and all consideration of promises of consideration given to or made on behalf of State witnesses. By "consideration" Defendant refers to absolutely anything of value or use, including but not limited to immunity grants, witness fees, transportation assistance, assistance to members of witness's family or associates of witnesses, assistance of favorable treatment with respect to any criminal, civil, or administrative dispute with the State or the United States, and anything else which could arguably create an interest or bias in the witness in favor of the State or against the defense or acts as an inducement to testify or to color testimony;

2.  Any and all prosecutions, investigations or possible prosecutions pending or which could be brought against the witness or any probationary, parole or deferred prosecution status of the witness;

3.  Any and all records and information revealing felony convictions attributed to this witness;

4.  Any and all records and information showing prior misconduct or bad acts committed by the witness; and,

5.  Any and all personnel files for the witness.

**WHEREFORE, PREMISES CONSIDERED**, Defendant prays this motion be granted in all things.

RESPECTFULLY SUBMITTED,

RICHARD HURLBURT
Bar Number: 10308600
P.O. Box 3732
Longview, Texas 75606
Phone Number: (903) 234-8181
Facsimile Number: (903) 757-2387

KEVIN H. SETTLE
Bar Number: 18044400
300 North Green, Suite 315
Longview, Texas 75601
Phone Number: (903) 236-4184
Facsimile Number: (903) 757-4252

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing Motion has been hand-delivered to the Harrison County District Attorney's Office on this ____ 2 ___ day of January, 2010.

Kevin H. Settle

## ORDER

On this _____ day of _____, 2010, the above and foregoing

Motion for Disclosure of Impeaching Information was presented in Open Court and the same is

hereby **ORDERED (GRANTED** as to paragraphs _____ ) **(DENIED** as to

paragraphs _____ ), and it is **ORDERED** that this Motion and Order shall

be made a part of the record hereof.

Signed this _____ day of _____, 2010.

_____
**JUDGE PRESIDING**

000044

CAUSE NUMBER: 09-0411-X

| | |
|---|---|
| THE STATE OF TEXAS | § IN THE 71ST DISTRICT COURT |
| VS. | § AND FOR |
| CORTNE MAREESE ROBINSON | § HARRISON COUNTY, TEXAS |

### MOTION FOR TIMELY "BRADY" MATERIAL

## TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES DEFENDANT, CORTNE MAREESE ROBINSON, by and through his

legal counsel, and respectfully requests that this Honorable Court set a reasonable and timely date for

the Plaintiff's prosecutor to deliver any and all material that may be considered "Brady" material. In

support of this Motion and request, the Defendant urges that there exists considerable evidence

which may be "Brady" material and exculpatory in nature, but of little value unless presented to the

Defendant with some degree of advance notice. The Defendant would anticipate that due to the

court's trial docket for the immediate future, a hearing on all submitted motions will be held, and

exculpatory material(s) presented after the date of said expected hearing would require additional

hearings, thereby further crowding this Honorable Court's docket and giving the Defendant

insufficient time to utilize said material.

RESPECTFULLY SUBMITTED,

RICHARD HURLBURT
Attorney for Defendant
Bar Number: 10308600
P.O. Box 3732
Longview, Texas 75606
Phone Number: (903) 234-8181
Facsimile Number: (903) 757-2387

KEVIN H. SETTLE
Attorney for Defendant
Bar Number: 18044400
300 North Green, Suite 315
Longview, Texas 75601
Phone Number: (903) 236-4184
Facsimile Number: (903) 757-4252

000045

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing Motion has been hand-delivered to the Harrison County District Attorney's Office on this ___12___ day of January, 2010.

Kevin H. Settle

## O R D E R

On this _____ day of _____, 2010, came on to be heard the above and foregoing Motion and after considering same, the Court is of the opinion that said motion should be and **IT IS HEREBY ORDERED (GRANTED)  (DENIED)**.

Signed this _____ day of _____, 2010.

_____
**JUDGE PRESIDING**



CAUSE NUMBER: 09-0411-X



| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 71ST DISTRICT COURT |
| VS. | § | IN AND FOR |
| CORTNE MAREESE ROBINSON | § | HARRISON COUNTY, TEXAS |

## MOTION TO REQUIRE THE STATE TO REVEAL ANY AGREEMENT ENTERED INTO BETWEEN THE STATE AND ANY PROSECUTION WITNESS THAT COULD CONCEIVABLY INFLUENCE THEIR TESTIMONY

**TO THE HONORABLE JUDGE OF SAID COURT:**

**COMES NOW,** the Defendant, **CORTNE MAREESE ROBINSON,** moves the Court to issue an Order requiring the District Attorney's Office, any law enforcement agency and/or any prosecution witness to reveal any agreement entered into between said office, agency and witness which agreement could conceivably influence said witness' testimony on the following grounds:

### I.

That the credibility of said witnesses will be an important issue in the principal cause and the evidence of any understanding or agreement as to future prosecution or benefit, either promised or contemplated to be promised, whether implied or expresses, would be relevant to the said witness' credibility and the trial jury is entitled to know of it.

### II.

The Defendant would further move the Court to order the State, by and through its attorneys, to reveal any promises, whether implied or expressed, or any aid, assistance, reward, compensation, or benefit conferred or to be conferred upon any witness, including the witness, which said witness or witnesses would or might receive if said witness testified on behalf of the state, or any implied or expressed promise of aid or assistance or of possible benefit made by the State, by or through any attorney or law enforcement agency, to any attorney or member of the family or to any other person with whom said witness may have been associated or through whom said witness may have learned of said promise.

### III.

That in the event any such agreement has been entered into between the State and any prosecution witness, the Defendant hereby requests the name and address of each such witness, and the exact and complete nature of the agreement, including, aid, assistance, reward, compensation or benefit conferred or to be conferred upon said witness.

WHEREFORE, PREMISES CONSIDERED, the Defendant respectfully prays that this Honorable Court will entertain this Motion prior to the commencement of the trial herein and hold a hearing in order to permit the Defendant to develop evidence herein in order to establish the existence of such an agreement entered into between the State and a prospective prosecution witness that could conceivably influence the testimony of such a witness.

RESPECTFULLY SUBMITTED,

RICHARD HURLBURT
Attorney for Defendant
Bar Number: 10308600
P.O. Box 3732
Longview, Texas 75606
Phone Number: (903) 234-8181
Facsimile Number: (903) 757-2387

KEVIN H. SETTLE
Attorney for Defendant
Bar Number: 18044400
300 North Green, Suite 315
Longview, Texas 75601
Phone Number: (903) 236-4184
Facsimile Number: (903) 757-4252

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing Motion has been hand-delivered to the Harrison County District Attorney's Office on this ___12___ day of January, 2010.

Kevin H. Settle

## ORDER

On this _____ day of _____, 2010, the foregoing Motion was presented in Open Court and after considering same, the Court is of the opinion that said motion should be and **IT IS HEREBY ORDERED (GRANTED)   (DENIED).**

Signed this _____ day of _____, 2010.

_____
**JUDGE PRESIDING**

HAR. ISO... COURT ... COURT

**CAUSE NUMBER: 09-0411-X**

2019 JAN 12  11: 05

SHERRY

BY

| | | |
|---|---|---|
| **THE STATE OF TEXAS** | § | **IN THE 71ST DISTRICT COURT** |
| **VS.** | § | **IN AND FOR** |
| **CORTNE MAREESE ROBINSON** | § | **HARRISON COUNTY, TEXAS** |

**MOTION FOR DISCOVERY OF**
**VICTIM IMPACT TESTIMONY**

 16

### TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, **CORTNE MAREESE ROBINSON**, the Defendant by and through his attorneys of record, and makes this his Motion for Discovery of Victim Impact Testimony, and as grounds therefore would respectfully show as follows:

### I.

Defendant contends that Victim Impact Testimony is not admissible in the case. However, if the Court intends to allow such testimony, the Defendant has a right to discover the nature and scope of this testimony so that the Defendant may receive effective assistance of counsel as guaranteed by the Sixth Amendment to the United States Constitution and Article I, Section 10 of the Texas Constitution. Due process as protected by the Fifth and Fourteenth Amendments, and Article I, Section 19 of the Texas Constitution as well as Article 1.04 V.A.C.C.P. dictates that this information be disclosed to the Defendant. The right to be informed of the nature of the accusation against the Defendant and the right to confront and effectively cross examine the witnesses against the Defendant, also as guaranteed by the Sixth Amendment to the United States Constitution, Article I, Section 10 of the Texas Constitution, and Article 10.5, V.A.C.C.P. provide authority for the Defendant's request that this information be disclosed.

WHEREFORE, PREMISES CONSIDERED, Defendant prays this Court grant this Motion and order the disclosure of the Victim Impact Testimony.

RESPECTFULLY SUBMITTED,

RICHARD HURLBURT
Attorney for Defendant
Bar Number: 10308600
P.O. Box 3732
Longview, Texas 75606
Phone Number: (903) 234-8181
Facsimile Number: (903) 757-2387

KEVIN H. SETTLE
Attorney for Defendant
Bar Number: 18044400
300 North Green, Suite 315
Longview, Texas 75601
Phone Number: (903) 236-4184
Facsimile Number: (903) 757-4252

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing Motion has been hand-delivered to the Harrison County District Attorney's Office on this _____12_____ day of January, 2010.

Kevin H. Settle

**ORDER**

On this _____ day of _____, 2010, came on to be heard the Defendant's Motion for Discovery of Victim Impact Testimony, and after due consideration, the Court is of the opinion, and it is hereby ORDERED, that said Motion is:

_____     **GRANTED**
_____     **DENIED**

SIGNED this the _____day of _____, 2010.

_____
**JUDGE PRESIDING**

HARRIS...
CLERK, ...  ...COURT

CAUSE NUMBER: 09-0411-X

THE STATE OF TEXAS        IN THE 71ST DISTRICT COURT

VS.                    IN AND FOR

CORTNE MAREESE ROBINSON     §     HARRISON COUNTY, TEXAS

## MOTION TO PRODUCE VICTIM'S MEDICAL RECORDS

**NOW COMES** Defendant, **CORTNE MAREESE ROBINSON,** by and through his

Attorneys, pursuant to the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United

States Constitution, as well as article I, Sections 3, 8, 9, 10, 13, 15, and 19 of the Texas

Constitution, and moves the Court to order production of the Victim's medical records on the

day of the incident.  In support of this Motion, DEFENDANT states the following, to-wit:

1. DEFENDANT is charged with the capital murder of Victim.  DEFENDANT is on

trial for HIS life.

2. Victim underwent medical treatment for injuries allegedly received in relation to this

incident, and the medical condition of Victim will be a significant issue at trial.

3. Pursuant to DEFENDANT'S right to due process and right to prepare an adequate

defense, the defendant is entitled to receive information which would bear on the credibility of

the State's witnesses and/or would operate as impeachment.  *See,* U.S. Const. amends. V, VI, &

XIV; *Kyles v. Whitley,* 514 U.S. 419 (1995).  Cf. *Roviaro v. United States,* 353 U.S. 53, 60-62

(1957) (where disclosure of information is relevant and helpful to the defense of an accused, or is

essential to a fair trial, government's privilege to withhold disclosure of the information must

give way).

4. The medical records of Victim would have a direct, and possibly decisive, bearing on

the credibility of the State's forensic pathologist, as well as the credibility of any law

enforcement officer who investigated this case, and would disclose information of an impeaching

nature which may be crucial to determining the truth of the allegations made in the information.

1

5. Furthermore, these records will enable the defense to determine whether it would be necessary to hire any experts to test the validity of the allegations of the State.

WHEREFORE, DEFENDANT respectfully requests that this Court order that the State produce copies of the Victim's medical records.

RESPECTFULLY SUBMITTED,

RICHARD HURLBURT
Attorney for Defendant
Bar Number: 10308600
P.O. Box 3732
Longview, Texas 75606
Phone Number: (903) 234-8181
Facsimile Number: (903) 757-2387

KEVIN H. SETTLE
Attorney for Defendant
Bar Number: 18044400
300 North Green, Suite 315
Longview, Texas 75601
Phone Number: (903) 236-4184
Facsimile Number: (903) 757-4252

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing Motion has been hand-delivered to the Harrison County District Attorney's Office on this _____ day of January, 2010.

Kevin H. Settle

**O R D E R**

On this _____ day of _____, 2010, the foregoing Motion was presented in Open Court and after considering same, the Court is of the opinion that said motion should be and **IT IS HEREBY ORDERED (GRANTED)   (DENIED)**.

Signed this _____ day of _____, 2010.

**JUDGE PRESIDING**

CAUSE NUMBER: 09-0411-X

THE STATE OF TEXAS                    IN THE 71ST DISTRICT COURT

VS.                                   IN AND FOR

CORTNE MAREESE ROBINSON        §      HARRISON COUNTY, TEXAS

## MOTION FOR IN CAMERA INSPECTION                    (18)

### TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES, CORTNE MAREESE ROBINSON, the Defendant, by and through his attorneys of record and files this Motion requesting an in camera inspection by the Court of the State's file in this cause in order to determine the existence, vel non, of any evidence which might tend to be exculpatory or which might tend to mitigate punishment in this case, and in connection with this motion would respectfully show the Court the following:

### I.

The Defendant requests the Court to make an in camera examination of the State's entire file or files in this cause in order to determine whether or not there exists evidence which might tend to exculpate the Defendant, which might tend to impeach state's witnesses whose credibility is material to the issue of guilt or innocence, or which might tend to be in mitigation of any punishment that could be assessed. The Defendant further requests that such information of evidence be delivered to him through his counsel by the Court after the Court's in camera inspection.

### II.

Without regard to whether the Court grants the motion for an in camera inspection, and without regard to whether the Court delivered to the Defendant any of the items so requested above, the Defendant now independently requests that the entire file or files of the State be copied by court personnel prior to trial, and that the same be sealed in order to become a permanent part of the records of this trial, so that the same be available for appellate review.

WHEREFORE, PREMISES CONSIDERED, the Defendant respectfully prays that this Honorable Court will grant this the Defendants Motion for in Camera Inspection in all things or in the alternative, that this Court will set this matter down for a hearing prior to trial on the merits and that at such hearing this Motion will be in all things granted, and for such other and further relief to which the Defendant may be entitled, in justice or in equity.

RESPECTFULLY SUBMITTED,

RICHARD HURLBURT
Attorney for Defendant
Bar Number: 10308600
P.O. Box 3732
Longview, Texas 75606
Phone Number: (903) 234-8181
Facsimile Number: (903) 757-2387

KEVIN H. SETTLE
Attorney for Defendant
Bar Number: 18044400
300 North Green, Suite 315
Longview, Texas 75601
Phone Number: (903) 236-4184
Facsimile Number: (903) 757-4252

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing Motion has been hand-delivered to the Harrison County District Attorney's Office on this ___12___ day of January, 2010.

Kevin H. Settle

## ORDER

On this _____ day of _____, 2010, came on to be heard

Motion for In Camera  Inspection and it appears to the Court that this motion should be and **IT IS**

**HEREBY ORDERED (GRANTED) (DENIED).**

SIGNED on this ___ day of _____, 2010.

_____
**JUDGE PRESIDING**

CAUSE NUMBER: 09-0411-X

THE STATE OF TEXAS                      §        IN THE 71ST DISTRICT COURT

VS.                                     §        IN AND FOR

CORTNE MAREESE ROBINSON                 §        HARRISON COUNTY, TEXAS

### DEFENDANT'S MOTION TO INVOKE THE RULE          ⑲

**TO THE HONORABLE JUDGE OF SAID COURT:**

NOW COMES the Defendant, **CORTNE MAREESE ROBINSON**, in the above entitled

and numbered cause and would show this honorable Court that he requests that all witnesses in this

cause be placed under the rule as authorized by Article 36.03 of Vernon's Annotated Code of

Criminal Procedure and that the witnesses be placed in the custody of any officer and removed out of

the courtroom someplace where they cannot hear the testimony as delivered by any other witness in

this cause, and that they be instructed not to discuss their testimony or the testimony of any other

witness with respect to this case.

WHEREFORE, PREMISES CONSIDERED, the Defendant, **CORTNE MAREESE**

**ROBINSON**, requests that the rule be invoked as previously set out herein and that the witnesses be

advised prior to the beginning of the trial in this cause not to discuss this case or their testimony or

the testimony that has been completed while this trial is in progress.

RESPECTFULLY SUBMITTED,

RICHARD HURLBURT                          KEVIN H. SETTLE
Attorney for Defendant                    Attorney for Defendant
Bar Number: 10308600                      Bar Number: 18044400
P.O. Box 3732                             300 North Green, Suite 315
Longview, Texas 75606                     Longview, Texas 75601
Phone Number: (903) 234-8181             Phone Number: (903) 236-4184

Facsimile Number: (903) 757-2387                    Facsimile Number: (903) 757-4252

**CERTIFICATE OF SERVICE**

     I hereby certify that a true and correct copy of the above and foregoing Motion has been hand-delivered to the Harrison County District Attorney's Office on this ___12___ day of January, 2010.

Kevin H. Settle

# ORDER

     On this _____ day of _____, 2010, the foregoing motion was presented in Open Court and the same is hereby **GRANTED/OVERRULED.**

**JUDGE PRESIDING**

CAUSE NUMBER: 09-0411-X 05

THE STATE OF TEXTUS § IN THE 71ST DISTRICT COURT

VS. § IN AND FOR

CORTNE MAREESE ROBINSON § HARRISON COUNTY, TEXAS

## DEFENDANT'S MOTION THAT BENCH CONFERENCES BE CONDUCTED IN THE JURYS' ABSENCE



**TO THE HONORABLE JUDGE OF SAID COURT:**

NOW COMES, **CORTNE MAREESE ROBINSON**, the Defendant, in the above styled and numbered cause by and through his attorneys of record, and moves the Court to establish as a guideline for the duration of this trial that as a matter of courtroom procedure, all bench conferences will be conducted out of the hearing and the presence of the jury, therefore the jury will be retired to the jury room during bench conferences without the necessity of counsel for the Defendant having to request before the jury that the jury be retired from the courtroom. In support of this motion, the Defendant would show the Court as follows:

**I.**

The Defendant anticipates that during the trial of this cause, on numerous occasions, it will be necessary and proper for defense counsel to make argument and statements concerning evidence admissibility and the propriety of questions before the bench ad outside the presence of the jury. The same may be true for the prosecutor.

**II.**

The defense counsel is aware that it is the usual practice of this Court to hear some such discussions at the bench with the jury in the box but unable to hear the discussion at the bench.

**III.**

The bench conference held before the jury's eyes and out of its hearing is objectionable for several reasons. A bench conference appears to jurors that the attorneys in the case are attempting to hide something from them or deceive them by discussing the case in their presence, but outside their hearing. Also, counsel for the Defendant feels that he, as well as the prosecutor, and the Court has difficulty in speaking in a monotone or whisper that will be inaudible to the jurors if they remain in the jury box during bench conferences and further feels that such jurors will, of necessity, hear the comments made at the bench if the jury so remains; also, counsel, the prosecutor and the Court will

have difficulty in controlling nonverbal conduct such as facial and hand gestures that might also reveal the nature of the communications at the bench. In furtherance of said motion, counsel for the Defendant, finds from past experience that some court reporters have difficulty in recording and transcribing those conferences held at the bench in a monotone or whispered voice.

WHEREFORE, PREMISES CONSIDERED, Defendant prays that the Court will conduct all necessary bench conferences out of the presence of the jury.

RESPECTFULLY SUBMITTED,

RICHARD HURLBURT
Attorney for Defendant
Bar Number: 10308600
P.O. Box 3732
Longview, Texas 75606
Phone Number: (903) 234-8181
Facsimile Number: (903) 757-2387

KEVIN H. SETTLE
Attorney for Defendant
Bar Number: 18044400
300 North Green, Suite 315
Longview, Texas 75601
Phone Number: (903) 236-4184
Facsimile Number: (903) 757-4252

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing Motion has been hand-delivered to the Harrison County District Attorney's Office on this __12__ day of January, 2010.

Kevin H. Settle

## O R D E R

On this ____ day of _____, 2010, the foregoing motion was

presented in Open Court and the same is hereby **GRANTED/OVERRULED**.

**JUDGE PRESIDING**

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing Motion has been hand-delivered to the Harrison County District Attorney's Office on this ___12___ day of January, 2010.

Kevin H. Settle

## O R D E R

On this _____ day of _____, 2010, came on to be heard the above and foregoing Motion and after considering same, the Court is of the opinion that said motion should be and **IT IS HEREBY ORDERED (GRANTED)   (DENIED).**

Signed this _____ day of _____, 2010.

**JUDGE PRESIDING**

CAUSE NUMBER: 09-0411-X

THE STATE OF TEXAS

VS.

CORTNE MAREESE ROBINSON

IN THE 71ST DISTRICT COURT

IN AND FOR

HARRISON COUNTY, TEXAS

## DEFENDANT'S MOTION FOR LIMITING
## INSTRUCTIONS DURING COURSE OF TRIAL

(21)

**TO THE HONORABLE JUDGE OF THE COURT:**

**NOW COMES,** the Defendant in the above entitled and numbered cause, and makes and files this Motion, and in support of same would respectfully show unto the Court as follows:

I.

Defendant anticipates that during the course of trial the State will seek to admit evidence which, if admissible at all, is admissible for only a limited purpose.

II.

Pursuant to Rule 105, Texas Rules of Criminal Evidence, Defendant requests that the Court, at the time such evidence is admitted, instruct the jury as to the limited purpose and scope of the evidence.

**WHEREFORE, PREMISES CONSIDERED,** Defendant respectfully prays that the instant motion be in all things granted.

RESPECTFULLY SUBMITTED,

RICHARD HURLBURT
Attorney for Defendant
Bar Number: 10308600
P.O. Box 3732
Longview, Texas 75606
Phone Number: (903) 234-8181
Facsimile Number: (903) 757-2387

KEVIN H. SETTLE
Attorney for Defendant
Bar Number: 18044400
300 North Green, Suite 315
Longview, Texas 75601
Phone Number: (903) 236-4184
Facsimile Number: (903) 757-4252

000059

HARRISON COUN . . TEXAS

**CAUSE NUMBER: 09R0411-X**

| | | |
|---|---|---|
| THE STATE OF TEXAS | 2010 JAN | IN THE 71ST DISTRICT COURT |
| VS. | SHERRY GRIFFIN | IN AND FOR |
| CORTNE MAREESE ROBINSON | BY DEPUTY | HARRISON COUNTY, TEXAS |

<u>**MOTION TO ADJOURN AT A REASONABLE TIME**</u>          ( 22 )

**TO THE HONORABLE JUDGE OF THE COURT:**

    **COMES NOW** the Defendant, by and through his attorneys of record, and moves the Court pursuant to the Sixth, Eighth and Fourteenth Amendments to the United States Constitution and to the laws and Constitution of the State of Texas, to enter an Order requiring that the capital murder trial of the Defendant be adjourned at a reasonable time each and every day of trial. In support of this motion, the Defendant would show the Court the following:

I.

    The Defendant is charged with the offense of Capital Murder. The prosecutor and defense counsel anticipate that the trial, including voir dire, could take approximately six weeks.

II.

    A traditional work day consists of eight hours. Through this trial, each evening counsel must prepare for the next day. Counsel must consult with the Defendant concerning each day's developments and strategy to be pursued on the next day. Counsel must also research legal questions which arise in the trial, make arrangements for witnesses' travel and confer with them prior to their testimony. An excessive work schedule would prohibit the Defendant from receiving effective representation of counsel guaranteed him under the Sixth Amendment to the United States Constitution.

    **WHEREFORE** the Defendant respectfully requests that the Court begin and adjourn said case at reasonable hours.

Page 1 of 2

RESPECTFULLY SUBMITTED,

_____          _____
RICHARD HURLBURT                   KEVIN H. SETTLE
Attorney for Defendant             Attorney for Defendant
Bar Number: 10308600               Bar Number: 18044400
P.O. Box 3732                      300 North Green, Suite 315
Longview, Texas 75606             Longview, Texas 75601
Phone Number: (903) 234-8181       Phone Number: (903) 236-4184
Facsimile Number: (903) 757-2387   Facsimile Number: (903) 757-4252

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing Motion has been hand-delivered to the Harrison County District Attorney's Office on this _____ day of January, 2010.

_____
Kevin H. Settle

## O R D E R

On this _____ day of _____, 2010, came on to be heard the above and foregoing Motion and after considering same, the Court is of the opinion that said motion should be and **IT IS HEREBY ORDERED (GRANTED)   (DENIED)**.

Signed this _____ day of _____, 2010.

_____
**JUDGE PRESIDING**

CAUSE NUMBER: 09-0411-X

| | | |
|---|---|---|
| THE STATE OF TEXAS | | IN THE 71ST DISTRICT COURT |
| VS. | | IN AND FOR |
| CORTNE MAREESE ROBINSON | | HARRISON COUNTY, TEXAS |

**DEFENDANT'S MOTION REQUESTING THE
COURT TO MAKE CONCRETE RULINGS ON
OBJECTIONS MADE TO THE PROSECUTION'S FINAL ARGUMENT**

(23)

**TO THE HONORABLE JUDGE OF THE COURT:**

NOW COMES the Defendant in the above entitled and numbered cause by and through his attorneys of record, and moves this Court to issue concrete rulings which either sustain or overrule each and every objection made by counsel for the Defendant during the final argument to the jury. The basis for this motion is that the Defendant must secure a concrete adverse ruling from the Court on its objections in order to preserve error in the prosecutor's jury summation and the Defendant wishes to avoid having to engage in a colloquy with the Court in the event the Court by inadvertence chooses to answer defense objections with declarative sentences such as "The jury has heard (or will recall) the evidence" or "Stay in the record".

WHEREFORE, PREMISES CONSIDERED, the Defendant prays that the Court grant this motion.

RESPECTFULLY SUBMITTED,

RICHARD HURLBURT
Attorney for Defendant
Bar Number: 10308600
P.O. Box 3732
Longview, Texas 75606
Phone Number: (903) 234-8181
Facsimile Number: (903) 757-2387

KEVIN H. SETTLE
Attorney for Defendant
Bar Number: 18044400
300 North Green, Suite 315
Longview, Texas 75601
Phone Number: (903) 236-4184
Facsimile Number: (903) 757-4252

Page 1 of 2

000062

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing Motion has been hand-delivered to the Harrison County District Attorney's Office on this _____ 12 _____ day of January, 2010.

Kevin H. Settle

## O R D E R

On this _____ day of _____, 2010, came on to be heard the above and foregoing Motion and after considering same, the Court is of the opinion that said motion should be and **IT IS HEREBY ORDERED (GRANTED)   (DENIED).**

Signed this _____ day of _____, 2010.

_____
**JUDGE PRESIDING**

CAUSE NUMBER: 09-0481-X

| | | |
|---|---|---|
| **THE STATE OF TEXAS** | § | **IN THE 71ST DISTRICT COURT** |
| **VS.** | § | **IN AND FOR** |
| **CORTNE MAREESE ROBINSON** | § | **HARRISON COUNTY, TEXAS** |

**MOTION FOR DEFENDANT TO BE TRIED IN CIVILIAN CLOTHES**

**TO THE HONORABLE JUDGE OF THE COURT:**

COMES NOW, the Defendant, by and through his attorneys of record, and would show the Court as follows:

**I.**

The Defendant is currently charged with the offense of Capital Murder. He is indigent, represented by court-appointed attorneys and is presently incarcerated in the Harrison County Jail.

**II.**

It has been the policy of this Court that jail defendants are allowed to wear civilian clothes during voir dire and trial and request is made for this policy to continue in this case.

**III.**

By this motion, Defendant's counsel requests that the Defendant be allowed to stand trial in civilian clothes and also be free of handcuffs, shackles and/or other securing devises. To require Defendant to appear before the jury in jail clothes or secured in some manner or way would be highly prejudicial to the Defendant and would deprive him of a fair and impartial trial, due process and subject him to cruel and unusual punishment in violation of the Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

**IV.**

Request is also made that the Sheriff's Office be ordered to bring the Defendant to Court on time and, when possible, a little before any and all appearances before the jury.

**WHEREFORE, PREMISES CONSIDERED,** Defendant prays this motion be granted in all things.

Page 1 of 2

RESPECTFULLY SUBMITTED,

RICHARD HURLBURT
Attorney for Defendant
Bar Number: 10308600
P.O. Box 3732
Longview, Texas 75606
Phone Number: (903) 234-8181
Facsimile Number: (903) 757-2387

KEVIN H. SETTLE
Attorney for Defendant
Bar Number: 18044400
300 North Green, Suite 315
Longview, Texas 75601
Phone Number: (903) 236-4184
Facsimile Number: (903) 757-4252

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing Motion has been hand-delivered to the Harrison County District Attorney's Office on this ___12___ day of January, 2010.

Kevin H. Settle

## O R D E R

On this _____ day of _____, 2010, came on to be heard the above and foregoing Motion and after considering same, the Court is of the opinion that said motion should be and **IT IS HEREBY ORDERED (GRANTED)   (DENIED)**.

Signed this _____ day of _____, 2010.

_____
**JUDGE PRESIDING**

Page 2 of 2

HARRISON CO....
CLERK DISTRICT COURT
**CAUSE NUMBER: 09-0411-X**

2019 JAN 12   AM 11: 06

SHERRY GRIFFI...

BY _____ **IN AND FOR**

DEPUTY

| | | |
|---|---|---|
| **THE STATE OF TEXAS** | § | **IN THE 71ST DISTRICT COURT** |
| **VS.** | § | |
| **CORTNE MAREESE ROBINSON** | § | **HARRISON COUNTY, TEXAS** |

## MOTION IN LIMINE NUMBER 1
## PHYSICAL EVIDENCE                                    (25)

**TO THE HONORABLE JUDGE OF THE COURT:**

    **COMES NOW,** the Defendant in the above entitled and numbered cause, and moves the Court to order the State not to exhibit in any manner any item of evidence before the jury prior to offering the item into evidence, and in support of such motion, Defendant shows:

I.

    Items of physical evidence have no probative value prior to their authentication and admission, and should not be considered for any purpose by the jury prior to that time.

II.

    For this reason, it is improper and prejudicial for the jury to view any item of physical evidence prior to the establishment of its admissibility as it invites the jury to speculate on facts not in evidence.

    **WHEREFORE, PREMISES CONSIDERED,** Defendant prays the Court grant this motion and order that the District Attorney not display or exhibit in any manner any item of physical evidence prior to offering that item for admission into evidence.

RESPECTFULLY SUBMITTED,

| | |
|---|---|
| RICHARD HURLBURT | KEVIN H. SETTLE |
| Attorney for Defendant | Attorney for Defendant |
| Bar Number: 10308600 | Bar Number: 18044400 |
| P.O. Box 3732 | 300 North Green, Suite 315 |
| Longview, Texas 75606 | Longview, Texas 75601 |
| Phone Number: (903) 234-8181 | Phone Number: (903) 236-4184 |
| Facsimile Number: (903) 757-2387 | Facsimile Number: (903) 757-4252 |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing Motion has been hand-delivered to the Harrison County District Attorney's Office on this _____ 12 _____ day of January, 2010.

Kevin H. Settle

## O R D E R

On this _____ day of _____, 2010, came on to be heard the

above and foregoing Motion and after considering same, the Court is of the opinion that said motion

should be and **IT IS HEREBY ORDERED (GRANTED)   (DENIED)**.

Signed this _____ day of _____, 2010.

_____

**JUDGE PRESIDING**

FIL...
HARRIS...
CLER...

**CAUSE NUMBER:** 09-0411-X

20.0 JAN 12 11:06

SHER... CR...

BY_____

THE STATE OF TEXAS § IN THE 71ST DISTRICT COURT

VS. § IN AND FOR

CORTNE MAREESE ROBINSON § HARRISON COUNTY, TEXAS

26

## MOTION IN LIMINE NUMBER 2
## REGARDING STATEMENTS OF DEFENDANT TO HEALTH CARE PROVIDERS

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW, **CORTNE MAREESE ROBINSON,** by and through his attorneys of record, the Defendant in the above entitled and numbered cause, and files this his Motion in Limine Regarding Statements of Defendant to Health Care Providers, and for same would show unto the Court the following:

### I.

Defendant moves the Court to order the State and its witnesses not to mention, testify regarding, or allude to, directly or indirectly or in the form of report, in the presence of the jury, any statements allegedly made by Defendant to or in the presence of any health care providers employed by or under contract or with the Harrison County Jail or any other penal facility in which Defendant has been incarcerated prior to a hearing being held outside the presence of the jury to determine the following:

    (1) Whether Defendant was in custody at the time said statements were made;
    (2) Whether said statements were made voluntarily.

### II.

This Motion is made pursuant to Defendant's rights as guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, Lykins v. State, 784 S.W.2d 32,37 (Tex. Crim. App. 1989). Cf. Grosso v. United States 88 S.Ct. 709 (1968) (where State of Pennsylvania adopted comprehensive statutory system for punishment of gambling, including the payment of excise taxes on wagering, Defendant could not be prosecuted for failure to pay said taxes, because payment thereof would have obliged him to incriminate himself. Id. at 711-13) Here, to obtain necessary medical care and treatment while incarcerated, Defendant may be required to make statements to health care providers he otherwise would not make. See also Estelle v. Smith, 101 S.Ct. 1866 (1981). To require Defendant to object to the admissibility of any such statements in the presence of the jury would be prejudicial and detrimental to his constitutionally guaranteed rights, if it was subsequently determined that the statements were not admissible.

WHEREFORE, Defendant respectfully prays that this Motion be, in all things, granted.

RESPECTFULLY SUBMITTED,

**RICHARD HURLBURT**
Attorney for Defendant
Bar Number: 10308600
P.O. Box 3732
Longview, Texas 75606
Phone Number: (903) 236-8181
Facsimile Number: (903) 757-2387

**KEVIN H. SETTLE**
Attorney for Defendant
Bar Number: 18044400
300 North Green, Suite 315
Longview, Texas 75601
Phone Number: (903) 236-4184
Facsimile Number: (903) 757-4252

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing Motion has been hand-delivered to the Harrison County District Attorney's Office on this ___12___ day of January, 2010.

Kevin H. Settle

## O R D E R

On this _____ day of _____, 2010, the foregoing Motion was

presented in Open Court and the same is hereby **(GRANTED)** **(DENIED)** and it is ordered that this

Motion and Order be made a part of the record hereof.

_____
**JUDGE PRESIDING**

CAUSE NUMBER: 09-0411-XRT

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 71ST DISTRICT COURT |
| VS. | § | IN AND FOR |
| CORTNE MAREESE ROBINSON | § | HARRISON COUNTY, TEXAS |



### MOTION IN LIMINE NUMBER 3
### FULL OPENING STATEMENT BY STATE

**TO THE HONORABLE JUDGE OF THE COURT:**

COMES NOW the Defendant in the above entitled and numbered cause and respectfully moves this Court to require the State to make a full opening statement prior to the introduction of any testimony in this cause and to make a complete opening argument to the jury during the guilt-innocence phase of the trial and during the punishment phase of the trial, if same becomes necessary.

The Defendant would show the Court that with respect to the opening statement, Article 36.01, C.C.P. provides that after the indictment is read to the jury and the Defendant's plea is entered, that "the State's attorney shall state to the jury the nature of the accusation and the facts which are expected to be proved by the State in support thereof".

That with respect to a full and complete opening argument, the Defendant would show the Court that while both the counsel for the State and counsel for the Defendant are accorded equal time to present final arguments to the jury, it is unfair and prejudicial to the Defendant if the State is permitted to completely waive the opening argument or to make only a partial opening argument as the Defendant is therefore precluded from answering said argument and joining issue with the facts stated by the prosecutor. Further, this procedure permits undue advantage to be given to the prosecutor who is then accorded substantially more time for his closing argument which under the law may not be answered by the Defendant. See Article 36.07, C.C.P.

WHEREFORE, PREMISES CONSIDERED, the Defendant respectfully prays that this Honorable Court will grant this his Motion in Limine Number 4.

RESPECTFULLY SUBMITTED,

RICHARD HURLBURT
Attorney for Defendant
Bar Number: 10308600

KEVIN H. SETTLE
Attorney for Defendant
Bar Number: 18044400

000070

P.O. Box 3732
Longview, Texas 75606
Phone Number: (903) 234-8181
Facsimile Number: (903) 757-2387

300 North Green, Suite 315
Longview, Texas 75601
Phone Number: (903) 236-4184
Facsimile Number: (903) 757-4252

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing Motion has been hand-delivered to the Harrison County District Attorney's Office on this ___12___ day of January, 2010.

Kevin H. Settle

## O R D E R

On this _____ day of _____, 2010, came on to be heard

the above and foregoing Motion and after considering same, the Court is of the opinion that said

motion should be and **IT IS HEREBY ORDERED (GRANTED)   (DENIED)**.

Signed this _____ day of _____, 2010.

_____
**JUDGE PRESIDING**

HARRISON CO.
CLERK DISTRICT COURT

CAUSE NUMBER: 09-0416X

2010 JAN 12

SHERRY GRIFFIN

BY

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 71ST DISTRICT COURT |
| VS. | § | IN AND FOR |
| CORTNE MAREESE ROBINSON | § | HARRISON COUNTY, TEXAS |

(28)

### MOTION IN LIMINE NUMBER 4
### DEFENDANT'S RIGHT TO APPEAL: HEARINGS
### OUTSIDE PRESENCE OF JURY: DEFENDANT'S RIGHT TO REMAIN SILENT

**TO THE HONORABLE JUDGE OF THE COURT:**

NOW COMES, CORTNE MAREESE ROBINSON, the Defendant in the above entitled and numbered cause and requests this Honorable Court to instruct the prosecution not to mention, allude to, or refer to, directly or indirectly, during any stage of this trial, including but not limited to the voir dire examination, opening statements, direct and cross-examination of any witnesses, jury arguments, or during any part of the punishment hearing, if any is held, that:

1. The Defendant in this case has the right to appeal the judgment of conviction;

2. A hearing outside the presence of the jury is necessary because of a motion or request filed by the Defendant in this case, thereby placing the blame squarely upon the shoulders of the Defendant for actions taken by the Court in accordance with the law;

3. The Defendant, subsequent to his arrest in this cause, exercised his constitutional right to remain silent and not answer any questions asked of him by law enforcement officials.

WHEREFORE, PREMISES CONSIDERED, the Defendant respectfully prays that this Honorable Court will grant this his Motion in Limine.

000072

RESPECTFULLY SUBMITTED,

RICHARD HURLBURT
Attorney for Defendant
Bar Number: 10308600
P.O. Box 3732
Longview, Texas 75606
Phone Number: (903) 234-8181
Facsimile Number: (903) 757-2387

KEVIN H. SETTLE
Attorney for Defendant
Bar Number: 18044400
300 North Green, Suite 315
Longview, Texas 75601
Phone Number: (903) 236-4184
Facsimile Number: (903) 757-4252

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing Motion has been hand-delivered to the Harrison County District Attorney's Office on this _12_ day of January, 2010.

Kevin H. Settle

## ORDER

On this _____ day of _____, 2010, the foregoing Motion was presented in Open Court and the Court hereby enters the following orders:

1.    GRANTED_____        DENIED_____

2.    GRANTED_____        DENIED _____

3.    GRANTED_____        DENIED _____

SIGNED on this _____ day of _____, 2010.

_____
**JUDGE PRESIDING**

CAUSE NUMBER 09-0411-X

THE STATE OF TEXAS

VS.

CORTNE MAREESE ROBINSON

§
§
§
§
§
§

IN THE 71ST DISTRICT COURT

IN AND FOR

HARRISON COUNTY, TEXAS

## MOTION IN LIMINE NUMBER 6
## (NO OUTSIDE MATERIAL FOR JURY)

30

### TO THE HONORABLE JUDGE OF THE COURT:

NOW COMES the Defendant in the above entitled and numbered cause and files this Motion in Limine and moves this Court for an order instructing the Bailiff of this Court to conform to the hereinafter requested instructions:

I.

That the Bailiff be instructed not to allow any juror ultimately impaneled in this case access to any outside reading material without such reading material having been supplied to the Defendant for inspection and approval, or inclusion as a part of the record in this case. To permit otherwise will make available to those impaneled jurors possible evidence whose source would be outside of this Courtroom, thereby violating the Defendant's right to a confrontation of witnesses.

WHEREFORE, PREMISES CONSIDERED, the Defendant prays that the above motion be granted in its entirety.

RESPECTFULLY SUBMITTED,

RICHARD HURLBURT
Bar Number: 10308600
P.O. Box 3732
Longview, Texas 75606
Phone Number: (903) 234-8181
Facsimile Number: (903) 757-2387

KEVIN H. SETTLE
Bar Number: 18044400
300 North Green, Suite 315
Longview, Texas 75601
Phone Number: (903) 236-4184
Facsimile Number: (903) 757-4252

000074

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing Motion has been hand-delivered to the Harrison County District Attorney's Office on this ___12___ day of January, 2010.

Kevin H. Settle

**O R D E R**

On this _____ day of _____, 2010, came on to be heard the above and foregoing Motion and after considering same, the Court is of the opinion that said motion should be and IT IS HEREBY ORDERED (GRANTED)   (DENIED).

Signed this _____ day of _____, 2010.

_____
**JUDGE PRESIDING**

Page 2 of 2

000075

**CAUSE NUMBER: 09-0411-X**

THE STATE OF TEXAS                                    IN THE 71ST DISTRICT COURT

VS.                                                  §        IN AND FOR

CORTNE MAREESE ROBINSON          §        HARRISON COUNTY, TEXAS

<u>**MOTION TO SUPPRESS ARREST AND SEARCH**</u>                       ③①

**TO THE HONORABLE JUDGE OF SAID COURT:**

The Defendant, **CORTNE MAREESE ROBINSON**, by and through his attorneys of record,

respectfully moves this Honorable Court to suppress all evidence seized as the result of:

1.        a search of the Defendant's person on or about September 20, 2009 in Harrison

County, Texas, and all statements either written or oral made after the arrest of

the Defendant and

2.        a search of the Defendant's effects or property on or about September 20, 2009.


The Defendant relies upon the following reasons to support aforesaid motion:

I.

That the Defendant was arrested without warrant and without probable cause in violation of

the Texas Code of Criminal procedure, Articles 1.06 and 38.23 and IV, V, and XIV Amendments to

the Constitution of the United States.

II.

The law enforcement officers before and on the occasion in question unlawfully trespassed

and intruded upon the privacy of this Defendant without lawful authority, without probable cause and

without a valid search warrant.  The trespass and intrusion were followed by the search of the

Defendant and /or his effects and seizure of evidence without consent or reasoned consent or lawful authority and without a lawful search warrant or probable cause.

III.

That the search of his person and personal effects was therefore illegal and all the fruits of the search must be suppressed.

IV.

That if such arrest or search were upon an arrest warrant or a search warrant, the affidavit therefore did not allege sufficient facts to establish probable cause.

V.

Such search and seizure is therefore unlawful and all fruits thereof must be suppressed. All statements, either written or orally made, and all evidence seized during and after such fruits of the initial violation of rights of this Defendant.

VI.

All statements either written or orally made after the said Defendant's arrest are fruits of the illegal arrest and search and are therefore inadmissible as fruits of the poisonous tree.

**WHEREFORE, PREMISES CONSIDERED,** Defendant prays that upon hearing, this motion be granted and that the evidence referred to herein be in all things suppressed and the District Attorney and his witnesses be ordered not to disclose to the Jury or Court or in any way to allude to the fact of any material or statement obtained thereby.

RESPECTFULLY SUBMITTED,

RICHARD HURLBURT
Attorney for Defendant
Bar Number: 10308600
P.O. Box 3732
Longview, Texas 75606
Phone Number: (903) 234-8181
Facsimile Number: (903) 757-2387

KEVIN H. SETTLE
Attorney for Defendant
Bar Number: 18044400
300 North Green, Suite 315
Longview, Texas 75601
Phone Number: (903) 236-4184
Facsimile Number: (903) 757-4252

## CERTIFICATE OF SERVICE

I, KEVIN H. SETTLE, attorney for the Defendant, hereby certify that a true and correct copy

of the above and foregoing Motion was hand delivered to the District Attorney's Office of Harrison

County, Texas on this _12_ day of January, 2010.

KEVIN H. SETTLE

## ORDER

On this _____ day of _____, 2010, the foregoing Motion to Suppress

Arrest and Search was presented in Open Court and the same is hereby (GRANTED) (DENIED, to

which action of the Court the Defendant excepts) and it is ORDERED that this Motion and Order

shall be made a part of the record hereof.

JUDGE PRESIDING

CAUSE NUMBER: 09-0411-X

THE STATE OF TEXAS § IN THE 71ST DISTRICT COURT

VS. § IN AND FOR

CORTNE MAREESE ROBINSON § HARRISON COUNTY, TEXAS

(32)

## DEFENDANT'S MOTION TO SUPPRESS INFLAMMATORY PHOTOGRAPHS

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW, **CORTNE MAREESE ROBINSON**, by and through his attorneys of record, makes and files this motion to suppress the display or introduction into evidence of inflammatory photographs before the jury or prospective jurors herein and in support of said motion would show the Court as follows:

### I.

Defendant has reason to believe, and therefore alleges, that the State, as a result of its investigation into the occurrence made the basis of this case, has in its possession certain photographs, including pictures of the body of the victim or victims of the alleged offense herein, either at the scene of the alleged offense or at the time of any autopsy performed on said victims in connection with the State's investigation herein. It is believed and therefore alleged that such photographs are of a repulsive and emotionally inflammatory nature and are therefore likely to appeal to the passions and prejudices of any juror or potential juror. As such, the probative value, if any, of these photographs is far outweighed by their inflammatory and prejudicial nature and impact.

### II.

In further support of this Motion, the Defendant would advise the Court that the defense will not dispute in the trial of this cause that the victims died as a result of injuries suffered in the occurrence giving rise to the indictment herein, nor will the defense dispute the nature and extent of said injuries. Therefore, photographs depicting such injuries or their extent in any fashion would be completely irrelevant and immaterial to the trial of this cause and if tendered into evidence or displayed to the jury by the State, would be done solely and only for the purpose of attempting to inflame the minds of the jurors so as to induce them to return a verdict based on emotions.

### III.

In order to protect the rights of the accused herein, it is requested that the Court conduct, outside the presence of the jury or prospective jurors herein, an examination of any and all photographs in the possession of the State concerning this case and at that time make a determination as to which photographs should be excluded from evidence or from the view of the jury or

prospective jurors.

WHEREFORE, PREMISES CONSIDERED, Defendant prays for an order of the Court pursuant to this Motion.

RESPECTFULLY SUBMITTED,

RICHARD HURLBURT
Attorney for Defendant
Bar Number: 10308600
P.O. Box 3732
Longview, Texas 75606
Phone Number: (903) 234-8181
Facsimile Number: (903) 757-2387

KEVIN H. SETTLE
Attorney for Defendant
Bar Number: 18044400
300 North Green, Suite 315
Longview, Texas 75601
Phone Number: (903) 236-4184
Facsimile Number: (903) 757-4252

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing Motion has been hand-delivered to the Harrison County District Attorney's Office on this ___12___ day of January, 2010.

Kevin H. Settle

## O R D E R

On this ____ day of _____, 2010, the foregoing motion was

presented in Open Court and the same is hereby **GRANTED/OVERRULED**.

**JUDGE PRESIDING**

CAUSE NUMBER: 09-0411-X

HARRISON
CLERK DISTRICT COURT

STATE OF TEXAS

2010 JAN 12 AM 11: 06

IN THE 71ST DISTRICT COURT

V.

SHERRY GRIFFIN

IN AND FOR

BY_____

DEPUTY

CORTNE MAREESE ROBINSON              §              HARRISON COUNTY, TEXAS

33

## MOTION FOR IDENTIFICATION HEARING OUTSIDE PRESENCE OF JURY

### TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, CORTNE MAREESE ROBINSON, by and through his attorneys of record, in the above styled and numbered cause and prior to the introduction of any testimony in said cause, advised the Honorable Court that he objects to the introduction of any testimony from any witness in this cause concerning any purported identification of the Defendant by a witness until such time as the Court has conducted a hearing out of the presence of the jury to determine what pre-trial identification procedures were followed by the Police Department or by any of the witnesses to determine:

1.    Whether or not the Defendant's right to counsel under the Sixth Amendment and the Fourteenth Amendment of the Constitution of the United States has in any way been violated; and

2.    Whether or not any in-court identification by any witness has been in any way unfairly influenced by any police officer or anyone else in violation of the Due Process Clause of the Fourteenth Amendment.

Defendant would further object to the introduction of any hearsay evidence of identification by any witness from any third party witness who may have been present at any line-up proceeding or photograph identification proceeding on the basis that the evidence would be hearsay and on the basis as set out above.

Defendant further objects to any evidence of any identification of the Defendant, either by photograph or in a line-up in that said evidence would not be admissible as it would have been obtained:

1.    In violation of the Defendant's right to counsel under the Sixth and Fourteenth Amendments of the Constitution of the United States of America, there being no waiver of counsel; and

2.    The introduction of said testimony would be cumulative and would serve only to bolster a witness whose identification of the Defendant has not been impeached by showing contradictory testimony as to the identification of this Defendant.

WHEREFORE, Defendant prays that this Honorable Court grant this Motion, excuse the jury and hear evidence of any pre-trial identification procedure involving any of the identification witnesses and any police officer who has investigated same. Defendant also respectfully requests leave of this Court to refer to this Motion during the trial of this cause so as to avoid the necessity of repeating the foregoing objection in the presence of the jury.

RESPECTFULLY SUBMITTED,

RICHARD HURLBURT
Attorney for Defendant
Bar Number: 10308600
P.O. Box 3732
Longview, Texas 75606-3732
Phone Number: (903) 234-8181
Facsimile Number: (903) 757-2387

KEVIN H.SETTLE
Attorney for Defendant
Bar Number: 18044400
300 North Green, Suite 315
Longview, Texas 75601
Phone Number: (903)236-4184
Facsimile Number: (903) 757-4252

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing Motion has been hand-delivered to the Harrison County District Attorney's Office on this ___12___ day of January, 2010.

Kevin H. Settle

## ORDER

On this the _____ day of _____, 2010, the foregoing motion was presented in Open Court and the same is hereby **GRANTED/DENIED** and IT IS ORDERED that this Motion and Order shall be made a part of the record hereof.

**JUDGE PRESIDING**

HARRISON COUNTY DISTRICT
CLERK HARRISON TEXAS
CAUSE NUMBER: 09-0411-X

2009 JAN 12   AM 11: 06

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 71ST DISTRICT COURT |
| VS. | § | IN AND FOR |
| CORTNE MAREESE ROBINSON | § | HARRISON COUNTY, TEXAS |

SHERRY GRIFFIS

BY _____

34

## MOTION FOR SPECIAL VENIRE

**TO THE HONORABLE JUDGE OF SAID COURT:**

NOW COMES, CORTNE MAREESE ROBINSON, the Defendant in the above entitled and numbered cause, by and through his attorneys of record, and would show the Court as follows:

**I.**

The Defendant is charged with the offense of Capital Murder.

**II.**

The Defendant hereby requests that the Court order that a Special Venire be issued in the above case under Texas Code of Criminal Procedure, Art. 34.01 et. seq.,for the summons of prospective jurors for the trial of the Defendant's case.

**III.**

The Defendant would further show that if a Special Venire is not issued or called for in this case, the Defendant will be deprived of the protections and safeguards of the Fifth, Sixth and Fourteenth Amendments to the U.S. Constitution, and Art. 1, Section 10 the Texas Constitution.

WHEREFORE, PREMISES CONSIDERED, the Defendant respectfully prays that the Court grant his motion in all things.

RESPECTFULLY SUBMITTED,

RICHARD HURLBURT
Bar Number: 10308600
P.O. Box 3732
Longview, Texas 75606
Phone Number: (903) 234-8181
Facsimile Number: (903) 757-2387

KEVIN H. SETTLE
Bar Number: 18044400
300 North Green, Suite 315
Longview, Texas 75601
Phone Number: (903) 236-4184
Facsimile Number: (903) 757-4252

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing Motion has been hand-delivered to the Harrison County District Attorney's Office on this _____12_____ day of January, 2010.

Kevin H. Settle

**O R D E R**

On this _____ day of _____, 2010, the foregoing motion was

presented in Open Court and the same is hereby **GRANTED/OVERRULED**.

_____
**JUDGE PRESIDING**

FILED
HARRISON COO... ...AS
CLERK DISTRICT COURT

CAUSE NUMBER: 09-0411-X

2010 JAN 12  AM 11: 06

( SHERRY GRIFFIS

BY _____

DEPUTY

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 71ST DISTRICT COURT |
| VS. | § | IN AND FOR |
| CORTNE MAREESE ROBINSON | § | HARRISON COUNTY, TEXAS |

( 35 )

## DEFENDANT'S MOTION FOR A LIST
## OF VENIREPERSONS SUMMONED FOR THE WEEK

### TO THE HONORABLE JUDGE OF SAID COURT:

   **COMES NOW, CORTNE MAREESE ROBINSON**, Defendant, in the above entitled and numbered cause by and through his attorneys of record, and moves the Court to order the District Clerk to serve a copy of the names of the persons summoned as venirepersons for the week for which this cause is set for said trial on or before two (2) weeks prior to the date set for said trial, and in support of this motion, the Defendant would show the Court as follows:

### I.

   The Defendant is charged in the above entitled and numbered cause with the offense of Capital Murder. The Defendant has been continuously incarcerated in the Gregg County Jail and will remain so incarcerated until and throughout his trial. Consequently, the Defendant is entitled to and requests service of a copy of the list of the venirepersons summoned for the week of the trial.

### II.

   In order that the Defendant's counsel may effectively protect the Defendant's right to a fair and impartial jury, it is necessary that Defendant's counsel be afforded the opportunity to examine the list of the persons summoned as venirepersons in advance of the trial. Because the Defendant is incarcerated in the Gregg County jail, it will be highly difficult for the Defendant's counsel to obtain a copy of the list of the venirepersons in time to adequately appraise him of the contents thereof, if such list is served only upon the Defendant at the Gregg County jail. Thus, the Defendant's counsel desires to have a copy of the list served on him. Counsel for Defendant is agreeable to obtaining in his copy a list of the venirepersons at the office of the Clerk of the Court and would dispense with formal service upon counsel if the Court so agrees and orders that the defense counsel be furnished with the aforesaid list by the Clerk's office.

   WHEREFORE, PREMISES CONSIDERED, the Defendant prays that the Court order the District Clerk of Gregg County, Texas to prepare a copy of the list of the venirepersons and to make such list available to the Defendant and to the Defendant's counsel, KEVIN H. SETTLE or RICHARD HURLBURT, on or before two (2) weeks prior to the date of the setting of this case for trial.

RESPECTFULLY SUBMITTED,

RICHARD HURLBURT
Attorney for Defendant
Bar Number: 10308600
P.O. Box 3732
Longview, Texas 75606
Phone Number: (903) 234-8181
Facsimile Number: (903) 757-2387

KEVIN H. SETTLE
Attorney for Defendant
Bar Number: 18044400
300 North Green, Suite 315
Longview, Texas 75601
Phone Number: (903) 236-4184
Facsimile Number: (903) 757-4252

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing Motion has been hand-delivered to the Harrison County District Attorney's Office on this __12__ day of January, 2010.

Kevin H. Settle

## O R D E R

On this the _____ day of _____, 2010, the foregoing Motion was presented in Open Court and the same is hereby **(GRANTED) (DENIED)** and it is ordered that this Motion and Order shall be made a part of the record hereof.

_____
**JUDGE PRESIDING**

CAUSE NUMBER: 09-0411-X

THE STATE OF TEXAS      §    IN THE 71ST DISTRICT COURT

VS.      §    IN AND FOR

CORTNE MAREESE ROBINSON    §    HARRISON COUNTY, TEXAS

(36)

## MOTION FOR EQUAL ACCESS TO
## BACKGROUND INFORMATION ON PROSPECTIVE JURORS

**TO THE HONORABLE JUDGE OF SAID COURT:**

    **COMES NOW, CORTNE MAREESE ROBINSON,** Defendant in the above-styled and numbered cause, and files this Motion for Equal Access to Background Information on Prospective Jurors, and for such cause would show the Court as follows:

### I.

    The Defendant is indigent and does not have access to private and confidential information gathered by law enforcement agencies regarding arrests and convictions of prospective jurors.

### II.

    The Defendant does not have access to private and confidential information gathered by law enforcement agencies regarding arrests and convictions of prospective jurors.

### III.

    The prosecution will generally utilize confidential and restricted information regarding arrests, convictions and other data collected by law enforcement agencies. Additionally, the prosecution has access to statewide data through N.C.I.C. that would provide them background information on prospective jurors. The Defendant does not have access to such information and is specifically prohibited by laws from such access.

### IV.

    The Defense also urges this Motion on a theory that the prosecution has a state and federal constitutional statutory duty to reveal evidence or information favorable to the defense pursuant to the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Article 2.01 of the Code of Criminal Procedure and the principles enunciated in Brady v. Maryland, 373 U.S. 83 (1963).

    WHEREFORE PREMISES CONSIDERED, the Defendant prays that the Court grant this Motion and provide the defense with equal access to background information on prospective jurors.

RESPECTFULLY SUBMITTED,

RICHARD HURLBURT
Attorney for Defendant
Bar Number: 10308600
P.O. Box 3732
Longview, Texas 75606
Phone Number: (903) 234-8181
Facsimile Number: (903) 757-2387

KEVIN H. SETTLE
Attorney for Defendant
Bar Number: 18044400
300 North Green, Suite 315
Longview, Texas 75601
Phone Number: (903) 236-4184
Facsimile Number: (903) 757-4252

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing Motion has been hand-delivered to the Harrison County District Attorney's Office on this ___12___ day of January, 2010.

Kevin H. Settle

**O R D E R**

On this the _____ day of _____, 2010, came on to be heard Defendant's Motion for Equal Access to Background Information of Prospective Jurors, and after due consideration, Defendant's Motion is hereby:

_____   **GRANTED**

_____   **DENIED**

SIGNED this the _____ day of _____, 2010.

_____
**JUDGE PRESIDING**

HARRISON CO...
CLERK DISTRICT COURT

CAUSE NUMBER: 09-0411-X

THE STATE OF TEXAS                    2010 JAN 12  AM 11:06          IN THE 71ST DISTRICT COURT

VS.                                   SHERRY GRIFFIS          IN AND FOR

BY _____

CORTNE MAREESE ROBINSON    §          HARRISON COUNTY, TEXAS

(37)

## MOTION TO DISCLOSE THE PAST AND PRESENT RELATIONSHIPS, ASSOCIATIONS AND TIES BETWEEN THE PROSECUTING ATTORNEY AND PROSPECTIVE JURORS

**TO THE HONORABLE JUDGE OF SAID COURT:**

NOW COMES, **CORTNE MAREESE ROBINSON,** by and through his attorneys of record, and respectfully moves the Court to grant this motion for disclosure and as grounds therefore, states the following:

### I.

This case involves sensitive, emotional issues of Capital Murder.

### II.

This difficulty is compounded by the size of the community and the fact that the Prosecuting Attorney has personal ties with many of the prospective jurors which will impede their ability to make a fair and impartial determination of these issues.

### III.

Discovery of religious, social, business, professional, recreational, and political associations, and previous employment by or dealings with any prospective juror or juror's family as to the criminal justice system, is essential to a thorough voir dire of the jurors and selection of an impartial jury.

### IV.

Prospective jurors are often hesitant to reveal such relationships.

WHEREFORE, PREMISES CONSIDERED, Defendant prays that the motion for disclosure be granted along with any further relief the Court may deem appropriate.

RESPECTFULLY SUBMITTED,

_____
RICHARD HURLBURT
Attorney for Defendant
Bar Number: 10308600
P.O. Box 3732
Longview, Texas 75606
Phone Number: (903) 234-8181
Facsimile Number: (903) 757-2387

_____
KEVIN H. SETTLE
Attorney for Defendant
Bar Number: 18044400
300 North Green, Suite 315
Longview, Texas 75601
Phone Number: (903) 236-4184
Facsimile Number: (903) 757-4252

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing Motion has been hand-delivered to the Harrison County District Attorney's Office on this _____ day of January, 2010.

_____
Kevin H. Settle

## O R D E R

On this _____ day of _____, 2010, the foregoing motion was

presented in Open Court and the same is hereby **GRANTED/OVERRULED**.

_____
**JUDGE PRESIDING**

**CAUSE NUMBER: 09-0411-X**

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 71ST DISTRICT COURT |
| VS. | § | IN AND FOR |
| CORTNE MAREESE ROBINSON | § | HARRISON COUNTY, TEXAS |

## MOTION TO INDIVIDUALLY INTERROGATE JURORS

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW, CORTNE MAREESE ROBINSON, Defendant in this cause and would move the Court to allow his attorneys to interrogate all potential jurors individually and apart from the other jurors so that as to determine the effects of the publicity that this case has received prior to trial. Defendant would show that he believes that questioning all jurors in mass will have the result of prejudicing Defendant's right to receiving a fair trial by exposing those potential jurors who have not heretofore previously been aware of pre-trial publicity to know that there has been extensive pre-trial publicity by the comments of the interrogator and answers of prospective jurors.

WHEREFORE, PREMISES CONSIDERED, Defendant prays that individual voir dire be granted.

RESPECTFULLY SUBMITTED,

| | |
|---|---|
| RICHARD HURLBURT | KEVIN H. SETTLE |
| Attorney for Defendant | Attorney for Defendant |
| Bar Number: 10308600 | Bar Number: 18044400 |
| P.O. Box 3732 | 300 North Green, Suite 315 |
| Longview, Texas 75606 | Longview, Texas 75601 |
| Phone Number: (903) 234-8181 | Phone Number: (903) 236-4184 |
| Facsimile Number: (903) 757-2387 | Facsimile Number: (903) 757-4252 |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing Motion has been hand-delivered to the Harrison County District Attorney's Office on this _____ day of January, 2010.

Kevin H. Settle

000691

CAUSE NUMBER: 09-0411-X

THE STATE OF TEXAS                §        IN THE 71ST DISTRICT COURT

VS.                               §        IN AND FOR

CORTNE MAREESE ROBINSON           §        HARRISON COUNTY, TEXAS ㊴

## MOTION TO BAR THE STATE FROM USING PEREMPTORY CHALLENGES TO EXCLUDE PROSPECTIVE JURORS WHO EXPRESS RELIGIOUS OR EQUIVALENT RESERVATIONS ABOUT THE DEATH PENALTY BUT WHO CANNOT BE EXCUSED FOR CAUSE

NOW INTO COURT, through undersigned counsel comes **CORTNE MAREESE ROBINSON**, DEFENDANT, pursuant to the Sixth, Eighth and Fourteenth Amendments to the United States Constitution; Article I, Sections 3, 4, 8, 9, 10, 13, 15, and 19 of the Texas Constitution; and other law set out below, to bar the state from using peremptory challenges to exclude jurors who express religious or equivalent reservations about the death penalty but who cannot be excused for cause.

. As grounds for this motion, the defense states:

1. DEFENDANT was indicted by a Harrison County grand jury for Capital Murder. DEFENDANT, an indigent, faces the death penalty.

2. Since this is to be a capital prosecution, exacting standards must be met to assure that it is fair. As the United States Supreme Court has held, "[t]he fundamental respect for humanity underlying the Eighth Amendment's prohibition against cruel and unusual punishment gives rise to a special 'need for reliability in the determination that death is the appropriate punishment' in any capital case." *Johnson v. Mississippi*, 486 U.S. 578, 584 (1988) (quoting *Gardner v. Florida*, 430 U.S. 349, 363-64 (1977) (quoting, *Woodson v. North Carolina*, 428 U.S. 280, 305 (1976)) (White, J., concurring).

3. Although attorneys are generally granted broad latitude with respect to peremptory challenges, that latitude is subject to strict constitutional limitation. *See, e.g., Frazier v. United States*, 335 U.S. 497, 505 n.11 (1948); *Batson v. Kentucky*, 476 U.S. 79 (1986); *Gray v.*

Page 1 of 5

000092

*Mississippi*, 481 U.S. 648, 663 (1987).

4. The State's use of peremptory challenges to exclude potential jurors with religious or equivalent reservations about the death penalty would violate the potential jurors' rights under the First and Fourteenth Amendments to the United States Constitution.  The First Amendment reads in pertinent part that the State may "make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech . . . "  The law is settled that the State may not "inten[tionally] discriminate against particular religious beliefs" absent a compelling state interest.  *Bowen v. Roy*, 476 U.S. 693, 707 (1986).  *See also Sherbert v. Verner*, 374 U.S. 398 (1963).  Further, the concept of "religious beliefs" must be viewed broadly to include all equivalent beliefs.  *See United States v. Seeger*, 380 U.S. 163 (1965) (test of whether belief is "religious" for purposes of statutory exemption from compulsory military service is "whether a given belief that is sincere and meaningful occupies a place in the life of its possessor parallel to that filled by the orthodox belief in God of one who clearly qualifies for the exemption").

5. There can be no doubt that the State's use of peremptory challenges to strike potential jurors with religious or equivalent beliefs against the death penalty would represent severe and intentional discrimination against the jurors on account of their religious or equivalent beliefs.  Use of the peremptory challenges would discriminate against the potential jurors by depriving them of what the United States Supreme Court recently stated is "a significant opportunity to participate in civic life" - namely, jury service.  *Powers v. Ohio*, 111 S. Ct. 1364 (1991).  In *Powers*, the Court explained that a prosecutor's exclusion through peremptory challenges of potential jurors on racial grounds violates the jurors rights to equal protection.  *Powers*, 111 S. Ct. at 1369.  The Court stated that, whether it is "deemed a right, a privilege, or a duty,"[1] jury

---

[1]      *See also Sherbert v. Verner*, 374 U.S. 398 ("[n]or may the South Carolina court's construction of the statute be saved from constitutional infirmity on the ground that unemployment compensation benefits are not appellant's 'right' but merely a 'privilege.'  It is too late in the day to doubt that the liberties of religion and expression may be infringed by the

service "affords ordinary citizens a valuable opportunity to participate in a process of government, an experience fostering, one hopes, a respect for law." *Powers*, 111 S. Ct. at 1369 (citation omitted).[2]  In addition, in *Edmondson v. Leesville Concrete Co.*, 111 S. Ct. 2077 (1991), the Court held that a private litigant's use of peremptory challenges in a civil case to exclude potential jurors on racial grounds also violates the jurors' equal protection rights.

6.  In *Powers*, the Court stated that "the State may no more extend it to some of its citizens and deny it to others on account of their race than it may invidiously discriminate in the offering and withholding of the elective franchise." *Id.* at 1369 (citing *Carter v. Jury Comm'n of Greene County*, 396 U.S. 320, 322 (1970)).  The same must be said about discrimination against potential jurors based on their religious or equivalent beliefs.  Just as the State may not intentionally discriminate in the offering and withholding of the elective franchise based on religious or equivalent beliefs, the State may not extend jury service to some of its citizens and deny it to others on account of their religious or equivalent beliefs.  Accordingly, the State may not use its peremptory challenges to exclude potential jurors with religious or equivalent reservations about the death penalty.

7.  Further, the State cannot tenably contend that it possesses a compelling state interest in using peremptory challenges to strike potential jurors with religious or equivalent reservations about the death penalty *when those reservations do not prevent or substantially impair the jurors from complying with the law*.  The United States Supreme Court has recognized that the State has a compelling interest in excluding jurors opposed to capital punishment, but only if their opposition will "prevent or substantially impair the performance of [their] duties as a juror in accordance with [the judge's] instructions." *Adams v. Texas*, 448 U.S. 38, 45 (1980) (finding that oath had been used improperly to "exclude jurors who stated that they would be 'affected' by the

---

denial of or placing of conditions upon a benefit or privilege . . . ").

[2]  The Court added that "[j]ury service preserves the democratic element of the law, as it guards the rights of the parties and insures continued acceptance of the laws by all of the people." *Id.* at 136.

000094

possibility of the death penalty . . ."). *See also Wainwright v. Witt*, 469 U.S. 412, 416 (1985); *Witherspoon v. Illinois*, 391 U.S. 510, 521 (1968). The State's interest "does not extend beyond its interest in removing those jurors who would 'frustrate the State's legitimate interest in administering constitutional capital sentencing schemes by not following their oaths.'" *Gray v. Mississippi*, 107 S. Ct. at 2051 (emphasis added) (citing *Wainwright v. Witt*, 469 U.S. 412, 423 (1985)).

8. Thus, it is clear that the State's use of peremptory challenges to exclude potential jurors with religious or equivalent reservations about the death penalty would violate the potential jurors' rights under the First and Fourteenth Amendments to the United States Constitution, and article I, Section 8 of the Texas Constitution. In addition, defendant has standing to assert these claims on behalf of the members of his venire. *Powers*, 111 S. Ct. at 1373.

WHEREFORE, DEFENDANT respectfully requests that the Court enjoin the State from using its peremptory challenges to exclude jurors who express religious or equivalent reservations about the death penalty but who are qualified to serve.

RESPECTFULLY SUBMITTED,

RICHARD HURLBURT
Attorney for Defendant
Bar Number: 10308600
P.O. Box 3732
Longview, Texas 75606
Phone Number: (903) 234-8181
Facsimile Number: (903) 757-2387

KEVIN H. SETTLE
Attorney for Defendant
Bar Number: 18044400
300 North Green, Suite 315
Longview, Texas 75601
Phone Number: (903) 236-4184
Facsimile Number: (903) 757-4252

**CERTIFICATE OF SERVICE**

    I hereby certify that a true and correct copy of the above and foregoing Motion has been hand-delivered to the Harrison County District Attorney's Office on this ___12___ day of January, 2010.

                                         Kevin H. Settle

# O R D E R

    On this _____ day of _____, 2010, came on to be heard

the above and foregoing Motion and after considering same, the Court is of the opinion that said

motion should be and **IT IS HEREBY ORDERED (GRANTED)  (DENIED).**

    Signed this _____ day of _____, 2010.


                                      _____

                                      **JUDGE PRESIDING**

5

CAUSE NUMBER: 09-0411-X

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 71ST DISTRICT COURT |
| VS. | § | IN AND FOR |
| CORTNE MAREESE ROBINSON | § | HARRISON COUNTY, TEXAS |

**DEFENDANT'S MOTION TO EXCUSE FOR CAUSE ALL
PROSPECTIVE JURORS WHO HAVE HEARD OR READ ABOUT THIS CASE**

**TO THE HONORABLE JUDGE OF SAID COURT:**

NOW COMES, CORTNE MAREESE ROBINSON, the Defendant in the above entitled and numbered cause, by and through his attorneys of record, and prior to the voir dire examination of the jury panel and in advance of trial files this motion to excuse for cause all prospective jurors who have read or heard about this case, and in support hereof would show the Court as follows:

**I.**

The publicity given in this case has been extensive and persuasive. A fair trial would be impossible unless all persons who have read or heard about the case are excused for cause. The sensationalized, widespread and highly prejudicial publicity relating to the alleged offenses charged against the Defendant were circulated by elements of the news media and had been of such a nature as to preclude the selection of impartial jurors from those persons who have read about the case, seen it on television or heard about it on the radio. Such persons have fixed, preconceived, positive and decided opinions as to the Defendant; guilt. The automatic removal of such persons from the panel of prospective jurors in this case will enable both prosecution and the defense to obtain a fair and impartial jury, assuring both parties of a fair trial.

**II.**

Even if the Court feels that jurors may not be automatically legally incompetent because of their exposure to pretrial publicity and opinions gleaned from the news media, the Court should, in its own discretion and in the interest of justice, discharge such jurors since they are not proper persons to try the case, having been exposed to media commentary and reporting that must create a bias and prejudice against the Defendant.

WHEREFORE, PREMISES CONSIDERED, the Defendant prays that all prospective jurors who have read or heard about this case be excused for cause.

RESPECTFULLY SUBMITTED,

RICHARD HURLBURT
Attorney for Defendant
Bar Number: 10308600
P.O. Box 3732
Longview, Texas 75606
Phone Number: (903) 234-8181
Facsimile Number: (903) 757-2387

KEVIN H. SETTLE
Attorney for Defendant
Bar Number: 18044400
300 North Green, Suite 315
Longview, Texas 75601
Phone Number: (903) 236-4184
Facsimile Number: (903) 757-4252

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing Motion has been hand-delivered to the Harrison County District Attorney's Office on this ___12___ day of January, 2010.

Kevin H. Settle

## O R D E R

On this _____ day of _____, 2010, the foregoing Motion was presented in Open Court and the same is hereby **(GRANTED)   (DENIED)** and **IT IS ORDERED** that this Motion and Order shall be made a part of the record hereof.

Signed this _____ day of _____, 2010.

_____
**JUDGE PRESIDING**

CAUSE NUMBER: 09-0411-X

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 71ST DISTRICT COURT |
| VS. | § | IN AND FOR |
| CORTNE MAREESE ROBINSON | § | HARRISON COUNTY, TEXAS |

41

## MOTION FOR OPPORTUNITY TO REHABILITATE ANY PROSPECTIVE JUROR WHO EXPRESSES RETICENCE WHEN ASKED TO KILL A FELLOW HUMAN BEING AND TO ALLOW THE DEFENSE TO QUESTION THE JURORS FIRST ON THE ISSUE

COMES NOW, CORTNE MAREESE ROBINSON, Defendant in the above entitled and numbered cause, by and through his attorneys of record, and pursuant to the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, and Article I, Sections 3, 10, 13, 15 and 19 of the Texas Constitution and moves the court to allow the defense to proceed first on voir dire, and to allow the defense a proper opportunity to rehabilitate any prospective juror who expresses reticence when asked to kill DEFENDANT, a fellow human being.  In support of his motion, DEFENDANT states:

1. In *Witherspoon v. Illinois*, 391 U.S. 510 (1968), the Supreme Court held that a defendant's fundamental right to a fair and impartial jury would be violated if the prosecution were permitted to exclude jurors who were opposed to the death penalty, but who could otherwise vote to impose the State's death penalty statute under certain circumstances.  The Court found that when the State "swept from the jury all who expressed conscientious or religious scruples against capital punishment and all who opposed it in principle, the State crossed the line of neutrality" by creating a jury which was "uncommonly willing to condemn a man to die" –

1

*i.e.*, a jury *un*representative of the community from which it was drawn. *Id.* at 520-21;
*see also Adams v. Texas*, 448 U.S. 38 (1980).

2. When a juror comes into court for the first time, and is met with a barrage of questions
concerning his or her "conscientious scruples" against the death penalty, there is a strong
probability that the jury may be led astray by sophisticated legal questioning, and be excluded in
violation of *Witherspoon.* For example, in *Phenizee v. State*, 178 So. 579 (Miss. 1938), the Court
held that, "The ponderous interrogatory put by trial judges, 'Have you any conscientious scruples against the
infliction of capital punishment,' is often not understood in its full import by a prospective juror, as every
experienced attorney has witnessed. *Id.* at 581-82. For this reason, it is black letter law that to strike
those who express hesitancy over imposing the death penalty without allowing the defense to
voir dire them violates *Witherspoon.* In *Adams*, the Court made it clear that, "to exclude all
jurors who would be in the slightest way affected by the prospect of the death penalty or by their
views about such a penalty would be to deprive the defendant of the impartial jury to which he or
she is entitled under the law." *Adams*, 448 U.S. at 50.

3. In Texas, the death penalty is not only vacated, but by virtue of Tex. Code Crim. Proc.
art. 37.07 § 3(c) a new trial is required in every case in which the "voir dire testimony . . .
indicates that veniremen were excluded on any basis broader" than that delineated by
*Witherspoon. Crawford v. State*, 617 S.W.2d 925, 943 (Tex. Crim. App. 1980) (Clinton, J.,
dissenting).   4. However, this does not go far enough. The skillful prosecutor may sufficiently
muddle the honest juror so that, by the time that the juror is questioned by the defense, it may
seem that the *Witherspoon* standard has been met. The prosecution has no right either to
improperly exclude jurors, or even to properly retain others; the defendant is the one to whose

2

benefit the constitutional right to a fair and impartial jury inures. Indeed, in *Stanley v. Zant*, 697

F.2d 955 (11th Cir. 1983), the Court held that there is "an asymmetry weighted on the side of

mercy." *Id.* at 960. In order to assure that jurors are not improperly excluded, then, the jurors

should first be voir dired by the defense, and then the prosecution.

WHEREFORE, DEFENDANT moves this Court to allow him to voir dire first on the

issue of whether potential jurors will feel the weight of being asked to take the life of a fellow

human, and to afford his counsel the opportunity to rehabilitate any potential juror who expresses

some or any reticence to kill DEFENDANT in order that the State does not obtain a jury that is

uncommonly willing to condemn DEFENDANT to die.

RESPECTFULLY SUBMITTED,

RICHARD HURLBURT
Attorney for Defendant
Bar Number: 10308600
P.O. Box 3732
Longview, Texas 75606
Phone Number: (903) 234-8181
Facsimile Number: (903) 757-2387

KEVIN H. SETTLE
Attorney for Defendant
Bar Number: 18044400
300 North Green, Suite 315
Longview, Texas 75601
Phone Number: (903) 236-4184
Facsimile Number: (903) 757-4252

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing Motion has been hand-delivered to the Harrison County District Attorney's Office on this __12__ day of January, 2010.

Kevin H. Settle

3

## O R D E R

On this the _____ day of _____, 2010, the foregoing Motion was presented in Open Court and the same is hereby **(GRANTED) (DENIED)** and it is ordered that this Motion and Order shall be made a part of the record hereof.

_____
**JUDGE PRESIDING**

4

CAUSE NUMBER: 09-0411-X

THE STATE OF TEXAS                                   IN THE 71ST DISTRICT COURT

VS.                                                  IN AND FOR

CORTNE MAREESE ROBINSON                              HARRISON COUNTY, TEXAS

## DEFENDANT'S MOTION TO SEQUESTER JURY

(42)

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES, CORTNE MAREESE ROBINSON, by and through his attorneys of record, in the above styled and numbered cause and respectfully moves the Honorable Court to sequester the jury in this case as soon as each individual juror is sworn and accepted on the jury or at the time the twelve jurors are sworn and accepted on this jury.

The Defendant would show the Honorable Court that there is a clear and present danger that the news media will report inadmissible evidence against this Defendant which may come to the knowledge of the jurors and that said inadmissible evidence would prejudice this Defendant's right to a fair and impartial trial under the Texas State Constitution and the Fourteenth Amendment of the Constitution of the United States of America.

WHEREFORE, PREMISES CONSIDERED, the Defendant moves that this Honorable Court grant this Motion in all things and that each individual juror sworn and accepted by the State and the defense in this case be immediately sequestered and not permitted to thereafter separate and that said jury be placed under the supervision of the Court's bailiff at that time.

RESPECTFULLY SUBMITTED,

RICHARD HURLBURT
Bar Number: 10305600
P.O. Box 3732
Longview, Texas 75606
Phone Number: (903) 234-8181
Facsimile Number: (903) 757-2387

KEVIN H. SETTLE
Bar Number: 18044400
300 North Green, Suite 315
Longview, Texas 75601
Phone Number: (903) 236-4184
Facsimile Number: (903) 757-4252

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing Motion has been hand-delivered to the Harrison County District Attorney's Office on this ___12___ day of January, 2010.

_____
Kevin H. Settle

**ORDER**

On this the _____ day of _____, 2010, the foregoing motion was presented in Open Court and the same is hereby **GRANTED/OVERRULED.**

_____
**JUDGE PRESIDING**

HARRISON COUNTY, TEXAS

CAUSE NUMBER: 09-0411-X

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 71ST DISTRICT COURT |
| | § | |
| VS. | § | IN AND FOR |
| | § | |
| CORTNE MAREESE ROBINSON | § | HARRISON COUNTY, TEXAS |

43

## DEFENDANT'S REQUEST TO UTILIZE PEREMPTORY CHALLENGES FOLLOWING EXAMINATION OF THE ENTIRE VENIRE

COMES NOW CORTNE MAREESE ROBINSON, Defendant, by and through his attorneys of record, and moves this Court to permit the Defendant to exercise his peremptory challenges to prospective jurors after examination of the entire panel, and for cause would show the Court that:

I.

Texas Code Criminal Procedure article 35.13 provides that, "A juror in a capital case in which the State has made it known it will seek the death penalty, held to be qualified, shall be passed for acceptance or challenge first to the State and then to the Defendant. Challenges to jurors are either peremptory or for cause."

II.

A plain reading of article 35.13 reveals that it governs only the *order* of acceptance or challenge, and not *when* that acceptance or challenge must be made. There is no statutory support for an interpretation of this article to bar Defendant's request for a circumspect examination of the entire panel.

III.

A defendant in a non-capital case is not required to challenge before the entire panel has been examined, and may make a sensible and circumspect exercise of his peremptory challenges after examination of the entire panel.

IV.

The discretionary and unnecessary application of article 35.13 to a defendant in a capital case only constitutes a violation of the constitutional rights to equal protection as set forth in the Fourteenth Amendment to the United States Constitution and article I, §§ 3, 3a and 19 of the Texas Constitution.

V.

Requiring a defendant to exercise his peremptory challenges before the entire panel has been examined denies him the right to intelligently exercise these challenges, in violation of his right to effective assistance of counsel, guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and article I, § 10 of the Texas Constitution.

VI.

Requiring a defendant to exercise his peremptory challenges before the entire panel has been examined denies him the right to a fair and impartial jury, due process and due course of law, guaranteed by the Texas and United States Constitutions.

VII.

Article 35.13 conflicts with article 35.15(d) providing for the selection of alternate jurors.

WHEREFORE, CLIENT respectfully requests that the Court permit the utilization of his peremptory challenges following the qualification of the entire venire.

RESPECTFULLY SUBMITTED,

_____          _____
RICHARD HURLBURT                          KEVIN H. SETTLE
Attorney for Defendant                    Attorney for Defendant
Bar Number: 10308600                      Bar Number: 18044400
P.O. Box 3732                             300 North Green, Suite 315
Longview, Texas 75606                     Longview, Texas 75601
Phone Number: (903) 234-8181              Phone Number: (903) 236-4184
Facsimile Number: (903) 757-2387          Facsimile Number: (903) 757-4252

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing Motion has been hand-delivered to the Harrison County District Attorney's Office on this ___12___ day of January, 2010.

_____
Kevin H. Settle

**ORDER**

On this _____ day of _____, 2010, came on to be heard the above and foregoing Motion and after considering same, the Court is of the opinion that said motion should be and **IT IS HEREBY ORDERED (GRANTED)  (DENIED)**.

Signed this _____ day of _____, 2010.

_____
**JUDGE PRESIDING**

FILED
HARRISON COUNTY, TEXAS
CLERK DISTRICT COURT

**CAUSE NUMBER: 09-0411-X**

20 JAN 12   AM 11: 07

SHERRY GRIFFIS

BY _____

§

**THE STATE OF TEXAS**          **IN THE 71ST DISTRICT COURT**

**VS.**          **IN AND FOR**

**CORTNE MAREESE ROBINSON**   §   **HARRISON COUNTY, TEXAS**

(44)

## MOTION FOR ADDITIONAL PEREMPTORY CHALLENGES

· **NOW INTO COURT**, through undersigned counsel comes CORTNE MAREESE

ROBINSON, Defendant, pursuant to the Fourth, Fifth, Sixth, Eighth and Fourteenth

Amendments to the United States Constitution, and Article I, Sections 3, 10, 13, 15 and 19 of the

Texas Constitution to grant him additional peremptory challenges.  In support of his motion,

Defendant states as follows:

1.  The requirement that a Defendant be afforded a fair trial by an impartial jury chosen

from a "fair cross-section of the community is fundamental to the American system of justice."

*Taylor v. Louisiana*, 419 U.S. 522, 530(1975).  The Supreme Court has long recognized that the

very idea of a jury contemplates "'a body truly representative of the community.'" *Carter v. Jury*

*Commission*, 396 U.S. 320, 330 (1970) (quoting *Smith v. Texas*, 311 U.S. 128, 130 (1940)); *see*

*also Williams v. Florida*, 399 U.S. 78, 100 (1970) (the size of juries should be sufficient to

ensure "a fair possibility for obtaining a representative cross-section of the community").

2.  Capital cases, particularly the sentencing phase, present unique jury selection issues

often necessitating that the defense be provided with additional peremptory challenges in order to

protect the constitutional guarantees of a fair trial by an impartial jury drawn from a fair cross-

section of the community.  Jurors often have very strong views about the death penalty.  Many

prospective jurors, particularly in this period where there is tremendous publicity and fear

1

surrounding violent crimes, strongly favor the death penalty and will vote for death in all cases of capital murder. Yet, it is well-known that prospective jurors often fail to express these views fully in *voir dire. Wainwright v. Witt*, 469 U.S. 412, 424-25 (1985); Nietzel and Dillehay, *The Effect of Variations in Voir Dire Procedures in Capital Murder Trials*, 6 LAW AND HUMAN BEHAVIOR 1, 4-5 (1982). Accordingly, they therefore may not be subject to exclusion for cause. *Cf. Williams v. Griswald*, 743 F.2d 1533, 1540 n.14 (11th Cir. 1984). Thus, additional peremptory challenges are needed for the defense.

3. Moreover, prosecutors regularly use their peremptory challenges to exclude from juries any prospective jurors who voice any reservations about the death penalty, no matter how minor those reservations are. See Bruce Winick, *Prosecutorial Peremptory Challenge Practices in Capital Cases: An Empirical Study and Constitutional Analysis*, 81 MICH. L. REV. 1, 21-39 (1982). The result of this improper purging of certain citizens is a jury devoid of members of the community who had reservations of any kind about the death penalty in violation of Mr. DEFENDANT's right to an impartial jury reflecting a cross-section of the community. *See People v. Sears*, 450 P.2d 248, 257 n.5 (Cal. 1969) ("a prosecutor who uses peremptory challenges for the purpose of producing [a jury stripped of all people with reservations about the death penalty] is violating his obligation to assure the defendant a fair trial"), vacated on other grounds, 2 Cal. 3d 180, 465 P.2d 847, 84 Cal. Rptr. 711 (1970); Winick, 81 MICH. L. REV. at 43-44. Because of this common practice by the prosecution, the defense must be provided with additional peremptory challenges.

4. In addition, prosecutors often improperly use peremptory challenges to exclude from juries minorities, including blacks, and other socially-cognizable groups in an effort to obtain a

2

C00108

jury disposed in favor of death.  This practice violates the Equal Protection Clause of the Fourteenth Amendment and the Fair Cross-Section Requirement of the Sixth Amendment.  See, e.g., *Batson v. Kentucky*, 476 U.S. 79 (1986); *Duren v. Missouri*, 439 U.S. 357 (1979).  It as well requires the grant of additional peremptory challenges for the defense.

5.  Additional peremptory challenges are also needed to combat the prejudice to the defense of any pre-trial publicity and any bias resulting from the jury being told before trial begins and any evidence that is presented that the defendant is guilty of capital murder.

6.  There is, of course, legal authority for the granting of additional peremptory challenges.  It is firmly within the discretion of the trial court to grant additional peremptory challenges to either party in order to ensure the defendant's substantial right that "the jurors who do serve be qualified." *Jones v. State*, 982 S.W.2d 386 (Tex. Crim. App. 1998).  The American Bar Association has similarly promulgated standards providing that trial judges "should have the authority to allow additional peremptory challenges when justified." ABA, *Standards Relating to Juror Use and Management*, Standard 9 (b), (g) at 83, 85-86 (1983).

WHEREFORE, DEFENDANT respectfully requests that he be granted a minimum of eight additional peremptory challenges in the selection of the jury in this case.  This motion provides a more than ample basis for this Court to grant the requested relief.  If however, the Court deems there is insufficient support in the motion, DEFENDANT requests that he be granted funds to retain experts and that he be afforded an evidentiary hearing at which he will have the opportunity to establish that he needs these additional challenges.

3

RESPECTFULLY SUBMITTED,

RICHARD HURLBURT
Attorney for Defendant
Bar Number: 10308600
P.O. Box 3732
Longview, Texas 75606
Phone Number: (903) 234-8181
Facsimile Number: (903) 757-2387

KEVIN H. SETTLE
Attorney for Defendant
Bar Number: 18044400
300 North Green, Suite 315
Longview, Texas 75601
Phone Number: (903) 236-4184
Facsimile Number: (903) 757-4252

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing Motion has been hand-delivered to the Harrison County District Attorney's Office on this ___1 2___ day of January, 2010.
a

Kevin H. Settle

## O R D E R

On this ____ day of _____, 2010, the foregoing motion was presented in Open Court and the same is hereby **GRANTED/OVERRULED.**

**JUDGE PRESIDING**

4

CAUSE NUMBER: 09-0411-X

THE STATE OF TEXAS        §     IN THE 71ST DISTRICT COURT

VS.        §     IN AND FOR

CORTNE MAREESE ROBINSON     §     HARRISON COUNTY, TEXAS

## MOTION FOR AN ORDER DIRECTING THAT ALTERNATE JURORS NOT BE PUBLICLY IDENTIFIED UNTIL THE DELIBERATION PROCESS BEGINS

(45)

NOW INTO COURT, through undersigned counsel comes **CORTNE MAREESE ROBINSON**, pursuant to the Fifth, Sixth, Eighth, and Fourteenth Amendments to the Constitution of the United States, to applicable sections of the Texas Constitution and to all other applicable state and federal law. In support of this motion, DEFENDANT shows this Court as follows:

1. This is the capital prosecution of DEFENDANT and these proceedings could result in his death by lethal injection.

2. In any criminal trial, especially one where the death penalty is being sought, the jury should be carefully controlled both during and after voir dire. Under Texas law, injury is presumed when jurors converse with unauthorized persons during the course of deliberations. *McMahon v. State*, 582 S.W.2d 786, 793 (Tex. Crim. App. 1978); Tex Code Crim. Proc. art. 36.22. The prohibition against tainting the deliberative process includes bailiffs and court personnel when not conversing about logistical matters. *Alexander v. State*, 919 S.W.2d 756, 766 (Tex. App.—Texarkana 1996), *citing Stecher v. State*, 373 S.W.2d 255 (Tex. Crim. App. 1963).

3. **Tex. Code Crim. Proc. art. 35.26(b)** provides that in a felony case the court may allow the selection of up to two additional alternate jurors. Alternate jurors are to be drawn from the same source and in the same manner and have the same qualifications as the other jurors. The alternate jurors "shall be drawn and selected in the same manner as regular jurors. An alternate juror must meet the same qualifications, is subject to the same examination and challenges, shall take the same oath, has the same functions, powers, and privileges, and shall be accorded the same facilities and security as a regular juror." Tex. Gov't Code § 62.020(c).  They shall obey all orders and admonitions of the court to the jury. *See Ponce v. State*, 68 S.W.3d 718, 722 (Tex. App.—Houston 2001); *Barney v. State*, 698 S.W.2d 114, 122 (Tex. Crim. App.1985).

4. Tex. Code Crim. Proc. art. 36.29(b) provides that:

> If alternate jurors have been selected in a capital case in which the state seeks the death penalty and a juror dies or becomes disabled from sitting at any time before the charge of the court is read to the jury, the alternate juror whose name was called first under article 35.26 of this code shall replace the dead or disabled juror. Likewise, if another juror dies or becomes disabled from sitting before the charge of the court is read to the jury, the other alternate juror shall replace the second juror to die or become disabled.

5. If an individual is told at the beginning of the trial that he or she is an alternate there will be an automatic lessening of that particular juror's sense of responsibility. There is the possibility that an individual who goes into the trial of the case with the presumption that he or she will not have to make the ultimate decision of life or death will be less attentive than the other jurors. There is no logical reason to disclose to any of the jurors their respective roles as alternate jurors until the time of deliberations.

WHEREFORE, DEFENDANT respectfully requests that this Court:

(a)   enter an order directing that no one involved in the trial of this case notify any of

the prospective alternate jurors of their alternate status until such time as

deliberations in this case begin; and

(b)   grant such other and further relief as to this Court seems just and appropriate.

RESPECTFULLY SUBMITTED,

RICHARD HURLBURT
Attorney for Defendant
Bar Number: 10308600
P.O. Box 3732
Longview, Texas 75606
Phone Number: (903) 234-8181
Facsimile Number: (903) 757-2387

KEVIN H. SETTLE
Attorney for Defendant
Bar Number: 18044400
300 North Green, Suite 315
Longview, Texas 75601
Phone Number: (903) 236-4184
Facsimile Number: (903) 757-4252

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing Motion has been hand-delivered to the Harrison County District Attorney's Office on this ___12___ day of January, 2010.

Kevin H. Settle

## O R D E R

On this _____ day of _____, 2010, came on to be heard the

above and foregoing Motion and after considering same, the Court is of the opinion that said motion

should be and **IT IS HEREBY ORDERED (GRANTED)   (DENIED).**

Signed this _____ day of _____, 2010.

_____
**JUDGE PRESIDING**

CAUSE NUMBER: 09-0411-X

THE STATE OF TEXAS

VS.

CORTNE MAREESE ROBINSON

§
§
§
§
§
§
§

IN THE 71ST DISTRICT COURT

IN AND FOR

HARRISON COUNTY, TEXAS

(46)

## MOTION FOR AN ORDER REQUIRING
## THAT JUROR QUESTIONNAIRES BE SENT WITH
## THE JUROR SUMMONS TO EACH VENIREPERSON

### TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES, **CORTNE MAREESE ROBINSON,** by and through his attorneys of record, and respectfully moves the Court pursuant to the Sixth, Eighth and Fourteenth Amendments to the United States Constitution of the laws and constitution of the State of Texas, to issue an order requiring that the juror questionnaires be mailed to each venireperson. In support of his motion, Defendant states:

### I.

The Defendant is charged in the above entitled and numbered cause with the offense of Capital Murder and the State is seeking the death penalty.

### II.

Counsel has a duty to make a thorough investigation of the venire, in order to effectuate the Defendant's right to an impartial jury, guaranteed to him by the Sixth Amendment to the United States Constitution.

### III.

If the Defendant is not granted the right to gather this information on the jury, information, which Defendants with sufficient resources could gather for themselves, the result will be discrimination on the basis of indigence, and a denial of a fair trial, equal protection, due process, and protection from cruel and unusual punishment, guaranteed by the Sixth, Eighth and Fourteenth Amendments to the United States Constitutions.

### IV.

Courts have traditionally provided juror questionnaires to be filed out by prospective jurors and information contained therein is invaluable to the Defendant. The Defense requests that the Defense and the State work on an agreed Questionnaire to be submitted and if no agreement can be reached, that each side submit a proposed Questionnaire to the Court and allow the Court to rule on

an appropriate Questionnaire or combination of the two.

WHEREFORE, the accused respectfully prays that this Court issue an order granting the relief sought herein and require that Juror questionnaires be mailed to venire persons and/or for such other similar relief.

RESPECTFULLY SUBMITTED,

RICHARD HURLBURT
Attorney for Defendant
Bar Number: 10308600
P.O. Box 3732
Longview, Texas 75606
Phone Number: (903) 234-8181
Facsimile Number: (903) 757-2387

KEVIN H. SETTLE
Attorney for Defendant
Bar Number: 18044400
300 North Green, Suite 315
Longview, Texas 75601
Phone Number: (903) 236-4184
Facsimile Number: (903) 757-4252

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing Motion has been hand-delivered to the Harrison County District Attorney's Office on this __12__ day of January, 2010.

Kevin H. Settle

## O R D E R

On this _____ day of _____, 2010, the foregoing Motion was presented in Open Court and after considering same, the Court is of the opinion that said motion should be and **IT IS HEREBY ORDERED (GRANTED** and, if applicable,

_____

**(DENIED)**.

Signed this _____ day of _____, 2010.

_____

**JUDGE PRESIDING**

CAUSE NUMBER: 09-0411-X

THE STATE OF TEXAS

VS.

CORTNE MAREESE ROBINSON

IN THE 71ST DISTRICT COURT

IN AND FOR

HARRISON COUNTY, TEXAS

(47)

## MOTION TO RESTRICT PRESS FILMING OF
## THE JURY AND FOR OTHER RELIEF

**TO THE HONORABLE JUDGE OF SAID COURT:**

Comes now the Defendant and shows unto the Court the following:

1. The Defendant is charged with Capital Murder.

2. The case has received some amount of publicity.

3. The news media has evidenced a continued interest in the case.

4. It has been the custom of television stations and other news media to film in the halls outside the courtroom and into the courtroom when the doors were open.

5. Filming the jury coming and going from the courtroom and filming into the courtroom when the doors are open will add a carnival atmosphere to the proceedings, unduly heighten the jury's interest in the case, cause the jury to treat the case differently from the normal criminal proceeding, and interfere with the Defendant's right to a fair and impartial trial.

THE ABOVE CONSIDERED, the Defendant moves the Court to:

(a) Issue an order directing that the news media not photograph or film the jury venire or the trial jury on the floor of the courthouse where the trial is being held and that no photographs or filming of the jury venire or trial jury by the news media be done at a range of less than two hundred (200) feet at any time during the trial of Defendant's case.

(b) Issue an order directing the news media not to take any photographs, moving film or

video tapes during the trial of the Defendant on the floor of the courthouse where the trial is taking

place.

The Defendant requests a hearing on this motion.

RESPECTFULLY SUBMITTED,

RICHARD HURLBURT
Attorney for Defendant
Bar Number: 10308600
P.O. Box 3732
Longview, Texas 75606
Phone Number: (903) 236-8181
Facsimile Number: (903) 757-2387

KEVIN H. SETTLE
Attorney for Defendant
Bar Number: 18044400
300 North Green, Suite 315
Longview, Texas 75601
Phone Number: (903) 236-4184
Facsimile Number: (903) 757-4252

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing Motion has been hand-delivered to the Harrison County District Attorney's Office on this ___12___ day of January, 2010.

Kevin H. Settle

## O R D E R

On this _____ day of _____, 2010, came on to be heard the

above and foregoing Motion and after considering same, the Court is of the opinion that said motion

should be and **IT IS HEREBY ORDERED (GRANTED)  (DENIED).**

Signed this _____ day of _____, 2010.

_____

**JUDGE PRESIDING**

HARRISON COUNTY TEXAS
CLERK DISTRICT COURT
**CAUSE NUMBER: 09-0411-X**
2010 JAN 12   AM 11: 07

| | | |
|---|---|---|
| **THE STATE OF TEXAS** | § | **IN THE 71ST DISTRICT COURT** |
| **VS.** | § | **IN AND FOR** |
| **CORTNE MAREESE ROBINSON** | § | **HARRISON COUNTY, TEXAS** |

## MOTION TO PROHIBIT JURY DISPERSAL AND TO PROHIBIT JURY'S EXPOSURE TO VICTIM'S FAMILY OR FRIENDS (48)

### TO THE HONORABLE JUDGE OF THE COURT:

    **COMES NOW,** the Defendant, by and through his attorneys of record, and moves this Court pursuant to the Sixth, Eighth and Fourteenth Amendments to the United States Constitution, and the laws and constitution of the State of Texas to require that the jurors remain together throughout the proceedings, not communicate with anyone except the Court or the bailiffs and not be taken out of the Courtroom in a manner whereby they have to pass by, through or between the victim's family or friends. In support of said motion, the Defendant would show the Court:

### I.

    This is a capital murder case and it is very important that no jury communicate with anyone other than the Court or the bailiffs.

### II.

    The Courthouse is set up in such a manner whereas the jurors, when being taken to lunch or when taken out of the Courtroom at night or coming into the Courtroom in the morning, by necessity have to pass down the hall where the victim's parents, family, friends, or witnesses ordinarily sit while waiting for Court to proceed. This may cause the jurors to feel sympathy for the victim's family in the event they should see some of the family crying or upset.

### III.

    To wait until the hall is clear before taking the jury from the jury room or to the jury box would in no way prejudice the State's case.

    **WHEREFORE, PREMISES CONSIDERED,** Defendant prays that this Court enter an order requiring that the jury not be dispersed at any time; not communicate with anyone except the Court or the bailiffs; that all communications by the jury shall be reported directly to the attorneys for the Defendant; and that the jury not be taken out of the Courtroom at a time when they can be exposed to the victim's family, friends or other witnesses.

RESPECTFULLY SUBMITTED,

RICHARD HURLBURT
Attorney for Defendant
Bar Number: 10308600
P.O. Box 3732
Longview, Texas 75606
Phone Number: (903) 234-8181
Facsimile Number: (903) 757-2387

KEVIN H. SETTLE
Attorney for Defendant
Bar Number: 18044400
300 North Green, Suite 315
Longview, Texas 75601
Phone Number: (903) 236-4184
Facsimile Number: (903) 757-4252

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing Motion has been hand-delivered to the Harrison County District Attorney's Office on this ____12____ day of January, 2010.

Kevin H. Settle

## ORDER

On this the ____ day of _____, 2010, the foregoing

motion was presented in Open Court and the same is hereby **GRANTED/DENIED** and it is ordered

that this Motion and Order shall be made a part of the record hereof.

Signed this ____ day of _____, 2010.

_____
**JUDGE PRESIDING**

CAUSE NUMBER: 09-0411-X

THE STATE OF TEXAS                                         IN THE 71ST DISTRICT COURT

VS.                                                                         IN AND FOR

CORTNE MAREESE ROBINSON              §         HARRISON COUNTY, TEXAS

## MOTION TO INTRODUCE THE TESTIMONY OF DEFENDANT'S FAMILY AND FRIENDS REGARDING THEIR FEELINGS ON THE PROSPECT OF A DEATH SENTENCE AND THE IMPACT AN EXECUTION WOULD HAVE ON THEM

**NOW COMES** the Defendant in the above entitled and numbered cause, by and through

his attorneys of record, pursuant to the Fifth, Seventh, and Eighteenth Amendments of the United

States Constitution, and Article I, Sections 3, 10, 13 and 19 of the Texas Constitution, and offers

the following in support of this Motion:

A.       Introduction

DEFENDANT moves this Court to permit him to question his family members and

friends regarding two topics:  (i) whether DEFENDANT 's family and friends want

DEFENDANT to live or die; and (ii) what the impact would be on such persons if

DEFENDANT were in fact sentenced to death and ultimately executed.

B.   Previously Controlling Authority (Now Overruled) in *Tennard v. Dretke*

In *Fuller v. State*, 827 S.W.2d 919 (Tex. Crim. App. 1992), the Court of Criminal Appeals

rejected a capital defendant's argument that Supreme Court decisions such as *Lockett v. Ohio*,

438 U.S. 586 (1978) and *Eddings v. Oklahoma*, 455 U.S. 104 (1982) (overruled in part on other

grounds), require that a sentencing jury be permitted to consider mercy pleas from a capital

1

defendant's family members during the sentencing phase.  The court held that since testimony from a capital defendant's family regarding their feelings about the possible execution of their loved one does not relate to "evidence concerning his background, character, or the circumstances surrounding the offense," it is not admissible under *Lockett* and its progeny. Presumably, in view of *Fuller*, the Court of Criminal Appeals' holding also applies to testimony from the family of the victim as to the impact that an execution would have on them. Similarly, the Fifth Circuit has held that, "Though [mercy pleas from a capital defendant's family] may well impact a jury's decision, they are not mitigating evidence . . ." required to be admitted under the Eighth Amendment.  *See Kelly v. Lynaugh*, 862 F.2d 1126, 1133 n.12 (5th Cir. 1988). *But, see, People v. Mickle*, 814 P.2d 290, 321 (1991) ("[A] capital defendant is entitled to introduce at the penalty phase the opinions of family and friends about the appropriateness of a death sentence . . ."); *Romine v. State*, 305 S.E.2d 93, 251 Ga. 208, 216-17 (1983) (same).

These decisions were wrongly decided.  The Supreme Court's recent pronouncement in *Tennard v. Dretke*, 124 S. Ct. 2562 (2004), makes clear that ". . . a State cannot bar the 'consideration of . . . evidence if the sentencer could reasonably find that it warrants a sentence less than death.'" *Id.* at 2570.  Undeniably, the traumatic effect that DEFENDANT'S execution would have on his loved ones, themselves innocent of any crime, satisfies this test.

Numerous courts have recognized the relevance of the likely impact of an execution on third parties to a capital jury's sentencing decision.  *Richmond v. Lewis*, 506 U.S. 40, 43 (1992) (recognizing Arizona's practice of accepting evidence "of the effect [defendant's] execution would have upon his family" as mitigation evidence); *Richmond v. Ricketts*, 640 F. Supp. 767,

2

790-91 (D. Ariz. 1986 ) (noting that evidence of the effect of an execution on defendant's mother

was considered in mitigation); *State v. Mann*, 934 P.2d 784 (Ariz. 1997) (noting that court

weighed as a mitigating factor the defendant's relationship with his children and the effect on

them if he were executed); *State v. Williams*, 679 N.E.2d 646 (Ohio 1997) (noting that

defendant's daughter testified that she loved him, would maintain contact with him, and did not

want anything bad to happen to him); *State v. Simmons*,  944 S.W.2d 165, 187 (Mo. 1997)

(noting that defense counsel argued the fact that defendant's family wanted him to stay alive was

mitigating);  *People v. Stanley*, 897 P.2d 481, 519 (Cal. 1995) (assuming but not deciding that it

is constitutional error to forbid defendant from inquiring of defense witnesses as to whether they

want the defendant executed); *State v. Fox*, 631 N.E.2d 124, 127 (Ohio 1994) (admitting

evidence that defendant was calming influence on other inmates at the jail for purpose of

allowing defendant to argue that executing him would have an adverse effect on prison

community and noting that judge on intermediate appellate court found the likely impact of

execution on defendant's children to be a mitigating circumstance);  *State v. Stevens*, 879 P.2d

162 (Or. 1994) (trial court erred in excluding the testimony of the defendant's wife that she

believed the execution of her husband would have a negative impact on their six year old

daughter); *Cardona v. State*, 641 So. 2d 361, 365 (Fla. 1994) (allowing defendant to call her

children in mitigation and to argue that it would be better for them were she not executed);

*Romine v. State*, 305 S.E.2d 93 (Ga. 1983) (reversal because defendant, who murdered his

parents, was not allowed to present the testimony of his grandfather that he did not wish to see

his grandson executed).

C.    Due Process Requires That Execution Impact Evidence Be Admitted When the

3

<u>Government Offers Victim Impact Evidence</u>

In *Payne v. Tennessee*, 111 S. Ct. 2597 (1991), the U.S. Supreme Court removed the prior

*per se* bar on the introduction of "victim impact statements" by the prosecution as part of

aggravating evidence during a capital sentencing hearing. *Id.* at 2616.  Chief Justice Rehnquist's

opinion for the Court in *Payne* noted that in the context of mitigating evidence, the Court's

decisions have allowed the sentencer to consider ". . . 'any relevant mitigating evidence' that the

defendant proffers in support of a sentence less than death," *Payne*, 111 S. Ct. at 2606 (citing

*Eddings v. Oklahoma*, 455 U.S. 104, 114 (1982)), and that a ". . . capital defendant be treated as a

'uniquely individual human being'" during capital sentencing. *Id.* at 2606-07 (quoting *Woodson*

*v. North Carolina*, 428 U.S. 280, 304 (1976).  The Chief Justice then concluded by comparing

aggravation and mitigation evidence, that what is good for the goose is good for the gander:  that

a sentencing jury should be permitted to know about the individual characteristics of the murder

victim – as well as of the convicted capital defendant – which necessarily includes evidence

about the victim's family and their reaction to the murder.  *See, Payne*, 111 S. Ct. at 2607-09. He

held that it was not a bar to introducing such aggravating evidence that it "was [not] related to the

circumstances of Payne's brutal crimes." *Id.* at 2609.  As the Chief Justice noted:

> Human nature being what it is, capable lawyers trying cases to
> juries try to convey to the jurors that *the people involved in the*
> *underlying events* [i.e., including the victim's survivors] *are . . .*
> *living human beings with something to be gained or lost from the*
> *jury's verdict.* Under the aegis of the Eighth Amendment, we have
> given the broadest latitude to the defendant to introduce relevant
> mitigating evidence reflecting on his own individual personality. . .
> we now reject the view . . . that a State may not permit the
> prosecutor to similarly argue to the jury the human cost of the
> crime of which the defendant stands convicted . . . "Justice, though
> due to the accused, is due to the accuser also . . . We are to keep

4

the balance true." (citing *Snyder v. Massachusetts*, 291 U.S. 97 (1934).

*Id.* (emphasis added) (citing *Synder v. Massachusetts*, 291 U.S. 97 (1934)).

Justice O'Connor's concurrence in *Payne* also sheds some light on the Court's reasoning. She noted at the outset of her opinion that, "A State may decide that the jury, before determining whether a convicted murderer should receive the death penalty, should know the full extent of the harm caused by the crime, *including its impact on the victim's family* . . ." *Id.* at 2611 (emphasis added). She later noted, like the Chief Justice, that a victim should be portrayed to the jury as a "unique human being" -- which includes knowledge of the victim's family's reaction to the murder. *See, Id.* at 2612.

Justice Scalia's concurring opinion echoed Chief Justice Rehnquist's reciprocity arguments: "The Court correctly observes the injustice of requiring the exclusion of relevant aggravating evidence during the capital sentencing, while requiring the admission of all relevant mitigating evidence. "[T]he Eighth Amendment permits parity between mitigating and aggravating factors." *Id.* at 2613.

Justice Souter's concurring opinion noted, like the Court's opinion did, *Id.* at 2605, that "traditionally" criminal conduct has been punished in view of the degree of harm, if any, caused. Hence, he argued, a victim impact statement was relevant because it allowed the jury to better know this "traditional" factor in assessing punishment. *Id.* at 2614. Such aggravating evidence was considered "morally relevant" and allowed for a "reasoned moral response" from the jury. It also permitted the jury to better know the victim as a "uniquely individual human being," whose unique personality was in part a product of his family. *Id.* at 2614-15. As Justice Souter stated:

Just as defendants know that they are not faceless human ciphers,

5

> they know that their victims are not faceless fungibles, and *just as defendants appreciate the web of relationship and dependencies in which they live, they know that their victims are not human islands, but individuals with parents or children, spouses or friends, or dependents.* Thus, when a defendant chooses to kill . . . this choice necessarily relates to a whole human being and threatens the association of others, who may be distinctly hurt.

*Id.* at 2616 (emphasis added).

The collective reasoning of the Court and the concurring opinions in *Payne* apply equally to testimony from a capital defendant's family and friends about their feelings regarding the possible execution of their loved one and the impact that an execution would have on them.

The Supreme Court has repeatedly stated that the standard of relevance for mitigation evidence is extraordinarily low.  As stated in *Tennard,* " virtually no limits are placed on the relevant mitigating evidence a capital defendant may introduce concerning his own circumstances." 124 S. Ct at 2570 (quoting *Eddings v. Oklahoma,* 455 U.S. 104, 114 (1982)). Such testimony is relevant to mitigation in at least three ways: first, it goes to the question of mercy; second, it shows that a defendant may still have redeeming qualities that could spare his life; and third, it helps the jury see the individual as a "uniquely individual human being."

First, this evidence goes directly to the question of mercy, a quintessential element of mitigation. *See, e.g., Gregg v. Georgia,* 428 U.S. 153, 199 (1976) (plurality) ("Nothing in any of our cases suggests that the decision to afford an individual defendant mercy violates the Constitution."); *People v. Sanchez,* 115 Ill. 2d 238, 269 (1986) ("mercy" recognized as important part of mitigation); *State v. Petary,* 781 S.W.2d 534, 541 (Mo. 1989) (same).

Any objective standard of human decency permits close relatives and friends to ask the jury not to impose death on their loved one.  Preventing a capital defendant's relatives and friends

6

from expressing such opinions, and instructing a sentencing jury to disregard them, is as cruel and unusual as can be imagined. Allowing the jury to consider such testimony surely aids in eliciting a "reasoned moral response," *California v. Brown*, 479 U.S. 538, 545 (1987) (O'Connor, J., concurring). Mercy is an integral part of the traditional Western notion of dispensing justice. *See, e.g.*, John Milton, Paradise Lost: The Tenth Book, lines 77-78 (". . . temper so Justice with mercy . . ."); William Shakespeare, *The Merchant of Venice*, the Fourth act, sc. 1, lines 184 *et seq.*; *Matthew* 5:5; *Micah* 6:8. If the exclusion from the jury's consideration of such a basic human response as a mother's concern for her child's life -- which hardly disappears when he is convicted of capital murder -- does not violate the Eighth Amendment, nothing does.

In *Saffle v. Parks*, 494 U.S. 484, 500 (1990) (Brennan, J., dissenting), Justice Brennan quoted the Tenth Circuit's *en banc* opinion below, which recognized that, "'Mercy,' 'humane' treatment, 'compassion', and consideration of the unique 'humanity' of the defendant . . . have all been affirmed as relevant considerations in the penalty phase of a capital case . . ." *Id.* at 1266 (quoting *Parks v. Brown*, 860 F.2d 1545, 1556 (10th Cir. 1988) (en banc). Such factors, of course, were of the very type relied upon by the *Payne* Court in holding that the prosecution's use of victim impact statements was proper during a capital sentencing hearing, *see* discussion *supra*, albeit with reference to the victims' family.

Not to apply the same considerations to the testimony of a capital defendant's relatives regarding their feelings about the possible execution of their loved one would be as "unfair" and "imbalanced" an approach during sentencing as the Court's prior approach in *Booth v. Maryland*,

7

which Chief Justice Rehnquist so condemned in *Payne*. *See,* 111 S. Ct. at 2609. Once again, what is good for the goose is good for the gander. If *Payne* permits testimony from the victim's relatives regarding their feelings about the crime as part of the prosecution's presentation of aggravating circumstances, the Court should likewise permit testimony of the capital defendant's relatives regarding their feelings about the proposed punishment as part of the defense's presentation of mitigating circumstances.

A second way that such testimony is relevant as mitigating evidence is that it evinces that a particular defendant may still possess enough redeeming qualities as a human being to warrant his life being spared. The clear message sent to the jury by such testimony is that the defendant's life until the murder had enough positive elements to lead his family members to express their love by pleading that a life sentence be imposed. *People v. Mickle*, 814 P.2d 290, 321 (Cal. 1991) (Such testimony "exemplifie[s] the feelings held toward the defendant by a person with whom he [has] had a significant relationship" and "bears on his overall character and humanity" (citation omitted)); *cf. Martin v. Dugger*, 686 F. Supp. 1523, 1538-41 (S.D. Fla. 1988) (quoting extensive testimony from capital defendant's relative in which numerous pleas for mercy were interspersed with discussions of defendant's character and background).

Third, as was extensively discussed in *Payne* with respect to the testimony of the victim's survivors used as aggravation evidence, but equally applicable to testimony of the defendant's relatives used as mitigation evidence, testimony from the defendant's family aids the sentencing jury in seeing the defendant as a "uniquely individual human being." He is part of a family who still loves him, notwithstanding his crime, and that family, just like the victim's family, has a

8

vested interest in the jury's verdict.  To refuse to consider the defendant's family's feelings, which in many cases would be juxtaposed to the victim's family's feelings, simply because the former is related to a convicted capital murderer would violate a basic principle of our criminal jurisprudence:  the criminal law does not visit the sins of one family member upon the remainder of his family.[1]

Just as Chief Justice Rehnquist argued the need to convey to a jury that ". . . the people involved in the underlying events [i.e., the victim's survivors] are . . . living human beings, with something to be gained or lost from the jury's verdict," *Id.* at 2609, a capital sentencing jury should likewise know that a capital defendant also has a family of "living human beings," who care deeply about what verdict the jury reaches.  Just as Justice Souter noted that a murder victim is not a "human island", *Id.* at 2615, a capital defendant such as DEFENDANT is also not a "human island."  He has ". . . a web of relationships and dependencies . . ." *Id.*  He is ". . . [an] individual[] with parents or children, [a] spouse[] or friends, or dependents."  The jury's choice that the State of Texas should kill DEFENDANT ". . . necessarily relates to [the] whole human being and threatens [the] association of others, who may be distinctly hurt." *Id.*  And just as Justice O'Connor noted that a jury cannot fully know a murder victim as a "unique human being" without knowing of the impact of the crime on the victim's family, *see Id.* at 2611, neither can a jury know of the capital defendant as a "uniquely individual human being[]," *see, Woodson v. North Carolina*, 428 U.S. 280, 304, without hearing the defendant's family's feelings about the

---

[1]

This was even recognized by the Framers of the Constitution.  *See,* U.S. Const. Art. III, Sec. 3, Clause 2 (punishment for treason may not work "Corruption of Blood").  *See also, King v. Smith*, 88 S. Ct. 2128, 2143 9

possible execution of their loved one.

In non-capital cases, countless courts in various ways have taken into consideration a criminal defendant's family in imposing a particular sentence. *See, e.g., State v. Laird*, 547 So. 2d 1, 3 (La.App. 3 Cir. 1989); *United States v. Denardi*, 892 F.2d 269, 271 (3d Cir. 1989); *United States v. Risco*, 1989 U.S. Dist. LEXIS 16493 at *2 (E.D. Pa. Mar. 16, 1989); *United States v. Moran*, 601 F. Supp. 205 (D. Me. 1985); *United States v. Ramos*, 605 F. Supp. 277, 279 (S.D.N.Y. 1985); *Irizzary v. United States*, 58 F.R.D. 65 (D. Mass. 1973); *United States v. Orlando*, 206 F. Supp. 419, 420-21 (E.D.N.Y. 1962).  As the First Circuit noted in *United States v. Villarin Gerena*, 553 F.2d 723, 727 (1st Cir. 1977), "[t]hat any sentence may be a hardship to [a criminal defendant's] family is undeniable, the consequences of any crime are rarely visited only upon the actor and the immediate victim."  Since "traditionally," *cf. Payne*, 111 S. Ct. at 2614 (Souter, J. concurring), a criminal defendant's family has not been irrelevant to non-capital sentencing, *a fortiori* it should not be excluded from capital sentencing.

In sum, almost every argument made by the majority and concurring members in *Payne* regarding the propriety of victim impact statements applies with equal force to a capital defendant's right to offer testimony by his family regarding their feelings about the prospect of losing their loved one.  Thus, especially in view of the reasoning in *Payne*, the Court of Criminal Appeals decision in *Fuller,* 827 S.W.2d 919, was wrongly decided.

D.     Defendant's Right to Put on a Bill of Exception.

In the alternative, if the Court denies DEFENDANT the right to introduce such testimony to the jury, Defendant requests the right to make a bill of exception in narrative form for

---

n.5 (1968) (Douglas, J., concurring).
10

purposes of appeal.  As will be explained in such a bill, counsel for DEFENDANT would ask

numerous friends and family members of DEFENDANT whether they wish for DEFENDANT'S

life to be spared.  DEFENDANT would also ask such persons about the impact that a death

sentence and execution would have on them.

WHEREFORE, DEFENDANT respectfully requests that upon hearing hereof the court

find that testimony from the family of the DEFENDANT, all as set out herein, is admissible and

that the Defendant have such other and further relief to which he may show himself to be just

entitled.

RESPECTFULLY SUBMITTED,

RICHARD HURLBURT
Attorney for Defendant
Bar Number: 10308600
P.O. Box 3732
Longview, Texas 75606
Phone Number: (903) 234-8181
Facsimile Number: (903) 757-2387

KEVIN H. SETTLE
Attorney for Defendant
Bar Number: 18044400
300 North Green, Suite 315
Longview, Texas 75601
Phone Number: (903) 236-4184
Facsimile Number: (903) 757-4252

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing Motion has been hand-delivered to the
Harrison County District Attorney's Office on this ___12___ day of January, 2010.

Kevin H. Settle

11



CAUSE NUMBER: 09-0411-X

THE STATE OF TEXAS      **IN THE 71ST DISTRICT COURT**

VS.      **IN AND FOR**

CORTNE MAREESE ROBINSON   §   **HARRISON COUNTY, TEXAS**

(50)

## MOTION TO PROHIBIT COMMENT ON THE WEIGHT TO BE GIVEN OR CREDIBILITY OF TESTIMONY DURING TRIAL

**NOW COMES, CORTNE MAREESE ROBINSON,** the Defendant in the above styled and numbered cause, by and through his attorneys of record, pursuant to the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution; Article I, Sections 3, 10, 13, 19 and 29 of The Texas Constitution; and Tex. Code. Crim. Proc. arts. 1.03, 1.04, 1.05, 38.04 and 38.05, and moves the Court to refrain from commenting on the weight to be given to evidence and in particular the credibility of testimony of any witness for the State or DEFENDANT and in support thereof would show:

1. The DEFENDANT has been indicted by the county grand jury for capital murder.

2. The State is seeking the death penalty. The Eighth Amendment to the United States Constitution requires a greater degree of accuracy and fact finding than would be true in a noncapital case. *Gilmore v. Taylor*, 508 U.S. 333 (1993); *Woodson v. North Carolina*, 428 U.S. 280, 305 (1976).

3. Upon information and belief, the DEFENDANT anticipates that the State will offer testimony from a witness who will attempt to offer one or more opinions pursuant to Tex. R. Evid. 702.

4. A determination by the Court that any witness who testifies for the State or the

1

DEFENDANT is an expert should be made outside of the hearing of the jury. Announcing to the jury that a witness is accepted by the Court as an "expert" is an inappropriate and unfair comment by the Court on the credibility of the testimony and the weight that should be given to testimony by the witness and violates Tex. Code Crim. Proc. arts. 38.04 and 38.05. "Consequently, a jury more readily accepts the opinion of an expert witness as true simply because of her or her designation as an expert." *Gammill v. Jack Williams Chevrolet, Inc.*, 972 S.W.2d 713, 722 (Tex. 1998) (citing *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549 (Tex. 1995)); *see also, Flores v. Johnson*, 210 F.3d 456, 465-66 (5th Cir. 2000) (Garza, J., specially concurring) "the problem here is not the introduction of one man's opinion on another's future dangerousness, but the fact that the opinion is introduced by one whose title and education [not to mention designation as an 'expert'], gives him significant credibility in the eyes of the jury as one whose opinion comes with the imprimatur of scientific fact."

5. Tex. Code Crim. Proc. art. 38.04 provides, in part, "[t]he jury is the *exclusive* judge of the facts proved, and of the weight to be given to the testimony. . . ." (emphasis added).

6. Tex. Code Crim. Proc. art. 38.05 provides in part, "In ruling upon the admissibility of evidence, the judge shall not discuss or comment upon the weight of the same or its bearing in the case, *but shall simply decide whether or not it is admissible . . . .*" (emphasis added).

WHEREFORE, DEFENDANT respectfully requests that this Court make its Order that any determination that a particular witness qualifies as an "expert" shall be made outside of the presence of the jury. Further, that the Defendant have such other relief as he may show himself to be justly entitled.

2

RESPECTFULLY SUBMITTED,

RICHARD HURLBURT
Attorney for Defendant
Bar Number: 10308600
P.O. Box 3732
Longview, Texas 75606
Phone Number: (903) 234-8181
Facsimile Number: (903) 757-2387

KEVIN H. SETTLE
Attorney for Defendant
Bar Number: 18044400
300 North Green, Suite 315
Longview, Texas 75601
Phone Number: (903) 236-4184
Facsimile Number: (903) 757-4252

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing Motion has been delivered to the Harrison County District Attorney's Office on this ___12___ day of January, 2010.

Kevin H. Settle

## O R D E R

On this ____ day of _____, 2010, the foregoing motion

was presented in Open Court and the same is hereby **GRANTED/OVERRULED.**

_____
**JUDGE PRESIDING**

3

FILED FOR
HARRISON COUNTY, TEXAS
CLERK DISTRICT COURT
**CAUSE NUMBER: 09-0411-X**

2003 JAN 12 AM 11:08

SHERRY GRIFFIS

BY _____ DEPUTY

| | | |
|---|---|---|
| **THE STATE OF TEXAS** | § | **IN THE 71ST DISTRICT COURT** |
| **VS.** | § | **IN AND FOR** |
| **CORTNE MAREESE ROBINSON** | § | **HARRISON COUNTY, TEXAS** |

**51**

## MOTION FOR DAUBERT HEARING ADDRESSING ADMISSIBILITY OF EXPERT TESTIMONY ON FUTURE DANGEROUSNESS

COMES NOW Defendant in the above case, through undersigned counsel, and moves this Court, pursuant to the Sixth, Eighth and Fourteenth Amendments to the United States Constitution, Article 1, §§ 3, 9, 10, 13, 15 and 19 of the Texas Constitution and Texas Rules of Evidence Rule 702 to order a hearing on the admissibility of expert testimony with respect to his future dangerousness. As grounds for this motion, DEFENDANT states as follows:

1. DEFENDANT is on trial for his life.

2. As required by Tex. Code Crim. Pro. art. 37.071 (2)(b)(1), the State will attempt to lead evidence from expert witnesses about DEFENDANT's propensity for future dangerousness. See further DEFENDANT's Motion to Declare Tex. Code Crim. Pro. art. 37.071(2)(b)(1) to be Unconstitutional - Jury Inability to Determine Future Dangerousness.

3. The probability that a person will commit future violence is not a prediction that even the psychiatric community can make, particularly in the long run. The unreliability of psychiatric predictions of long-term future dangerousness is by now an established fact within the profession. American Psychiatric Association Task Force on Clinical Aspects of the Violent Individual, *Clinical Aspects of the Violent Individual* (1974) and *Amicus Brief of the American Psychiatric Association (APA) in Barefoot v. Estelle*, (1983). The APA, in its brief, said that the

1

primary finding of the task force was that judgments concerning the long-run potential for future violence and the dangerousness of a given individual are "fundamentally of very low reliability," adding that the state of the art regarding predictions of violence is very unsatisfactory.

4. The unreliability of long term predictions of future dangerousness is acknowledged even today by those who take the position that there is some ability to predict dangerousness. "Using modern assessment tools, however, there is a growing body of data to suggest that psychiatrists can, in fact, predict violence more accurately than many believe–at least in the short term. Ken Hausman, *Predicting Violence Risk Possible but Complex*, Psychiatric News, Vol 36, Number 13 (2001). These predictions of violence, even if more accurate than in the past, come in a civil setting where a determination is made about possible civil commitment, not in the context of a capital murder case where the issue is whether someone is going to live or die, not will their civil liberties be limited for short period of time -- "Despite the pervasiveness of violence risk assessment in mental health law, research continues to indicate that the unaided abilities of mental health professionals to perform this task are modest at best". MacArthur Research Network on Mental Health and the Law, Executive Summary, at 1. ( April, 2001).

5. The consideration for the jury must necessarily be a long-term consideration as a defendant who is given a life sentence will not be eligible for parole. The ability to make such long-term predictions is rendered more unreliable by the propensity of a person to commit violence to "age out" as he grows older.

6. The State will attempt to make the argument that DEFENDANT is a "future danger" to prison society because he has an anti-social personality. The Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision (DSM-IV-TR) states: "Anti-social

2

Personality Disorder has a chronic course but may become less evident or remit as the individual

grows older, particularly by the fourth decade of life. Although this remission tends to be

particularly evident with respect to engaging in criminal behavior, three is likely to be a decrease

in the full spectrum of antisocial behaviors and substance abuse." (DSM-IV-TR) at 704.

     7. The Supreme Court has announced standards which trial judges should consider in

determining whether to admit expert testimony. *Daubert v. Merrell Dow Pharmaceuticals, Inc.,*

509 U.S. 579 (1993). These standards are incorporated into article 702 of the Texas Rules of

Evidence. "This rule imposes a special gatekeeping obligation on the trial court to ensure the

reliability of all expert testimony." *Henderson v. State,* 77 S.W. 3d 321 (Tex. App. 2002). See

also *Hinojosa v. State,* 4 S.W. 3d 240  (Tex. Crim. App. 1999); *Jackson v. State*, 17 S.W. 3d 664

(Tex. Crim. App. 2000). Most recently -- "*Daubert* and Rule 702 demand that the district court

evaluate the methods, analysis, and principles relied upon in reaching the opinion. The court

should ensure that the opinion comports with applicable professional standards outside the

courtroom and that it will have a reliable basis in the knowledge and experience of the

discipline." *Norstrud v. Trinity Insurance Co.,* 97 S.W.3d 749 (Tex. App.—Fort Worth 2003).

     8. The "gate-keeper" function requires trial courts to conduct pretrial admissibility

hearings with respect to scientific evidence. The predicate for admissibility has been

summarized as follows:

> "How does the proponent of novel scientific evidence prove it to be reliable?
> As a matter of common sense, evidence derived from a scientific theory, to be
> considered reliable, must satisfy three criteria in any particular case: (a) the
> underlying scientific theory must be valid; (b) the technique applying the
> theory must be valid; and (c) the technique must have been properly applied
> on the occasion in question. Under...Rule 702, *all three criteria must be
> proven to the trial court,* outside the presence of the jury, before the evidence
> may be admitted. Factors that could affect a trial court's determination of

3

reliability include, *but are not limited to,* the following: (1) the extent to which the underlying scientific theory and technique are accepted as valid by the relevant scientific community, if such a community can be ascertained; (2) the qualifications of the expert(s) testifying; (3) the existence of literature supporting or rejecting the underlying scientific theory and technique; (4) the potential rate of error of the technique; (5) the availability of other experts to test and evaluate the technique; (6) the clarity with which the underlying scientific theory and technique can be explained to the court; and (7) the experience and skill of the person(s) who applied the technique on the occasion in question." *Kelly v State* 824 S.W. 2d 568 (Tex. Crim. App. 1992).

9. The appellate courts have recognized that the appropriate procedure for evaluating the admissibility of scientific or technical evidence involves a pre-trial hearing. *Id.; Jackson v. State,* 17 S.W. 3d 664 (Tex. Crim. App. 2000).

10. The United States Supreme Court has extended the gate-keeping obligation set out in *Daubert* to all "testimony based on technical and other specialized knowledge." *Kumho Tire Company, Ltd. v. Carmichael,* 526 U.S. 137 (1999). *Kumho Tire Company* dealt with a "junk science" -- where the "science" involves nothing more than a visual inspection. The Supreme Court held that the trial court properly excluded expert testimony about tire tread performance:

"We must therefore disagree with the Eleventh Circuit's holding that a trial judge may ask questions of the sort *Daubert* mentioned only where an expert "relies on the application of scientific principles," but not where an expert relies "on skill- or experience-based observation." 131 F.3d at 1435. We do not believe that Rule 702 creates a schematism that segregates expertise by type while mapping certain kinds of questions to certain kinds of experts. Life and the legal cases that it generates are too complex to warrant so definitive a match.   To say this is not to deny the importance of *Daubert's* gatekeeping requirement. The objective of that requirement is to ensure the reliability and relevancy of expert testimony. It is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.  . . . That is to say, a trial court should consider the specific factors identified in Daubert where they are reasonable measures of the reliability of expert testimony." *Kumho Tire Company, Ltd. v. Carmichael,*   526 U.S. at 152.

4

11. For the aforementioned reasons, the court must conduct a hearing to discern the existence, *vel non*, of the *Daubert* factors with respect to the expert testimony on future dangerousness that the state will doubtless attempt to introduce at this retrial.

WHEREFORE, DEFENDANT moves for a *Daubert* hearing to test the admissibility of expert testimony on future dangerousness that the state may intend to offer.

RESPECTFULLY SUBMITTED,

RICHARD HURLBURT
Attorney for Defendant
Bar Number: 10308600
P.O. Box 3732
Longview, Texas 75606
Phone Number: (903) 234-8181
Facsimile Number: (903) 757-2387

KEVIN H. SETTLE
Attorney for Defendant
Bar Number: 18044400
300 North Green, Suite 315
Longview, Texas 75601
Phone Number: (903) 236-4184
Facsimile Number: (903) 757-4252

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing Motion has been hand-delivered to the Harrison County District Attorney's Office on this ___12___ day of January, 2010.

Kevin H. Settle

## ORDER

On this _____ day of _____, 2010, came on to be heard the above and foregoing Motion and after considering same, the Court is of the opinion that said motion should be and **IT IS HEREBY ORDERED (GRANTED)  (DENIED)**.

Signed this _____ day of _____, 2010.

_____
**JUDGE PRESIDING**

5

000138

CAUSE NUMBER: 09-0411-X

| | | |
|---|---|---|
| **THE STATE OF TEXAS** | § | **IN THE 71ST DISTRICT COURT** |
| **VS.** | § | **IN AND FOR** |
| **CORTNE MAREESE ROBINSON** | § | **HARRISON COUNTY, TEXAS** |

### DEFENDANT'S MOTION FOR EXPERT ASSISTANCE

**TO THE HONORABLE JUDGE OF THE COURT:**

NOW COMES the Defendant, by and through his attorneys of record, and would show the Court as follows:

I.

The Defendant is presently charged by indictment with the offense of Capital Murder in the above entitled and numbered case.

II.

The Defendant is unable to make bond in his case, and is represented by court-appointed counsel.

III.

It is believed that the State has used or will use the services of numerous experts, including pathologists, criminal investigators, DNA experts, psychologists and/or others in the investigation and preparation of this case for trial. Such experts, many of whom counsel believes will be subpoenaed by the State, have contributed or will contribute to the State's case against the Defendant and will be paid for by funds from the District Attorney's Office, Harrison County and/or the State of Texas.

IV.

The Defendant's mental and physical condition will be a significant factor at both the Guilt/Innocence and Sentencing Phases of trial. The Defendant's mental state now as well as at the time the alleged offense was committed will constitute relevant mitigating evidence. Neither the Defendant nor his counsel is sufficiently knowledgeable in the aforesaid sciences to determine and assess the significance of the facts or factors concerning potential issues under Article 37.071 of the Texas Code of Criminal Procedure. Therefore, the services of such experts are necessary to enable Defendant to prepare effectively for trial, to present evidence on his own behalf, and to cross-

examine the State's expert witnesses.

### V.

To prepare adequately for his trial and possible sentencing hearing, Defendant requires the services of independent expert witnesses in the areas of psychiatry, psychology, pharmacology and toxicology. See, e.g., Penry v. Lynaugh. 109 S.Ct. 2934 (1989); Ake v. Oklahoma, 105 S.Ct. 1098 (1985). Being indigent, Defendant cannot afford to pay for such experts. The experts the Defendant desires to hire are unknown at this time but will reveal same, as well as costs and fees, at the proper time to the Court or under conditions set by the Court.

### VI.

After further investigation and when DNA testing is made known to the Defense, the Defendant will need to employ an expert in the field of DNA analysis to conduct analysis on any evidence DNA tested by a State's witness, as well as any other analysis deemed relevant to the above.

The expert the defense desires to hire is unknown at this time but will reveal same, as well as costs and fees, at the proper time to the Court or under conditions set by the Court.

### VII.

Failure of this Court to order that funds for expert witnesses be provided or if Defendant is not provided with the expert assistance requested, he will be deprived of his rights to a fair trial, effective assistance of counsel, due process and equal protection of the law, and subjected to cruel and unusual punishment in violation of his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, U.S. CONST. amends. V, VI, VIII, XIV, and Article I, Sections 3a, 10, 13 and 19 of the Texas Constitution. TEX. CONST. art. I, secs. 3a, 10 13 19.

### VIII.

The Defendant would further request the Court to enter a standing order to the Sheriff's Office of Harrison County, Texas to allow any and all Defense experts to speak to, visit with and conduct analysis on the Defendant in person in the Harrison County Jail or elsewhere upon reasonable notice to the Sheriff's office and under reasonable conditions set by the latter. This request is made to avoid long delays in filing motions, setting hearings, etc., in making arrangements for experts witnesses to visit with the Defendant and to further guarantee the Defendant's rights in numeral VII, above.

**WHEREFORE, PREMISES CONSIDERED,** Defendant prays that this motion be granted in all respects in accordance with the above allegations and Article 26.05(a) of the Texas Code of Criminal Procedure, and that the Court order that the Defendant be provided sufficient funds to retain competent expert witnesses to assist him in the investigation, evaluation, preparation, and

presentation of his case.

## RESPECTFULLY SUBMITTED,

RICHARD HURLBURT
Attorney for Defendant
Bar Number: 10308600
P.O. Box 3732
Longview, Texas 75606
Phone Number: (903) 234-8181
Facsimile Number: (903) 757-2387

KEVIN H. SETTLE
Attorney for Defendant
Bar Number: 18044400
300 North Green, Suite 315
Longview, Texas 75601
Phone Number: (903) 236-4184
Facsimile Number: (903) 757-4252

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing Motion has been hand-delivered to the Harrison County District Attorney's Office on this __12__ day of January, 2010.

Kevin H. Settle

Page 3 of 3

G00141

HARRISON

CAUSE NUMBER: 09-0411-XRT

THE STATE OF TEXAS                    § IN THE 71ST DISTRICT COURT

VS.                                   § IN AND FOR

CORTNE MAREESE ROBINSON               § HARRISON COUNTY, TEXAS

53

## MOTION TO DIRECT SHERIFF'S OFFICE TO ALLOW
## CONTACT BETWEEN DEFENSE EXPERT(S) AND DEFENDANT
## AND ALLOWANCE FOR REASONABLE EXPERT EXPENSES

### TO THE HONORABLE JUDGE OF SAID COURT:

**NOW COMES, CORTNE MAREESE ROBINSON,** by and through his attorney of record, in the above entitled and numbered cause, and makes this Motion and in support of same would respectfully show unto the Court as follows:

The Defendant is indigent and currently in the Harrison County, Texas Jail. In preparation for trial, the Defense may hire expert(s) in this case, which expert(s) may be required to speak to, visit with, and conduct analysis on the Defendant in person at the Harrison County Jail or any other county jail holding the Defendant.

By this Motion the Defendant seeks prior Court approval for reasonable expenses incurred for purposes of expert testimony under Article 26.05 of the Texas Code of Criminal Procedure as well as an Order allowing Defense expert(s) to have the above contact with the Defendant.

WHEREFORE, PREMISES CONSIDERED, the Defendant respectfully prays that the Court grant his motion in all things.

RESPECTFULLY SUBMITTED,

KEVIN H. SETTLE
Attorney for Defendant
Bar Number: 18044400
300 North Green, Suite 315
Longview, Texas 75601
Phone Number: (903) 236-4184
Facsimile Number: (903) 757-4252

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing Motion has been hand-delivered to the Harrison County District Attorney's Office on this _____12_____ day of January, 2010.

Kevin H. Settle

FILED
HARRISON COUNTY, TEXAS
CLERK DISTRICT

CAUSE NUMBER: 09-0411-X

2010 JAN 12  AM 11: 08

SHERRY GRIFFIS

BY_____
DEPUTY

STATE OF TEXAS § IN THE 71ST DISTRICT COURT

VS. § IN AND FOR

CORTNE MAREESE ROBINSON § HARRISON COUNTY, TEXAS

## MOTION FOR ORDER STATING PERMISSIBILITY
## FOR PROSECUTION WITNESSES TO DISCUSS CASE

54

TO THE HONORABLE JUDGE OF SAID COURT:

**NOW COMES** the Defendant, by and through his Attorney of record, and respectfully requests this Court to enter an Order stating to witnesses and prospective witnesses in the above entitled and numbered cause, that it is permissible to discuss the case with the Defense Attorney and/or the investigator for the Defendant, that it is further permissible on the part of the witness to discuss this case outside the presence of the District Attorney's Office or any member of the District Attorney's staff.  In support of such motion, the Defendant would show the Court as follows:

I.

The Defendant's attorney has attempted or will attempt to talk to witnesses in said cause such as law enforcement officers, civilians and experts. Witnesses have indicated or may indicate to the Defense Attorney and/or his Investigator that they do not feel it is legally permissible to talk with the Defense Attorney and/or his Investigator concerning this case.

**WHEREFORE, PREMISES CONSIDERED,** the Defendant requests the Court enter its order setting out that it is permissible, if they so desire, for either witnesses or prospective witnesses for the Prosecution, whether they be law enforcement officers or not, to talk with Defendant's Attorney and/or the Defendant's Investigator and discuss the facts of the case with them.

RESPECTFULLY SUBMITTED,

RICHARD HURLBURT
Attorney for Defendant

KEVIN H. SETTLE
Attorney for Defendant

000144

Bar Number: 10308600
P.O. Box 3732
Longview, Texas 75606
Phone Number: (903) 236-8181
Facsimile Number: (903) 757-2387

Bar Number: 18044400
300 North Green, Suite 315
Longview, Texas 75601
Phone Number: (903) 236-4184
Facsimile Number: (903) 757-4252

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing Motion has been delivered to the Harrison County District Attorney's Office on this ⎯12⎯ day of January, 2010.

Kevin H. Settle



CAUSE NUMBER: 09-0511-X

THE STATE OF TEXAS                              IN THE 71ST DISTRICT COURT

VS.                                            IN AND FOR

CORTNE MAREESE ROBINSON          §             HARRISON COUNTY, TEXAS

### MOTION TO QUASH INDICTMENT ON BASIS OF THE UNCONSTITUTIONALITY OF ARTICLE 37.071 OF THE TEXAS CODE OF CRIMINAL PROCEDURE

55

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, **CORTNE MAREESE ROBINSON**, Defendant in the above entitled and numbered cause, by and through his attorneys of record and moves the Court to quash the indictment in the above styled and numbered cause due to the unconstitutionality of the sentencing structure of Article 37.071 of the Texas Code of Criminal Procedure employed in the trial of capital murder cases and in support thereof would show the Court as follows:

I.

Article 37.071 C.C.P. is unconstitutional for failure to provide a carefully detailed instruction on consideration of mitigating evidence and how same should be considered, because the statute prohibits the individualized consideration of mitigating circumstances, because of capriciousness stemming from the impossibility of predicting future behavior and because the terms used in the second/mitigation special issue are vague and overbroad.

II.

Article 37.071 C.C.P. is unconstitutional because of the arbitrary selectivity given to prosecutors in deciding whether to indict for capital murder, in the absence of evidence of purposeful discrimination.

1

III.

Article 37.071 C.C.P. is unconstitutional for imposing on the jury the standard of "probability" on the theory that this is less stringent than proof beyond a reasonable doubt.

IV.

Article 37.071 C.C.P. is unconstitutional for allowing the arbitrary and capricious infliction of the death penalty.

V.

Article 37.071 C.C.P. does deny the Defendant due process and equal protection of the law under the United States and Texas Constitution by permitting introduction at the punishment phase of "...any matter that the Court deems relevant to sentence."

VI.

Article 37.071 C.C.P. is unconstitutional because it does not properly narrow the class of persons eligible for the death penalty. It allows a person to be convicted of capital murder as a party.

VII.

Article 37.071 of the Texas Code of Criminal Procedure in the above instances cited is violative of the Defendant's rights under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Article 1, Sections 3a, 10, 13 and 19 of the Texas Constitution.

VIII.

This statute is unconstitutional for several reasons. It impermissibly shifts the burden of proof on mitigation to the Defendant in violation of Article I, Section 10 of the Texas Constitution. Because the statute demands the defense produce "sufficient" mitigation, the burden is shifted to the Defendant. Further because the statute is not specific about the exact burden of proof, it really

2

provides no meaningful guidance to the jury who is called upon to make this life and death decision. As a result, the death penalty is imposed in a wanton and freakish manner in violation of the Defendant's rights to due process and as protection from cruel and unusual punishment. Eighth and Fourteenth Amendments to the United States Constitution, as well as Article I, Section 13 of the Texas Constitution.

### IX.

### State Law Violations

This infirmities in the statute discussed above are also violative of State Constitutional Law. Under the "due course of law" provision of the Texas Constitution, Article I, Section 10, the citizens of this state are guaranteed that any punishment for an offense will be in accordance with the law. McFarlane v. State, 254 S.W.2d 136, 136 (Tex.Cr.App. 1953). When the burden of proof is shifted to the Defendant, the State's burden has essentially been reduced. See e.g., Cobarrubio v. State, 675 S.W.2d 749 (Tex.Cr.App. 1983) overruled in part, Lawrence v. State, 700 S.W.2d 208 (Tex.Cr.App. 1985), and Elliott v. State, 858 S.W.2d 478, 487-488 (Tex.Cr.App. 1993). Such a punishment, based on a reduced burden, is not in accordance with Texas law and is unconstitutional.

WHEREFORE, PREMISES CONSIDERED, the Defendant respectfully prays that the Court quash the indictment in the above entitled and numbered cause.

RESPECTFULLY SUBMITTED,

RICHARD HURLBURT
Attorney for Defendant
Bar Number: 10308600
P.O. Box 3732

KEVIN H. SETTLE
Attorney for Defendant
Bar Number: 18044400
300 North Green, Suite 315

3

Longview, Texas 75606                    Longview, Texas 75601
Phone Number: (903) 234-8181             Phone Number: (903) 236-4184
Facsimile Number: (903) 757-2387         Facsimile Number: (903) 757-4252

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing Motion has been hand-delivered to the Harrison County District Attorney's Office on this _____ 12 _____ day of January, 2010.

Kevin H. Settle

## ORDER

On this the _____ day of _____, 2010, the foregoing motion

was presented in Open Court and the same is hereby **GRANTED/DENIED** and **IT IS ORDERED**

that this Motion and Order shall be made a part of the record hereof.

**JUDGE PRESIDING**

4

CAUSE NUMBER: 09-0411-X

THE STATE OF TEXAS                          § IN THE 71ST DISTRICT COURT

VS.                                         § IN AND FOR

CORTNE MAREESE ROBINSON        §        HARRISON COUNTY, TEXAS

(56)

## MOTION TO PRECLUDE THE DEATH PENALTY - CAPITAL SENTENCING STATUTE UNCONSTITUTIONAL BECAUSE IT ALLOWS JURIES TO DECIDE FUTURE DANGEROUSNESS BASED SOLELY ON THE FACTS OF THE CASE

**NOW COMES** the Defendant in the above entitled and numbered cause by and through his attorneys of record, pursuant to the Fourth, Fifth, Seventh and Eighteenth Amendments of the United States Constitution and Articles 1.05, 1.06 and 1.09 of the Texas Code of Criminal Procedure, and moves the Court to preclude the death penalty and in support thereof would show the Court the following:

DEFENDANT has been indicted by the Harrison County grand jury for the offense of capital murder.

The State is seeking the death penalty.

## THE UNDEFINED TERMINOLOGY UTILIZED BY TEXAS COURTS IN EXPLAINING THE FACTS OF THE CASE INTRODUCES ARBITRARINESS INTO THE CAPITAL PROCEEDING AND ALLOWS FOR WANTON RESULTS

In *Jurek*, the Supreme Court upheld Texas's death penalty statute because the Court felt that "Texas has provided a means to promote the evenhanded, rational and consistent imposition of death sentences under law. Because this system serves to assure that sentences of death will not be 'wantonly' or 'freakishly' imposed, it does not violate the Constitution"

1

*Jurek v. Texas*, 428 U.S. 262, 276 (1976) (quoting *Furman v. Georgia*, 408 U.S. 238, 310

(Stewart, J., concurring))

1.          The jury is supposed to determine if there is a "probability that the defendant

would commit criminal acts of violence that would constitute a continuing threat to society."

Tex. Code Crim. Proc. art. 37.071 § 2(b)(1).

2.          A court is not required to define any of these terms for the jury. *Ladd v.

State*, 3 S.W.3d 547, 572 (Tex. Crim. App. 1999). "The trial court need not define such

terms, because the jury is presumed to understand them without instruction." *Id.*, at 572-73.

3.          The entire purpose of the new death penalty statutes adopted after *Furman*

was to remake the machinery of death in order to allow it to function without unbridled

discretion.  By allowing jurors to make determination about a defendant's future

dangerousness without explaining to the jurors exactly what they are attempting to determine

is giving jurors unlimited discretion.

4.          The Supreme Court has said that proper jury instructions are very important

in these cases.  Juries should be given guidance regarding the factors about the crime

defendant and the state deem particularly relevant to the sentencing decision. *See Gregg v.

Georgia*, 428 U.S. 153, 192-93. It is quite simply a hallmark of our legal system that juries be

carefully and adequately guided in their deliberations." *Id.*

**FINDINGS OF FUTURE DANGEROUSNESS ARE INHERENTLY SPECULATIVE
AND CANNOT BE TRUSTED WHEN ONLY THE FACTS OF THE CASE ARE
UTILIZED TO ESTABLISH THAT A DEFENDANT WILL BE A CONTINTUING
THREAT TO SOCIETY**

5.           In upholding the Bail Reform Act (which requires courts to determine if a

defendant poses a future danger to society), the Supreme Court stressed that the decision

cannot be made arbitrarily. "The judicial officer is not given unbridled discretion in making

the detention determination.  Congress has specified the considerations relevant to that

decision." *United States v. Salerno*, 481 U.S. 739, 742 (1987).  A number of different factors

must be taken into consideration by the fact-finder before the decision can be made.

6.           It seems that a similar factor-based analysis would be used in a death penalty

future dangerous determination.  The Supreme Court even implied this in *Jurek* by saying,

"[w]hat is essential is that the jury have [sic] before it all possible relevant information about

the individual defendant whose fate it must determine.  Texas law clearly assures that all

such evidence will be adduced." *Jurek*, 428 U.S. at 276.

7.           Instead, the Texas Court of Criminal Appeals has interpreted the law in such

a way that allows the jury to ignore most of the evidence that could help it make its decision.

 The Court of Criminal Appeals has enumerated a non-exclusive list of factors that the jury

*may* consider to determine the defendant's future dangerousness. *Smith v. State*, 74 S.W.3d

868, 870 (Tex. Crim. App. 2002).

8.           Unlike a judge determining bail, a jury need not consider all of the factors.

In fact, the Texas courts continue to encourage juries to ignore most of the factors.  In *Smith*,

the Court of Criminal Appeals said, "the circumstances of the offense alone may be enough

warrant an affirmative answer to the future dangerousness special issue." *Id.*  "It has been

said that the circumstances of the offense and the facts surrounding it may furnish greater

probative evidence than any other evidence regarding the probability of future acts of violence." *Alexander v. State*, 740 S.W.2d 749, 761 (Tex. Crim. App. 1987).

9.        These cases clearly contradict the Supreme Court's wish in *Jurek* that all evidence would be considered before condemning a defendant to death. After all, "an individualized decision is essential in capital cases." *Lockett v. Ohio*, 438 U.S. 586, 605 (1978).

## ALLOWING A DETERMINATION OF FUTURE DANGEROUSNESS SOLELY FROM THE FACTS OF THE CASE INVITES ARBITRARY SENTENCING

10.       The Texas Court of Criminal Appeals has repeatedly held that the circumstances of the offense can be the best evidence of future dangerousness. *See, e.g., O'Bryan v. State*, 591 S.W.2d 464, 480 (Tex. Crim. App. 1979); *Alexander*, 740 S.W.2d at 761; *Joiner v. State*, 825 S.W.2d 701, 705 (Tex. Crim. App. 1992).

11.       Although the facts of a particular crime provide some useful information to a jury attempting to decide if a defendant will commit future acts of criminal violence, it cannot be the only evidence a jury could need.

12.       By allowing the facts of the case alone to determine future dangerousness, the jury is given free reign to make its findings.  Whenever a jury is particularly disgusted with a defendant's actions, it can condemn him to death and use the "facts of the case" as a spurious explanation.

13.       By not specifically setting out particular factors that must be considered, the jury can make a judgment based on an emotional response and sentence the defendant to death without considering all the relevant information.

14.     DEFENDANT  requests that the Court order the State to respond to this

motion in writing, at least five days prior to hearing.  DEFENDANT further requests that the

Court make findings of fact and conclusions of law regarding this motion.

WHEREFORE, DEFENDANT respectfully requests that that relief be granted as prayed for

herein.

RESPECTFULLY SUBMITTED,

RICHARD HURLBURT
Attorney for Defendant
Bar Number: 10308600
P.O. Box 3732
Longview, Texas 75606
Phone Number: (903) 234-8181
Facsimile Number: (903) 757-2387

KEVIN H. SETTLE
Attorney for Defendant
Bar Number: 18044400
300 North Green, Suite 315
Longview, Texas 75601
Phone Number: (903) 236-4184
Facsimile Number: (903) 757-4252

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing Motion has been hand-
delivered to the Harrison County District Attorney's Office on this __12__ day of January, 2010.

Kevin H. Settle

## O R D E R

On this _____ day of _____, 2010, the foregoing Motion

was presented in Open Court and after considering same, the Court is of the opinion that said

motion should be and **IT IS HEREBY ORDERED (GRANTED)   (DENIED)**.

Signed this _____ day of _____, 2010.

**JUDGE PRESIDING**

FILED
HARRISON COUNTY, TEXAS
CLERK DISTRICT COURT

**CAUSE NUMBER: 09-0411-X**

2010 JAN 12 AM 11: 08

SHERRY GRIFFIS

BY _____

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 71ST DISTRICT COURT |
| VS. | § | IN AND FOR |
| CORTNE MAREESE ROBINSON | § | HARRISON COUNTY, TEXAS |

## MOTION FOR COURT TO DECLARE CODE OF CRIMINAL PROCEDURE ARTICLE 37.071, SECTION 2(A) UNCONSTITUTIONAL

**TO THE HONORABLE JUDGE OF THE COURT:**

COMES NOW the Defendant in the above entitled and numbered cause, by and through his

counsel of record, and respectfully prays the Court to grant the relief requested in accordance with

this Motion, and in support of such request would show the Court as follows:

I.

The Defendant anticipates that in the voir dire examination of the jury in this case, the Court and/or

the attorneys for the State will instruct the jury as to the punishment procedures for capital cases set

out in Texas Code of Criminal Procedure, Article 37.071, Section 2(a). This article sets out the

procedure whereby the jury may answer the special issues submitted to them. However, Article

37.071 2(a) specifically states that no one may inform the jury of the result of their inability to

answer any of the special issues. The Defendant asserts that such statute unconstitutionally limits his

rights to due process of law, equal protection under the law, and effective representation of counsel,

as guaranteed by both the State and Federal Constitutions. Such unconstitutionality comes in the

manner in which the jury is not apprised that a single juror may compel the entry of a life sentence.

The instructions given pursuant to Article 37.071, Section 2(a) would therefore be coercive to the

1

jury in their inference that the jury must arrive at a verdict as set out in Article 37.071, Section 2(a), when the fact that the jury's failure to answer a special issue is contemplated, and provision made for such occurrence, by Article 37.071, Section 2(g). Article 37.071, Section 2(a), therefore compels the jury to decide the punishment issues under false and misleading instructions, and in doing so violates the constitutional rights of the Defendant as set out above under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Article 1, Sections 20, 13 and 19 of the Texas Constitution.

II.

Due to such infirmity, the Defendant requests the Court upon hearing this Motion to declare Article 37.071, Section 2(a), unconstitutional and further, that the Court instruct the jury as to the results of their failure to answer a special issue in its explanations of the Article 37.071 procedures, and that the Court permit counsel for the Defendant to voir dire the jury on this subject.

WHEREFORE, PREMISES CONSIDERED, the Defendant respectfully prays that upon hearing the foregoing Motion, that the Court grant such Motion in all things, and further grant unto the Defendant such other relief as to which he may be entitled.

RESPECTFULLY SUBMITTED,

RICHARD HURLDURT
Attorney for Defendant
Bar Number: 10308600
P.O. Box 3732
Longview, Texas 75606
Phone Number: (903) 234-8181
Facsimile Number: (903) 757-2387

KEVIN H. SETTLE
Attorney for Defendant
Bar Number: 18044400
300 North Green, Suite 315
Longview, Texas 75601
Phone Number: (903) 236-4184
Facsimile Number: (903) 757-4252

2

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing Motion has been hand-delivered to the Harrison County District Attorney's Office on this ___12___ day of January, 2010.

Kevin H. Settle

# O R D E R

On this _____ day of _____, 2010, came on to be heard

Defendant's Motion for Court to Declare Code of Criminal Procedure Article 37.071, Section 2(a)

Unconstitutional and it appears to the Court that this Motion should be and IT IS HEREBY

ORDERED (GRANTED)    (DENIED).

SIGNED on this _____ day of _____, 2010.


_____

**JUDGE PRESIDING**

3

CAUSE NUMBER: 09-0411-X

THE STATE OF TEXAS                                    IN THE 71ST DISTRICT COURT

VS.                                                           IN AND FOR

CORTNE MAREESE ROBINSON          §          HARRISON COUNTY, TEXAS

58

### MOTION TO DISMISS THE DEATH PENALTY IN THE STATE OF TEXAS ON THE GROUND THAT ITS CAPITAL SENTENCING PROCEDURE IS UNCONSTITUTIONAL DUE TO ITS FAILURE TO MEET MINIMUM REQUIREMENTS SET FORTH IN *FURMAN V. GEORGIA* AND ITS PROGENY, AS EVINCED BY THE FINDINGS OF THE CAPITAL JURY PROJECT AND OTHER RESEARCH

**TO THE HONORABLE JUDGE OF SAID COURT:**

NOW COMES, **CORTNE MAREESE ROBINSON,** by and through his attorneys of record, pursuant to the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution; Article One, Sections Three, Ten, Thirteen, and Nineteen of the Texas Constitution; and other applicable law, moves this Court to declare the death penalty process in Texas unconstitutional on the ground that the sentencing statute, Tex. Code Crim. Proc. art 37.071, creates confusion in the jurors, because jurors are given both faulty instructions and misleading information by the courts, because they abdicate the responsibility of making a life or death decision, they often believe that they are required to return a verdict of death, because they do not consider or are confused by mitigating evidence, and because they still use race as a determining factor in sentencing.

## I.

## INTRODUCTION

A substantial body of uncontroverted research conducted on actual capital jurors shows that there are several critical failings in the procedure that the Texas courts use to determine the

sentence in a case in which the state seeks the death penalty. As a result of these many flaws, the death penalty in Texas is incapable of being applied in a manner that comports with federal and state constitutional protections.

The United States Supreme Court has devoted an extraordinary amount of its time granting *certiorari* in state death penalty cases so as to articulate precisely what the Constitution requires for a lawful jury death sentence verdict. The Court has ruled on a plethora of procedural and substantive constitutional questions addressed to various provisions of the Fifth, Sixth, Eighth, and Fourteenth Amendments. The Court has articulated firmly established constitutional imperatives which must be met for a lawfully determined sentence of death.

Unfortunately, what the Court has deemed constitutional is often not enough to ensure a defendant of his right to a fair capital trial. The Court must review this standard within the context of a substantial body of peer-reviewed, validated, and uncontroverted scientific literature, focusing mostly on research conducted and analyzed by social scientists working with the Capital Jury Project (CJP)—a nationwide research group funded by the National Science Foundation that has interviewed over 1200 jurors who actually made the life or death sentencing decision in 354 capital trials in fourteen death penalty states. CJP spent more than ten years thoroughly analyzing how real capital juries actually go about making real capital sentencing decisions – and comparing their findings to the Supreme Court's pronouncements.

*Furman v. Georgia*, 408 U.S. 238 (1972), created a body of law regarding capital murder cases that set forth constitutional mandates determining the fairness and impartiality with which capital defendants must be treated. Despite these established provisions, jurors in Texas still do not allow for a fair trial. As the CJP data evinces, these jurors are unable to make their decision on a constitutional basis because of the confusing nature of Texas's sentencing statute, because

2

jurors are given both faulty instructions and misleading information by the courts, because they abdicate the responsibility of making a life or death decision, because they often believe that they are required to return a verdict of death, because they do not consider mitigating evidence, because the way Texas defines mitigating evidence as anything that reduces "moral blameworthiness" is misleading and confusing, and because jurors still use race as a determining factor in sentencing.  Because jurors are unable to meet these constitutional standards, the death penalty process in Texas is unconstitutional under *Furman* and its successive cases.

## II.

### SOCIAL SCIENCE AND THE LAW IN THE ERA BEFORE THE CAPITAL JURY PROJECT

For forty years, social scientists have been conducting scientific-method-based, verifiable research into the twin questions of how juries go about making their decisions and what impact the capital *voir dire* screening process has on the non-excluded group's decisionmaking dynamic.[1]  The Supreme Court has periodically been presented with studies by litigants who hoped to shed some objective, experiential, outside-the-courtroom, fact-based light on whatever particular legal issue was before the court.  In the past, the Court has rejected these studies.  Initially this evidence was rejected because the field of study was too new and there was insufficient data to support the relief being requested.  *See Witherspoon v. Illinois*, 391 U.S. 510, 517 (1968) (rejecting three studies offered to support a claim that death-qualified juries were guilt-prone juries as "too tentative and fragmentary" to support a *per se* constitutional ruling).  As the field gained acceptance, it was still rejected by the Court because it did not address the question of how "actual jurors sworn under oath apply the law to facts of an actual case involving the fate of an actual capital defendant."  *Lockhart v. McCree*, 476 U.S. 162, 171

---

[1]     *See, e.g.*, HARRY KALVEN & HANS ZEISEL, THE AMERICAN JURY (University of Chicago Press, 1966).

3

(1986).   In essence, the Court said data from artificial jurors in an artificial setting was unpersuasive even when drawn from scientifically sound and statistically valid mathematical equations.   *See McCleskey v. Kemp*, 481 U.S. 279 (1987) (finding studies showing that race influences capital decisionmaking do not answer question of how jurors eligible for service in McCleskey's case are likely to approach issues when sworn).

The clear message from *Lockhart* and *McCleskey* was that the Court would reject studies unless the research removed itself from the experimental and addressed the actual.   To have persuasive force, social science research on capital juries needed to interview actual jurors from actual capital trials.

In response to this alleged shortcoming as perceived by the Court, studies based on in-depth interviews of actual capital jurors were conducted in Florida, California, and Oregon. These studies showed that capital jurors were not following the constitutional guidelines established by the Supreme Court's post-*Furman* jurisprudence:

> Shortly after the *McCleskey* decision, researchers undertook studies based on in-depth interviews with persons who had served on capital juries in Florida, California, and Oregon. These interviews focused on how jurors actually made their decisions and whether, or to what extent they were guided by the capital statutes in their respective states.  The questioning was largely an open ended inquiry into what factors influenced the sentencing decision, and whether jurors' decision-making was being guided by statutory provisions and the Court's conception of the sentencing decision as a reasoned moral choice.

* * * *

> These studies raised serious questions about the operation of post-*Furman* capital statutes.   Jurors appear to understand sentencing instructions poorly, especially their obligation to give effect to mitigation.  Many appear to presume that death is the appropriate punishment for capital offenses without regard for mitigation.  They seem to focus narrowly on a single issue to simplify decision-making and to reach consensus on punishment. In explaining the decision to impose the death penalty, they invoke

4

guilt related considerations as if the sentencing process was merely a replay of the guilt decision. These soundings were *sufficiently ominous to justify a more extensive investigation of the capital sentencing process*, one that would take a more systematic look into the black box of jury decision-making. [2]

The constitutional failures of the post-*Furman* capital sentencing schemes are further substantiated by studies of the Capital Jury Project. Created in 1990, with funding from the Law and Social Sciences Program of the National Science Foundation (grant NSF SES-9013252), the CJP researched the decisionmaking of actual capital jurors. The CJP's interviews chronicle the jurors' experiences and decisionmaking over the course of the trial, identify points at which various influences come into play, and reveal the ways in which jurors reach their final sentencing decisions.

The CJP began in eight states and has grown to a total of fourteen states. States were chosen for the CJP research to reflect the principal variations in guided discretion capital statutes. Within each state, 20 to 30 capital trials were picked to represent both life and death sentencing outcomes. From each trial, a target sample of four jurors was systematically selected for in-depth, three-to-four-hour personal interviews. Interviewing began in the summer of 1991. The present CJP working sample includes 1,201 jurors from 354 capital trials in 14 states. These 14 states are responsible for 76.1% of the 3,718 persons on death row as of June 1, 2002, and for 79.0% of the 795 persons who were executed between 1977 and September 1, 2002.

---

[2]  JAMES R. ACKER ET AL., AMERICA'S EXPERIMENT WITH CAPITAL PUNISHMENT: REFLECTIONS ON THE PAST, PRESENT, AND FUTURE OF THE ULTIMATE PENAL SANCTION 8-11 (2d ed., Carolina Academic Press 2003) (emphasis added.).

5

Data collected and analyzed by CJP researchers played a substantial role in *Simmons v. South Carolina*, 512 U.S. 154 (1994). Since 1993, some 30 articles presenting and discussing the findings of the CJP have been published in scholarly journals.[3]

## III.

## CONSTITUTIONAL PRINCIPLES ESTABLISHED SINCE *FURMAN V. GEORGIA* AND JURORS' INABILITY TO FULFILL THESE REQUIREMENTS

### A.

### PROCEDURES MUST BE CLEAR AND OBJECTIVE; YET, BECAUSE MOST JURORS ARE STILL CONFUSED OVER SENTENCING PROCEDURES, THERE RESULTS AN UNCONSTITUTIONAL AND UNJUST CAPITAL SENTENCING SYSTEM

1. <u>The Supreme Court Requires That There Be No Risk of Arbitrary Decisions Made by Jurors</u>

The modern death penalty era began when *Furman v. Georgia* struck down capital sentencing as it had been historically applied by the states. The *Furman* Court concluded that capital punishment was being applied in an unconstitutional manner. *Furman v. Georgia*, 408 U.S. 238, 239–40 (1972). The system of unfettered discretion to sentence capital defendants to die had resulted in a jury decisionmaking system that was so freakishly wanton, so arbitrary and capricious, and so unreviewable on appeal that it violated the Cruel and Unusual Punishment Clause of the Eighth Amendment. *Id.*

In the three decades since *Furman*, the Court has made it clear that the "vesting of standardless sentencing power in the jury violates the Eighth and Fourteenth Amendments." *Woodson v. North Carolina*, 428 U.S. 280, 302 (1976). A capital jury's sentencing discretion must be channeled by clear and objective standards which provide specific and detailed guidance

---

[3]    *See* the Capital Jury Project Website at http://albany.edu/scj/CJPhome.htm for an updated listing of CJP related articles, commentaries, and doctoral dissertations.

6

for the jury and render the capital sentencing process one that can be rationally reviewed. *Maynard v. Cartwright*, 486 U.S. 356 (1988); *Godfrey v. Georgia*, 446 U.S. 420 (1980).

Three statutory capital sentencing schemes that, on their faces, appeared to address the concerns expressed in *Furman* were upheld by the Court in 1976. *See Jurek v. Texas*, 428 U.S. 262 (1976); *Proffitt v. Georgia*, 428 U.S. 242 (1976); *Gregg v. Georgia*, 428 U.S. 153 (1976). These statutory schemes used three different approaches—Florida's weighing approach, Georgia's threshold approach, and Texas's directed approach. All three approaches had four essential features in common that met the constitutional concerns expressed *Furman*:

1)   A rational mechanism for narrowing the class of death-eligible offenders;

2)   Bifurcated sentencing proceedings separate from the guilt determination;

3)   An instructional scheme that channels the sentencing jury discretion with clear and objective standards which purportedly provide guidance for the jurors that is understandable and that makes rationally reviewable the process by which the jury imposes a death sentence; and

4)   Appellate review that is adequate to ensure the sentencing decision was arrived at by means that comport with what the Constitution requires.

The requirement of clear and objective standards to guide capital jurors has led the Court to strike down vague statutory criteria which cannot be reviewed objectively on appeal. In *Godfrey*, Georgia's "outrageously or wantonly vile, horrible, and inhuman" aggravator was invalidated. *Godfrey*, 488 U.S. at 422–23. The Court concluded it was so vague that it failed to provide any meaningful guidance to the jury. *Id.* at 428–29. A capital jury making a sentencing decision on such a factor was as unconstrained in its sentencing choice as juries were under the schemes invalidated by *Furman*.

7

Oklahoma's "especially heinous, atrocious, or cruel" standard was struck down on this same basis. *Maynard*, 486 U.S. at 364. The *Maynard* Court reaffirmed that its Eighth Amendment jurisprudence since *Furman* had "insisted that the channeling and limiting of the sentencer's discretion in imposing the death penalty is a fundamental constitutional requirement for sufficiently minimizing the risk of wholly arbitrary and capricious action." *Id.* at 362. Thus, the Court's jurisprudence has made it clear that capital sentencing decisions must be made according to criteria that are sufficiently clear to permit ordinary citizens to understand and apply them.

The requirement that a death sentence not be imposed arbitrarily is derived from "the Eighth Amendment's heightened 'need for reliability in the determination that death is the appropriate punishment in a specific case.'" *Caldwell v. Mississippi*, 472 U.S. 320, 323 (1985) (quoting *Woodson*, 428 U.S. at 305). It was chiefly the concern that decisions of life and death were being arbitrarily determined that led the Supreme Court in 1972 to declare the death penalty in violation of the Eighth and Fourteenth Amendments to the Constitution. *See generally Furman v. Georgia*, 408 U.S. 238 (1972). In capital cases, therefore, the Court is committed to ensuring that there is sufficient process to guarantee, as much as is humanly possible, that "the sentence was not imposed out of whim . . . or mistake." *Eddings v. Oklahoma*, 455 U.S. 104, 118 (1982) (O'Connor, J., concurring).

### 2. The American Law Institute's Withdrawal of the Model Penal Code Section on Capital Punishment

On October 23, 2009, the Council of the American Law Institute (ALI) voted overwhelmingly to withdraw Section 210.6 of the Model Penal Code, which deals with capital punishment, based on doubts that any foreseeable regime for its implementation could meet basic concerns of fairness in process and outcome. Specifically, the resolution adopted by the Council

8

stated that Section 210.6 should be withdrawn "in light of the current intractable institutional and structural obstacles to ensuring a minimally adequate system for administering capital punishment."[4]  Furthermore, although the Council voted against taking an official position on capital punishment, it also voted against undertaking a project to revise or replace the section.[5]

Section 210.6, the main provision of the Model Penal Code concerning capital punishment, was first adopted by the ALI in 1962.  The section sought to guide significant concerns regarding capital punishment, defining those cases appropriate for capital punishment, aggravating and mitigating circumstances, and special sentencing procedures.  Recently, however, ALI members called into question the continued viability of the guidelines, and the group commissioned an extensive report concerning the fair administration of the death penalty.[6] This report examined the major rationales giving rise to skepticism over whether current or potential future capital punishment systems are capable of being fairly applied or reaching just results:

> (a) the tension between clear statutory identification of which murders should command the death penalty and the constitutional requirement of individualized determination; (b) the difficulty of limiting the list of aggravating factors so that they do not cover (as they do in a number of state statutes now) a large percentage of murderers; (c) the near impossibility of addressing by legal rule the conscious or unconscious racial bias within the criminal-justice system that has resulted in statistical disparity in death sentences based on the race of the victim; (d) the enormous economic costs of administering a death-penalty regime, combined with studies showing that the legal representation provided to some criminal defendants is inadequate; (e) the likelihood, especially given the availability and reliability of DNA testing, that some persons sentenced to death will later, and perhaps too late, be shown to not

---

4   AM. LAW INST., MESSAGE FROM ALI DIRECTOR LANCE LIEBMAN, http://www.ali.org/_news/10232009.htm (last visited Nov. 6, 2009).

5   AM. LAW INST., REPORT OF THE COUNCIL TO THE MEMBERSHIP OF THE AMERICAN LAW INSTITUTE ON THE MATTER OF THE DEATH PENALTY 3–4 (2009), *available at* http://www.ali.org/doc/Capital%20Punishment_web.pdf.

6   *Id.* at 1–3.

000166

have committed the crime for which they were sentenced; and (f) the politicization of judicial elections, where—even though nearly all state judges perform their tasks conscientiously—candidate statements of personal views on the death penalty and incumbent judges' actions in death-penalty cases become campaign issues.[7]

After reviewing these general issues with the death penalty itself, the ALI Council decided to withdraw Section 210.6.

The Council further outlined four primary factors as the basis for its decision. First, it noted that Section 210.6 was an untested innovation when it was first enacted. According to the Council, the subsequent decades of practice with capital punishment systems modeled on it and the myriad U.S. Supreme Court decisions reshaping the constitutional landscape in these intervening years proved that, "on the whole[,] the section has not withstood the tests of time and experience."[8]

Second, the Council asserted that many ALI members still had important concerns about the administration of capital punishment law as a whole, and felt unable to recommend procedures that would adequately alleviate them. Thus, they determined that the ALI "should not play a further role in legitimating capital punishment, no matter how unintentionally, by retaining the section in the Model Penal Code."[9]

Third, it discussed the fact that the basic question underlying the death penalty was deeply moral, political, social, and personal in nature. As such, substantial consensus—even among ALI members themselves—would be unlikely, and continued study would fail to contribute meaningfully to the policy debate. For these reasons, the ALI decided against further examining the question and proposing to speak on it later.

---

7   *Id.* at 5.
8   *Id.* at 4.
9   *Id.*

10

Finally, it observed that, while some Council members thought the ALI could play a useful role in recommending constitutionally sound procedures, others believed that "real-world constraints make it impossible for the death penalty to be administered in ways that satisfy norms of fairness and process."[10]  Based on this division, the Council concluded that any effort to offer a set of contemporary procedures for administering the death penalty would fail intellectually, institutionally, and politically; therefore, it determined not to undertake such an effort.

Importantly, Section 210.6, which purportedly outlined proposals for how to make the death penalty less arbitrary, was cited approvingly by the Supreme Court in its 1976 decision upholding the constitutionality of reformed state death penalty laws. *See Gregg v. Georgia*, 428 U.S. 153, 193–95 (1976).  Indeed, the *Gregg* Court acknowledged that "some have suggested that standards to guide a capital jury's sentencing deliberations are impossible to formulate," but cited the Model Penal Code as evidence that such standards had in fact been developed. *Id.* at 193.  Thus, the section's withdrawal signifies a compelling recognition by the legal community that the standards have proven unworkable in the American judicial system.  Furthermore, the ALI's action undermines the very reasoning set forth by the Court in justifying the constitutionality of capital punishment.  As such, the Court's analysis now lacks the logical potency it once held, and a fresh review of the issue is therefore warranted in order to avoid arbitrary decision making by capital juries.

### 3.    Texas's "10-12 Rule"

The Texas Code of Criminal Procedure requires the court to charge the jury that it may not answer any issue submitted under Subsection (b) of Article 31.071 (asking "whether the defendant would commit criminal acts of violence that would constitute a continuing threat to society"), section 2(d)(2) "yes" unless it agrees unanimously, and it may not answer any issue

---

10      *Id.* at 5.

11

"no" unless ten or more jurors agree. TEX. CODE CRIM. PROC. art. 37.071 § 2(d)(2) (Vernon Supp. 2006). The court is also required by Article 37.071 § 2(f)(2) to charge the jury that it may not answer the issue submitted under Subsection (e) (whether there is a "sufficient mitigating circumstance or circumstances that warrant a sentence of life imprisonment without parole," rather than death, should be imposed) "no" unless it agrees unanimously and it may not answer "yes" unless ten or more jurors agree. *Id.* § 2(f)(2).

Under articles 37.071(2)(c) and 37.071(2(f)(1), the jurors shall answer each interrogatory either "yes" or "no." *Id.* § 2(c), 2(f)(1). In the event that the jury is unable to answer any issue, either because it was unable to secure unanimity for a "yes" answer or ten votes for a "no" answer pursuant to the issues submitted under Subsection (b), or because it was unable to secure unanimity for a "no" answer or ten votes for a "yes" answer pursuant to the issue submitted under Subsection (e), 37.071(2)(g) requires the Court to sentence the defendant to life in prison. *Id.* § 2(g). This is substantively identical to the sentence that results if the jury is able to answer "no" to at least one issue submitted under Subsection (b) or "yes" to the issue submitted under Subsection (e). Article 37.071(2)(a) prohibits the Court, either attorney, and the defendant himself from informing the jury, or any prospective juror, that the failure to answer any of the issues presented will result in a mandatory life sentence. *Id.* § 2(a). Jurors who ask questions regarding the consequences of such a deadlock are routinely reread the original instructions.

### 4. The 10-12 Rule Creates an Impermissible Risk of Arbitrariness Through the Presentation of False and Misleading Evidence

Death is different not only in severity but also in kind from all other punishments. The Eighth and Fourteenth Amendments to the United States Constitution demand additional procedural safeguards in capital trials. *See generally Gregg v. Georgia*, 428 U.S. 153 (1976); *Furman v. Georgia*, 408 U.S. 238 (1972); *see also Woodson v. North Carolina*, 428 U.S. 280,

12

305 (1976) (holding that death is qualitatively different). The effect of these safeguards is that legislatures and courts are obligated to strike a difficult, but constitutionally mandated, balance between the non-arbitrary imposition of the death penalty and the right of each defendant to individualized sentencing.[11]   The Texas death penalty statute, by providing misleading information to jurors and then prohibiting the court, the attorneys, and the defendant from correcting that misinformation, both creates a constitutionally impermissible risk of arbitrariness and denies defendants their right to individualized sentencing.

###### a.   *The Bar Against False, Misleading, or Inaccurate Information*

In *Simmons v. South Carolina*, 512 U.S. 154 (1994), the Court held that the Due Process Clause of the Fifth and Fourteenth Amendments is violated where the capital sentencing decision is made on the basis of false, inaccurate, or misleading information.  The jury that sentenced Simmons to death reasonably may have believed he could be released on parole if he were not sentenced to death.  The Court concluded that such a misunderstanding "had the effect of creating a false choice between sentencing petitioner to death and sentencing him to a limited period of incarceration." *Id.* at 162.  In *Shafer v. South Carolina*, 532 U.S. 36 (2001), the Court reaffirmed the principles established in *Simmons*.  A capital jury's choice to sentence someone to death should never be premised upon false, misleading, or inaccurate beliefs because such erroneous beliefs have the effect of forcing the jury to choose death to make sure that the defendant is never released.

---

[11]   It is precisely this difficulty that caused Justice Blackmun to conclude that the entire enterprise of seeking to make the death penalty constitutionally acceptable was flawed.  In his dissent from the Court's denial of a petition to grant a writ of certiorari, Blackmun declared: "From this day forward, I no longer shall tinker with the machinery of death . . . . It is virtually self-evident to me now that no combination of procedural rules or substantive regulations ever can save the death penalty from its inherent constitutional deficiencies." *Callins v. Collins*, 510 U.S. 1141, 1145 (1994) (Blackmun, J., dissenting).

Not only are jurors confused about the effects of their decision, but also about the way in which they are to make the decision. The Texas death penalty statute affirmatively creates confusion in the minds of the jurors. Jurors are first told that the jury as a whole shall answer "yes" or "no" to each issue presented; they are subsequently told that ten or more jurors must be in agreement to give one set of answers and that they must be unanimous in order to give another. This necessarily raises the question of what happens in the event that the jury, despite being instructed that it must answer each question, is unable to get the minimum number of votes required to give either answer. The statute clearly provides that, in the event of a non-answer, the defendant is to receive a sentence that is substantively identical to that which he or she would have received had there been a verdict in favor of life, and thus the law itself exhibits no confusion with regard to the situation presented. However, not only does the statute fail to do all that is humanly possible to ensure that decisions regarding life and death are not made as a result of that manufactured confusion, but it *actively prohibits* any clarification of the confusion by preventing jurors from being informed at any point of the effect of a non-answer.

Death penalty statutes are not effectively guiding discretion when jurors misunderstand the instructions, mistakenly believe death is required by law, and do not appreciate their responsibility for the sentence imposed. The CJP findings indicate that a large majority of jurors believe the law is responsible for the sentence, yet this is problematic due to their lack of understanding of the law. Exemplifying the confusion that jurors have over the directed approach to sentencing that Texas has embodied, one juror asked by the CJP said that, on the range of issues to consider,

> We just had to stick to those four [sic] basic criteria. We couldn't deviate with this mitigating circumstance or testimony of people

> that had spoken on his behalf or against him. We just had to go by
> those guidelines that they give you when you make that decision.[12]

Jurors do not understand what is expected of them, particularly when the sentencing instructions are as vague and confusing as the 10-12 Rule is on its face, even without additional misleading information from the courts. According to a study by William Bowers and Benjamin Stoglia,

> Jurors' mistaken beliefs about the death penalty alternative are a substantial influence on their sentencing decisions, prominent at the first vote on punishment and even stronger by the final punishment verdict. When jurors engage in the give and take of deliberations, the effect of their misperceptions becomes most pronounced. This is when the rhetoric of early release can become the currency of persuasion. Early in deliberations, the most substantial movement occurs among the previously undecided, whose life or death votes on the first jury ballot are strongly in accord with their mistaken release estimates. Later in deliberations there are cross-overs between life and death as well as confirmations from undecided to life or death, again consistent with jurors' typically mistaken release estimates. The end result of this allocation process is a substantial difference between death votes by jurors who believe the alternative yields only 0–9 years served (68.5%) and death votes by those who believe it is 20 years or longer (43.1%).[13]

### b.    The False Dilemma of Leniency

The result of misinforming jurors and forcing them to deliberate without knowledge of what happens in the event of a non-answer is that they are presented with a false dilemma. Jurors are given general instructions that they must answer either "yes" or "no" to the issues before them, and specific instructions that define the minimum number of votes required to give each of these answers. Because they are told that a death sentence follows from one set of answers, and a life sentence follows from another, a reasonable juror might conclude that the *only* way to get either of these punishments is to answer the questions posed to them. *See*

---

[12]   Craig Haney, Lorelei Sontag & Sally Costanzo, *Deciding to Take a Life: Capital Juries, Sentencing Instructions, and the Jurisprudence of Death*, 50 J. SOC. ISSUES 149, 165–66 (1994).

[13]   William J. Bowers & Benjamin D. Steiner, *Death by Default: An Empirical Demonstration of False and Forced Choices in Capital Sentencing*, 77 TEX. L. REV. 605, 671 (1999).

15

*California v. Brown*, 479 U.S. 538, 541 (1987) (quoting *Francis v. Franklin*, 471 U.S. 307 (1985)) (holding that the constitutional sufficiency of capital sentencing instructions is determined by what a reasonable juror could have understood the charge as meaning). This leaves jurors free to speculate as to what would occur should they be unable to provide an answer to the issues. While it is possible that jurors might correctly guess that the failure to agree will result in a life sentence, it is perhaps more likely that they will conclude that a non-answer will lead to a lesser sentence, a costly retrial or resentencing proceeding, or absolute freedom for the defendant. Given that each of the jurors has already found the defendant guilty of a capital offense, none of these options would look desirable to a juror who honestly believes that a life sentence in warranted. Jurors are left to deliberate with the false belief that if they are unable to gain unanimity for a death sentence or ten or more votes for a life sentence, an altogether unacceptable third option will result.

In *Simmons*, the Court prohibited just this sort of unfairness, holding that the State may not create a false dilemma by advancing generalized arguments regarding the defendant's future dangerousness while, at the same time, preventing the jury from learning that the defendant will never be released on parole. *Simmons v. South Carolina*, 512 U.S. 154, 171 (1994). The Texas statute instructs jurors that at least ten of them must agree in order for a life sentence to be imposed and yet prohibits jurors from learning that only one vote against death is actually required for a life sentence. It is precisely because jurors are left to speculate when capital juries are not informed of the consequences of a deadlock that several states have declared the practice to be in violation of Eight Amendment protections as found in *Gregg v. Georgia*, 428 U.S. 153 (1976). *See, e.g., New Jersey v. Ramseur*, 106 N.J. 123, 314 (1987) (stating that the jury must be told, in effect, that the law recognizes deadlock as a permissible result, an outcome allowed by

16

the statute, and a legal trial verdict that by law results in imprisonment rather than death); *Louisiana v. Williams*, 392 So.2d 619, 634–35 (1980) (holding that, by allowing jurors to remain ignorant of the true consequence of their failure to decide unanimously upon a recommendation, the trial court failed to suitably direct and limit the jury's discretion so as to minimize the risk of arbitrary and capricious action).

### c.    The False Dilemma of Impermissibility

While this confusion might pressure jurors to change their position in order to avoid the unknown third option, it might lead to an even more basic misunderstanding.  Because jurors are told that each question must be answered, and voting ballots do not include an option for non-answer, a reasonable juror following the instructions might believe that a non-answer is not only undesirable, but is in fact impermissible.  Such a juror might believe that because he or she is unable to secure the ten votes required to give the answer that juror wishes the jury to give, and because some answer either way must be given, that juror is in fact obliged to vote with the others and sentence the defendant to death.  Although the law is clear that a death sentence may never be mandatory, and individual jurors must always be free to vote for life, such a belief would reasonably follow from the instructions mandated by the Texas sentencing scheme.  *See Roberts v. Louisiana*, 428 U.S. 325 (1976) (striking down mandatory death sentences for persons convicted of the first-degree murder of police officers); *Woodson v. North Carolina*, 428 U.S. 280 (1976) (holding state legislation that mandated the death penalty for all convicted first-degree murderers unconstitutional).

In fact, jurors often mistakenly believe that they are required by law to impose death.[14] One study found that when jurors asked for clarification and were simply referred back to the

---

[14]    *See generally*, Stephen P. Garvey, Sheri Lynn Johnson & Paul Marcus, *Correcting Deadly Confusion: Responding to Jury Inquiries in Capital Cases*, 85 CORNELL L. REV. 627 (2000).  In addition to this

original instructions, rather than being disavowed of their false belief they became *more likely* to mistakenly believe that the evidence required them to vote for death.[15]  This is precisely what the Texas statute would have judges do when jurors ask questions regarding the implications of a non-answer.  The Texas statutory scheme creates a set of instructions that lead jurors to have false beliefs regarding their sentencing options, prohibits them from learning their true options, and then operates in a fashion that solidifies their pro-death leanings.

### d.    Due Process Boundaries on State Discretion

It is true that state legislatures are often given discretion to decide what information is relevant to a capital sentencing determination, and are thus able to exclude some information from jury instructions.  *See California v. Ramos*, 463 U.S. 992, 1001 (1983) (asserting that the Court generally defers to the state's choice of substantive factors relevant to the penalty determination).  However, that discretion is bounded by the requirements of due process.  *See, e.g., Kelly v. South Carolina*, 534 U.S.246, 246–47 (2002); *Shafer v. South Carolina*, 532 U.S 36, 39 (2001); *Ramdass v. Virginia*, 530 U.S. 156, 195 (2000) (Stevens, J. dissenting); *Simmons v. South Carolina*, 512 U.S. 154, 175 (1994) (O'Connor, J., concurring in judgment).

In *Ramos*, the Court permitted a jury instruction regarding the state governor's commutation powers on the ground that the instruction was both accurate and relevant to a legitimate state penological interest.  *Ramos*, 463 U.S. at 1001–06.  Despite being prompted to apply *Ramos* in the case of *Caldwell v. Mississippi*, the Court refused, holding that when the State argues that automatic appellate review is meant to determine whether the death penalty is

---

mistaken belief, one study also found that "[a]bout half the jurors incorrectly believe that a mitigating factor must be proved beyond a reasonable doubt.  Less than a third of jurors understand that mitigating factors need only be proved to the juror's personal satisfaction.  The great majority of jurors – in excess of sixty percent in both life and death cases – erroneously believe that jurors must agree unanimously for a mitigating circumstance to support a vote against death." Theodore Eisenberg & Martin T. Wells, *Deadly Confusion: Juror Instructions in Capital Cases*, 79 CORNELL L. REV. 1, 11 (1993).

[15]    Garvey et al., *supra* note 14, at 639.

18

appropriate in a given case, this information not only inaccurately depicts the role of the appellate court but, more importantly, it serves an illegitimate state purpose by diminishing the ability of jurors to feel the gravity of their task. *Caldwell v. Mississippi*, 472 U.S. 320, 336–41 (1985).

The Texas procedural rules and corresponding jury instructions are equally inaccurate and illegitimate. When jurors are instructed that they may not give a verdict of life unless ten or more agree upon a life answer in response to at least one of the three issues, this provides an incorrect picture of the state of the law. In fact, if only one juror is able to conclude that sufficient mitigation exists to warrant the imposition of a life sentence, despite that juror's inability to convince nine other jurors of his or her position, a life sentence will be imposed.

This situation is unique to capital sentencing juries. During the guilt/innocence phase of a criminal trial, it is strictly correct to inform the jury that unanimity is required for either a verdict of guilt or acquittal. Although anything short of unanimity will lead to a mistrial, and thus might lead the defendant to be released as though he were acquitted, he may still be retried and is thus unable to claim numerous basic constitutional protections such as that of double jeopardy. Under the Texas sentencing scheme, while the legislature might prefer a life sentence that derives from the agreement of ten jurors to one that arrives by default, the position of the defendant is identical in both. *See Padgett v. State*, 717 S.W.2d 55, 58 (Tex. Crim. App. 1986) (holding that a jury's inability to answer a punishment question in a capital murder case has the same sentencing effect as a negative answer). Thus, instructing the jury that ten or more of them must agree upon a life answer in order to sentence the defendant to life, regardless of whether the court informs the jury of the effects of a non-answer, is an incorrect statement of the law.

000176

So long as the Texas statute equates the sentencing consequences of a life verdict with the consequences of a non-verdict, the jury must not be misled to believe that anything more than one vote for life is required to secure that sentence. The false distinction between a life answer of ten or more jurors and a non-answer of less than ten jurors must be removed.

### e.    A Historical Perspective

This sentencing structure was not used prior to 1981. Under Texas's former capital sentencing statute, if a jury failed to respond to any of the three special issues the result was a complete mistrial, requiring a new trial, not just on sentencing, but on guilt as well. *See Eads v. State*, 598 S.W.2d 304, 308 (Tex. Crim. App. 1980). Under such a scheme, setting aside the other arguments proffered here, an instruction that ten or more jurors are required for a life sentence would be just as unobjectionable as an instruction that unanimity is required for death, a finding of guilty, or an acquittal. Presumably in response to *Eads* and the additional costs and difficulties that such a situation would pose, the Texas legislature in 1981 amended the death penalty statute, inserting the default sentence of life in the event of a non-answer. It was at that time that the legislature also added the infirm language that is now in article 37.071(2)(a), prohibiting jurors from being informed of this default result. It is clear that the legislature wished to change the sentencing reality of defendants without informing jurors of this change. In doing so, however, the legislative change made the old instructions inaccurate depictions of the law. Not only are the instructions inaccurate, but they were intended to be inaccurate and confusing in order to serve an illegitimate state interest.

Texas' deliberate attempt to confuse the jurors only exacerbates the problem already in progress: that these jurors are confused by the sentencing instructions given in the 10-12 Rule in article 37.071. This confusion leads to decisions made by jurors on an arbitrary, rather than a

20

structured and well-considered, basis.   Furthermore, the juries are making these life or death decisions through unconstitutionally misguided and false information provided by the Texas courts.  As such, Texas' sentencing protocol is unconstitutional.

### 5.   The Reality Behind Juror Unanimity

The problems inherent in the structure of Texas's 10-12 Rule are further compounded by recent research providing insight into how juries reach their decisions.  Of particular note are the findings of a study conducted as a part of the National Center for State Courts (NCSC) project on hung juries.  Employing data taken from nearly 3,500 jurors in non-capital felony cases, the study sought to shed empirical light on the processes underlying juror decisionmaking, particularly the formation of juror opinions, the impact of deliberation, and the role of the dissenting juror.[16]   The researchers determined that 38–54% of juries included at least one dissenter, that is, a juror who would have reached a different verdict than the one entered by the jury if that juror had been deciding the case alone.[17]   However, these dissenters often ultimately conformed to the views of the majority of the jury panel, as "a sizable proportion of jurors eventually voted in line with the group but at odds with their personal preferences."[18]   These findings raise important questions about the significance and reliability of ostensible unanimity.

Of critical importance is the issue of what gives rise to the existence of dissent among a jury that is statutorily required to reach a unanimous verdict.  The NCSC researchers identified several elements that result in a purportedly unanimous jury nevertheless containing dissenting

---

16   Nicole L. Waters & Valerie P. Hans, *A Jury of One: Opinion Formation, Conformity, and Dissent on Juries* 2–3, 7 (Cornell Legal Studies, Research Paper No. 08-030, 2008), *available at* http://ssrn.com/ abstract=1297272. While the jurors surveyed in this study were all involved in non-capital cases, the findings are nevertheless relevant here because they dealt with guilt-phase determinations in serious felony criminal settings.

17   *Id.* at 12–13. This seemingly wide range was based on the manner in which the dissenting juror's vote was compared to the majority's. Under each method, however, a significant number of juries contained at least one juror whose one-person verdict differed from that of "the general verdict reached by the jury as a whole" (38%), "the jury's decision on the first count" (46%), or "the final vote of the jury" (54%). *Id.*

18   *Id.* at 24.

individuals. First, they noted the psychological effects of social pressure to conform to the views of a group, particularly if the dissenter is alone and without supporters. The impact of social pressure to conform is well documented. For example, Professor Scott E. Sundby of Washington & Lee University has asserted that jurors who hold out against the majority begin to feel isolated, and "[a]s they feel more and more isolated . . . they start to doubt themselves, doubt their judgments."[19] Indeed, jurors often change their minds quickly after realizing that they are in the minority. According to Sundby, "Studies show that isolation triggers a . . . reflex in the pain center of the brain. . . . We've evolved as human beings [to] where it is difficult for us to stand by ourselves."[20] Furthermore, William Bowers, director of the National Capital Jury Project, notes that minority jurors are particularly susceptible to feeling like outsiders during deliberations, and states that they "often feel that they're being railroaded into a death sentence, and they often give in."[21] Thus, it is evident that psychological factors often lead individual jurors to silence their own personal beliefs for the sake of group conformity.

Second, the NCSC study suggested that jurors' role expectations played an important part in the persistence of dissent within a supposedly unanimous jury. Specifically, they discussed the knowledge from the outset that group consensus was required, adherence to the letter of the law despite one's opposing common sense of fairness or justice, and various structural aspects of the deliberation process. The combination of these role expectations and typical conformity pressures, then, worked to "encourage jurors to accede to the majority view even if they [were] not privately convinced. The desire to fulfill one's job as a juror may outweigh one's individual

---

19   Daarel Burnette & Stacy St. Clair, *Death-Penalty Holdouts: Experts Intrigued by Rare Ability to Withstand Pressure*, CHI. TRIB., Oct. 25, 2009, *available at* http://www.chicagotribune.com/news/chi-death-penalty-holdouts-25-bdoct25,0,806297.story (detailing the "rare ability to withstand intense pressure during deliberations" exhibited by three jurors in the Brown's Chicken massacre trials).

20   *Id.*

21   *Id.*

22

verdict preference."[22] The study concluded, "What seems clear is that unanimous jury decisions include not only those cases in which there is genuine agreement but also a significant number of cases in which jurors 'agree to disagree' and acquiesce."[23] This evidence that so-called "unanimous" jury verdicts are in fact often merely a result of psychological factors affecting jurors' decisionmaking abilities flies directly in the face of the capital statutory sentencing requirements. *See* TEX. CODE CRIM. PROC. art. 37.071.

Significantly, those jurors who personally opposed the majority's decision were more often in favor of acquittal than conviction.[24] This means that many defendants are being convicted despite the fact that at least one juror on their panel favored acquittal. This notion of pro-defendant dissenters is particularly disturbing in the capital sentencing context due to the sentencing statute's prohibition against judges, attorneys, or parties informing juries of the ability for just one juror favoring life to prevent the defendant from being executed. *See* TEX. CODE CRIM. PROC. art. 37.071(2)(a). Under this scheme, a dissenting juror who is unaware that he or she is single-handedly able to prevent a defendant from receiving a death sentence may be more likely to conform his or her vote to the wishes of the majority despite personally believing that life imprisonment is the more appropriate punishment.

## B.

### DESPITE THE COURT'S CONSTITUTIONAL REQUIREMENTS, JURORS STILL RELY ON THEIR PREDETERMINED FEELINGS ABOUT CAPITAL PUNISHMENT AND THE SENTENCING PROCESSES

#### 1. Jurors Evade Responsibility for Their Capital Sentencing Decisions

Just as jurors who are informed that their decision will be reviewed for appropriateness by an appellate court are impermissibly led to deflect their awesome responsibility onto the

---

22    Waters & Hans, *supra* note 16, at 26.
23    *Id.* at 27.
24    *Id.* at 19.

appellate courts, Texas jurors are impermissibly led to relieve themselves of a sense of responsibility by placing it either upon the other jurors who are unwilling to join the vote in favor of life (it is their fault that the defendant will be killed because, by not joining the other jurors, they prevent the jury from reaching the required minimum of ten votes), or upon the statutory scheme that purports to require ten votes, rather than merely one, in order to give life (it is the fault of the Texas statute because, unless a juror can get at least ten votes for life, that juror may not vote for life). Just as it is impermissible to lead jurors to place that responsibility upon the appellate courts, it is impermissible to lead them to place it upon their fellow jurors or upon a restrictive sentencing statute.

As the Court explained in *Caldwell*, "Belief in the truth of the assumption that sentencers treat their power to determine the appropriateness of death as an 'awesome responsibility' has allowed this Court to view sentencer discretion as consistent with—and indeed as indispensable to—the Eighth Amendment's 'need for reliability in the determination that death is the appropriate punishment in a specific case.'" *Caldwell v. Mississippi*, 472 U.S. 320, 330 (1985). However, CJP data demonstrates that this assumption is false. Almost no capital jurors view themselves as ultimately responsible for the decision they make. Rather, they place primary responsibility elsewhere:

> The vast majority of jurors did not see themselves as most responsible for the sentence. Over 80% assigned primary responsibility to the defendant or the law, with 49.3% indicating the defendant and 32.85% indicating the law was most responsible. In contrast, only 5.5% thought the individual juror was most responsible and only 8.9% believed the jury as a whole was most responsible . . . .[25]

---

[25]    William J. Bowers & Wanda D. Foglia, *Still Singularly Agonizing: Law's Failure to Purge Arbitrariness from Capital Sentencing*, 39 CRIM. L. BULL. 51,174–75 (2003).

One study relying on CJP statistics explained further the jurors' relinquishment of responsibility for the life or death of a capital defendant:

> [T]here was a tendency among jurors from [samples from studies in both California and Oregon] to shift or abdicate responsibility for the ultimate decision—to the law, to the judge, or to the legal instructions—rather than to grapple personally with the life and death consequences of the verdicts they were called upon to render. [In addition, the researchers concluded:] Capital penalty instructions fail to acknowledge (let alone clearly frame or carefully guide) the inherently moral nature of the task that they direct jurors to undertake. They seem to imply that death sentencing involves nothing more than simple accounting, an adding up of the pluses and minuses on the balance sheet of someone's life.[26]

Moreover, the jurors themselves who were evaluated in this CJP study explained the way in which the jurors framed their sentencing decision:

> We are not sentencing him to death—we are just answering these questions. We talked about it. We are just answering these questions—to get a clear mind so as not to feel guilty that I sentenced him to die. That's how the law has it—just answer these questions.[27]

*Caldwell* states that capital jurors must not be misled so as to diminish their sense of responsibility for any death sentence imposed. *Caldwell*, 472 U.S. at 332 (O'Connor, J., concurring). Each juror must understand that he or she alone is responsible for his or her sentencing decision. Uncorrected beliefs that "responsibility for any ultimate determination of death will rest with others" create a possible bias toward a death sentence. *Id.* at 333.

A jury unconvinced that death is the appropriate punishment, "might nevertheless wish to 'send a message' of extreme disapproval for the defendant's acts" and vote for death on the assumption that the ultimate sentencer will correct any error. *Id.* at 332. A jury led to believe a

---

[26]    ACKER ET AL., *supra* note 2, at 8–11 (quoting Haney et al., *supra* note 12, at 160, 172) (internal citations omitted).

[27]    *Id.* (quoting Haney et al., *supra* note 12, at 161–167) (internal citations omitted).

25

life sentence cannot be increased to death may vote death because it understands any decision to "'delegate' responsibility" for a sentence of death "can only be effectuated by returning" a death sentence. *Id.*

Assuming *arguendo* that the Texas statute does not provide the jury with the type of inaccurate and illegitimate information prohibited by a traditional reading of *Caldwell*, new empirical data suggests that such a reading of *Caldwell* is entirely inadequate to ensure that capital jurors feel the truly awesome responsibility placed upon them. *McGautha v. California*, 402 U.S. 183, 208 (1971). Many death penalty jurors seek, and manage to find, ways to deny their personal moral responsibility for the sentencing decision.[28]   Given that jurors hardly need to have inaccurate information provided to them in order for them to deflect responsibility, the *Caldwell* rule itself should be read in light of the empirically supported premise that death penalty jurors will take advantage of any available opportunity to *mislead themselves* about the extent of their responsibility for the sentencing decision. *Id.* If we are to give any meaning to Justice Harlan's concern in *McGautha* that death penalty jurors be required to individually feel this terrific weight upon their shoulders, courts must inform jurors that just as each of them is required to vote for death in order for that punishment to take place, each has the power to give the defendant life unilaterally.

2. **Jurors Believe They Are Required to Return a Verdict of Death When Confronted With the Issue of Future Dangerousness**

The Supreme Court ruled in *Woodson v. North Carolina* that no state can require the death penalty solely on the grounds that specific aggravating circumstances have been established. *Woodson v. North Carolina*, 428 U.S. 280 (1976). This means that, despite a state's requirement

---

[28]     *See* Joseph L. Hoffman, *Where's the Buck? Juror Misperception of Sentencing Responsibility in Death Penalty Cases*, 70 IND. L.J. 1137, 1157 (1995) (explaining that jurors, even when not outwardly misled, find ways of avoiding their responsibility in death sentencing decisions).

that jurors in a capital case must consider any aggravating circumstances, jurors cannot be obligated to make a decision of death solely because these factors exist.  Unfortunately, this constitutional mandate is profoundly misunderstood by capital jurors in Texas, resulting in both confusion and an unjust process that culminates in improper executions.

The future dangerousness, or "continuing threat," special issue in Texas is so illogically framed in its statement of the state's burden of proof as to impose no actual burden on the prosecution at all to prove the single aggravating factor upon which a defendant can obtain any review.  As it currently stands, Texas courts' instructions allow jurors to rest their decisions upon the mere *possibility* that the defendant *might* be a threat to *free society* at some time in the future, instead of holding the State to its burden of proving a *probability, beyond a reasonable doubt*, of such a threat to *prison society*.  The risk of a possibility does not rise to the required standard of proof, and the cause of the jurors' inability to hold the State to its burden is the framing of the burden in the instruction itself.  Without clearly defining and explaining the State's burden of proof on the issue of future danger, the courts force jurors to labor under confusion during their deliberations.  Indeed, numerous studies show that jurors in capital cases are frequently confused about the proper burden of proof.[29]  This confusion is compounded by the preconceived notions regarding the death penalty held by most jurors as well as the faulty procedures underlying the gathering and admission of evidence concerning future dangerousness.

*a.    The Ill-Defined Capital Jury Instruction*

Article 37.071, § 2(b)(1) of the Texas Code of Criminal Procedure states that in a capital case, "[T]he court shall submit . . . to the jury . . . whether there is a probability that the

---

29    *See* John Blume, et.al., *Lessons from the Capital Jury Project, in* BEYOND REPAIR: AMERICA'S DEATH PENALTY (Stephen Garvey, ed., 2003); *see also* Shari Seidman Diamond & Judith N. Levi, *Improving Decisions in Death by Revising and Testing Jury Instructions*, 79 JUDICATURE 224 (1996); Eisenberg & Wells, *supra* note 14.

000184

defendant would commit criminal acts of violence that would constitute a continuing threat to society." TEX. CODE CRIM. PROC. art. 37.071, § 2(b)(1) (Vernon Supp. 2006). The state bears the burden of proving this probability beyond a reasonable doubt. *Id.* § 2(c). This jury instruction is a misleading denial of due process and due course of law—both of which are constitutionally guaranteed—as well as a violation of the guarantees against cruel and unusual punishment.

The court's failure to define the statutory terms is objectionable because it impermissibly leads the jurors to believe they are required to give death for undefined qualifications. The term "probability," without proper explanation, may mean to a juror no more than a bare chance; "criminal acts of violence" may mean no more than traffic violations; "threat" no more than minor property damage or loss; and "continuing" may similarly mean only for a very short time. Perhaps the most unsettling and potentially misleading of these terms, however, is the word "society." This is because, despite the alternative of life without parole, Texas courts refuse to explicitly limit the "society" to which capital defendants presumably pose a threat as prison society, rather than society as a whole.[30] Apparently, Texas courts simply assume jurors will naturally construe the statutory term in such a limited manner on their own. *See Rougeau v. State*, 738 S.W.2d 651, 660 (Tex. Crim. App. 1987), *overruled on other grounds by Harris v. State*, 784 S.W.2d 5, 18–19 (Tex. Crim. App. 1989) (finding that the term "society" is "usually dependent upon the context in which the word is used," and asserting that in the capital sentencing context the "jury would clearly focus its attention on the 'society' that would exist for the defendant and *that* 'society' would be the 'society' that is within the Department of Corrections"). However, as we have seen, there is no reason to believe that lay jurors will be

---

30    Meghan Shapiro, Article, *An Overdose of Dangerousness: How "Future Dangerousness" Catches the Least Culpable Capital Defendants and Undermines the Rationale for the Executions It Supports*, 35 AM. J. CRIM. L. 145, 150–51 (2008).

able to decipher such a specific and confusing point of law without further instruction from a judge.

This problem is particularly salient given the extremely low actual prison violence rates of incarcerated capital murderers, who were found by a recent study to be "among the most docile and trustworthy inmates in the institution."[31]  Indeed, risk assessment experts have determined, based on large-scale data collection of prison behavior, that the estimated likelihood a newly imprisoned capital murderer will commit any violence whatsoever during his first forty years of incarceration is only 16.4%.[32]  The probability that an incarcerated capital defendant will commit another murder during that time period is a mere 0.2%.[33]  Unfortunately, most jurors are completely unaware of these statistics and instead rely on their own misconceptions and the dubious testimony of so-called "experts."[34]

Furthermore, many jurors refuse to even accept the underlying notion that convicted capital murderers who are sentenced to life without parole in lieu of death will actually remain in prison for the rest of their natural lives.[35]  In practice, therefore, failure by Texas courts to limit the term "society" specifically to the prison population may violate the Supreme Court's ruling in *Simmons*, which forbade the states from "creat[ing] a false dilemma by advancing generalized arguments regarding the defendant's future dangerousness while, at the same time, preventing the jury from learning that the defendant never will be released on parole." *Simmons v. South*

---

31    Shapiro, *supra* note 30, at 162 (quoting Jonathan R. Sorensen, *Criminology: An Actuarial Risk Assessment of Violence Posed By Capital Murder Defendants*, 90 J. CRIM. L. & CRIMINOLOGY 1251, 1256 (2000) (analyzing data obtained through capital juror exit polls)).

32    Sorensen, *supra* note 31, at 1264.

33    *Id.*

34    For example, one study showed that capital jurors believed there was an 85% likelihood of violent crime and a 50% likelihood of another homicide being committed by offenders serving a life sentence. *Id.* at 1269.  For more on jurors' reliance on the dubious predictions of future dangerousness by psychiatric "experts," see *infra* Part III.B.2.c.

35    Bowers & Steiner, *supra* note 13, at 650 (explaining the persistent phenomenon that most jurors do not believe that a sentence of life without parole actually eliminates the availability of parole).

29

*Carolina*, 512 U.S. 154, 171 (1994); *see also Ramdass v. Angelone*, 530 U.S. 156 (2000) (limiting the applicability of *Simmons* to cases where the defendant is definitively ineligible for parole). Thus, although the only "society" convicted capital defendants could pose a "continuing threat" to is prison society, and although that threat is exceedingly small, there nevertheless remains a great, unconstitutional danger that jurors will base a death sentence on misunderstood, unrealistic, and outright incorrect interpretations of future threat, rather than on the proper law and statutory guidelines.

The failure to define these important statutory terms may also be regarded by jurors as strategic in that it implies that death is the preferred sentence and amounts to a subtle comment on the weight of the evidence to be considered under both special issues. Consideration of mitigating circumstances may then become conditional upon, and perhaps related to, a future dangerousness finding far too easily made. Again, without meaningful guidance from a judge, jurors are left to speculate as to how such evidence should be interpreted.

In any event, this potential for misinterpretation leads to violations of a capital defendant's statutory right to a unanimous verdict. In order for a capital defendant in Texas to be considered a continuing threat, the jurors must be unanimous in their decision to answer "yes" to the future dangerousness issue. TEX. CODE CRIM. PROC. art. 37.071 § 2(d)(2) (Vernon Supp. 2006); *see also supra* Parts III.A.2–3 (discussing Texas's 10-12 Rule). However, even if all twelve jurors answer in the affirmative, there is no assurance that they will all have based their answer on the same definitions of the various statutory terms. Thus, when jurors are unclear as to what the terms mean, they may each conclude that the defendant poses a future danger for a different reason. The mathematical possibilities created by twelve jurors individually interpreting five statutory terms—"probability," "criminal acts of violence," "continuing," "threat," and

30

"society"—are astounding.  Indeed, there are potentially thousands of verdicts in this situation.  This variance is clearly far from the unanimity required under Texas law, and hence violates the very statute by which the sentencing process is led.  Without further instructions as to what future dangerousness means, jurors are unable to make a decision that comports with Texas's capital sentencing requirements.

The issue of future dangerousness can be clarified with proper jury instructions given by the court.  Thus, Texas courts must define more clearly for the jury what the terms in Article 37.071 mean so as not to permit a misunderstanding on the part of the jurors as to what verdict is required.  Failure to do so amounts to nothing less than a violation of the constitutional and statutory rights of capital defendants.  And yet, despite any efforts that Texas may make to improve the clarity of its statutory requirements, and regardless of whether or not Texas takes the steps proffered above, jurors may still be unable to demonstrate an understanding of the future dangerousness issue enough to ensure a constitutional trial.

### b.    *Jurors' Fear of Personal Responsibility for Possible Future Violent Acts*

The lack of an accurate definition of relevant statutory terms coupled with the influence of misleading evidence regarding future dangerousness distort the constitutional function of capital sentencing by replacing the jurors' duty to consider the defendant's culpability with a fear of responsibility for later acts of violence if the defendant is not executed.  That is, these factors create an unwarranted fear in the minds of jurors that their failure to impose a death sentence while they have the opportunity could lead to escalated prison violence or the eventual release or escape of violent prisoners.  Ultimately, as a result of the future dangerousness special issue, death sentences may be handed down through a perverse balancing test based on "jurors' fear of the imagined consequences attendant to an incorrect prediction of *non-dangerousness*, since the

000188

consequences of an incorrect prediction of *dangerousness* are comparably less."[36]  However, the facts demonstrate that these imagined consequences are, statistically speaking, extraordinarily unlikely.

Still, the risk that aggravation evidence based on the defendant's culpability will be overshadowed by the jurors' fear of responsibility for future violence stemming from evidence of future dangerousness may manifest itself in several ways.  First, it may give jurors a means to rationalize ignoring weaknesses in the prosecution's case for properly seeking a culpability-based execution.  Second, it may divert jurors' attention away from thoroughly considering the culpability-based aggravation evidence altogether.  Finally, the fear of responsibility for future violence may cause jurors to twist otherwise compelling mitigation evidence—such as evidence of juvenile status or low intellectual functioning[37]—into justification for believing the defendant poses a future threat of violence.[38]

Generally, the transformation of mitigating circumstances into aggravating factors in the minds of jurors is permissible unless the jury is stripped of the ability to consider it as mitigation altogether.  *See Penry v. Lynaugh*, 492 U.S. 302, 320 (1989).  However, these inherent problems with the future dangerousness inquiry have the potential to make the entire culpability inquiry moot, thereby rendering it unconstitutional.[39]  The admission of evidence of questionable validity serves to further this dangerous potential.

    *c.*    **The Impact of Untrustworthy "Expert" Testimony**

---

36    Shapiro, *supra* note 30, at 178 (emphasis added).
37    It is well-documented that certain types of mitigation evidence such as these may serve as a "two-edged sword that may enhance the likelihood that the aggravating factor of future dangerousness will be found by the jury." *Atkins v. Virginia*, 536 U.S. 304, 321 (2002) (citing *Penry v. Lynaugh*, 492 U.S. 302, 323–25 (1989)) (discussing the impact of mental retardation as a mitigating factor); *see also Roper v. Simmons*, 543 U.S. 551, 567–71 (2005) (generally analyzing the juvenile death penalty in terms of mitigating and aggravating circumstances).
38    Shapiro, *supra* note 30, at 168–69.
39    *Id.* at 169.

32

One of the most common methods of proving the future dangerousness special issue is through the testimony of so-called "expert" witnesses in the form of clinical "dangerous diagnosticians," or psychiatrists who claim to be able to diagnose a defendant's risk of future dangerousness to a high degree of certainty.[40] However, the predictions made by such witnesses are notoriously unreliable. For example, the American Psychiatric Association asserted as far back as 1983 that predictions of long-term future dangerousness are, at best, "wrong in at least two out of every three cases," with some measures placing the error rate as high as 85%.[41] One researcher found the rate of incorrect prediction even higher, reporting that mental health professionals were wrong in 95% of 155 Texas cases, taking into account even slightly violent behavior causing only minor injuries.[42] Other studies have bolstered these conclusions, finding that mental health professionals are highly skeptical of their own predictions and that academics have almost universally rejected their reliability.[43]

Perhaps the most recent study of convicted capital defendants found the degree of error in assertions of future dangerousness among federal prosecutions to be "sobering, both in its inability to discriminate who will and will not engage in violent misconduct in prison and in the

---

40    *Id.* at 159. A second, more legitimate class of experts, known as a "risk assessors," limits themselves to pointing out traits associated with an increased risk of future violence, rather than making individualized conclusions about particular defendants. However, this field is relatively newer and, although more scientifically reliable, has faced greater difficulty being admitted as evidence in the courts. *Id.* at 159–60.

41    Amicus Brief of the American Psychiatric Ass'n for Petitioner at 14, *Barefoot v. Estelle*, 463 U.S. 880 (1983) (No. 82-6080).

42    John F. Edens, et al., *Predictions of Future Dangerousness in Capital Murder Trials: Is It Time to "Disinvent the Wheel"?*, 29 LAW & HUM. BEHAV. 55 (2005).

43    Mark David Albertson, *Can Violence Be Predicted? Future Dangerousness: The Testimony of Experts in Capital Cases*, 3 CRIM. JUST. 18, 21 (1989) (finding clinicians' average self-reported future dangerousness accuracy rate to be between 40–46%); JOHN MONAHAN, PREDICTING VIOLENT BEHAVIOR: AN ASSESSMENT OF CLINICAL TECHNIQUES 21 (1981) ("Rarely have research data been as quickly or nearly universally accepted by the academic and professional communities as those supporting the proposition that mental health professionals are highly inaccurate at predicting violent behavior.").

33

minority who fulfill the prediction."[44] Although the federal prosecutors had asserted that all of the inmates in the study posed a future threat, less than one percent of them went on to commit an assault causing moderate injuries, and zero caused a life threatening injury, assaulted a member of the prison staff, or committed another homicide.[45] Thus, it is apparent that prosecutors exercise poor judgment in putting forth dangerousness assertions, and that such predictions are generally unreliable. Still, these experts continue to testify in Texas, claiming to be able to predict future dangerousness with scientific certainty.[46]

Unfortunately, Texas courts also continue to give an inflated level of credence to such suspect expert testimony. This practice dates back to before 1983, when the United States Supreme Court refused to overturn a Texas death sentence based on questionable psychiatrist testimony regarding the defendant's future dangerousness in the landmark case of *Barefoot v. Estelle*, 463 U.S. 880 (1983). Courts have also been reluctant to consider experimental research in this area. *See, e.g., Lockhart v. McCree*, 476 U.S. 162, 168–73 (1986) (rejecting multiple social science studies regarding jurors' predispositions as inadequate to support a constitutional challenge against the imposition of the death penalty). Instead, they have preferred to rely on jurors' ability to separate the "wheat from the chaff," *Barefoot*, 463 U.S. at 901, by appropriately discounting unreliable expert testimony through existing adversarial procedures such as cross-examination and competing defense witnesses. The empirical evidence, however, indicates that jurors are frequently unable to do so.[47]

---

44    Mark D. Cunningham, Thomas J. Reidy, & Jon R. Sorensen, *Assertions of "Future Dangerousness" at Federal Capital Sentencing: Rates and Correlates of Subsequent Prison Misconduct and Violence*, 32 LAW & HUM. BEHAV. 46, 61 (2008).
45    *Id.*
46    *See* Brent E. Newton, *A Case Study in Systemic Unfairness: The Texas Death Penalty, 1973-1994*, 1 TEX. J. C.L. & C.R. 1, 23 (1994) (noting that one "expert" was cited as predicting dangerousness to "100% certainty," or similar language, in 141 capital cases in Texas alone).
47    *See* Daniel A. Krauss, John G. McCabe & Sarah McFadden, *Limited Expertise and Experts: Problems with the Continued Use of Future Dangerousness in Capital Sentencing*, in MENTAL DISORDER AND CRIMINAL

000191

The most troubling aspect of expert testimony predicting future dangerousness, then, is not merely its extremely high unreliability or continued evidentiary admissibility, but instead the great probative weight that jurors ascribe to it.  Several studies based on interviews with jurors in the capital punishment context indicate that jurors place substantial weight on expert testimony of future dangerousness during sentencing.[48]   Recently, Krauss, McCabe, and Lieberman performed a study on jurors' reactions to expert testimony regarding future dangerousness, using valid samples (i.e., subjects taken from an actual jury pool) and realistic simulations (i.e., trial transcripts taken from actual cases).[49]   Specifically, they compared two types of psychiatric evaluations: the all-too-common yet less reliable or scientifically based clinical hunches such as those put forth in *Barefoot*; and the scientific, empirically based assessments derived from actuarial instruments or guided professional judgment measures.[50]  They found that jurors clearly favored the less scientifically valid clinical testimony over more accurate actuarial assessments.  Essentially, they determined that "a fundamental disconnect in juror decisionmaking appears to exist in this context—jurors are more persuaded by less accurate expert testimony."[51]

---

LAW: RESPONSIBILITY, PUNISHMENT, AND COMPETENCY 135 (Robert F. Schopp, Richard L. Wiener, Brian H. Bornstein & Steven L. Willborn eds., 2009) (finding that jurors lack the ability to accurately differentiate between scientifically valid versus invalid expert testimony and properly weigh each in their decisionmaking).

[48]   Daniel A. Krauss, John G. McCabe & Joel D. Lieberman, *Dangerously Confused? Jurors' Reactions to Expert Testimony on Dangerousness in a Sexually Violent Predator Trial* 11 (Working Paper Series, July 13, 2009), *available at* http://papers.ssrn.com/abstract_id=1433522 (citing John H. Blume, Stephen P. Garvey & Sheri Lynn Johnson, *Future Dangerousness in Capital Cases: Always "At Issue"*, 86 CORNELL L. REV. 397 (2001); Sally Costanzo & Mark Costanzo, *Life or Death Decisions: An Analysis of Capital Jury Decisions Under the Special Issues Sentencing Framework*, 18 LAW & HUM. BEHAV. 151 (1994)).

[49]   *Id.* This study dealt with predictions of future dangerousness in the context of sexually violent predators, rather than capital murderers. However, the findings are relevant in the capital sentencing context as well because it is left to the jury in both situations to determine how much weight to grant to the expert predictions of mental health clinicians regarding future dangerousness, with the defendant's liberty similarly at stake. *Id.* at 7.

[50]   The former correspond to the common but illegitimate "dangerous diagnosticians," while the latter correspond to the less widespread but more reliable "risk assessors," discussed at *supra* note 40 and accompanying text.

[51]   Krauss et al., *supra* note 48, at 28.

35

Researchers have also found that the adversarial methods historically believed to enable jurors to differentiate between reliable and unreliable witness testimony are in fact ineffective at doing so. For example, the study discussed above found that cross-examination does little to dissuade jurors from believing prosecution experts, as "[t]he jurors viewed the experts . . . as substantially similar even after cross-examination."[52] Furthermore, another study determined that competing witnesses testifying on a capital defendant's behalf have little effect on jurors. This is because jurors' misguided faith in inaccurate expert testimony applies with particular force to prosecution experts, who jurors perceive as more credible, as opposed to defense experts, who jurors see more as "hired guns."[53] This inequity may stem in part from the fact that prosecution experts generally testify to an affirmative—albeit scientifically unreliable, as discussed above—assessment that the defendant will pose a future danger, whereas defense experts typically testify only that the prosecution expert's diagnosis was unfounded in science (rather than testifying affirmatively that the defendant will not pose a future danger). Whatever the reason, such testimony is not helpful to the jury in deciding on the defendant's appropriate level of culpability, but only serves to fuel the jurors' misinformed, speculative fear, which has little or no basis in science or law.

Thus, the effects of admitting testimony purporting to predict future dangerousness is potentially highly prejudicial. Indeed, unless and until courts reevaluate their deference to misguided expert testimony, they run the risk of exposing jurors to less accurate clinical testimony while shielding them from more accurate actuarial testimony. Furthermore, even if both types of testimony are admitted, there is still a substantial likelihood of injustice occurring

---

52   *Id.* at 26.
53   Shapiro, *supra* note 30, at 164 (quoting Scott E. Sundby, *The Jury as Critic: An Empirical Look at How Capital Juries Perceive Expert and Lay Testimony,* 83 VA. L. REV. 1109, 1129–30 (1997)).

because of jurors' documented preference for unreliable clinical testimony.[54] In addition to such problematic interpretation of scientific evidence, capital defendants must also overcome the myriad of misconceptions about the capital sentencing process already commonly perceived by capital jurors.

### d.   *Common Juror Misconceptions*

In no state are jurors free of the misconception that the law requires the death penalty if the evidence establishes that the murder was "heinous, vile or depraved" or the defendant would be "dangerous in the future." The numbers of overall jurors who believed that they were *required* to return a verdict of death is still staggeringly high. Jurors who gave a death sentence that were interviewed by the CJP explained what were called "operative factors" that shaped their sentencing decisions. As the study explained:

> While most of the jurors who voted for death (64%) cited the "manner of the killing" as an operative factor, more than half (54%) gave the impermissible "presumption of death" as a factor, the constitutionally forbidden belief that the death penalty was the correct or appropriate punishment, unless they could be persuaded otherwise. As one juror bluntly put it, "Of course he got death. That's what we were there for." [55]

These accounts typically concerned the demeanor of the defendant and the juror's perception of his future dangerousness if not sentenced to death:

> CA:   Once I was convinced that he did it, I was convinced that he was kind of cold-blooded and didn't have any feelings, basically.

> KY:   I can't explain to you how he looked but I guess that's when I knew . . . the way he sat there.

---

54    Krauss et al., *supra* note 48, at 28.
55    ACKER ET AL., *supra* note 2, at 41, 45–46.

C00194

TX: I think this feeling came about over days of watching him and knowing he could do something like that again.[56]

The defendant's likely future dangerousness is an especially prominent theme—the likelihood that "he could do something like that again," in the words of the juror just quoted:

SC: When we heard all of the evidence I thought he would be dangerous if he got out and in thirty years he might still be dangerous.

CA: I feel he's like a dangerous snake. I feel that he might be a threat.

TX: Well while he was in jail waiting to go to trial for this he got in a fight. And I could see that to me, or it looked like somebody, he wasn't going to change. And if he was let back into society he would continue with his path of crimes.

CA: [W]e didn't want him to get back out on the street again.[57]

As indicated, some jurors found the fact of guilt and the nature of the crime compelling. They believe death is called for when the crime is heinous, the evidence is explicit, the defendant appears unrepentant, or seems apt to repeat his crime.

In Texas, where future dangerousness is a factor to be considered pursuant to Article 37.071, over 44% of capital jurors interviewed believed that the death penalty was required if they found the murder "heinous, vile, or depraved." Furthermore, an egregiously high proportion (68.4%) believed that they had to return a verdict of death if they believed that the defendant would be dangerous in the future. In terms of the future dangerousness issue, this percentage is startlingly higher than capital jurors in any other state:

| Table 4[58] | Percentages of Jurors Thinking Law Required Death if Defendant's Conduct was "Heinous, Vile or Depraved," or Defendant "Would be Dangerous" in Future by State |
| --- | --- |

---

[56] William J. Bowers, Marla Sandys, & Benjamin D. Steiner, *Foreclosed Impartiality in Capital Sentencing: Jurors' Predispositions, Guilt-Trial Experience, and Premature Decision Making*, 83 CORNELL L. REV. 1476, 1499 (1998).

[57] *Id.* at 1500.

| | DEATH REQUIRED IF DEFENDANT'S CONDUCT IS HEINOUS, VILE OR DEPRAVED | DEATH REQUIRED IF DEFENDANT WOULD BE *DANGEROUS IN FUTURE* | | N* |
|---|---|---|---|---|
| Alabama | 56.3% | 52.1% | | 48 |
| California | 29.5% | 20.4% | | 146 |
| Florida | 36.3% | 25.2% | | 111 |
| Georgia | 51.4% | 30.1% | | 72 |
| Indiana | 34.4% | 36.6% | | 93 |
| Kentucky | 42.7% | 42.2% | | 109 |
| Missouri | 48.3% | 29.3% | | 58 |
| N. Carolina | 67.1% | 47.4% | | 76 |
| Pennsyl. | 56.9% | 37.0% | | 73 |
| S. Carolina | 31.8% | 28.2% | | 110 |
| Tenn. | 58.3% | 39.6% | | 48 |
| Texas | 44.9% | 68.4% | | 117 |
| Virginia | 53.5% | 40.9% | | 43 |
| **All States** | **43.9%** | **36.9%** | | **1136** |

\* The number of subjects answering each question varied slightly, and the number (N) for each state is the lowest number of subjects answering any of the questions.

These mistaken beliefs result in a jury that is much more likely to return a verdict of death. Therefore, in order to preserve any semblance of constitutionality, it is imperative that Texas courts instruct with more clarity the meanings of the future danger issue in 37.071, both in the phrases used by the statute and in the manner in which to determine this qualification.

### 3.    Jurors Have a Predetermined Stance On the Death Sentence and Do Not Consider Mitigating Circumstances

The Eighth and Fourteenth Amendments dictate that there be an individualized determination of the appropriate sentence for each defendant. *Lockett v. Ohio*, 438 U.S. 586, 605 (1978). Just as the statutory scheme cannot preclude consideration of mitigating evidence, so too "the sentencer [may not] refuse to consider, as a matter of law, any relevant mitigating evidence." *Eddings v. Oklahoma*, 455 U.S. 104, 114 (1982). Simply allowing the mitigating

---

[58] Bowers & Foglia, *supra* note 25, at 72–73.

evidence to be admitted is not enough. "The sentencer must also be able to consider and give effect to that evidence in imposing sentence." *Penry v. Lynaugh*, 492 U.S. 302, 319 (1989); *see also Mills v. Maryland*, 486 U.S. 367 (1988) (holding that requirement of unanimous jury finding on mitigating factors created unconstitutional barrier to consideration of relevant mitigating evidence); *Skipper v. South Carolina*, 476 U.S. 1 (1986) (finding that excluding relevant mitigating evidence of defendant's adjustment to prison setting violates *Eddings*). Only when the capital juror is free to consider and give effect to all mitigating evidence is there an assurance that there has been an individualized sentencing determination. *Lockett*, 438 U.S. at 605.

### a. Preconceptions and Jurors' Ability to Consider Mitigation Evidence

*Witherspoon*'s prohibition against a capital jury biased toward death was extended in *Morgan v. Illinois*, 504 U.S. 719 (1992), to require the disqualification of death-biased jurors. The *Morgan* Court held that potential jurors who would automatically impose a sentence of death without regard to mitigating circumstances are disqualified from serving as capital jurors. Leaving such jurors on a capital jury violates the capital defendant's constitutional right to an impartial jury. The opinion in *Morgan* states:

> A juror who will automatically vote for the death penalty will fail in good faith to consider the evidence of aggravating and mitigating circumstances as the instructions require him to do. Indeed, because such a juror has already formed an opinion on the merits, the presence or absence of either aggravating or mitigating circumstances is entirely irrelevant to such a juror. Therefore, based on the requirement of impartiality embodied in the Due Process Clause of the Fourteenth Amendment, a capital defendant may challenge for cause any prospective juror who maintains such views. *If even one such juror is empanelled and the death sentence is imposed, the State is disentitled to execute the sentence.*

> \* \* \* \*

> Any juror to whom mitigating factors are likewise irrelevant should be disqualified for cause, for that juror has formed an

opinion concerning the merits of the case without basis in the
evidence developed at trial.

*Id.* at 729 (emphasis added).

   *Morgan* is significant because the Court made it clear that attorneys must not be

precluded from examining potential jurors about their ability to consider the mitigating evidence

likely to be presented.   Adequate *voir dire* on these subjects "plays a critical function" of

insuring that the jury is not skewed toward a verdict of death.   *Id.* at 730.   The capital defendant

has a constitutional right to an individualized determination of the appropriate sentence, no

matter how bad the crime.

   In addition, the *Morgan* Court defined what the term "impartial" means in a capital case:

> In essence, the right to jury trial guarantees to the criminally
> accused a fair trial by a panel of impartial, "indifferent" jurors.
> The failure to accord an accused a fair hearing violates even the
> minimal standards of due process.   "A fair trial in a fair tribunal is
> a basic requirement of due process."   *In re Murchison*, 349 U.S.
> 133, 136 (1955).   In the ultimate analysis, only the jury can strip a
> man of his liberty or his life.   In the language of Lord Coke, *a
> juror must be as "indifferent as he stands unsworne."*   Co. Litt.
> 155b.   His verdict must be based upon the evidence developed at
> the trial.   This is true, *regardless of the heinousness of the crime*
> charged, the apparent guilt of the offender or the station in life
> which he occupies.   It was so written into our law as early as 1807
> by Chief Justice Marshall in *1 Burr's Trial 416* (1807).   *"The
> theory of the law is that a juror who has formed an opinion cannot
> be impartial."*   *Reynolds v. United States*, 98 U.S. 145, 155 (1879).

* * * *

> Thus it is that our decisions dealing with capital sentencing juries
> and presenting issues most analogous to that which we decide here
> today, [citations omitted], have relied on the strictures dictated by
> the Sixth and Fourteenth Amendments to ensure the impartiality of
> any jury that will undertake capital sentencing.

*Id.* at 727–28 (emphasis added).

### b.     *The Presentation of Mitigation Evidence*

Furthermore, if the State's prosecuting team withholds from defendant and trial defense counsel information that, considered as a whole, contained material exculpatory, impeaching or mitigating *Brady* material, and if said material had been presented to the trial jury as direct, circumstantial or impeaching evidence, there is a "reasonable probability" that a different result would have been obtained.   In other words, "the suppression of the evidence 'undermined confidence in the outcome of the trial,'" regardless of the good or bad faith of the prosecutor and even if the police had failed to disclose that evidence to that prosecutor or any one in the prosecutor's office. *See Kyles v. Whitley*, 514 U.S. 419 (1995) (holding that reversal is required if, after considering the suppressed evidence collectively, the court finds there is a reasonable probability that a different result would have been obtained but for that suppression of the evidence that undermined confidence in the outcome of the trial); *United States v. Bagley*, 473 U.S. 667 (1985) (impeaching evidence is favorable to the accused under *Brady v. Maryland*, 373 U.S. 83 (1963); however, the failure to disclose impeaching evidence on request constitutes constitutional error only if it deprives defendant of a fair trial, i.e., the suppression undermines confidence in the outcome); *Brady v. Maryland*, 373 U.S. 83 (exculpatory evidence).

The real question for potential jurors regarding their views about capital punishment is whether those views would prevent or impair the juror's ability to return a verdict of a term of years, life without parole, or death in the case before the juror.  If a fact or circumstance specific to the case would cause the potential juror to invariably vote for death regardless of the strength of the mitigating evidence the defense might present, then the juror's partiality is impaired and he should be excused for cause.  For these reasons, the parties in a capital case must be permitted to probe into juror attitudes about the significant facts in the specific case.

### c.   *Sentencing Determinations Made During the Guilt Phase of Trial*

Approximately 30% of all capital jurors nationwide made the decision that the defendant should receive the death penalty *while evidence was still being introduced at the guilt phase of the trial.* In Texas, this number climbs to over 37%. Thus, an admonition like that contained in Article 37.071 § 2(e)(1) (stating that the court shall instruct the jury to consider whether "there is a sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment without parole rather than a death sentence be imposed") is of highly questionable effectiveness. TEX. CODE CRIM PROC. art 37.071 § 2(e)(1) (Vernon Supp. 2006).

| Table 1[59]: | Percentage of Capital Jurors Taking Each Stand on Punishment Before Sentencing Stage of the Trial in 13 States | | | |
|---|---|---|---|---|
| States | Death | Life | Undecided | No. of jurors |
| Alabama | 21.2 | 32.7 | 46.2 | 52 |
| California | 26.1 | 16.2 | 57.7 | 142 |
| Florida | 24.8 | 23.1 | 52.1 | 117 |
| Georgia | 31.8 | 28.8 | 39.4 | 66 |
| Indiana | 31.3 | 17.7 | 51.0 | 96 |
| Kentucky | 34.3 | 23.1 | 42.6 | 108 |
| Missouri | 28.8 | 16.9 | 54.2 | 59 |
| North Carolina | 29.2 | 13.9 | 56.9 | 72 |
| Pennsylvania | 33.8 | 18.9 | 47.3 | 74 |
| South Carolina | 33.3 | 14.4 | 52.3 | 111 |
| Tennessee | 34.8 | 13.0 | 52.2 | 46 |

---

[59]      *Id.* at 57.

| Texas | 37.5 | 10.8 | 51.7 | 120 |
| Virginia | 17.8 | 31.1 | 51.1 | 45 |
| All States | 30.3% | 18.9% | 50.8% | 1135 |

The evidence establishes that most early pro-death jurors do not even wait for guilt-phase deliberations to begin before deciding the penalty. Pro-death jurors prejudge the penalty decision during the guilt phase, long before they have even had the opportunity to discuss it with any of their fellow jurors or heard any of the capital defendant's mitigating evidence.[60] Many of these early pro-death jurors cite convincing proof of guilt as the reason for their early pro-death stands:

> FL:  When I was convinced he was guilty—when we were going through the hard evidence.

> NC:  After the pathologist report, after I was convinced he was the one who did it.

> FL:  When I knew in my heart that he was guilty . . . . This was after hearing the forensic evidence from prosecution.

> TX:  Uh, before we actually voted, before we went in there. I was pretty sure, I mean, I was absolutely sure, because I truly believe in what the Bible says and I think I told them this when they chose me.

For some jurors, it was the grotesque or gruesome nature of the crime that convinced them that death should be the punishment:

> KY:  Once guilt was established that (the defendant) had committed this gruesome crime. I had no problem at all determining what punishment was applicable.

> MO:  Um, I'd say probably right when the prosecutor made the statement. She was stabbed twenty-two times.

---

[60]  Bowers et al., *supra* note 56, at 1497.

44

SC:   When they started to talk about the brutality of the crime.[61]

Many jurors stressed the role of physical evidence, especially photographs or video tapes,

as critical in their punishment decisions:

AL:   When the D.A. handed us the pictures.

CA:   Video tape portion of the trial. (When the jury viewed a video tape of the killing that a store monitoring system had recorded.)

KY:   After I saw pictures and hair and semen analysis.

MO:   (After) looking at the pictures and seeing you know, the crime, the autopsy photos.

FL:   During the evidence - when (I) saw the pictures of the victim.

MO:   After I knew, when they showed us the photographs of (the victim) and how he had been murdered. I knew (the defendant) had done it by the video tape but I didn't know how severe and how gruesome it was.[62]

In a few instances they gave vivid accounts of how photo or video evidence had affected

them:

NC:   During the trial. I can tell you . . . when we saw pictures of this woman's body, burned . . . . Where her feet were burned off . . . . Horrible, horrible pictures of this. That convinced me.

CA:   Just sitting there watching (a video tape of the killing from a store monitoring system). I've seen a lot (of) stuff, but I never . . . . Even Arnold Schwarzenegger movies didn't affect me like that, you know? This wasn't make-believe, watching that video tape. The video tape was very powerful. [63]

Thus, many jurors attribute their early stands for death to unquestionable proof of guilt,

heinous aspects of the crime, and physical evidence, especially in photographs and audio or

---

[61]   *Id.* at 1498.
[62]   *Id.*
[63]   *Id.* at 1499.

video tape. In addition to the nature of the crime and the evidence of guilt, some early pro-death jurors focused on the defendant to explain what caused them to take a stand for death during the guilt stage of the trial. appreciate

In terms of how strongly early pro-death jurors felt about the decision they made to impose the death penalty, and in terms of how consistently they stuck to their early decision, the CJP data establishes that 97.4% of all early pro-death jurors "felt strongly about their early pro-death stance," with 70.4% indicting they were "absolutely convinced" and 27% indicating they were "pretty sure" about their decision.[64] Given these findings, the mandate of *Eddings*, that the sentencer must be able to both hear and give effect to mitigation, is not met.

> Most of these early pro-death jurors (59.5%) never wavered from their initial stance for death when questioned at the three subsequent points in the process. Presenting mitigating evidence during the penalty phase cannot be very effective when so many jurors declare that they were already "absolutely convinced" that the defendant deserved death before they heard any mitigation evidence. Given the human proclivity to interpret information in a way that is consistent with what one already believes, it is not surprising that most jurors never waver from their premature stance.[65]

### 4. Moral Blameworthiness Instruction Creates a Needless Risk That the Client's Background Will Be Disregarded As a Mitigating Factor

The introduction of mitigating evidence is crucial to ensuring the defendant a fair trial under *Lockett* because, without this consideration, there is not an individualized determination of the proper sentencing for each defendant. *Lockett v. Ohio*, 438 U.S. 586, 606 (1978). When jurors are unable to understand the confusing sentencing instructions, or when courts impede the ability of the jurors to consider this evidence effectively, the constitutional safeguard of mitigating evidence is taken away, and the defendant's right to due process is impeded. It is

---

[64] Bowers & Foglia, *supra* note 25, at 57.
[65] *Id.*

C00203

therefore important to acknowledge the problems facing the use of mitigating evidence today and the objections necessary to any denial of this right by the courts.

In *Boyde v. California*, the Court held that the standard by which an instruction claim was to be judged is whether there is a "reasonable likelihood" that the instruction prevented consideration of constitutionally relevant evidence. *Boyde v. California*, 494 U.S. 370, 380 (1990). In reaching this conclusion, the Court discussed other cases involving jury instructions concerning mitigating evidence that came prior to its decision. *Id.* at 378–79. In *Penry v. Lynaugh*, the standard set forth for determining the way in which constitutionality of jury instructions regarding mitigating evidence was to be determined was whether "a reasonable juror *could well have believed* that there was no vehicle for expressing the view that [the defendant] did not deserve to be sentenced to death based upon his mitigating evidence." *Penry v. Lynaugh*, 492 U.S. 302, 326 (1989) (emphasis added). In *Franklin v. Lynaugh*, the standard was "neither of the Special Issues as they *would have been understood by reasonable jurors* gave the jury the opportunity to consider petitioner's mitigating evidence." *Franklin v. Lynaugh*, 487 U.S. 164, 192 (1988) (Stevens, J., dissenting) (emphasis added).

As the Court struggled to define the proper mitigating evidence instructions, states tried to qualify the definition of mitigating evidence themselves. The struggle to define mitigating evidence is encapsulated in Article 37.071, which states that the jury "shall consider mitigating evidence to be evidence that a juror might regard as reducing the defendant's moral blameworthiness." TEX. CODE CRIM. PROC. art. 37.071, § 2(f)(4) (Vernon Supp. 2006). The problem herein lies in the fact that the moral blameworthiness instruction in 37.071 creates a risk that the client's background will be disregarded as a mitigating factor, and may instead be used as a question of moral culpability in committing the crime. It is difficult for courts to dissect

47

whether or not they add this requirement when they do not understand mitigating circumstances in the sentencing process.

Through the pattern of the Court's decisions, the sentencing phase becomes a means of retribution instead of incapacitation. As Bowers and Steiner explain,

> When speaking of the sentencing decision, the Court has characterized the jury's function as making a retributive assessment of the defendant's moral blameworthiness and guilt; it has declined to analyze deterrence; and has characterized incapacitation as a secondary consideration. Thus, Justice O'Connor declared in *Enmund v. Florida* that the Eighth Amendment concept of proportionality requires a nexus between the punishment imposed and the defendant's blameworthiness. In *Tison v. Arizona*, it explained that, "[t]he heart of the retribution rationale is that a criminal sentence must be directly related to the personal culpability of the criminal offender." Concerning the primacy of retributive over incapacitative purposes in jury sentencing, in *California v. Ramos*, Justice Marshall challenged incapacitation as a justification for imposing a death sentence, saying "[c]apital punishment simply cannot be justified as necessary to keep criminals off the streets." A year later in *Spaziano v. Florida*, the Court explicitly gave secondary standing to the goal of incapacitation, saying "incapacitation has never been embraced as a sufficient justification for the death penalty" and that "retribution clearly plays a more prominent role in a capital case." The Court concluded, "[i]n the context of capital felony cases, therefore, the question whether the death sentence is an appropriate, non-excessive response to the particular facts of the case will depend on the retribution justification."[66]

Despite the fact that the death penalty has risen from the notions of incapacitation, the question remains whether jurors are able to give appropriate, non-excessive responses when they themselves are unaware of what it is that they are answering.

> This kind of retributive judgment, according to the Court, requires a "reasoned moral response" to the evidence and arguments, one unencumbered by ignorance or emotion and one supported with information sufficient and relevant for reliable rational decision-making. As Justice O'Connor wrote in her *California v. Brown* concurrence, "the individualized assessment of the appropriateness

---

[66]     Bowers & Steiner, *supra* note 13, at 624.

of the death penalty is a moral inquiry into the culpability of the defendant, and not an emotional response to the mitigating evidence." In *Franklin v. Lynaugh*, Justice O'Connor stressed that full consideration of evidence that mitigates against the death penalty is essential if the jury is to give a "reasoned moral response to the defendant's background, character, and crime."[67]

The *Penry* Court discussed the way in which a reasoned moral response can explain the individualized treatment, sentencing reliability, and retributive element of moral culpability.

Underlying *Lockett* and *Eddings* is the principle that punishment should be directly related to the personal culpability of the criminal defendant. If the sentencer is to make an individualized assessment of the appropriateness of the death penalty, "evidence about the defendant's background and character is relevant . . . ." Moreover, *Eddings* makes clear that it is not enough simply to allow the defendant to present mitigating evidence to the sentencer. The sentencer must also be able to consider and give effect to that evidence in imposing sentence. Only then can we be sure that the sentencer has treated the defendant as a "uniquely individual human being" and has made a reliable determination that death is the appropriate sentence. "Thus, the sentence imposed at the penalty stage should reflect a reasoned moral response to the defendant's background, character, and crime."[68]

Yet with the differing standards set forth in *Penry*, *Lynaugh*, and *Boyde*, how can jurors reliably be considered to give a "reasoned moral response" that allows them to "consider and give effect" to mitigating evidence in their sentencing decision when they are unaware of what it is that they are considering?

The CJP research demonstrates that capital jurors fail to either understand or follow the instructions given in capital trials, or both. This is consistent with pre-CJP and non-CJP data and conclusions that significant numbers of capital jurors fail to understand the concept and role of mitigation in capital cases. Capital jurors fail to understand that they are not only allowed to consider mitigation, but they are required to do so even if it does not excuse or lessen the capital

---

[67]    *Id.*
[68]    *Id.* at 625 (internal citations omitted).

49

defendant's culpability for the murder. Thus, the commands of *Lockett* are being ignored. Jurors generally do not understand jury instructions. For more than twenty years, social scientists, linguists, psychologists, lawyers, and academics—not only those involved in the CJP— have been conducting experiments to determine whether jurors understand the instructions they are given during both civil and criminal trials.[69] The published findings, including several empirical studies, reveal that jurors experience a plethora of comprehensibility problems.[70] As one law professor noted, "the empirical studies find that . . . it is neither rational nor logical to conclude that instructed jurors understand what they have been told."[71] Furthermore, this phenomenon pervades judicial proceedings in every state court throughout the nation, including the courts of the State of Texas.[72]

---

[69] *E.g.*, R.P. Charrow & V. Charrow, *Making Legal Language Understandable: A Psycholinguistic Study of Jury Instructions*, 79 COLUM. L. REV. 1306 (1979); *see also* Eisenberg & Wells, *supra* note 14; Joel D. Lieberman & Bruce D. Sales, *What Social Science Teaches Us About the Jury Instruction Process*, 3 PSYCHOL. PUB. POL'Y & L. 589 (1997); James Luginbuhl & Julie Howe, *Discretion in Capital Sentencing Instructions: Guided or Misguided?* 70 IND. L.J. 1161 (1995); Judith L. Ritter, *Your Lips are Moving . . . But the Words Aren't Clear: Dissecting the Presumption that Jurors Understand Instructions*, 69 MO. L. REV. 163 (2004).

[70] John Blume et al., *Lessons from the Capital Jury Project, in* THE MODERN MACHINERY OF DEATH: THE FUTURE OF CAPITAL PUNISHMENT (Duke University Press 2002); William J. Bowers, *The Capital Jury Project: Rationale, Design, and Preview of Early Findings*, 70 IND. L. J. 1043 (1995); Bowers & Steiner, *supra* note 13; Charrow & Charrow, *supra* note 69; Mark Costanzo & Sally Costanzo, *Jury Decision Making in the Capital Penalty Phase*, 16 LAW & HUM. BEHAV. 185 (1992); Diamond & Levi, *supra* note 29; Theodore Eisenberg et al., *Jury Responsibility in Capital Sentencing: An Empirical Study*, 44 Buff. L. Rev. 339 (1996); Eisenberg & Wells, *supra* note 14; Stephen P. Garvey, *Aggravation and Mitigation in Capital Cases: What do Jurors Think?* 98 COLUM. L. REV. 1538 (1998); C. Haney & M. Lynch, *Comprehending Life and Death Matters*, 18 LAW & HUM. BEHAV. 411–36 (1994); Geoffrey P. Kramer & Dorean M. Koenig, *Do Jurors Understand Criminal Jury Instructions? Analyzing the Results of the Michigan Juror Comprehension Project*, 23 U. MICH. J. L. REFORM 401 (1990); Lieberman & Sales, *supra* note 69; Luginbuhl & Howe, *supra* note 69; Ritter, *supra* note 69; Marla Sandys, *Cross-Overs—Capital Jurors Who Change Their Minds About the Punishment: A Litmus Test for Sentencing Guidelines*, 70 IND. L.J. 1183 (1995); Laurence Severance & Elizabeth Loftus, *Improving the Ability of Jurors to Comprehend and Apply Criminal Jury Instructions*. 17 LAW & SOC'Y REV. 153 (1982); Walter W. Steele & Elizabeth G. Thornbury, *Jury Instructions: A Persistent Failure to Communicate*, 67 N.C. L. REV. 77 (1988); Richard L. Wiener et al., *The Role of Declarative Knowledge in Capital Murder Sentencing*, 28 J. APPLIED PSYCHOL. 124 (1998); Richard L. Wiener, *Comprehensibility of Approved Jury Instruction in Capital Murder Cases*, 80 Journal of Applied Psychology 455 (1995).

[71] Ritter, *supra* note 69, at 197.

[72] *E.g.*, Steele & Thornbury, *supra* note 70 (finding that the majority of potential jurors in both civil and criminal cases in Dallas County, Texas could not understand the jury instructions).

G00207

In particular, capital jurors have exhibited an inability to comprehend sentencing phase instructions.[73] Moreover, this low level of comprehension pervades every aspect of the sentencing procedure. From procedural knowledge about the decisionmaking process to a comprehensive understanding about the concepts of mitigation and aggravation, capital jurors exhibit a conspicuous lack of comprehension. Over half of the capital jurors (56.4%) studied in California failed to understand that the jury did not have to be unanimous about individual mitigating factors before they were allowed to consider them. Moreover, a third (37.6%) believed mitigating factors had to have been proven to them beyond a reasonable doubt before they could be considered.[74]

The reasons for this massive misunderstanding of the rules which are supposed to guide and channel capital jury decisionmaking is the lack of familiarity with the capital sentencing process—i.e., the total absence of any culturally normative experience with the unique kind of decision capital jurors are called upon to make.

Americans are very familiar with a jury's role as factfinder. This role is a longstanding part of our culture. However, Americans are *not* familiar with the role a capital jury has in making the decision as to whether the capitally accused should live or die. American jurors are accustomed to finding facts such as whether a weapon was used, whether a taking of property was a theft, or whether a driver was legally intoxicated. They are unaccustomed to deciding what weight to give a capital defendant's dysfunctional childhood, serious psychiatric disorder, or brain damage in a capital sentencing. Capital jurors have to resort to their own rules because terms like mitigation and aggravation have no meaning to them:

---

[73]     *E.g.* Luginbuhl & Howe, *supra* note 69; *see also* Haney & Lynch, *supra* note 70; Ritter, *supra* note 69, at 200–01.

[74]     Bowers & Foglia, *supra* note 25, at 66–71.

51

> [CA juror:]  The first thing we asked for after the instruction was, could the judge define mitigating and aggravating circumstances. Because the different verdicts that we could come up with depended on if mitigating outweighed aggravating, or if aggravating outweighed mitigating, or all of that. So we wanted to make sure. I said: "I don't know that I exactly understand what it means." And then everybody else said, "No, neither do I," or "I can't give you a definition." So we decided we should ask the judge. Well, the judge wrote back and said, "You have to glean it from the instructions."

> [CA juror:]  I don't think anybody liked using those terms because when we did use them, we got confused . . . . They were just confusing and I had never really used them before in anything. So, yeah, they sit there and throw these stupid words at you and I'm like, "Well, what do they mean?" I get so confused "cause they sound the same." I'm thinking, "Now which one was that again?" You know. And it totally confused me.[75]

The net effect of these misunderstandings is that capital jurors are skewed toward a sentence of death.

> The misunderstandings reflected in these incorrect responses on the questions regarding how to handle mitigating and aggravating evidence all make a death sentence more likely. It is more difficult to find mitigating evidence than the law contemplates when jurors think they are limited to enumerated factors, must be unanimous, and need to be satisfied beyond a reasonable doubt. The CJP data show that nearly half (44.6%) of the jurors failed to understand the constitutional mandate that they be allowed to consider any mitigating evidence. Two-thirds (66.5%) failed to realize they did not have to be unanimous on findings of mitigation. Nearly half (49.2%) of the jurors incorrectly thought they had to be convinced beyond a reasonable doubt on findings of mitigation . . . . The constitutional mandate of *Gregg* and companion cases to guide jurors' exercise of sentencing discretion is not being satisfied when jurors do not understand the guidance.[76]

The CJP presents empirical data that shows the large percentage of Texas jurors who failed to understand crucial aspects of mitigating evidence in the sentencing process:

---

[75]     Haney et. al, *supra* note 12, at 168–69.
[76]     Bowers & Foglia, *supra* note 25, at 71.

| Table 3[77] | Percentages of Jurors Failing to Understand Guidelines for Considering Aggravating and Mitigating Evidence |
|---|---|

JURORS WHO <u>FAILED TO UNDERSTAND</u> THAT THEY . . .

| State | Could consider any mitigating evidence | Need not be unanimous on mitigating evidence | Need not find mitigation beyond reas. doubt | Must find aggravation beyond reas.doubt | <u>N*</u> | |
|---|---|---|---|---|---|---|
| Alabama | 54.7% | 55.8% | 53.8% | 40.0% | 52 | |
| California | 24.2% | 56.4% | 37.6% | 41.7% | 149 | |
| Florida | 49.6% | 36.8% | 48.7% | 27.4% | 117 | |
| Georgia | 40.5% | 89.0% | 62.2% | 21.6% | 73 | |
| Indiana | 52.6% | 71.4% | 58.2% | 26.8% | 97 | |
| Kentucky | 45.9% | 83.5% | 61.8% | 15.6% | 109 | |
| Missouri | 36.8% | 65.5% | 34.5% | 48.3% | 57 | |
| N. Carolina | 38.7% | 51.2% | 43.0% | 30.0% | 79 | |
| Pennsy. | 58.7% | 68.0% | 32.0% | 41.9% | 74 | |
| S. Carolina | 51.8% | 78.9% | 48.7% | 21.9% | 113 | |
| Tenn | 41.3% | 71.7% | 46.7% | 20.5% | 44 | |
| Texas | 39.6% | 72.9% | 66.0% | 18.7% | 47 | ** |
| Virginia | 53.3% | 77.3% | 51.2% | 40.0% | 43 | |
| All States | 44.6% | 66.5% | 49.2% | 29.9% | 1185 | |

* The number of subjects answering each question varied slightly, and the number (N) for each state is the lowest number of subjects answering any of the questions.
** The number of Texas jurors is reduced in this table because these two questions were replaced by others while the interviewing in Texas was underway.

The above data clearly illustrate that jurors have an extremely skewed understanding of the way in which mitigating evidence factors into the sentencing of life or death. Because the nature of the process of considering mitigating evidence is often unusual for the jurors, it is imperative that the courts do everything in their power to alleviate confusion, as death is "so profoundly different from all other penalties." *Lockett v. Ohio*, 438 U.S. 586, 605 (1978).

The unconstitutionally limiting definition of "mitigating evidence" as being anything that reduces moral blameworthiness presents a major problem. This is because there is much in the

---

[77]     *Id.* at 68.

way of mitigating evidence as allowed by *Tennard* and other cases that have nothing to do with moral blameworthiness, such as IQ levels (for example, those present in *Penry*) and the ability to transition well to prison life. *See Tennard v. Dretke* 542 U.S. 274 (2004); *Skipper v. South Carolina*, 476 U.S. 1 (1986). To make matters worse, the phrase "mitigating evidence" is not used in the actual jury instruction.  The language in Article 37.071 is that jurors are to consider "mitigating circumstance or circumstances."  This creates a problem in the minds of the jurors not only because they are confused over mitigating evidence and mitigating circumstances, but the fact that "circumstances" is plural may lead jurors to wonder whether just one mitigating circumstance is enough for a sentence of life. Jurors may wonder why, if one circumstance is sufficient for a decrease in culpability, there is a second, plural qualification.

With such confusion by the jurors over mitigating evidence, the fact that moral culpability factors in at any stage may be even more confusing. It becomes risky that the jurors will consider the moral culpability not at the sentencing stage, but for the crime itself. If the jurors have already ruled that the defendant is guilty, they will obviously find the defendant morally culpable. And when the jurors believe that the moral culpability of the defendant determines whether that person is sentenced to life or death, the end result of death becomes all the more probable. When courts neglect to do their duty to instruct the jury effectively, and instead propagate confusion on the part of the juries, the sentencing phase of the judicial process becomes compromised. As such, the sentencing process becomes unconstitutional.

5. **The Introduction of Victim Impact Evidence Without Procedural Safeguards is Unduly Prejudicial and Prevents the Jury from Handing Down a Sentence Based Upon A Reasoned Moral Response to Penalty Phase Evidence.**

In 1991 the Court, in deciding *Payne v. Tennessee*, held that the families of murder victims may be permitted to describe the emotional impact of the crime to the court and the jury

at the penalty phase of a capital trial. *Payne v. Tennessee*, 501 U.S. 808, 827 (1991).  The rationale behind this was the incorporation of the harm done by the defendant into the jury's assessment of moral blameworthiness for the purpose of punishment.  The Court stated:

> We are now of the view that a State may properly conclude that for the jury to assess meaningfully the defendant's moral culpability and blameworthiness, it should have before it at the sentencing phase evidence of the specific harm caused by the defendant. [T]he State has a legitimate interest in counteracting the mitigating evidence which the defendant is entitled to put in, by reminding the sentencer that just as the murderer should be considered as an individual, so too the victim is an individual whose death represents a unique loss to society and in particular to his family.

*Id.* at 825.  As a preliminary point, it is worth noting that the Court's analysis suggests that the secondary, often unforeseeable and unintended, harm to the victim's family is a necessary consideration in determining the defendant's moral blameworthiness.   Not only is it counterintuitive that unforeseeable and unintended consequences of one's actions are factored into consideration of their moral blameworthiness, but the Court also disregards the degree to which the primary harm, i.e., the death of the victim has already, and appropriately, been considered by the jury.  Unless it can be shown that the defendant intended the secondary harm to the victim's family, no inference of additional moral blameworthiness with regard to this harm can be made.  Also, the jury will most likely have spent a large part of the guilt phase of the trial being informed as to the details of the crime and the harm done to the victim.  This harm is the "specific harm caused by the defendant," and the harm for which he can reasonably be held morally accountable. *Id.*

     Far from simply "counteracting" the defendant's mitigating evidence, victim impact evidence may, without statutory control, so overwhelm the emotions of the jury as to render their constitutionally required consideration of the relevant mitigating evidence impossible. *Id.* The

Court asserted that victim impact evidence was to be considered for its informational (as opposed to emotional) value, pointing out that "[v]ictim impact evidence is simply another form or method of *informing* the sentencing authority about the specific harm caused by the crime in question, evidence of a general type long considered by sentencing authorities." *Id.* (emphasis added). This characterization of victim impact evidence as purely informative, however, ignores the degree to which such evidence can overwhelm the emotions of the jurors. In separate opinions dissenting from a denial of certiorari in *Kelly v. California*, 129 S.Ct. 564 (2008) Justices Breyer and Stevens both quoted the following language from a district court opinion:

> I cannot help but wonder if *Payne* would have been decided in the same way if the Supreme Court Justices in the majority had ever sat as trial judges in a federal death penalty case and had observed first hand, rather than through review of a cold record, the unsurpassed emotional power of victim impact testimony on a jury. It has now been over four months since I heard this testimony . . . and the juror's sobbing during the victim impact testimony still rings in my ears.

*Id.* at 567 (quoting *United States v. Johnson*, 362 F. Supp. 2d 1043, 1107 (N.D. Iowa, 2005)). The judge in *Johnson* elaborated on the degree to which such evidence is simply too prejudicial and emotionally overwhelming to be presented to the jury in a capital sentencing hearing. He argued that victim impact evidence is so overwhelming that, even with procedural safeguards, "[S]uch potent, emotional evidence is a quintessential example of information likely to cause a jury to make a determination on an unrelated issue on the improper basis of inflamed emotion and bias . . . ." *Johnson*, 362 F. Supp. 2d at 1107.

This prejudicial effect of Victim Impact Statements (VIS) during sentencing has been the subject of various empirical studies. One such study by Luginbuhl and Burkhead tested the influence of VIS on two groups of mock jurors: one group presented with Victim Impact Statements, and the other without. Half of the jurors in the group that considered victim impact

testimony voted for the imposition of the death penalty, as opposed to only 20% for the group that did not consider such testimony.[78]   A subsequent, similar study by Myers and Arbuthnot found that two-thirds of mock jurors exposed to VIS that voted for guilt during the first phase of trial also voted to impose a death sentence, compared with only one-third for those not considering such evidence.[79]   These studies indicate a consistent, measurable effect of Victim Impact Statements that increase the likelihood of death sentences imposed by jurors due to powerful emotions undermining rational and reasoned decision-making.

In addition to this research, the emotional impact of this evidence is troubling for two reasons.  First, there is evidence to suggest that jurors enter the penalty phase having already decided that the defendant should be put to death.[80]  Under *Lockett v. Ohio*, 438 U.S. 586 (1978), jurors have a constitutional duty to consider all relevant mitigating evidence; however, victim impact evidence will serve to intensify their anger and overwhelm their ability to remain open to the mitigating evidence, thereby preventing them from performing their constitutionally required duty.[81]  Second, allowing victim impact evidence to overwhelm the emotions of the jurors in this fashion flies directly in the face of Supreme Court opinion on this issue.  The court has indicated that the "sentence imposed at the penalty phase should reflect a reasoned moral response to the defendant's background, character, and crime *rather than mere sympathy or emotion*." *California v. Brown*, 479 U.S. 538 at 545 (1987) (emphasis added); *see also Penry v. Lynaugh*, 492 U.S. 302, 327–28 (1989); *Franklin v. Lynaugh*, 487 U.S. 164, 184 (1988).  A response to the defendant's crime as referenced above would include any response to the impact of the victim's

---

78   Jeremy A. Blumenthal, *Affective Forecasting and Capital Sentencing: Reducing the Effect of Victim Impact Statements*, 46 AM. CRIM. L. REV. 107, 111 (2009).
79   *Id.*
80   Bowers et al., *supra* note 56, at 1486–94.
81   Susan A. Bandes, *Repellent Crimes and Rational Deliberation: Emotion and the Death Penalty*, 33 VT. L. REV. 17 (2009).

G00214

death.  The Court specifically requires that a sentence imposed in response to such consideration reflect a reasoned and moral decision rather than an emotional one.  Victim impact evidence, as presented in the State of Texas today, forecloses that possibility.  Such is the emotional impact of this evidence that a decision made after hearing it would likely be based upon impermissible emotional considerations.  At the very least, the state should impose statutory controls on the use of victim impact statements during the penalty phase so as to protect the ability of the jurors to impose a sentence based upon a reasoned moral response to the evidence presented.

To allow the jury to hear victim impact statements without specific statutory authorization and safeguards determined by the legislature is to prevent them from meeting their duty to properly consider all mitigating evidence as required by the U.S. Constitution under the rule announced in *Lockett*, and to foreclose the possibility of a sentence that results from a reasoned moral response as required by *Brown*.

### 6.    Race Can Play No Part in Capital Sentencing, Yet Race Is Continually a Factor in Juror's Decisions

Race is another improper consideration for a capital sentencing jury.  Cases decided subsequent to *Furman* determine that race cannot play any role in the capital jury's decisionmaking.

> In a capital sentencing proceeding before a jury, the jury is called upon to make a "highly subjective, 'unique, individualized judgment regarding the punishment that a particular person deserves.'"

> ****

> Because of the range of discretion entrusted to a jury in a capital sentencing hearing, there is a unique opportunity for racial prejudice to operate but remain undetected.

> ****

58

> The risk of racial prejudice infecting a capital sentencing proceeding is especially serious in light of the complete finality of the death sentence. "The Court, as well as the separate opinions of a majority of the individual Justices, has recognized that the qualitative difference of death from all other punishments requires a correspondingly greater degree of scrutiny of the capital sentencing determination."

*Turner v. Murray*, 476 U.S. 28, 33–35 (1986).

Safeguards must be followed to minimize the risk of race infecting the capital sentencing determination. For this reason, a capital defendant accused of an interracial crime is entitled to have prospective jurors informed of the race of the victim and questioned on the issue of racial bias. *Id.*

Furthermore, juries must be selected in a manner that is representative of the community so that there runs less risk of discriminatory behavior on behalf of the jurors. While the Supreme Court has repeatedly acknowledged that any attempt to separate the sentencer's decision from his experiences would impose a false and inappropriate mechanical rigidity to the sentencing proceedings, it has emphasized that the collective " moral, factual and legal judgment[s] of [juries] play a meaningful role in the sentencing." *Barclay v. Florida*, 463 U.S. 939, 950 (1983). The fair cross section requirement does not entitle a defendant to a jury that mirrors the community and reflects the numerous distinctive groups present in the population. *Taylor v. Louisiana*, 419 U.S. 522, 530 (1975). However, the Sixth Amendment guarantees a defendant the *opportunity* for a representative jury by requiring that jury wheels, pools of names, panels, or venires from which the trial court draws juries must not systematically exclude distinctive groups in the community. If such systematic exclusion occurs, then the resulting jury fails to constitute a fair cross section of the community. *Duren v. Missouri*, 439 U.S. 357, 363–64 (1979). In *Duren*, the Supreme Court set forth a three-part test to establish a prima facie case of the violation of the fair cross section requirement: (1) that the group alleged to be excluded is a

"distinctive group in the community"; (2) that the representation of this group in venires is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury selection process. *Id.* at 363.

CJP data demonstrates that in all 14 states, the process of capital jury decisionmaking is influenced not only by the race of the defendant and the race of the victim, but by both the racial composition of the jury and the races of the individual jurors.[82] CJP data further demonstrates that the outcome of a capital jury's verdict is greatly dependent on how many white males make it onto the jury and whether any African American males serve as jurors.[83]

The data demonstrates, for instance, that white male capital jurors (generally speaking) do not experience lingering doubt about the defendant's guilt. The dominance of white male jurors was strongly associated with the imposition of a death sentence of black defendants:

> The presence of five or more white males on the jury dramatically increased the likelihood of a death sentence [in cases in which there was a black defendant and a white victim]. There was a forty-point difference in the likelihood of a death sentence between cases with four and those with five white male jurors (23.1% vs. 63.2%). The difference rose only slightly, to forty-one points when the comparison was between four or fewer, and five or more, white male jurors (30% vs. 70.7%).[84]

---

[82] William J. Bowers et. al, *The Capital Jury Project: Rationale, Design, and Preview of Early Findings*, 70 IND. L. J. 1043 (1995) (summarizing some of the early findings of the CJP). The data collection occurred in many states, including Texas (the south-central quadrant, consisting of Austin, Houston, San Antonio, and rural counties). In general, the study finds that jurors misunderstand the judge's sentencing instructions in ways that favor the impositions of the death penalty. Moreover, this study (like many of the other studies on this list) reveals that future danger continues to be of primary importance to jurors. Research found that the majority of jurors, ranging upward as much as 60%, were extremely concerned about the defendant's future dangerousness. *Id.*

[83] William J. Bowers, Benjamin D. Steiner & Marla Sandys, *Death Sentencing in Black and White: An Empirical Analysis of the Role of Jurors' Race and Jury Racial Composition*, 3 U. PA. J. CONST. L. 170, 178–79 (2001).

[84] *Id.* at 193.

On the other hand, African American male capital jurors (generally speaking) frequently are less likely to sentence a black defendant to death.

> The presence of black male jurors in [cases in which there are black defendants and white victims], by contrast, substantially reduced the likelihood of a death sentence. The critical twenty-nine-point difference came between the absence and the presence of one black male juror. In the absence of black male jurors, death sentences were imposed in 71.9% of the cases, as compared to 42.9% when one black male was on the jury. The difference rose to thirty-four points when the comparison was between none and one or more black male jurors (71.9% vs. 37.5%).[85]

Black and white jurors differ dramatically in their predetermined stances on whether or not to impose the death penalty. This begins early and becomes exacerbated as the judicial process moves from trial to punishment:

> Race also distinguishes the decision-making patterns of individual jurors. In [cases in which there are black defendants and white victims], black and white jurors differ early in the trial about what the punishment should be and become further polarized as the trial proceeds. The white jurors are quicker to take a stand on punishment than their black counterparts. At the time of sentencing instructions, well over half of white jurors think the punishment should be death. By the time of the jury's first vote on punishment, most black jurors think the punishment should be life imprisonment. This progressive divergence in jurors' stands on punishment in essentially the same cases demonstrates that black and white jurors make different, apparently race-linked interpretations of the same evidence.

> This polarization of jurors along racial lines is present in many different factors of the guilt and sentencing phases that are constitutionally mandated.

> Specifically, these differences of interpretation include the future dangerousness of the defendant, the defendant's remorsefulness over the crime, and even the possibility that the defendant is not guilty of capital murder. Black and white jurors are sharply divided on these matters in [black defendant/white victim] cases. White jurors are particularly likely to see the defendant as a danger to society, and black jurors are especially likely to see the black

---

[85]   *Id.*

> defendant as remorseful or to have lingering doubts about his guilt.
> In effect, black and white jurors in [black defendant/white victim]
> cases have different concerns and focus on different
> considerations, with opposing implications for the defendant's
> punishment.[86]

Black jurors are able to put themselves in the defendant's situation and understand what it must be like for the defendant's family.[87] They feel that the defendant's remorse was the strongest rationale for mercy.[88] Furthermore, they do not see the defendant as someone who will hurt other people in the future.[89]

Much of the separation between black and white jurors in these cases is enhanced with any lingering doubts of the defendant's guilt.[90]

> The black jurors' lingering doubts in [black defendant/white
> victim] cases encompass questions of the defendant's motivation
> and responsibility for the crime, as well as his actual involvement
> in the killing. Their doubts are not simply afterthoughts but
> concerns that they manifest in their stands on guilt prior to the
> jury's guilt deliberations, at the jury's first vote on guilt, and in
> reaching the final guilt determination. Nor are black jurors'
> misgivings about guilt confined to the [black defendant/white
> victim] cases... Black jurors' lingering doubts appear to reflect a
> more general mistrust of the criminal justice process.[91]

Black and white jurors' sentencing discrepancies are also illuminated when considering the defendant's remorsefulness:

> Black jurors' greater sense than their white counterparts of the
> defendant's remorsefulness in [black defendant/white victim] cases
> appears to be rooted foremost in their ability to identify with the
> defendant or to imagine themselves to be like him and to see
> themselves in his situation. White jurors, in contrast, are especially
> unlikely to be reminded of someone by the defendant or to place
> themselves in the situation of the defendant's family in such cases.

---

[86] *Id.* at 241–42.
[87] *Id.* at 216.
[88] *Id.* at 217–18.
[89] *Id.* at 220–26.
[90] *Id.* at 211–12.
[91] *Id.* at 242.

000219

> In turn, blacks are most, and whites least, likely to believe that the
> defendant deserved mercy on the grounds of his remorsefulness...
> In black defendant cases..., white jurors are especially likely to see
> the defendant as lacking remorse and to deny that the defendant
> even pretended to be sorry.[92]

Lastly, the issue of future dangerousness splits the black and white jurors even further in the sentencing process:

> The tables turn when it comes to dangerousness. White jurors in
> [black defendant, white victim] cases are the ones most likely to
> see the defendant as dangerous. Compounding their concern about
> dangerousness, they are also the ones most likely to believe that he
> will serve a relatively short term in prison if not given a death
> sentence. Both black and white jurors in these cases agree that the
> defendant's dangerousness and his possible return to society were
> discussed a great deal in jury deliberations; however, only white
> jurors are much more likely to vote for death as a result of their
> perception of the defendant's dangerousness. Jurors' responses
> from all... defendant/victim racial combinations suggest that white
> jurors believe black defendants are more dangerous than white
> defendants, and that black jurors believe defendants who killed
> blacks are more dangerous than those who killed whites.[93]

It would be difficult to imagine a more arbitrary circumstance than having to depend on the racial composition of the jury for a life sentence. Nevertheless, the data demonstrate that the outcome of a capital case is greatly dependent on the race of the individual jurors and on the overall racial composition of the jury as a whole. While *Furman* and *Turner* demand that race not be taken into account, these constitutional provisions are not possible to protect when jurors come into the sentencing phases with racial bias already present in their minds. Therefore, despite the fact that these constitutional safeguards exist, there is no way in which they ensure the defendant a fair sentence.

**IV.**

---

[92]   *Id.*
[93]   *Id.*

63

## CONCLUSION

*Furman v. Georgia* set a precedent that the death penalty is not to be arbitrarily applied. *See Furman v. Georgia*, 408 U.S. 238 (1972). The death penalty cases that followed established principles in order to allow states' sentencing processes to comport with the Sixth, Eighth, and Fourteenth Amendments. These include requiring clear and objective standards for sentencing, forbidding jurors from evading responsibility for their decisions, the need for jurors not to base a death decision for a defendant based solely upon the existence of aggravating factors, the need for consideration of mitigating evidence, and the need to remove race from sentencing considerations. Yet the data from the Capital Jury Project, in several studies in different fields, concludes that jurors are incapable of fulfilling these requirements in such a way that will allow the Texas sentencing process to be constitutional. As such, the Texas sentencing process under Article 37.071 is unconstitutional.

As applied in the real world of capital trials, actual capital jurors are not making sentencing decisions consistent with state and federal constitutional mandates. For these reasons, [Defendant] requests that this Court dismiss the State's Notice of Intent to Seek Death.

RESPECTFULLY SUBMITTED,

**RICHARD HURLBURT**
Bar Number: 10308600
P.O. Box 3732
Longview, Texas 75606
Phone Number: (903) 234-8181
Facsimile Number: (903) 757-2387

**KEVIN H. SETTLE**
Bar Number: 18044400
300 North Green, Suite 315
Longview, Texas 75601
Phone Number: (903) 236-4184
Facsimile Number: (903) 757-4252

C00221

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing Motion has been hand-delivered to the Harrison County District Attorney's Office on this ___12___ day of January, 2010.

Kevin H. Settle

65

TRANSCRIPT COVER

2 of 3

# IN THE TEXAS COURT OF CRIMINAL APPEALS

## NO. AP-76,535

## TRIAL COURT CAUSE NO. 09-0411X

## CORTNEE MAREESE ROBINSON, APPELANT

## VS.

## THE STATE OF TEXAS, APPELLEE

........................................................

## APPEALED FROM THE 71ST DISTRICT COURT OF HARRISON COUNTY, TEXAS

FILED IN
COURT OF CRIMINAL APPEALS

Honorable JOE D. CLAYTON Judge Presiding

MAY 06 2011

Louise Pearson, Clerk

........................................................

Appellant's Attorney on Appeal: JEFF HAAS

State's Attorney: RICK HAGAN / LEW DUNN

........................................................

MELLINDA CRAIG District Clerk
Address: 200 WEST HOUSTON   STE 234
MARSHALL, Texas  75670
Phone: 903-935-8409

By _____ Deputy

INDEX
09-0411X

CORTNE MAREESE ROBINSON

VS

THE STATE OF TEXAS

IN THE DISTRICT COURT

71ST JUDICIAL DISTRICT

HARRISON COUNTY, TX

1. Caption      1

2. Indictment      2

3. Request for Court Appointed Counsel      3

4. Order Appointing Counsel      8

5. Precept      9

6. Motion Electing to Have Jury Assess Punishment      10

7. Motion for Discovery and Inspection of Evidence      12

8. Request for Notice of Intent to Offer Extraneous Conduct      17

9. Motion for Hearing on Voluntariness      19

10. Precept Returned Served      22

11. Order Setting Bond      23

12. Letter to Judge from Kevin Settle (scheduling proposal)      24

13. State's Notice of Intent to Seek the Death Penalty      25

14. Defendant's Motion to Require the State to Answer all Pre Trial Motions      26

15. Defendant's Motion to Compel Endorsement of the Names of The Grand Grand Jury Witnesses upon the Indictment      28

16. Defendant's Motion Requesting Notice of Intent to use Certified Copies      30

17. Defendant's Written Objection to Admissibility of Extraneous Offenses      32

18. Defendant's Motion to Designate Location of Physical Evidence      35

19. Motion to Inspect, Examine and Test Physical Evidence      37

20. Defendant's Motion to List State's Witnesses    39

21. Motion to Discover Criminal Records of Witnesses    41

22. Motion for Disclosure of Impeaching Information    43

23. Motion for Timely "Brady" Material    45

24. Motion to Require the State to Reveal any Agreement Entered into
Between the State and any Prosecution Witness that Could Conceivable
Influence their Testimony    47

25. Motion for Discovery of Victim Impact Testimony    49

26. Motion to Produce Victim's Medical Records    51

27. Motion for In Camera Inspection    53

28. Defendant's Motion to Invoke the Rule    55

29. Defendant's Motion that Bench Conferences Be Conducted in The Jury's
Absence    57

30. Defendant's Motion for Limiting Instructions during Course of Trial    59

31. Motion to Adjourn at a Reasonable Time    60

32. Defendant's Motion Requesting the Court to Make Concrete Rulings
On Objections made to the Prosecution's Final Argument    62

33. Motion for Defendant to be tried in Civilian Clothes    64

34. Motion in Limine Number 1 (Physical Evidence)    66

35. Motion in Limine Number 2 Regarding Statements of Defendant to
Health Care Providers    68

36. Motion in Limine Number 3 Full Opening Statement by State    70

37. Motion in Limine Number 4 Defendant's right to Appeal: Hearings
Outside Presence of Jury: Defendant's Right to Remain Silent    72

38. Motion in Limine Number 6 (No Outside Material for Jury)    74

39. Motion to Suppress Arrest and Search    76

40. Defendant's Motion to Suppress Inflammatory Photographs    79

41. Motion for Identification Hearing Outside Presence of Jury                                    81

41. Motion for Special Venire                                                                     83

42. Defendant's Motion for a List of Venire Persons Summoned for the Week        85

43. Motion for Equal Access to Background Information on Prospective Jurors       87

44. Motion to Disclose the Past and Present Relationships, Associations and
    Ties between the Prosecuting Attorney and Prospective Jurors                           89

45. Motion to Individually Interrogate Jurors                                                     91

46. Motion to Bar the State from Using Peremptory Challenges to Exclude
    Prospective Jurors who Express Religious or Equivalent Reservations
    About the Death Penalty but who cannot be Excused for Cause                           92

47. Defendant's Motion to Excuse for Cause all Prospective Jurors who
    Have Heard or Read about This Case                                                           97

48. Motion for Opportunity to Rehabilitate any Prospective Juror who
    Expresses Reticence when Asked to Kill a Fellow Human Being and to
    Allow the Defense to Question the Jurors First on the Issue                               99

49. Defendant's Motion to Sequester Jury                                                         103

50. Defendant's Request to Utilize Peremptory Challenges Following
    Examination of the Entire Venire                                                             105

51. Motion for Additional Peremptory Challenges                                                107

52. Motion for an Order Directing That Alternate Jurors Not be Publicly
    Identified Until the Deliberation Process Begins                                            111

53. Motion For an Order Requiring That Juror Questionnaires be sent
    With the Juror Summons to Each Venire Person                                               114

54. Motion to Restrict Press Filming of the Jury and for Other Relief              116

55. Motion to Prohibit Jury Dispersal and to Prohibit Jury's Exposure to
    Victim's Family or Friends                                                                    118

56. Motion to Introduce the Testimony of Defendant's Family and Friends
    Regarding Their Feelings on the Prospect of a Death Sentence and the
    Impact an Execution Would Have on Them                                                      120

57. Motion to Prohibit Comment on the Weight to be Given or Credibility
    Of Testimony during Trial                                                                     131

58. Motion for Daubert Hearing Addressing Admissibility of Expert Testimony on Future Dangerousness — 134

59. Defendant's Motion for Expert Assistance — 139

60. Motion to Direct Sheriff's Office to Allow Contact between Defense Expert(s) and Defendant and Allowance for Reasonable Expert Expenses — 142

61. Motion for Order Stating Permissibility for Prosecution Witnesses to Discuss Case — 144

62. Motion to Quash Indictment on Bases of the Unconstitutionality of Article 37.071 of the Texas Code of Criminal Procedure — 146

63. Motion to Preclude the Death Penalty — 150

64. Motion for Court to Declare Code of Criminal Procedure Article 37.071 Section 2(a) Unconstitutional — 155

65. Motion to Dismiss the Death Penalty in the State of Texas on the Ground That it's Capital Sentencing Procedure is Unconstitutional Due to its Failure to Meet Minimum Requirements Set Fourth in Furman V. Georgia and its Progeny, as Evinced by the Findings of the Capital Jury Project and Other Research — 158

66. Motion for Leave to File Additional Pre-Trial Motions — 223

67. Request for Written Notice from the State of Intent to Introduce Extraneous Offenses, Bad Acts or Convictions in Penalty Phase Pursuant to Article 37.07, Sec. 3(g) — 225

68. Motion to List Expert Witnesses — 227

69. State's Motion for Recusal of the District Judge — 230

70. Order of Referral on Motion to Recuse — 233

71. Confirmation of Setting — 234

71. Order of Assignment by the Presiding Judge — 235

72. Motion to Withdraw as Counsel — 236

73. Order Allowing Withdrawal as Attorney of Record — 238

74. Order Granting Motion to Recuse — 239

75. Order of Assignment by the Presiding Judge — 240

76. Order Appointing Counsel                                                    241

77. Confirmation of Setting                                                     242

78. List of Pre Trial Motions Filed by Defense                                 243

79. Motion for Appointment of Special Prosecutor                               253

80. Order Granting Motion to Appoint Special Prosecutor                        254

81. Statement of Appointed Officer                                             255

82. Oath of Office                                                             256

83. Designation of Potential Expert Witnesses                                  257

84. Corrected Order Appointing Special Prosecutor                             258

85. State's Motion for Psychological Evaluation of Defendant                   260

86. Notice of Intent to Introduce Evidence of Other Crimes, Wrongs, or Acts    263

87. Application for Subpoena's                                                  303

88. Application for Subpoena's                                                  305

89. Application for Subpoena's                                                  307

90. Subpoena's Returned Served                                                  308

91. State's Motion Designating Experts                                          359

92. Designation of Potential Expert Witnesses                                   361

93. Subpoena's Returned Served                                                  362

94. Application for Subpoena's                                                  423

95. Subpoena's Returned Served                                                  424

96. Motion to Suppress Evidence and Statements of Defendant and Evidence
    From Extraneous Offenses                                                    431

97. Motion in Limine for Extraneous Offenses in The State's Case in Chief
    And in a Punishment Phase                                                   434

98. Subpoena's Returned Served                                                  436

99. Motion to Recuse                                                            439

100. Order Granting Motion to Recuse and Appointing Attorney Pro Tem
     For The State                                                          441

101. Statement of Appointed Officer                                        442

102. Motion for the Appointment of an Assistant Attorney Pro Tem           443

103. Order Appointing Assistant Attorney Pro Tem for the State             446

104. Statement of Appointed Officer                                        447

105. Motion for the Appointment of an Investigator                         448

106. Order                                                                 451

107. Supplemental Notice of Intent to Introduce Evidence of Other Crimes   452

108. Order to pay Dr. Thomas Allen                                         454

109. Order to pay Attorney Pro Tem's Motion                               455

110. Motion to Pay Expert's Fees                                          457

111. Order                                                                 459

112. Motion to Pay Appointed Attorney                                      460

113. Order                                                                 462

114. Motion to Pay Appointed Attorney                                      463

115. Order                                                                 466

116. Motion to Pay Investigator                                            467

117. Order                                                                 470

118. Subpoena Duces Tecum                                                  472

119. Letter to Judge Joe Clayton                                           477

120. Judge's Note                                                          480

121. Motion to Pay Appointed Attorney                                      481

122. Order                                                                 483

123. Motion to Pay Appointed Attorney                                      485

124. Order                                                              487

125. Notice of Intent to use Business Records by Affidavit               489

126. State's Motion in Limine Number One                                 490

127. Motion to Pay Appointed Attorney                                    494

128. Order                                                              496

129. Motion to Pay Appointed Attorney                                    498

130. Order                                                              500

131. Application for Subpoena's                                          502

132. Subpoena's Returned Served                                          507

133. State's Motion Designating Experts                                  509

134. Application for Subpoena's                                          512

135. Application for Subpoena's                                          518

136. Subpoena's Returned Served                                          533

137. State's Potential Witness List                                      539

138. State's Motion Designating Experts                                  542

139. Subpoena's Returned Served                                          545

140. Application for Subpoena's                                          569

141. Subpoena's Returned Served                                          573

142. General Instructions                                                579

143. Admonitory Jury Instructions                                        581

144. Subpoena's Returned Served                                          583

145. Application for Subpoena's                                          593

146. Application for Subpoena's                                          595

147. Subpoena Returned Served                                            598

148.  Motion to Pay Investigator                                    599

149.  Motion to Pay Court Report's Fees                             602

150.  Order                                                         605

151.  Order                                                         606

152.  Request for Bench Warrant for TDCJ Inmate                     607

153.  Bench Warrant                                                 609

154.  Subpoena's Returned Served                                    610

155.  Bench Warrant                                                 616

156.  Motion to Pay Appointed Attorney                              617

157.  Order                                                         620

158.  Motion to Pay Investigator                                    622

159.  Order                                                         627

160.  Motion to Pay Appointed Attorney                              628

161.  Order                                                         630

162.  Motion to Pay Expert's Fees                                   632

163.  Order                                                         633

164.  General Instructions                                          635

165.  Admonitory Jury instructions                                  637

166.  Jury Note                                                     639

167.  Jury Note                                                     640

168.  Jury Note                                                     641

169.  Jury Note's                                                   642

170.  Motion to Preclude the Death Penalty as a Sentencing Option   645

171.  Court's Charge on Punishment                                  675

172.  Jury Notes                                                    682

173. Charge on Punishment                                                          692

174. Motion to Pay Investigator                                                    702

175. Order                                                                          704

176. Motion for the Appointment of an Assistant Attorney Pro Tem                   705

177. Order Appointing Assistant Attorney Pro Tem for the State                     708

178. Statement of Appointed Officer                                                709

179. Order Appointing counsel for Appeal                                           710

180. Order on Motion to Preclude the Death Penalty as a Sentencing Option          711

181. Order Appointing Counsel for Purpose of a Writ                                712

182. Subpoena's Returned Served                                                    713

183. Judgment of Conviction by Jury                                                718

184. Bench Warrant                                                                 722

185. Document Checklist                                                            723

186. Clerk's Certificate of Service                                                724

187. Motion to Pay Appointed Attorney                                              725

188. Order                                                                          727

189. Motion to Pay Appointed Attorney                                              728

190. Order                                                                          731

191. Letter from Court of Criminal Appeals                                         732

192. Summary Docket Sheet                                                          733

193. Clerk's Certificate                                                           747

CAUSE NUMBER: 09-0411-X

THE STATE OF TEXAS                      IN THE 71ST DISTRICT COURT

VS.                          SHERRY GRIFFIS      IN AND FOR

                          BY

CORTNE MAREESE ROBINSON        §        HARRISON COUNTY, TEXAS

(59)

## MOTION FOR LEAVE TO FILE
## ADDITIONAL PRE-TRIAL MOTIONS

### TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES, **CORTNE MAREESE ROBINSON**, by and through his attorneys of record, in the above styled and numbered cause and moves the Court for leave to file additional pre-trial motions and in support thereof would show:

### I.

Defendant was arraigned on November 19, 2009. At time of arraignment, a date for the filing of pre-trial motions was not set. At the time of the filing of this motion, attorneys for Defendant have received little discovery or information regarding the State's case. Attorneys for Defendant iare unable to fully anticipate the evidence and tactics which may be subject to pre-trial determination. Therefore, attorneys for Defendant cannot file all motions at this time which may be necessary to protect Defendant's right to a fair trial.

### II.

Granting leave to file additional pre-trial motions, once compliance with Court-ordered discovery has occurred, is necessary to protect Defendant's rights and afford him effective representation as afforded under Article VI and due process under Article XIV of the United States Constitution.

WHEREFORE, PREMISES CONSIDERED, Defendant prays that the Court allow Defendant to file additional pre-trial motions within thirty (30) days after the State complies with Court-ordered discovery as well as leave to file any pre-trial motions which may arise prior to trial.

1

RESPECTFULLY SUBMITTED,

| | |
|---|---|
| **RICHARD HURLBURT** | **KEVIN H. SETTLE** |
| Attorney for Defendant | Attorney for Defendant |
| Bar Number: 10308600 | Bar Number: 18044400 |
| P.O. Box 3732 | 300 North Green, Suite 315 |
| Longview, Texas 75606 | Longview, Texas 75601 |
| Phone Number: (903) 236-8181 | Phone Number: (903) 236-4184 |
| Facsimile Number: (903) 757-2387 | Facsimile Number: (903) 757-4252 |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing Motion has been hand-delivered to the Harrison County District Attorney's Office on this ___12___ day of January, 2010.

Kevin H. Settle

## O R D E R

On this _____ day of _____, 2010, came on to be heard the above and foregoing Motion and after considering same, the Court is of the opinion that said motion should be and **IT IS HEREBY ORDERED (GRANTED)   (DENIED)**.

Signed this _____ day of _____, 2001.

_____
**JUDGE PRESIDING**

2

CAUSE NUMBER: 09-0411-X

2018 JAN 28  PM 1: 31

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 71ST DISTRICT COURT |
| | § | |
| VS. | § | COURT IN AND FOR |
| | § | |
| CORTNE MAREESE ROBINSON | § | HARRISON COUNTY, TEXAS |

(60)

## REQUEST FOR WRITTEN NOTICE FROM THE STATE OF INTENT TO INTRODUCE EXTRANEOUS OFFENSES, BAD ACTS OR CONVICTIONS IN PENALTY PHASE PURSUANT TO ARTICLE 37.07, SEC. 3(g)

COMES NOW, CORTNE MAREESE ROBINSON, Defendant in the above-styled and numbered case, and makes this written request to the District Attorney of the County of Harrison, State of Texas, to disclose and reveal to Defendant and to Defense Counsel, any and all evidence, information, and / or indications, now or later to come into possession of said District Attorney, where such evidence, information, and / or indications be in the form of evidence of extraneous offenses, prior convictions or bad acts, if any, on the part of Defendant, which may be introduced into evidence by said District Attorney in the penalty phase of the trial and in support of said request shows the following:

I.

Defendant believes that the District Attorney of Harrison County, Texas, may attempt to offer into evidence during the penalty phase of the trial of this case accounts of alleged extraneous offenses, prior convictions or bad acts on the part of Defendant, for the purpose of showing the extent of the defendant's involvement in prior criminal activity, his propensity to commit crimes and his general bad character as provided under Article 37.07, Sec. 3 of the Texas Code of Criminal Procedure.

1

## II.

Defendant cannot assert a proper defense to the charges herein unless he is given fair notice of exactly what allegations the District Attorney intends to make with regard to such alleged extraneous offenses, prior convictions or bad acts in the penalty phase. Defendant is entitled to know what alleged extraneous offenses, prior convictions or bad acts the District Attorney intends to introduce, in order to prevent the Defendant from being "ambushed" at trial as provided under Article 37.07, Sec. 3 of the Texas Code of Criminal Procedure.

Defendant requests the District Attorney of Harrison County, Texas, to provide Defendant, by counsel, no less than ten (10) days prior to the trial date, exact descriptions of any and all alleged extraneous offenses, prior convictions and / or bad acts on the part of Defendant which the State may attempt to introduce into evidence during the penalty phase of the trial. as provided under Article 37.07, Sec. 3 of the Texas Code of Criminal Procedure.

RESPECTFULLY SUBMITTED,

RICHARD HURLBURT
Attorney for Defendant
Bar Number: 10308600
P.O. Box 3732
Longview, Texas 75606
Phone Number: (903) 234-8181
Facsimile Number: (903) 757-2387

KEVIN H. SETTLE
Attorney for Defendant
Bar Number: 18044400
300 North Green, Suite 315
Longview, Texas 75601
Phone Number: (903) 236-4184
Facsimile Number: (903) 757-4252

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the above and foregoing Motion has been hand-delivered to the Harrison County District Attorney's Office on this ___27___ day of January, 2010.

Kevin H. Settle

2

CAUSE NUMBER: 09-0411-X

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 71ST DISTRICT COURT |
| | § | |
| VS. | § | COURT IN AND FOR |
| | § | |
| CORTNE MAREESE ROBINSON | § | HARRISON COUNTY, TEXAS |

(61)

## MOTION TO LIST EXPERT WITNESSES

TO THE HONORABLE JUDGE OF SAID COURT:

Now Comes the Defendant, CORTNE MAREESE ROBINSON, by and through his attorneys, Richard Hurlburt and Kevin H. Settle, and respectfully moves this Court pursuant to Article 39.14 of the Texas Code of Criminal Procedure, to disclose the name(s) of all expert witnesses the State of Texas may use in the trial of this cause.

The Defendant would respectfully request that the State of Texas be required to disclose the name and address of each person the State of Texas may use at trial to present evidence under Rule 702, 703, and 705, Texas Rules of Evidence (Expert Witnesses). The Defendant would further request that this disclosure be made in writing, no later than the 20th day before the trial begins.

WHEREFORE PREMISES CONSIDERED, the Defendant prays that the State of Texas be required to disclose their expert witness(es) in writing prior to the trial of this cause.

RESPECTFULLY SUBMITTED,

RICHARD HURLBURT
Attorney for Defendant
Bar Number: 10308600

KEVIN H. SETTLE
Attorney for Defendant
Bar Number: 18044400

P.O. Box 3732                                    300 North Green, Suite 315
Longview, Texas 75606                            Longview, Texas 75601
Phone Number: (903) 234-8181                     Phone Number: (903) 236-4184
Facsimile Number: (903) 757-2387                 Facsimile Number: (903) 757-4252

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing Motion has been hand-delivered to the Harrison County District Attorney's Office on this ___27___ day of January, 2010.

Kevin H. Settle



**KEVIN H. SETTLE**, ATTORNEY AT LAW

BRAMLETTE BUILDING • 300 NORTH GREEN, STE. 315 • LONGVIEW, TEXAS 75601 • (903) 236-4184 • (903) 757-4252

January 27, 2010

Sherry Griffis
Harrison County District Clerk's Office
200 West Houston, Suite 234
Marshall, Texas 75671

RE:    State of Texas vs. Cortne' M. Robinson
       Cause Number: 09-0411

Dear Clerk:

Enclosed is an original and one copy of the Pretrial Motions which I would ask that you file
in your records.  Please mail the remaining copy, when file-stamped, back to me in the self
addressed stamped envelope provided.

If you have any questions or comments, let me know.  Thank you.

Sincerely,

Kevin H. Settle

/em

Enclosures

No. 09-0411X

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 71ST DISTRICT COURT |
| VS. | § | |
| CORTNE MAREESE ROBINSON | § | HARRISON COUNTY, TEXAS |

2010 FEB -9 PM 2:00

## STATE'S MOTION FOR RECUSAL OF THE DISTRICT JUDGE

**TO THE HONORABLE JUDGE OF SAID COURT:**

Comes now **THE STATE OF TEXAS** by and through the Criminal District Attorney of Harrison County, Texas, and respectfully moves the Court pursuant to Article 30.01, Texas Code of Criminal Procedure, Art. V, Sec. 11 of the Constitution of the State of Texas, and Rule 18a, Texas Rules of Civil Procedure, to recuse itself from the above styled and numbered cause for the following reasons:

### I.

Judge William Hughey became the 71st Judicial District Judge on January 1, 2009. Prior to his taking of the bench, Judge Hughey represented Cortne Mareese Robinson as defense counsel in Cause Number 08-0298X which is still pending on the docket of the 71st Judicial District Court.

### II.

Judge Hughey has previously recused himself from Cause Number 08-0298X by order filed on March 20, 2009. Cause Number, 08-0298X, will be offered as evidence during the punishment, and possibly guilt portion, of the above numbered cause. This circumstance will require the trial court to exercise its discretion concerning the admissibility of the facts of that case. The trial court has knowledge within the scope of the attorney/client relationship involving that cause.

### III.

The State also has additional cases currently pending against Mr. Robinson on the 71st Judicial Docket which had offense dates that occurred prior to January 1, 2009.  These cases are listed by Cause Numbers 09-116X and 09-136X and the State anticipates these cases will also be used during the Capital Murder trial of Mr. Robinson.

### IV.

These cases involve capital murder, and the attorney/client relationship between the Hon. William Hughey and this defendant create at the very least an appearance of conflict not conducive to the principles of due process and equal protection emanating from the constitutions of the United States and the State of Texas.

**WHEREFORE, PREMISES CONSIDERED** the State prays the Court recuse itself from the above styled and numbered cause, or forward to the presiding judge of the administrative judicial district for this court a certified copy of an order of referral, this motion, and any concurring or opposing statements received from the other parties, all as required in Rule 18a, Texas Rules of Civil Procedure.

Respectfully Submitted
JOE M. BLACK,
Criminal District Attorney
Harrison County, Texas


Joe Black
Criminal District Attorney
Harrison County, Texas
SBN  00789999

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing has been delivered to Kevin Settle and Rick Hurlburt, the defendant's attorneys of record, on this, the 9th day of February, 2010.

Joe Black
Criminal District Attorney
Harrison County, Texas

STATE OF TEXAS

COUNTY OF HARRISON

BEFORE ME, the undersigned authority, personally appeared Joe Black, a person well known to me, who, after being duly sworn did depose and say:

"My name is Joe Black.  I am over the age of eighteen years and competent to testify to the facts contained herein.  I am the Criminal District Attorney for Harrison County, Texas.  The facts alleged in the foregoing Motion for Recusal of the District Judge are to my personal knowledge true and correct."

Joe Black

SIGNED and SWORN TO before me this the _9th_ day of _February_, 2010, by the said Joe Black.

Pam Steele
Notary Public in and for the State of Texas

PAM STEELE
Notary Public
State of Texas
My Comm. Expires 01-08-2014

000232

IN THE 71st JUDICIAL DISTRICT COURT

OF HARRISON COUNTY, TEXAS

CAUSE NO. 09-0411X

2010 FEB 10 PM 2:42

*Holmes*

**In The Interest of**
**The State of Texas VS. Cortne Mareese Robinson**

## ORDER OF REFERRAL ON MOTION TO RECUSE

_____ On my own Motion, I respectfully

_____ A Motion to Recuse having been presented to me in the above styled and numbered cause, I respectfully

**X** decline to recuse myself and request the Presiding Judge of the First Administrative Region to assign a judge to hear the Motion to Recuse

OR

_____ recuse myself and request that the Presiding Judge of the First Administrative Region assign a judge to hear the above case, all pursuant to the provisions of Rule 18a T.R.C.P.

**ORDERED** this 10th day of February, 2010.

William T. Hughey
**JUDGE PRESIDING**

000233

Confirmation of Setting for
The 71st Judicial District Court
Harrison County, Texas
February 24, 2010

2010 MAR -1  AH 9: 09

Cause No.:  09-0411X

Style:  The State of Texas
v.
CORTNE MAREESE ROBINSON

Counsel:

Criminal District Attorney

KEVIN H. SETTLE

Date of Setting:  April 9th, 2010

Time:  10:00am

Nature of  Setting:  M/RECUSE

Kenya Robinson
Court Coordinator
William T. Hughey, District Judge
903-935-8407 Phone
903-935-9963  Fax

**Pursuant to the Rules of Court the requesting attorney should give notice of any and all hearings to all parties to the suit.**

000234



**received**

## THE STATE OF TEXAS
### FIRST ADMINISTRATIVE JUDICIAL REGION
### ORDER OF ASSIGNMENT BY THE PRESIDING JUDGE

Pursuant to Article 74.056, Texas Government Code, I hearby assign the

Honorable Richard Davis ,

Senior Judge of The 294th District Court

To The 71st District Court of Harrison County, Texas.

This assignment is for the period of 1 days beginning 2/10/2010, providing that the assignment shall continue after the specified period of time as may be necessary for the assigned Judge to complete trial of any case or cases begun during this period, and to pass on motions for new trial and all other matters growing out of cases tried by the Judge herein assigned during this period, or the undersigned presiding judge has terminated this assignment in writing, whichever occurs first.

CONDITION(S) OF ASSIGNMENT [IF ANY]:

To hear Cause Nos. 09-0411X;  09-0414X; and 09-0417X; The State of Texas vs. Cortne Mareese Robinson.

The Clerk is directed to post a copy of this assignment on the notice board so that attorneys and parties may be advised of this assignment, in accordance with the law.

ORDERED this ___10___ day of ___February___, 20 10

John Ovard, Presiding Judge
First Administrative Judicial Region

ATTEST:

Administrative Assistant

Assign#          20974

000235

No. 09-0411X

FILED

AT 10:00 O'CLOCK A

SHERRY GRIFFIS
CLERK DISTRICT COURT
HARRISON COUNTY, TEXAS

DEPUTY CLERK

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| VS. | § | OF HARRISON COUNTY, TEXAS |
| | § | |
| CORTNE ROBINSON | § | 71ST JUDICIAL DISTRICT |

## MOTION TO WITHDRAW AS COUNSEL

**TO THE HONORABLE JUDGE OF SAID COURT:**

NOW COMES the Attorney of Record for the Defendant set forth in the style above, who would file this Motion to Withdraw as Counsel in the present cause, and show unto the Court as follows:

I.

The Attorney of Record, Richard A. Hurlburt, is currently appointed as second chair on the Defendant's Capital Murder charge where the State has elected to seek the death penalty. Attorney Hurlburt is currently a candidate for the position of Harrison County Court at Law Judge as of December 3, 2009. Attorney Hurlburt was appointed prior to the announcement of being a candidate. Attorney Hurlburt is in the process of campaigning for the election which will be on November 2, 2010. It is apparent that the case for Cortne Robinson will not be prepared to go to trial until sometime in the fall. Therefore, Attorney Hurlburt is seeking to withdraw at an early enough date so that a replacement can be made which will not prejudice the Defendant in any way. Lance Larison has agreed to replace Attorney Hurlburt for the second chair position in the trial. Mr. Larison is in fact qualified to be a first chair in a death capital case but has agreed to accept the second chair role in Mr. Robinson's case. If Mr. Hurlburt won the election and the trial of Mr. Robinson went into the year 2011, then, another attorney would have to be substituted in, which could prejudice the Defendant on such a late date. Also, the current campaign demands makes it

difficult if not impossible, to properly represent the Defendant which would be in derogation of Defendant's rights under the Sixth and Fourteenth Amendments to the United States Constitution, Article I, Section 10 the Texas Constitution, and Articles 1.05 and 1.051 of the Texas Code of Criminal Procedure.

II.

The granting of this Motion to Withdraw will not jeopardize the rights of the Defendant, and will not work a delay or other injustice.

WHEREFORE, PREMISES CONSIDERED, Movant prays that this Honorable Court allow the withdrawal of counsel, and that present counsel be released from further obligation or duty to the Defendant as Attorney of Record.

RESPECTFULLY SUBMITTED,

RICHARD A. HURLBURT
P.O. Box 3732
Longview, Texas 75606-3732
(903) 234-8181
Fax (903) 757-2387
Bar # 10308600
Attorney for Defendant

CERTIFICATE OF SERVICE

As Attorney of Record for Defendant, I do hereby certify that on the _9th_ day of _APRIL_, 20__ 2010, a true and correct copy of the above and foregoing document was this date provided to the Attorney for the State.

Attorney for Defendant

No. 09-0411X

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| VS. | § | OF HARRISON COUNTY, TEXAS |
| | § | |
| CORTNE ROBINSON | § | 71ST JUDICIAL DISTRICT |

## ORDER ALLOWING WITHDRAWAL AS ATTORNEY OF RECORD

On this the _9th_ day of _April_, 2010, came on to be heard the Motion of, RICHARD A. HURLBURT, as Attorney of Record in the above and foregoing cause, that said Attorney be allowed to withdraw.

After consideration of the same, and being satisfied that no harm will be done to the rights of the Defendant, the same is GRANTED, and it is therefore;

ORDERED, ADJUDGED AND DECREED, that the said Attorney, RICHARD A. HURLBURT, shall be allowed to withdraw as counsel, and is hereby relieved of any further duty, obligation or responsibility to Defendant herein:

Signed and entered this _9th_ day of _April_, 2010.

_____
JUDGE PRESIDING

NO. 09-0411X

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| V | § | HARRISON COUNTY, TEXAS |
| | § | |
| CORTNE ROBINSON | § | 71ST JUDICIAL DISTRICT |

## ORDER GRANTING MOTION TO RECUSE

CAME ON this day the State's Motion to Recuse the Hon. William T. Hughey as the trial judge in the above numbered and styled cause.

The defendant was present along with his counsel of record, Kevin Settle, and Rick Hurlburt. The State appeared by and through its Criminal District Attorney, Joe Black.

All parties were given adequate notice, and all parties announced ready.

A record was made of the proceedings.

After considering the pleadings on file and hearing the argument of counsel, the Court finds the State's motion to be well taken, and it is, therefore;

ORDERED that William T. Hughey, Judge of the 71st Judicial District Court, be, and is hereby, recused from the trial of the above styled and numbered cause.

SIGNED this the _____9th_____ day of April, 2010.

Richard Davis
Sitting by Assignment

THE STATE OF TEXAS
FIRST ADMINISTRATIVE JUDICIAL REGION
ORDER OF ASSIGNMENT BY THE PRESIDING JUDGE



FILED FOR RECORD
HARRISON COUNTY, TEXAS
71 STH DISTRICT COURT

2010 APR 30  PM 1: 12

SHERRY GRIFFIS

BY_____
DEPUTY

Pursuant to Article 74.056, Texas Government Code, I hearby assign the:

Honorable Joe Clayton ,

Senior Judge of The 241st District Court

To The 71st District Court of Harrison County, Texas.

This assignment is for the period of 1 days beginning 4/28/2010, providing that the assignment shall continue after the specified period of time as may be necessary for the assigned Judge to complete trial of any case or cases begun during this period, and to pass on motions for new trial and all other matters growing out of cases tried by the Judge herein assigned during this period, or the undersigned presiding judge has terminated this assignment in writing, whichever occurs first.

CONDITION(S) OF ASSIGNMENT [IF ANY]:

To hear Cause No. 09-0411X: The State of texas vs. Cortne Robinson.

The Clerk is directed to post a copy of this assignment on the notice board so that attorneys and parties may be advised of this assignment, in accordance with the law.

ORDERED this ___28___ day of _____Apri_____ , 20_10_

John Ovard, Presiding Judge
First Administrative Judicial Region

ATTEST:

Administrative Assistant

Assign#          21176

CAUSE NUMBER: 09-0411X

FILED FOR RECORD
HARRISON COUNTY, TEXAS
CLERK DISTRICT COURT

2010 MAY -7  AM 11: 02

SHERRY GRIFFIS

BY_____
DEPUTY

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 71ST DISTRICT COURT |
| | § | |
| | § | |
| VS. | § | IN AND FOR |
| | § | |
| | § | |
| CORTNE MAREESE ROBINSON | § | HARRISON COUNTY, TEXAS |

## ORDER APPOINTING COUNSEL

On May 5, 2010, it came to the attention of this Court that it is necessary to appoint a second chair counsel to represent the Defendant, Cortne Mareese Robinson, in the pending charge of capital murder. There has been a previous order finding the Defendant to be indigent and entitled to court appointed counsel.

The Court hereby appoints Lance R. Larison, practicing Attorney, to represent Cortne Mareese Robinson in this cause and orders that Lance R. Larison be compensated in accordance with the schedule for such appointments in Harrison County, Texas.

Signed on this the 5 day of May, 2010.

JOE D. CLAYTON
JUDGE PRESIDING

C00241

Confirmation of Setting for
The 71st Judicial District Court
Harrison County, Texas
August 06, 2010

2010 AUG -6  PM 3: 32

~~JENNIFER~~ GRIFFIS
BY _Holmes_
DEPUTY

Cause No.:  09-0411X

Style:  The State of Texas
v.
CORTNE MAREESE ROBINSON

Counsel:

Criminal District Attorney

KEVIN H. SETTLE

Date of Setting:  October 26th, 2010

Time:  09:00am

Nature of Setting:  PRE-TRIAL

Kenya Robinson
Court Coordinator
William T. Hughey, District Judge
903-935-8407 Phone
903-935-9963  Fax

**Pursuant to the Rules of Court the requesting attorney should give notice of any and all hearings to all parties to the suit.**

000242

Cause Number: 09-0411-X

State of Texas v. Cortne Mareese Robinson

List of Pre-Trial Motions Filed By Defense:

Numbers: 1-4
Filed: November 13, 2009
Hearing in Court: _____10 - 26 -10_____
Numbers: 5-59
Filed: January 12, 2010
Hearing in Court: _____10 - 26 - 10_____
Numbers: 60-61
Filed: January 28, 2010
Hearing in Court: _____10 - 26 - 10_____

1.   Defendant's Election as to Punishment

     Court Action: GRANTED              DENIED
     Comments:

2.   Motion for Discovery and Inspection of Evidence

     Court Action: GRANTED              DENIED
     Comments: except work product

3.   Request for Notice of Intent to Offer Extraneous Conduct Under Rule 404(b) and
     Evidence of Conviction Under Rule 609(f)

     Court Action: GRANTED              DENIED
     Comments:

4.   Motion on Voluntariness of any Admission or Confession Whether Written or Oral

     Court Action: GRANTED              DENIED
     Comments: Set on 10th of Nav.

5.   Defendant's Motion to Require the State to Answer all Pretrial Motions in Writing

1

Court Action:  GRANTED                    DENIED
Comments:                *N/A*

6.   Defendant's Motion to Compel Endorsement of the Names of the Grand Jury
     Witnesses Upon the Indictment

     Court Action:  GRANTED                    DENIED
     Comments:
             *Completely 11-10-10*

7.   Defendant's Motion Requesting Notice of Intent to Use Certified Copies

     Court Action  GRANTED                    DENIED
     Comments:

8.   Defendant's Written Objection to Admissibility of Extraneous Offenses, Request for
     Procedural Determination by Trial Court with Findings of Fact and Conclusions of
     Law, and for Limiting Instructions

     Court Action:  GRANTED                    DENIED
     Comments:

9.   Defendant's Motion to Designate Location of Physical Evidence

     Court Action:  GRANTED                    DENIED
     Comments:

10.  Motion to Inspect, Examine and Test Physical Evidence

     Court Action:  GRANTED                    DENIED
     Comments:

11.  Defendant's Motion to List State's Witnesses (Trial Witnesses)

     Court Action:  GRANTED                    DENIED
     Comments:
             *Subject to Supplement*

12.  Motion to Discover Criminal Records of Witnesses

2