IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| CORTNÉ MAREESE ROBINSON, | § | |
| *Petitioner*, | § | |
| | § | |
| v. | § | Civil Action No. 1:17-cv-11 |
| | § | *DEATH PENALTY CASE* |
| ERIC GUERRERO, Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| *Respondent*. | § | |

## RESPONDENT'S OPPOSITION
## TO PETITIONER'S MOTION TO ALTER OR AMEND JUDGMENT

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

JOSH RENO
Deputy Attorney General
For Criminal Justice

TOMEE M. HEINING
Chief, Criminal Appeals Division

RACHEL ELIZABETH GARTMAN
Assistant Attorney General
State Bar No. 24109911
    *Counsel of Record*

Post Office Box 12548, Capitol Station
Austin, Texas 78711
Tel.: (512) 936-1400
Fax: (512) 320-8132
Email: *rachel.gartman@oag.texas.gov*

*Counsel for Respondent*

# TABLE OF CONTENTS

INDEX OF AUTHORITIES ..................................................................................ii

OPPOSITION...................................................................................................1

STANDARD OF REVIEW .................................................................................1

ARGUMENT ...................................................................................................2

I.   The Court Did Not Manifestly Err in Denying Robinson's *Brady* and *Napue* Claims (Claims 1 and 3)........................................................... 2

    A.   The Court correctly found that Robinson's Claims 1 and 3 are procedurally barred and that the bar is not excused by Robinson's unsubstantiated allegations of suppression. ............. 3

    B.   The Court did not manifestly err in the materiality standards it applied.................................................................... 5

    C.   The Court did not fail to account for the effect that correcting the allegedly false testimony would have had on the jury. .................................................................................. 8

    D.   The Court correctly found that the non-existent false evidence was not material............................................................ 9

II.  The Court Did Not Manifestly Err in Denying Robinson's Claims 5 and 6. ................................................................................................. 9

III. The Court Did Not Manifestly Err in Excluding Robinson's New Evidence. ............................................................................................ 12

IV.  The Court Did Not Manifestly Err in Denying Robinson a Certificate of Appealability. ..................................................................................... 15

CONCLUSION................................................................................................ 15

i

# INDEX OF AUTHORITIES

**Cases**                                                                                        **Page(s)**

*Banks v. Dretke*, 540 U.S. 668 (2004) ................................................................. 3, 4, 5

*Barrientes v. Johnson*, 221 F.3d 741, 756–57 (5th Cir. 2000) ................................... 7

*Batson v. Kentucky*, 476 U.S. 79 (1986) ................................................................. 11

*Brady v. Maryland*, 373 U.S. 83 (1963) ............................................................. 2, 5, 7

*Brecht v. Abrahamson*, 507 U.S. 619 (1993) ........................................................ 6, 7

*Brown v. Davenport*, 596 U.S. 118 (2022) ........................................................... 6, 7

*Coleman v. Thompson*, 501 U.S. 722 (1991) ............................................................. 3

*Cristin v. Brennan*, 281 F.3d 404 (3d Cir. 2002) ..................................................... 14

*Glossip v. Oklahoma*, 604 U.S. 226 (2025) ........................................................... 4, 6

*Guy v. Crown Equip. Corp.*, 394 F.3d 320 (5th Cir. 2004) ......................................... 1

*Martinez v. Ryan*, 566 U.S. 1 (2012) ................................................................. 13, 15

*Mayle v. Felix*, 545 U.S. 644 (2005) ...................................................................... 10

*McGregor v. La. State Univ. Bd. of Sup'rs*, 3 F.3d 850 (5th Cir. 1993) ..................... 10

*Miller-El v. Cockrell*, 537 U.S. 322 (2003) ............................................................ 15

*Mullis v. Lumpkin*, 70 F.4th 906 (5th Cir. 2023) .................................................... 12

*Napue v. Illinois*, 360 U.S. 264 (1959) ......................................................... *passim*

*Prible v. Lumpkin*, 43 F.4th 501 (5th Cir. 2022) ................................................ 3, 4, 5

*S. Constructors Grp., Inc. v. Boudreaux*, 2 F.3d 606 (5th Cir. 1993) ......................... 1

*Shinn v. Martinez Ramirez*, 596 U.S. 366 (2022) ............................................... 13, 14

*Slack v. McDaniel*, 529 U.S. 473 (2000) ................................................................. 15

*Spence v. Johnson*, 80 F.3d 989 (5th Cir. 1996) ............................................................ 4

*Teague v. Lane*, 489 U.S. 288 (1989) ............................................................................. 6

*Templet v. Hydrochem Inc.*, 367 F.3d 473 (5th Cir. 2004) ....................................... 1, 3

*Tong v. Lumpkin*, 90 F.4th 857 (5th Cir. 2024) ....................................................... 12, 15

*United States v. Benitez*, 542 U.S. 74 (2004) ............................................................... 8

*United States v. Gonzalez*, 592 F.3d 675 (5th Cir. 2009) .................................... 10, 11

*Uvukansi v. Guerrero*, 126 F.4th 382 (5th Cir. 2025) ............................................... 5, 6

*Venegas-Hernandez v. Sonolux Records*, 370 F.3d 183 (1st Cir. 2004) ...................... 1

**Rules**

Rule 59(e) of the Federal Rules of Civil Procedure ........................................... *passim*

## OPPOSITION

This Court recently denied Petitioner Cortné Robinson habeas relief and entered final judgment. Order, ECF No. 145; Final J., ECF No. 146. Robinson now seeks to alter or amend the Court's judgment via Rule 59(e) of the Federal Rules of Civil Procedure. Mot. Alter or Am. J., ECF No. 147 (Mot.). Robinson argues this Court erred in denying his Claims 1, 3, 5, and 6, as well as his requests for the Court to consider new evidence and for a certificate of appealability (COA). *Id.* For the reasons discussed below, Robinson's motion should be denied.

## STANDARD OF REVIEW

"Reconsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly." *Templet v. Hydrochem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004). A Rule 59(e) motion "is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before entry of judgment." *Id.* Rather, Rule 59(e) motions are reserved for the "narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence." *Id.* (citation omitted). A manifest error is not simply error, but "one that 'is plain and indisputable, and that amounts to a complete disregard of the controlling law.'" *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004) (quoting *Venegas-Hernandez v. Sonolux Records*, 370 F.3d 183, 195 (1st Cir. 2004)). These standards "favor the denial of motions to alter or amend a judgment." *S. Constructors Grp., Inc. v. Boudreaux*, 2 F.3d 606, 611 (5th Cir. 1993).

## ARGUMENT

**I.    The Court Did Not Manifestly Err in Denying Robinson's *Brady* and *Napue* Claims (Claims 1 and 3).**

This Court correctly denied Robinson's Claims 1 and 3, which alleged *Brady*[1] and *Napue*[2] violations regarding Robinson's ownership of the razor blade found in his cell during trial and an alleged deal between Renrick Taylor, a witness to that razor blade incident, and Rick Hagan, the prosecutor pro tem.[3] Order at 36; *see* Am. Pet. at 10, 26, ECF No. 90. The Court denied these claims because they are defaulted, Order at 37, the evidence supporting them is barred, *id.*, there is no evidence of State suppression, *id.* at 43, 46, or false testimony, *id.* at 44, and Robinson failed to show materiality, *id.* at 44, 48. Robinson now challenges the Court's ruling on procedural default, Mot. at 8–9, and the Court's analysis of suppression and materiality, *id.* at 2–4. But the Court committed no manifest error in disposing of these claims because they are, in fact, procedurally barred, and they are completely unsupported by admissible evidence and are refuted by the record. Indeed, impeaching Taylor would not have improved the jury's impressions of Robinson (Taylor's testimony was cumulative of and had the effect of softening testimony about the razor from another witness), and there was no suppressed deal between Taylor and Hagan.

---

[1]    *Brady v. Maryland*, 373 U.S. 83 (1963).

[2]    *Napue v. Illinois*, 360 U.S. 264 (1959).

[3]    Robinson's Claim 3 also alleged that the State suppressed an exculpatory statement by one of Robinson's codefendants, Bradney Smith, Am. Pet. at 26, but Robinson's motion does not challenge the Court's rulings on that issue, *see* Mot. at 2–9.

A.    **The Court correctly found that Robinson's Claims 1 and 3 are procedurally barred and that the bar is not excused by Robinson's unsubstantiated allegations of suppression.**

Robinson's Claims 1 and 3 are procedurally barred, and Robinson failed to show cause and prejudice to overcome the bar. As the Court noted, the Texas Court of Criminal Appeals (CCA) dismissed these claims as abuses of the writ after Robinson presented them in a subsequent state application for habeas corpus. Order at 37; *see Ex parte Robinson*, No. WR-81,583-02, 2020 Tex. Crim. App. Unpub. LEXIS 418, at *2 (Tex. Crim. App. Sept. 23, 2020). Robinson was therefore precluded from federal habeas review of these claims unless he could show cause for the default and resulting prejudice or show that the Court's failure to consider his claims will lead to a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). "Cause" means that "some objective factor external to the defense impeded [the petitioner's] efforts to raise the claim in state court." *Prible v. Lumpkin*, 43 F.4th 501, 513 (5th Cir. 2022) (citation omitted).

Robinson relies on *Banks v. Dretke*, 540 U.S. 668 (2004), to argue that he has shown cause by showing that the State suppressed the evidence underpinning his claim. Mot. at 8–9. This argument is insufficient for relief on Robinson's Rule 59(e) motion because it merely repeats arguments he raised in his Reply Brief. *Compare* Reply at 5–6, ECF No. 125 (arguing State suppression showed cause to overcome the procedural bar on Claims 1–3), *with* Mot. at 4–6 (same). Robinson's mere disagreement with the Court's decision is an inadequate basis to alter or amend judgment. *See Templet*, 367 F.3d at 479.

3

Additionally, the Court correctly found that Robinson failed to show any State suppression. *See* Order at 43–47. None of the new evidence he relies on to show the suppression he alleges is admissible in this forum. Order at 37–38 ("Further, all the other supporting evidence [besides two items just singled out as inadmissible] Petitioner relies on for these claims [one to three] is barred.").[4] And the record refutes any such notion: Robinson himself could have told the defense team that the razor did not belong to him, and the defense team was aware of Taylor's pending criminal charges and could have inferred that testifying for the State might potentially benefit him (which is as much as can be inferred from the admissible evidence on this point). Order at 43–44; Ans. to Am. Pet. ("Ans.") at 37–40, ECF No. 106. Robinson attempts to turn the burden of proof on its head, arguing, "[t]here is no evidence that Robinson or his counsel already had 'knowledge of the information' that was concealed[.]" Mot. at 8. However, it is Robinson who bore the burden to show that information was concealed in the first place. *See Banks,* 540 U.S. at 691. Because he has failed to do so, he has failed to clear the procedural bar blocking these claims.

Finally, Robinson argues that the defense team's actual or constructive knowledge is not relevant for *Napue* violations. Mot. at 9 (citing *Glossip v. Oklahoma*, 604 U.S. 226, 252, 254 (2025)). But the defense team's knowledge *is* relevant when

---

[4]    The inadmissible evidence did not show suppression either. It contains no relevant, material promises from Hagan, and it supports the idea that Robinson possessed the razor blade by stating that Taylor hid the razor in Robinson's bunk "because it was the only bunk with the slot in it [where] *we* could hide the razor." *See* ECF No. 91-10 (emphasis added); *see also* Ans. at 37–40. Additionally, "recanting affidavits and witnesses are viewed with extreme suspicion by the courts." *Spence v. Johnson*, 80 F.3d 989, 1003 (5th Cir. 1996). And importantly, state habeas counsel's failure to substantiate this claim, *see* Mot. at 8, precludes Robinson from showing cause and prejudice. *See Prible*, 43 F.4th at 515–19.

the issue is not the merits of a *Napue* claim but rather whether State suppression of information caused the petitioner not to follow applicable state court procedures before raising a collateral attack in federal court. *See Banks*, 540 U.S. at 691; *Prible*, 43 F.4th at 515–16. Since Robinson could have discovered the factual bases of his claims, the State did not cause his procedural predicament. The Court did not manifestly err in denying these claims as procedural barred, and therefore nothing in its alternative merits ruling can constitute manifest error in its judgment.

**B.    The Court did not manifestly err in its materiality analysis.**

Robinson claims that the Court applied the wrong materiality standards to his *Brady* and *Napue* claims in four ways: (1) by applying the "reasonable probability" standard to his *Napue* claims; (2) by requiring Robinson to prove actual prejudice on his *Napue* claims; (3) by requiring Robinson to prove that the *Napue* and *Brady* violations "be so pronounced and persistent that [they] permeate[d] the entire atmosphere of the trial;" and (4) by burdening Robinson to prove *Napue* materiality instead of burdening the State to prove immateriality beyond a reasonable doubt. Mot. at 2–3.

*Uvukansi v. Guerrero*, 126 F.4th 382 (5th Cir. 2025), shows that Robinson is mistaken in his fourth point. In that case, three people were shot and killed outside a nightclub, and only one witness testified to identification at trial. *Id.* at 385. The witness, Jeresano, testified that he had no agreement with the prosecutors, but it later turned out that he did. *Id.* Jeresano had pled guilty to federal drug charges, and Uvukansi's state prosecutor had agreed to write a letter to Jeresano's federal judge detailing his cooperation and encouraging the federal prosecutor to file a motion that

5

would enable the judge to sentence Jeresano to less than the statutory minimum. *Id.* When Uvukansi raised a *Napue* claim in a state habeas application, the state court concluded that "Uvukansi had not proved by a preponderance of the evidence that there is a reasonable likelihood that the false testimony affected the judgment of the jury." *Id.* at 386 (internal quotation marks omitted).

The Fifth Circuit held that "[i]t was proper for the court to refer to a need for a preponderance of evidence" and to place the burden to show that preponderance on Uvukansi. *Id.* at 390. It continued, "[t]he state court did not impose a standard higher than the Supreme Court's 'reasonable likelihood' standard." *Id.* Additionally, it noted, "[n]o majority of the Supreme Court has indicated that *Napue*'s materiality standard is the same as *Chapman*'s harmless error standard." *Id.* It determined that "[t]he practice of other circuits suggests the Supreme Court has not clearly placed the burden of proof on the State."[5] *Id.* at 391. To the extent Robinson argues for this Court to place the burden on the State, his argument is barred by non-retroactivity principles. *See Teague v. Lane*, 489 U.S. 288, 299–310 (1989). *Uvukansi* and *Davenport* support this Court's placing the burden on Robinson to show harm.

---

[5]     Robinson claims that "[t]he Supreme Court recently reaffirmed that it is the State's burden—as 'the beneficiary' of the testimony—to prove 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" Mot. at 3 (quoting *Glossip*, 604 U.S. at 246). However, *Glossip* was a state habeas case not beholden to the strictures of AEDPA and the case law surrounding it. *See Glossip*, 604 U.S. at 242 (reciting standards for "direct review of a state court judgment"). And *Glossip* did not purport to overrule the recent opinion in *Brown v. Davenport*, which explained that "where *Brecht* [*v. Abrahamson*, 507 U.S. 619 (1993),] is implicated a federal court must also ensure a habeas petitioner has carried his burden under its terms before granting relief." 596 U.S. 118, 127 (2022); *see id.* at 133 (requiring the government to prove harmlessness beyond a reasonable doubt was "inappropriate . . . in federal habeas review").

6

In his second dispute with the Court's materiality standards, Robinson urges that the Court erred by requiring him to show actual prejudice under *Brecht*, 507 U.S. at 637, with regard to his *Napue* claims. Mot. at 2. Citing one case, he claims that many other circuits have held that *Brecht*'s actual-prejudice standard does not apply to false testimony claims in federal habeas proceedings. *Id.* And he claims that the Fifth Circuit has not resolved the question so this Court should not have either. *Id.* at 3. But the Court's opinion correctly cites to the guidance the Fifth Circuit has given on this issue: *Barrientes v. Johnson*, 221 F.3d 741, 756–57 (5th Cir. 2000). Order at 42, n. 19. This Court did not manifestly err in following the guidance of the Fifth Circuit in applying *Brecht*'s "actual prejudice" standard, particularly in light of the Supreme Court's opinion in *Davenport*, as noted above.

Finally, in his first and third challenges to the Court's materiality standards, Robinson argues he should not have been required to show that the alleged *Brady* and *Napue* violations were "so pronounced and persistent that [they] permeate[d] the entire atmosphere of the trial," and that the Court erred in applying a reasonable-probability standard to the *Napue* claim. Mot. at 2–3 (citing Order at 42–43). While he is technically correct, his argument makes a mountain of a molehill and falls far short of demonstrating manifest error. Most importantly, the Court cited the correct standards for the actual elements of *Brady* and *Napue* claims. *See* Order at 41–42, 46 (". . . Petitioner fails to show a reasonable probability or likelihood that it impacted the jury's decision to impose the death penalty[.]"). The Court did not manifestly err in light of the fact that it ultimately cited the correct elements and applied those

elements correctly. In short, the references to the reasonable-probability and prosecutorial-misconduct-in-argument standards made no difference. *See United States v. Benitez*, 542 U.S. 74, 86–87 (2004) (Scalia, J., concurring) ("Such ineffable gradations of probability seem to me quite beyond the ability of the judicial mind (or any mind) to grasp, and thus harmful rather than helpful to the consistency and rationality of judicial decision making.").

### C. The Court did not fail to account for the effect that correcting the allegedly false testimony would have had on the jury.

Robinson claims that the Court erred by failing to account for the effect that impeaching Taylor's credibility would have had on the jury. Mot. at 3–4. This is not true, as the Court accounted for it in several ways. For one, it noted that "the jury knew that Taylor was awaiting trial for murder and could naturally infer that testifying for the State might have potential benefit." Order at 43 (citation omitted). It also found that "there was no deal of any value[,]" *id.* at 44, so there was nothing more for the jury to know about Taylor's motivations. And it found that other witnesses confirmed Robinson's possession of the razor blade, so Taylor's testimony was merely cumulative, *id.* at 44–45, and, once again, there was no false testimony with which to impeach Taylor. Moreover, Robinson's counsel testified at the state habeas hearing that they believed Taylor's testimony "minimized the act" of Robinson hiding the blade. *Id.* at 45. The Court explicitly found, "Petitioner would not have been helped by impeaching Taylor or offering more evidence that Taylor used and hid the blade that was discovered." *Id.* The Court considered and rightly rejected the

possibility that impeaching Taylor's cumulative and overall favorable evidence would have favorably affected the jury.

> ### D. The Court correctly found that the non-existent false evidence was not material.

Robinson argues that but for the Court's legal errors in the standards it applied to assess *Napue* materiality, it would or should have found that the allegedly false and/or suppressed evidence was material. Mot. at 6–7. As discussed above, the Court applied the correct standards, Order at 46, so this point does not follow. Ironically, Robinson ends this section of his argument by accusing the Court of "ignor[ing] the relevance of prosecutorial argument." *Id.* at 7. He points to the prosecutor's remarks about the World Trade Center being taken down by a razor blade, apparently to emphasize the importance of Taylor's testimony to the State's case. *See id.* However, as discussed, the razor blade evidence would have been admitted anyway through other witnesses, and the thrust of the prosecutor's remarks was to contradict Taylor's testimony that the razor blades were only used for cutting hair and that Robinson was only joking about trying to escape. *See id.* The Court did not manifestly err in finding no materiality.

## II. The Court Did Not Manifestly Err in Denying Robinson's Claims 5 and 6.

Robinson argues that the Court erred in finding that his Claims 5 and 6 in his amended petition do not relate back to his original petition. Mot. at 9–10. Robinson does not dispute the Court's findings that these claims were filed after the statute of limitations or that he is not entitled to equitable tolling. *See* Mot. at 9–12; Order at 29–30. He concedes that the Court applied the correct standard. Mot. at 9. But he

contends that the Court "did not adhere to that standard in its application." *Id.* In addition to rehashing old argument, Robinson is wrong: the new claims do not share a common core of operative facts with the original claims, they rely on different types of evidence, and the old claims failed to apprise the Director that the new claims would arise.

"[C]laims raised in an amendment to a habeas petition [do] not automatically relate back merely because they arose out of the same trial and conviction." *United States v. Gonzalez*, 592 F.3d 675, 679 (5th Cir. 2009) (citing *Mayle v. Felix*, 545 U.S. 644, 650 (2005)). Claims relate back where "the original and amended petitions state claims that are tied to a common core of operative facts." *Mayle*, 545 U.S. at 664. On the other hand, an amended habeas petition does not relate back "when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth" or "when the new claims depend upon events separate in 'both time and type' from the originally raised episodes." *Id.* at 650, 657 (citation omitted). To "relate back," the initial petition must apprise the respondent of the claim raised in the amended petition. *See McGregor v. La. State Univ. Bd. of Sup'rs*, 3 F.3d 850, 864 (5th Cir. 1993).

Claims 5 and 6, respectively, alleged that Robinson's jury did not contain a fair cross-section of the community because Harrison County's jury selection procedures systematically excluded minorities and that Robinson's trial counsel ineffectively failed to question the venire members about race. Am. Pet. at 41, 46 (ECF No. 90). Robinson argues that the claims relate back to his original petition's Claims 9 and

10, a *Batson*[6] claim and a venue challenge. Mot. at 9–10; Orig. Pet. at 78, 89 (ECF No. 14). As the Court found, a fair cross-section claim "is not the same or similar . . . [to] whether publicity negatively influenced [jurors'] decisions regarding the evidence." Order at 33. And an ineffective assistance of trial counsel (IATC) claim "is materially different from a prosecutorial misconduct claim or a pretrial publicity claim." *Id.* These conclusions were entirely consistent with controlling precedent. *Gonzalez*, 592 F.3d at 680.

Robinson complains about the Court's bird's eye view of contrasting his new claims with his old claims, arguing that the Court should have found his new claims "tied to the same core of operative facts." Mot. at 10. However, he does not identify a common core of operative facts; he stops short at noting that the new and old claims "rel[y] in part on Marshall, Texas's, troubled racial history." *Id.* That is a shared detail, not the core of any of these claims. The core of Robinson's Claim 5 (fair cross section) is new statistical data cited for the first time in his amended petition, *see* Am. Pet. at 43–44, and the core of Claim 6 (IATC for failure to question the venire on race) is trial counsel's behavior and motivations during voir dire, *see id.* at 55–56. These are categorically different from the core of his original Claim 9 (*Batson*), which centered on the *prosecution's* behavior and motivations during voir dire, *see* Orig. Pet. at 83–87, and his original Claim 10 (venue), which focused on pre-trial publicity of Robinson's case, *see id.* at 91–92. The Court did not err by using the types of claims

---

6     *Batson v. Kentucky*, 476 U.S. 79 (1986).

as a shorthand for the different types of evidence needed to support each claim, particularly where Robinson's motion makes no argument as to how the claims in his original petition could have apprised the Director of his amended Claims 5 and 6.

Because the new and old claims do not share a common core of operative facts but rather each rely on distinct types of evidence involving different actors and behaviors, and because the Director could not have anticipated the new claims based on the old ones, the Court correctly held that the new claims do not relate back to the original petition. The Court did not manifestly err in finding Claims 5 and 6 barred by the statute of limitations, and Rule 59(e) relief should be denied.

Robinson also cursorily argues this Court erred in finding Claims 5 and 6 defaulted. Mot. at 10–11. He argues the default of his IATC claims is excused by ineffective assistance of habeas counsel (IAHC), but he fails to argue how that is so. *See id.* In any event, Robinson's reliance on *Mullis v. Lumpkin*, 70 F.4th 906 (5th Cir. 2023), to present new evidence fails because his IAHC argument is nothing but an attempt to permit new evidence and a merits review of his underlying IATC claims. *See Tong v. Lumpkin*, 90 F.4th 857, 866 n.5 (5th Cir. 2024).

Lastly, Robinson argues Claims 5 and 6 are meritorious. Mot. at 10–11. His argument is mere recapitulation of what he has argued before. Therefore, he necessarily fails to identify any manifest error, and his motion should be denied.

## III. The Court Did Not Manifestly Err in Excluding Robinson's New Evidence.

This Court righty rejected Robinson's attempt to support his amended habeas petition and reply brief with over seventy pieces of evidence not introduced in state

court. Order at 24–26. He avers that the Court erred in excluding that evidence, arguing (1) where State suppression of evidence supplies "cause" to overcome a default, a petitioner has not failed to develop the record under § 2254(e)(2), Mot. at 13; (2) new evidence is allowed for the purpose of overcoming a default, *id.*; and (3) *Martinez*[7] and *Martinez Ramirez*[8] allow new evidence on the merits of an IATC claim if state habeas counsel was ineffective, *id*. Robinson's arguments are insufficient for Rule 59(e) relief because (1) he has not shown State suppression; (2) new evidence is only allowed for the purposes of excusing default where a petitioner can overcome § 2254(e)(2); and (3) *Martinez Ramirez* does not allow new evidence on the merits.

First, as explained in Section I.A, *supra*, Robinson failed to show that the State suppressed evidence. *See* Order at 39–40, 43–46. And the record also shows that even if Taylor's testimony had been absent or (more) impeached, it would not affect the jury in any positive way, as Officer Copeland still would have testified to finding a razor blade in Robinson's bunk, and Taylor's softening of that information was a net positive for Robinson's defense. *Id.* Robinson has not shown that State suppression of any information caused his procedural default, so Robinson is responsible for failing to develop the record in state court under § 2254(e)(2).

Second, new evidence is not allowed for the purpose of overcoming Robinson's default because he does not satisfy § 2254(e)(2). Robinson argues that the Court "incorrectly 'barred from consideration' evidence like state habeas counsel's

---

[7] *Martinez v. Ryan*, 566 U.S. 1 (2012).

[8] *Shinn v. Martinez Ramirez*, 596 U.S. 366 (2022).

declaration that he offered only to show cause to excuse procedural default." Mot. at 13. Citing a Third Circuit case, he argues that evidence offered to show cause, rather than as the factual basis of a claim, cannot be barred by § 2254(e)(2). *Id.* at n. 9 (citing *Cristin v. Brennan*, 281 F.3d 404, 413 (3d Cir. 2002)). However, this is irreconcilable with *Martinez Ramirez*'s holding that "if [§ 2254(e)(2)] applies and the prisoner cannot satisfy its 'stringent requirements,' a federal court *may not* hold an evidentiary hearing—or otherwise consider new evidence—to assess cause and prejudice under *Martinez.*" *Martinez Ramirez,* 596 U.S. at 389 (emphasis added). This shows that § 2254(e)(2) applies to evidence the petitioner has failed to develop in State court, whether the evidence is relevant to the merits or to the default. As Robinson has not shown that his claim relies on a new rule of constitutional law or a factual predicate undiscoverable through diligence, his evidence for cause and prejudice is inadmissible under *Martinez Ramirez.*

Finally, *Martinez Ramirez* does not, as Robinson seems to suggest, allow the Court to exempt him from § 2254(e)(2) for evidence on the merits, even if he could show that his state habeas counsel ineffectively caused him to fail to develop the factual bases of his claims in state court. *See* Mot. at 13. *Martinez Ramirez* held that "when a federal habeas court convenes an evidentiary hearing for any purpose, or otherwise admits or reviews new evidence for any purpose, it may not consider that evidence on the merits of a negligent prisoner's defaulted claim unless the exceptions in §2254(e)(2) are satisfied." *Martinez Ramirez,* 596 U.S. at 389. This is because, "under §2254(e)(2), a prisoner is 'at fault' even when state postconviction counsel is

14

negligent." *Id.* at 384. "*Martinez* did not prescribe largely unbounded access to new evidence whenever postconviction counsel is ineffective[.]" *Id.* at 377. The Court did not manifestly err in excluding Robinson's new evidence presented for the first time in federal court because he failed to meet the strictures of §2254(e)(2). *See Tong*, 90 F.4th at 866 n.5.

## IV.    The Court Did Not Manifestly Err in Denying Robinson a COA.

Finally, the Court did not manifestly err by denying Robinson a COA on his claims. Robinson fails to show "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Slack v. McDaniel*, 529 U.S. 473, 484 (2000), or that "the issues presented are adequate to deserve encouragement to proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). There is no reason for this Court to change its stance on denying Robinson a COA.

## CONCLUSION

For these reasons, the Director requests that Robinson's motion to alter or amend this Court's judgment and for a COA be denied.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

JOSH RENO
Deputy Attorney General
for Criminal Justice

TOMEE M. HEINING
Chief, Criminal Appeals Division

15

/s/ Rachel Gartman
RACHEL GARTMAN
Assistant Attorney General
    *Counsel of Record*

Post Office Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 936-1400
(512) 936-1280 (f)
rachel.gartman@oag.texas.gov

*Counsel for Respondent*

## CERTIFICATE OF SERVICE

I certify that on November 26, 2025, I electronically filed the foregoing pleading with the Clerk of the Court for the U.S. District Court, Northern District of Texas, using the electronic case-filing system of the Court. The electronic case-filing system sent a "Notice of Electronic Filing" (NEF) to the following counsel of record:

Joshua Aaron Freiman
Federal Public Defender, WD/TX - Austin
504 Lavaca Street, Ste. 960
Austin, TX 78701
512-916-5025
512-916-5035 (f)
joshua_freiman@fd.org

Benjamin Barrett Wolff
Office of Capital and Forensic Writs
1700 Congress, Ste. 460
Austin, TX 78731
512-463-8502
512-463-8590 (f)
benjamin.wolff@ocfw.texas.gov

Maureen Scott Franco
Federal Public Defender, WD/TX
727 E. Cesar E. Chavez Blvd., Ste. B-207
San Antonio, TX 78206
210-472-6700

16

210-472-4454 (f)
maureen_franco@fd.org

Donna F Coltharp
Federal Public Defender, TXW
919 Congress Ave., Ste. 950
Austin, TX 78701
737-207-3007
donna_coltharp@fd.org

/s/ Rachel Elizabeth Gartman
RACHEL ELIZABETH GARTMAN
Assistant Attorney General

17